**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:17-cv-00548-TSC |
| DEPARTMENT OF HOMELAND SECURITY, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**EIGHTH JOINT STATUS REPORT**

**A.    RECENT EVENTS**

The following events have taken place in this case since the filing on June 29, 2018, of the Seventh Joint Status Report, ECF No. 30:

1. Plaintiff Knight First Amendment Institute at Columbia University sent an Excel spreadsheet to defendant U.S. Immigration and Customs Enforcement (ICE) by email dated July 13, 2018. The spreadsheet "identif[ied] the beginning and end Bates numbers of the [74] documents we would like ICE to include in its sample *Vaughn* index."

2. The Court directed the parties by minute order dated July 17, 2018, to "file another joint report by August 2, 2018 and every 60 days thereafter" and to include "a proposed order" in the report "[t]o the extent the report contains a proposed production/briefing schedule."

3. Defendant Department of Homeland Security (DHS) advised plaintiff by email dated July 24, 2018, that it "propose[d] to conduct [certain] additional searches in this case, based on its consideration of the components within DHS Headquarters likely to have responsive records." Describing the proposed searches, DHS said:

1. Item 1 of the request seeks statistical information concerning searches of electronic devices. DHS proposes to ask the Office of Strategy, Policy, and Plans (OSPP), Threat Prevention and Security Policy, for any records of which it is aware that contain such information.

2. Item 2 of the request seeks records relating to each instance in which ICE or [defendant U.S. Customs and Border Protection (CBP)] has searched an electronic device. Item 3 seeks records superseding two specific ICE and CBP directives. DHS proposes to take no further action with respect to these items because any responsive records would rest with ICE and CBP.

3. Item 4 of the request seeks reviews of CBP or ICE policies or practices regarding electronic devices. DHS proposes to ask OSPP; the Office of General Counsel, Operations and Enforcement Law Division (OGC-OELD); the Privacy Office (PRIV); and the Office for Civil Rights and Civil Liberties (CRCL), Security Intelligence and Information Policy Section, for any records involving any such review of which they are aware.

4. Item 5 of the request seeks complaints about electronic device searches dating back to 2012. DHS proposes to ask CRCL to conduct a search of the complaint summaries in Entellitrak dating from 2012 forward using the additional search terms proposed by plaintiff in its email dated June 29, 2018, *see* ECF No. 30 at 7.

5. Item 6 of the request seeks records concerning how CBP handles privileged or sensitive material found in electronic devices. DHS proposes to ask OSPP; OGC-OELD; PRIV; and CRCL for any such records of which they are aware.

6. Item 7 of the request seeks records concerning CBP's anti-discrimination policy as applied to discretionary searches of electronic devices. DHS proposes to ask OSPP and CRCL, Antidiscrimination Group, for any such records of which they are aware.

DHS asked whether plaintiff "[would] view DHS as having fulfilled its obligation to search for responsive records in this case if it conducts these searches."

4. Plaintiff acknowledged receipt of DHS' email by email dated July 24, 2018, and asked when ICE "expect[ed] to produce [its] sample *Vaughn* index."

5. ICE advised plaintiff by email dated July 25, 2018, that it would try to provide its *Vaughn* declaration within the next 60 days.

6. Plaintiff asked ICE by email dated July 27, 2018, whether it would "agree to provide [its *Vaughn*] declaration" 30 days prior to October 1, 2018, the date upon which the next joint status report is due, because "[r]eceiving the declaration in that timeframe would hopefully allow us to evaluate it and determine [before October 1] what if anything we intend to challenge." Plaintiff advised DHS in the same email that "[w]e agree with [the] proposed approach [set forth in the email from DHS to plaintiff dated July 24, 2018] to the DHS searches for Items 2, 3, and 5" but asked whether DHS would "agree to run the [proposed] searches for Items 1, 4, 6 & 7 for all of the following offices": OSSP, Threat Prevention and Security Policy; OGC-OELD; PRIV; and CRCL, Security Intelligence and Information Policy Section and Antidiscrimination Group.

7. DHS advised plaintiff by email dated July 31, 2018, that it agreed "pursuant to its email dated July 24, 2018, and your email dated July 27, 2018" to search for records responsive to Items 1, 4, 6, and 7 of the request" by asking OSPP, Threat Prevention and Security Policy; OGC-OELD; PRIV; CRCL, Security Intelligence and Information Policy Section; and CRCL, Antidiscrimination Group for

> any records of which they are aware that contain statistical information concerning searches of electronic devices; involve policies or practices of CBP or ICE regarding electronic devices; concern how CBP handles privileged or sensitive material found in electronic devices; or concern CBP's antidiscrimination policy as applied to discretionary searches of electronic devices.

DHS said that it "agree[d] to conduct these searches on the understanding that it will have no obligation to conduct any other search for records responsive to Items 1, 4, 6, or 7" and asked plaintiff to let it know if that understanding was incorrect.

"On the assumption that the parties [had] reached agreement as to all further searches that DHS must conduct in this case," DHS asked as well whether plaintiff objected to "PRIV's deletion from its record processing system, FOIAXpress, of the records that it gathered from the

searches conducted in this case by DHS in or before October 2017, ECF No. 24 at 4-5." DHS said that "[t]he deletion of the records will free up space in FX that PRIV needs to process records responsive to the FOIA request in this case or other FOIA requests."

8. Plaintiff advised DHS by email dated July 31, 2018, that it agreed that DHS would have "no obligation to conduct any other search for records responsive to Items 1, 4, 6, or 7" if DHS conducted the searches described in its email to plaintiff dated July 31, only providing OSPP, Threat Prevention and Security Policy; OGC-OELD; PRIV; CRCL, Security and Information Policy Section; and CRCL, Antidiscrimination Group with the specific text of Items 1, 4, 6, and 7 instead of DHS's summary. Plaintiff clarified that its agreement was "premised on our understanding that DHS has accurately identified the DHS offices that may have responsive information" and conditioned on "the DHS offices['] conduct[ing] their searches based on the actual language of the Request, not the overview of the Request [contained in the email]." Plaintiff also said that "we do not object to PRIV's deletion from . . . FOIAXpress . . . of the records that it gathered from the searches conducted by DHS in this case by DHS in or before October 2017."

9. ICE advised plaintiff by email dated July 31, 2018, that the document that it intended to provide to plaintiff would be a *Vaughn* "index" rather than a *Vaughn* "declaration" and that the index would identify the categories of information that ICE had withheld pursuant to FOIA Exemptions 6/7(C) and 7(E); the records from which each category had been withheld; and the justification for the withholding of each category. ICE also said that the attorney whose task it would be to prepare the *Vaughn* index would have little time to work on it during the next 60 days and, for that reason, would be unable to complete the index as soon as plaintiff had requested. ICE explained that the attorney would be out of the office for training during the

period August 13-17; out of the office for all but three days during the period August 20-September 3; out of the office during the period September 6-10; and out of the office for training again during the period September 17-21.

10.  Plaintiff asked ICE by email dated July 31, 2018, whether "there [was] another attorney who [could] handle the *Vaughn* Index in order to complete it more quickly."

11.  CBP produced 289 pages to plaintiff on July 31, 2018, with redactions pursuant to FOIA Exemptions 6, 7(C), and/or 7(E).  These pages were part of CBP's "2% sample of the incident-level reports dealing with border searches of electronic devices created during the past 18 months, including their narrative sections," *see* ECF No. 26 at 4.

12.  Plaintiff advised DHS and CBP by email dated August 1, 2018, that it "want[ed] to include in [this report] dates by which DHS will complete its search and CBP will complete production of the Excel spreadsheet CBP has agreed to produce" and proposed August 17, 2018, for both dates.

13.  ICE advised plaintiff by email dated August 1, 2018, that the office at ICE that handles FOIA litigation is currently carrying 85 active FOIA cases; that it therefore does not have another attorney who can handle the *Vaughn* index in this case; that counsel for the Department of Justice will want to review the index before it is sent to plaintiff; and that September 24 therefore seems to be a realistic target date for plaintiff's receipt of the index.

14.  DHS advised plaintiff by email dated August 1, 2018, that it proposed to conduct the searches described in its email to plaintiff dated July 31, 2018, by having PRIV send search taskers to the heads of each of the offices described in the email reading as follows: "Please send PRIV within 20 days any records of which you are aware in the following categories: [setting forth the text of Items 1, 4, 6, and 7 of the request]."  Stating that "[t]he taskers can be sent out

within seven days," DHS asked plaintiff to "let [it] know whether plaintiff will consider DHS to have fulfilled its obligation to search for records responsive to Items 1, 4, 6, and 7 if PRIV sends these taskers out, keeping in mind plaintiff's 'understanding that DHS has accurately identified the DHS offices that may have responsive information.'"

15. Plaintiff advised DHS by email dated August 1, 2018, that it "expect[ed] DHS to communicate the results of the searches by each office – meaning the total number of pages of responsive records identified – by August 24" and asked whether that was agreeable.

16. DHS advised plaintiff by email dated August 2, 2018, that "PRIV can ask the offices to which it sends its taskers to respond within 20 days but cannot control how quickly the responses will come in" and that "PRIV may also need to run any records it receives from the offices through de-duplication software before it knows how many pages from each of the offices will require processing." DHS "therefore propose[d] to provide plaintiff no later than August 24, 2018, with an office-by-office update concerning the responses to the taskers that PRIV ha[d] received" and said:

> Provided that DHS does so, will plaintiff consider DHS to have fulfilled its obligation to search for records responsive to Items 1, 4, 6, and 7 of the request if PRIV sends out the taskers described in the email from DHS to plaintiff dated August 1, 2018, keeping in mind plaintiff's "understanding that DHS has accurately identified the DHS offices that may have responsive information"?

17. Plaintiff proposed by email dated August 2, 2018, that CBP "produce [its] Excel spreadsheet by August 17, 2018"; that DHS "complete [its] search and inform plaintiff of [the] number of pages of responsive records located by August 24, 2018"; that ICE "produce [its] sample *Vaughn* index by September 14, 2018"; and that these deadlines be included in "the proposed order accompanying [this] report." Plaintiff also said:

> [W]e will not consider DHS to have fulfilled its search obligation simply by sending out taskers to the agreed-upon agency components; we will consider DHS

6

to fulfill that obligation when it informs us of the number of pages of responsive records its search has produced, based on our understanding that DHS has accurately identified the DHS offices that may have responsive information.

18. CBP proposed by email to plaintiff dated August 2, 2018, to include its Excel spreadsheet in its next monthly production to plaintiff, i.e., its production at the end of August 2018. DHS and ICE said in the same email that they could not agree to plaintiff's proposed deadlines of August 24 and September 24 for the reasons they already had given plaintiff but that neither they nor CBP would object to an extension of the parties' time to file their next joint status report "if plaintiff will need additional time before the report is due to consider ICE's *Vaughn* index." DHS, ICE, and CBP expressed the view in the email that the parties were not required under the minute order dated July 17, 2018, to file a proposed order with this report.

19. Plaintiff accepted by email dated August 2, 2018, the proposal of CBP to include its Excel spreadsheet in its August production. ICE agreed after further discussions to provide its *Vaughn* index to plaintiff on or before September 20, 2018.

B.     THE PARTIES' VIEWS ON THE PROCESS GOING FORWARD

    1.     PLAINTIFF'S VIEW

Plaintiff respectfully requests that the Court order DHS to complete its search for records responsive to plaintiff's narrowed Request, and to inform plaintiff of the total number of pages of responsive records located through that search, by August 24, 2018. Since the beginning of this matter, plaintiff has worked with DHS to narrow its Request considerably. Plaintiff now seeks—over a year after the commencement of this action—to establish a date by which DHS will complete its search based on the narrowed Request and to communicate the results of that search. Only then will the parties be in a position to discuss an appropriate schedule for DHS's production of responsive records.

DHS asks plaintiff to consider its search obligation fulfilled simply by assigning individuals to search the relevant offices, and offers to provide plaintiff with an upate in several weeks. This proposal is plainly inadequate. DHS's indication that it has initiated a search, without a deadline for completion of the search or for communication of the results of the search to plaintiff, is of no value in fulfilling plaintiff's FOIA request. And DHS's purported inability to ensure timely response by its own personnel is not adequate grounds to extend the date for completion of the search indefinitely. As referenced above, DHS has agreed to direct its search taskers to return records responsive to the narrowed Request within 20 days. Plaintiff's proposed deadline for DHS to inform plaintiff of the results of its search, including the total number of pages of responsive records located through that search, is therefore reasonable, and the Court should order that deadline to ensure that DHS's search is completed, not just begun, in a timely manner.

Plaintiff therefore respectfully requests that the Court enter Plaintiff's Proposed Order attached hereto, setting forth the agreed-upon dates by which CBP will produce the Excel spreadhsheet referenced above and ICE will produce the sample *Vaughn* index referenced above, and setting forth plaintiff's proposed deadline for DHS to complete its search and inform plaintiff of the total number of pages of responsive records located through that search.

    **2.**     **DEFENDANTS' VIEW**

DHS cannot be certain that the search for records responsive to Items 1, 4, 6, and 7 of the request to which the parties have now agreed will be completed by August 24, 2018, the date by which plaintiff would like it to be completed. DHS has thus explained to plaintiff that "PRIV can ask the offices to which it sends its taskers to respond within 20 days but cannot control how quickly the responses will come in." Para. 16, *supra*. DHS has also explained that PRIV may

need to "run any records it receives from [those] offices through de-duplication software before it knows how many pages from each of the offices will require processing." *Id.* DHS has therefore proposed to "provide plaintiff no later than August 24, 2018, with an office-by-office update concerning the responses to the taskers that PRIV has received." *Id.*

Rejecting that proposal, plaintiff has submitted a proposed order that reproduces the agreements of the parties concerning the production of the CBP spreadsheet and ICE *Vaughn* index, *see* ¶ 20, *supra*, and directs DHS to "complete its search for responsive records and inform Plaintiff of the total number of pages of all responsive records located in its search no later than August 24, 2018." No such order should be entered. The provisions of the proposed order that deal with the production of the CBP spreadsheet and ICE *Vaughn* index are superfluous in view of the agreements concerning the production of those documents that the parties have reached. The provision of the order that requires DHS to complete its search by August 24 is unwarranted because DHS cannot be certain for the reasons set forth above that it will be able to meet that deadline. The provision is also unnecessary because the parties are directed by the minute order dated July 17, 2018, to file their next joint status report on or before October 1, 2018. DHS is hopeful that it will be able to complete its search by October 1, 2018, but will provide a full explanation in the next joint status report if its hopes are not met.

Plaintiff complains that it has taken more than a year for the parties to reach agreement on the search for records responsive to Items 1, 4, 6, and 7 that DHS is now required to conduct. *See* p.7, *supra.* DHS thought with good reason, however, that the issue had been resolved seven months ago. *See* 5th Jt. Stat. Rep., ECF No. 26 at 3 (discussing the email, dated January 16, 2018, in which "[p]laintiff indicated . . . that it would consider DHS to have complied in full with all portions of its request other than Item 5 if [DHS] conducted [a certain prescribed] search and

produced all non-exempt portions of any responsive records that it identified"). The parties should therefore be directed to continue their efforts pending the filing of the next joint status report to resolve any outstanding issues in this case. A proposed order is attached.

    Respectfully submitted,

By: *s/ Scott B. Wilkens* (by email authorization)
Scott B. Wilkens, DC Bar 489631
Matthew S. Hellman, DC Bar 484132
Michael E. Stewart, DC Bar 144926
JENNER & BLOCK LLP
1099 New York Avenue, N.W., Suite 900
Washington, D.C. 20001
Tel: (202) 639-6072/Fax (202) 639-6066
Email: swilkens@jenner.com

Susan J. Kohlmann, *Pro Hac Vice*
JENNER & BLOCK LLP
919 Third Avenue
New York, New York 10022
Tel: (212) 891-1600/Fax (212) 891-1699

Jameel Jaffer, D.D.C. Bar MI0067
Katherine Fallow, *Pro Hac Vice*
Alex Abdo, *Pro Hac Vice*
Caroline M. DeCell, *Pro Hac Vice*
KNIGHT FIRST AMENDMENT INSTITUTE AT
COLUMBIA UNIVERSITY
475 Riverside Drive, Suite 302
New York, New York 10115
Tel: (646) 745-8500
Attorneys for Plaintiff


CHAD A. READLER
Acting Assistant Attorney General

JESSIE K. LIU
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Director

|  |  |
|---|---|
|  | s/ *David M. Glass* |
|  | DAVID M. GLASS, DC Bar 544549 |
|  | Senior Trial Counsel |
|  | Department of Justice, Civil Division |
|  | 20 Massachusetts Ave., N.W., Room 7200 |
|  | Washington, D.C.  20529 |
|  | Tel: (202) 514-4469/Fax: (202) 616-8470 |
|  | E-mail: david.glass@usdoj.gov |
| Dated: August 2, 2018 | Attorneys for Defendants |

## CERTIFICATE OF SERVICE

I hereby certify that I served the within report on all counsel of record by filing it with the Court by means of its ECF system on August 2, 2018.

s/ *David M. Glass*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:17-cv-00548-TSC |
| DEPARTMENT OF HOMELAND SECURITY, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**[PLAINTIFF'S PROPOSED] ORDER**

Upon consideration of the parties' Eighth Joint Status Report, filed August 2, 2018, and all previous status reports filed in this matter, and after having considered the proposals of the parties, it is hereby ORDERED that:

1. Defendant Customs and Border Patrol shall produce to Plaintiff the spreadsheet it has agreed to produce, referenced in the Eighth Joint Status Report, by the date of its next monthly production in August 2018.

2. Defendant Department of Homeland Security shall complete its search for responsive records and inform Plaintiff of the total number of pages of all responsive records located in its search no later than August 24, 2018; and

3. Defendant U.S. Immigration and Customs Enforcement shall produce to Plaintiff the sample *Vaughn* index referenced in the Eighth Joint Status Report no later than September 20, 2018.

IT IS SO ORDERED.

2

DATE: _____          _____
                                 The Honorable Tanya S. Chutkan
                                 United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY,  Plaintiff,  v.  DEPARTMENT OF HOMELAND SECURITY, *et al.*,  Defendants. | No. 1:17-cv-00548-TSC |

## **[DEFENDANTS' PROPOSED] ORDER**

It is hereby ordered in view of the joint status report filed on August 2, 2018, that the parties continue their efforts pending the filing of the next joint status report to resolve any outstanding issues in this case.

Dated: _____                    _____
                                         UNITED STATES DISTRICT JUDGE