**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY,** )<br>)<br>)<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**DEPARTMENT OF HOMELAND SECURITY,** *et al.,* )<br>)<br>)<br>**Defendants.** )<br>) | **No. 1:17-cv-00548-TSC** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................1

FACTUAL BACKGROUND .................................................................2

GLOSSARY ...........................................................................5

ARGUMENT ..........................................................................6

I.     THE WITHHOLDINGS OF TSA UNDER EXEMPTION 3 ARE PROPER ..................6

II.    THE WITHHOLDINGS OF DHS, CBP, AND ICE UNDER EXEMPTION 5 ARE PROPER ............................................................................8

III.   THE WITHHOLDINGS OF DHS, CBP, ICE, AND OIG UNDER EXEMPTIONS 6 AND 7(C) ARE PROPER ...........................................................14

      A.    THE WITHHOLDINGS OF DHS, CBP, ICE, AND OIG UNDER EXEMPTION 7(C) ARE WITHHOLDINGS FROM INVESTIGATORY RECORDS COMPILED FOR LAW ENFORCEMENT PURPOSES ...................................................15

      B.    DISCLOSURE OF THE WITHHOLDINGS OF DHS, CBP, ICE, AND OIG UNDER EXEMPTION 7(C) COULD REASONABLY BE EXPECTED TO CONSTITUTE AN UNWARRANTED INVASION OF PERSONAL PRIVACY ................................17

           1.    All of the Subjects of the Withholdings of DHS, CBP, ICE, and OIG under Exemption 7(C) Possess a Personal Privacy Interest in Nondisclosure of the Withheld Material .................................17

           2.    The Personal Privacy Interest in Nondisclosure Possessed by the Subjects of the Withholdings of DHS, CBP, ICE, and OIG under Exemption 7(C) Is Not Overcome by Any Public Interest in Disclosure ............................19

IV.   THE WITHHOLDINGS OF DHS, CBP, AND ICE UNDER EXEMPTION 7(E) ARE PROPER ............................................................................20

      A.    THE WITHHOLDINGS OF DHS, CBP, AND ICE UNDER EXEMPTION 7(E) WERE MADE FROM INVESTIGATORY RECORDS COMPILED FOR LAW ENFORCEMENT PURPOSES ............................................................21

B. Disclosure of the Withholdings of DHS, CBP, and ICE under Exemption 7(E) Could Reasonably Be Expected to Risk Circumvention of the Law ...................................................................................................................22

CONCLUSION ........................................................................................................................28

## TABLE OF CASES

Page

*ACLU v. Dep't of Def.*, 628 F.3d 612 (D.C. Cir. 2011) ....................................................6

*Adelante Ala. Worker Ctr. v. DHS*, 376 F. Supp. 3d 345 (S.D.N.Y. 2019) ....................................5

*Assassination Archives & Research Ctr. v. CIA*, 781 F. App'x 11 (D.C. Cir. 2019) ....................9

*Baez v. Dep't of Justice*, 647 F.2d 1328 (D.C. Cir. 1980) ........................................17, 18

*Bartko v. Dep't of Justice*, 898 F.3d 51 (D.C. Cir. 2018) ...........................................15

*Canning v. Dep't of Justice*, 2017 WL 2438765 (D.D.C. June 5, 2017) ................................19

*Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*, 746 F.3d 1082
(D.C. Cir. 2014) ........................................................................1, 17, 18, 19

*Citizens for Resp. & Ethics in Wash v. Dep't of Justice,* 854 F.3d 675 (D.C. Cir. 2017) ............15

*Crisman v. Dep't of Justice*, 2019 WL 1330587 (D.D.C. Mar. 25, 2019).................................9

*Ctr. for Biol. Diversity v. EPA*, 369 F. Supp. 3d 1 (D.D.C. 2019)....................................9

*Davis v. DHS*, 2013 WL 3288418 (E.D.N.Y. June 27, 2013) ....................................7, 8

*Dep't of Def. v. Fed. Labor Rel. Auth.*, 510 U.S. 487 (1994) ................................14, 16

*Dep't of the Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1 (2001)..........................8, 9

*Dep't of State v. Wash. Post Co.*, 456 U.S. 595 (1982) .................................................16

*DiBacco v. Dep't of the Army*, 926 F.3d 827 (D.C. Cir. 2019) .....................................2, 6

*Elec. Privacy Info. Ctr. v. DHS*, 928 F. Supp. 2d 139 (D.D.C. 2013) ............................7

*Eleiwa v. TSA*, 2016 WL 7497584 (W.D. Tenn. July 19, 2016)...................................8

*Etessami v. CBP*, 2017 WL 2869422 (D.D.C. May 19, 2017) ................................20, 21

*FBI v. Abramson*, 456 U.S. 615 (1982) .........................................................14, 15, 21

*In re Lindsey*, 158 F.3d 1263 (D.C. Cir. 1998) ...........................................................10

*Humane Soc'y Int'l v. Fish & Wildlife Serv.*, 394 F. Supp. 3d 67 (D.D.C. 2019)........................16

*In re Sealed Case*, 146 F.3d 881 (D.C. Cir. 1998).........................................................................10

*Loving v. Dep't of Def.*, 550 F.3d 32 (D.C. Cir. 2008) ..................................................................9

*Milner v. Dep't of the Navy*, 562 U.S. 562 (2011)........................................................................20

*Mokdad v. Lynch*, 804 F.3d 807, 809 (6th Cir. 2015).....................................................................7

*NARA v. Favish*, 541 U.S. 157 (2004) .........................................................................................14

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873 (D.C. Cir. 1989) ...............................8

*Parker v. ICE*, 238 F. Supp. 3d 89 (D.D.C. 2017).......................................................................20

*Pinson v. Dep't of Justice*, 243 F. Supp. 3d 74 (D.D.C. 2017).....................................................21

*Pub. Emps. for Envtl. Resp. v. U.S. Section*, 740 F.3d 195 (D.C. Cir. 2014) .........................16, 20

*Rojas-Vega v. Dep't of Justice*, 302 F. Supp. 3d 300 (D.D.C. 2018) ......................................19, 21

*Sai v. TSA*, 315 F. Supp. 3d 218 (D.D.C. 2018) .................................................................6, 7, 8, 19

*Schrecker v. Dep't of Justice*, 349 F.3d 657 (D.C Cir. 2003) ........................................................19

*Skurow v. DHS*, 892 F. Supp. 2d 319 (D.D.C. 2012) ....................................................................8

*Upjohn Co. v. United States*, 449 U.S. 383 (1981)........................................................................10

## TABLE OF EXHBITS

Ex. A          Decl. of Terri Miller (Dec. 9, 2019)

Ex. B          Decl. of James V.M.L. Holzer (Jan. 31, 2020)

Ex. C          Decl. of Patrick A. Howard (Jan. 30, 2020)

Ex. D          *ICE, Homeland Security Investigations*, https://www.ice.gov/hsi (accessed Jan. 5, 2020)

Ex. E          Decl. of Douglas E. Blair (Dec. 19, 2019)

Ex. F          Decl. of Toni Fuentes (Jan. 16, 2020)

Ex. G          Decl. of Drew Lavine (Jan. 13, 2020)

Ex. H          Letter Fuentes to Fallow (Oct. 4, 2019),

Ex. I          Email chain among Glass & Wilkens (Nov. 21-Dec. 7, 2017)

## PRELIMINARY STATEMENT

Plaintiff Knight First Amendment Institute at Columbia University has identified certain withholdings of certain agencies as "the issues . . . [it] intends to contest on summary judgment" in this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  15th Jt. Stat. Rep. (JSR) (Nov. 21, 2019), ECF No. 44, at 1.  Excluding certain withholdings that are not in fact at issue, the withholdings that plaintiff has identified as "the issues . . . [it] intends to contest on summary judgment" are the withholdings of the Transport Security Administration (TSA) under FOIA Exemption 3; the withholdings of defendants Department of Homeland Security (DHS), U.S. Customs and Border Protection (CBP), and U.S. Immigration and Customs Enforcement (ICE) under FOIA Exemption 5; the withholdings of DHS, CBP, ICE, and the DHS Office of Inspector General (OIG) under FOIA Exemptions 6 and 7(C), and the withholdings of DHS, CBP, and ICE under FOIA Exemption 7(E).[1]  *Id.* at 1-2.

---

[1] Plaintiff has stated that it also intends to contest the withholdings of DHS under Exemption 3, the withholdings of ICE under Exemption 7(A), and the withholdings of OIG under Exemption 7(E).  15th JSR at 1-2.  DHS has not made any withholdings under Exemption 3, however.  Decl. of James V.M.L. Holzer (Jan. 31, 2020), Ex. B hereto, ¶ 17.  Neither has ICE made any withholdings under Exemption 7(A), Decl. of Toni Fuentes (Jan. 16, 2020), Ex. F hereto, ¶ 19, prior statements to the contrary notwithstanding.  *See* Letter Fuentes to Fallow (Oct. 4, 2019), Ex. H hereto, at 2.  Exemption 7(A) "exempts from disclosure 'records or information compiled for law enforcement purposes . . . to the extent that [their] production . . . could reasonably be expected to interfere with enforcement proceedings.'"  *Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (quoting 5 U.S.C. § 552(b)(7)(A)).  ICE would not have had any reason to make any withholdings under Exemption 7(A) because its obligation to produce records responsive to Item 2(b) of plaintiff's request was limited pursuant to agreement of the parties to the production of records that were part of a "closed case."  *See* email Glass to Wilkens (Nov. 21, 2017) in email chain among Glass & Wilkens (Nov. 21-Dec. 7, 2017) (Ex. I hereto).

The withholdings of OIG under Exemption 7(E) "were requested by the DHS Privacy Office in its referral to [OIG]."  Decl. of Drew Lavine (Jan. 13, 2020), Ex. G hereto, ¶ 9.  Those withholdings are therefore treated by this motion as withholdings of DHS.

Plaintiff did not identify the withholdings of CBP under Exemption 3 or the withholdings of TSA under Exemption 6 as withholdings it "intend[ed] to contest on summary judgment."  *See* 15th JSR at 1.  Those withholdings are not addressed for that reason in this memorandum.  Defendants will address in their next memorandum any withholdings of any agency that plaintiff has not identified heretofore as withholdings it intends to contest.  *See* Minute Order (Dec. 2, 2019), ECF No. 45 (establishing a schedule for the filing of defendants' "reply to the plaintiff's opposition/cross motion").

"'An agency withholding responsive [material] from a FOIA release bears the burden of proving the applicability of claimed exemptions,' typically through affidavit or declaration." *DiBacco v. Dep't of the Army*, 926 F.3d 827, 834 (D.C. Cir. 2019) (quoting *DiBacco v. U.S. Army*, 795 F.3d 178, 195 (D.C. Cir. 2015)).  "'Summary judgment is warranted based on the agency's affidavit'" if the affidavit "'describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *Id.* (quoting *DiBacco*, 795 F.3d at 196).

CBP, ICE, TSA, and OIG are components of DHS, 6 U.S.C. § 113(a) (1) (C), (G) & (b); 49 U.S.C. § 114(a), but each of them handles FOIA requests separately from each other and separately from DHS.  *See* 6 C.F.R. Pt. 5, Subpt. A, App. I.  Separate declarations of DHS, CBP, ICE, TSA, and OIG are therefore submitted in support of this motion.  Those declarations and the attachments and exhibits to the declaration show that the contested withholdings of DHS, CBP, ICE, TSA, and OIG under FOIA Exemptions 3, 5, 6 and 7(C), and 7(E) are proper in all respects.  Defendants' motion for summary judgment should therefore be granted and plaintiff's proposed cross motion for summary judgment should be denied.[2]

## FACTUAL BACKGROUND

Plaintiff, a New York not-for-profit corporation, submitted identical versions of the same FOIA request to DHS and ICE on March 15, 2017, and to CBP on March 22, 2017.  Am. Compl. (Apr. 19, 2017), ECF No. 10, ¶ 15, 17-18.  Plaintiff's request sought seven categories of records

---

[2] Certain highlighted text appears in the *Vaughn* index attached as Exhibit C to ICE's declaration.  The highlighting is intentional.  ICE's *Vaughn* index supplants a sample *Vaughn* index submitted by ICE to plaintiff with plaintiff's approval by email dated September 20, 2018.  *See* 6th JSR (May 21, 2018), ECF No. 29, at 7; 9th JSR (Oct. 9, 2018), ECF No. 32, at 3.  ICE hoped that the sample *Vaughn* index would help it "secur[e] its early dismissal from this action," 6th JSR at 6, but plaintiff never responded to the sample index.

allegedly concerning "suspicionless searches of individuals' electronic devices at the nation's

borders."[3]  *Id.* ¶ 2.

Seeking to enforce its request, plaintiff commenced this action on March 27, 2017, and

filed an amended complaint on April 19, 2017.  Defendants filed an answer to the amended

complaint on May 3, 2017, and began making efforts at or about that that time to comply with

---

[3] The seven categories of records the production of which was sought by plaintiff's request were the following:

1.  Any document containing statistical information concerning the search, detention, retention, or sharing of electronic devices or information of individuals at the border (or functional equivalent of the border) since FY2012 including, but not limited to, documents reflecting (a) the number of travelers whose electronic devices or information were searched, detained, retained, or shared; (b) the number or portion of those travelers who are U.S. citizens; (c) the number or portion of those travelers who are lawful permanent residents or green card holders; (d) the number or portion of those travelers by country of origin; (e) the number or portion of those travelers by gender, race, ethnicity, nationality, and/or country of birth; (f) the number or portion of those travelers by port of entry; and (g) the number or portion of those travelers by watchlist, lookout and/or other selectee status.

2.  Documents relating to each instance since FY2012 in which CBP or ICE searched, detained, retained, or shared an electronic device or the information accessible on it, including, but not limited to: (a) a list of the TECS data field categories used to record and track each electronic device search conducted by CBP or ICE; and (b) all information contained in the TECS system used to record and track electronic device searches, detentions, retentions, and/or sharings.

3.  Revisions of or documents supplementing or superseding: (a) CBP Directive No. 3340-049, *Border Search of Electronic Devices Containing Information* (Aug. 20, 2009); or (b) ICE Directive No. 7-6.1, *Border Searches of Electronic Devices* (Aug. 18, 2009).

4.  The following documents relating to any review of CBP's or ICE's polices or practices concerning electronic device searches: (a) any audits, impact assessments, or other reviews of CBP's or ICE's policies or practices concerning electronic device searches, including any such reports by the Office for Civil Rights and Civil Liberties, DHS's OIG, and CBP's Office of Internal Affairs, Management Inspection Division; (b) any policies, practices, procedures, and/or training materials adopted as a result of any audits, impact assessments, or other reviews of how CBP and ICE conduct electronic device searches; and (c) any documents reflecting annual or semi-annual examinations by CBP or ICE of electronic device searches by port of entry, as adopted in response to the 2011 Impact Assessment.

5.  Documents, including tear sheets and TRIP records, containing or relating to complaints filed by individuals or organizations about CBP's and/or ICE's search, review, retention or sharing of the information on travelers' electronic devices.

6.  Documents reflecting policies, practices, or procedures concerning how CBP officers handle "privileged or other sensitive material," including "work-related information carried by journalists," as referenced in § 5.2 of the CBP Directive.

7.  Documents reflecting policies, practices, and procedures concerning CBPs anti-discrimination policy as applied to discretionary device searches.

Letter Fallow to Holzer (Mar. 15, 2017), ECF No. 10-1, at 4-6 (formatting modified).

the request.  *See* 1st JSR (June 6, 2017), ECF No. 21, at 2-3, 5-8.  The request as written would

have required all three defendants to process huge numbers of records, however.  *See* 2d JSR

(Aug. 14, 2017), ECF No. 23, at 2-3, 5-6.  Defendants therefore initiated discussions with

plaintiff on or about May 3, 2017, to try to come up with methodologies for "provid[ing] plaintiff

with responsive records without subjecting DHS, ICE, and CBP to undue burden."  *See* 1st JSR

at 1, 3-4; 2d JSR at 3.

    The parties reached a series of agreements during the next year that specified the searches

that defendants would be required to conduct or the actions in lieu of searches that defendants

would be required to take in order to be deemed in compliance with the individual items of

plaintiff's request.[4]  *E.g.*, 3d JSR (Oct. 16, 2017), ECF No. 24 at 4; 7th JSR (June 29, 2018),

ECF No. 30, at 6-7.  Defendants conducted the prescribed searches and took the prescribed

actions; processed for release the responsive records that the searches produced; and released to

plaintiff all portions of the responsive records not covered by one or more FOIA exemptions.

*E.g.*, 6th JSR (May 21, 2018), ECF No. 29, at 1-4; 9th JSR (Oct. 9, 2018), ECF No. 32, at 2-4.

Defendants' production of records ended on October 4, 2019.  *See* 15th JSR at 1.  The production

ultimately included certain records, discussed in this memorandum, from which TSA and OIG

had made withholdings.  13th JSR (July 22, 2019), ECF No. 41, at 1; 14th JSR (Sept. 20, 2019),

ECF No. 43, at 5.  Certain material, previously withheld by TSA, has now been released, s*ee*

Decl. of Terri Miller (Dec. 9, 2019) (Miller Decl.), Ex. A hereto, ¶ 14, and DHS has now

determined that all of the material previously withheld by DHS under Exemption 6 ought to be

---

[4] One of the agreements required CBP to "prepare and provide plaintiff with a spreadsheet of the information
contained in the non-exempt data fields in all of the incident-level reports dealing with border searches of electronic
devices created since the beginning of 2012" in lieu of searching for and processing additional records responsive to
Item 2(b) of plaintiff's request.  7th JSR, ECF No. 30 (June 29, 2018), at 6.

withheld under Exemption 7(C) as well.[5]  *See, e.g.*, Decl. of James V.M.L. Holzer (Jan. 31, 2020) (Holzer Decl.), Ex. B hereto, Ex. A to Decl. at 7.

## GLOSSARY

The following terms are used in this memorandum:

The Office for Civil Rights and Civil Liberties (CRCL) is the "component of [DHS] responsible for 'review[ing] and assess[ing] information concerning abuses of civil rights, civil liberties, and profiling on the basis of race, ethnicity, or religion by employees and officials of' [DHS]."  *Adelante Ala. Worker Ctr. v. DHS*, 376 F. Supp. 3d 345, 351 (S.D.N.Y. 2019) (quoting 6 U.S.C. 345(a)(1)).

The U.S. Coast Guard (USCG) is a component of DHS.  6 U.S.C. § 113(c).

The ENFORCE Alien Removal Module (EARM) is "a web based applications that supports ICE's processing and removal of aliens from the United States."  *Rojas-Vega v. Dep't of Justice,* 302 F. Supp. 3d 300, 307 (D.D.C. 2018).

TECS is "an overarching law enforcement information collection, analysis, and sharing environment that securely links telecommunications devices and personal computers to a central system and database."  Decl. of Patrick A. Howard (Jan. 30, 2020) (Howard Decl.), Ex. C hereto, ¶ 28.  TECS is "principally owned and managed by CBP" and is "CBP's principal law enforcement and anti-terrorism data base system."  *Id.*

Homeland Security Investigations (HSI) is an "investigative arm of [DHS]."  *ICE, Homeland Security Investigations*, https://www.ice.gov/hsi (accessed Jan. 5, 2020), Ex. D hereto, at 1.  "HSI has broad legal authority to enforce a diverse array of federal statutes" and "uses this authority to investigate all types of cross-border criminal activity."  *Id.*

---

[5] A table of exhibits appears at p.v, *supra.*

ICE investigatory reports are known as Reports of Investigation (ROIs).  *See, e.g.*, 2d JSR at 5.

## ARGUMENT

The contested withholdings of DHS, CBP, ICE, TSA, and OIG under Exemptions 3, 5, 6 and 7(C), and 7(E) are discussed on an exemption-by-exemption basis below.  All of those withholdings are proper.

## I.  THE WITHHOLDINGS OF TSA UNDER EXEMPTION 3 ARE PROPER.

"Exemption 3 provides that an agency may withhold information 'specifically exempted by statute'" when "the statute in question 'requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or . . . establishes particular criteria for withholding or refers to particular types of matters to be withheld.'"  *DiBacco*, 926 F.3d at 834 (quoting 5 U.S.C. § 552(b)(3)).  Exemption 3 "thereby incorporat[es] the protections of other shield statutes."  *ACLU v. Dep't of Def.*, 628 F.3d 612, 617-18 (D.C. Cir. 2011).  "To invoke Exemption 3, the government 'need only show . . . that the withheld material falls within' a statute meeting the exemption's conditions."  *DiBacco*, 926 F.3d at 835 (quoting *Larson v. Dep't of State*, 565 F.3d 856, 865 (D.C. Cir. 2009)).  Exemption 3 thus "'differs from other FOIA exemptions' because 'its applicability depends less on the detailed factual contents of specific documents'" than other exemptions.  *Id.* (quoting *Morley v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007)).

"49 U.S.C. § 114(r) creates . . . a specific, statutory exemption to disclosure" of the type contemplated by Exemption 3.  *Sai v. TSA*, 315 F. Supp. 3d 218, 250 (D.D.C. 2018).  Section 114(r) provides, "notwithstanding FOIA," that TSA "'shall prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security under authority of

[certain enumerated statutes] if [TSA] decides that disclosing the information would . . . be detrimental to the security of transportation.'" *Id.* "The courts that have examined § 114(r) in the context of FOIA have unanimously concluded that the statute qualifies as a statute prohibiting disclosure under . . . [E]xemption 3." *Davis v. DHS*, 2013 WL 3288418, at *11 (E.D.N.Y. June 27, 2013) (collecting cases).

The "implementing regulations" for § 114(r) "specify a number of categories of information and records constituting [Sensitive Security Information (SSI)]." *Sai*, 315 F. Supp. 3d at 251. One of those categories consists of "[i]nformation and sources of information used by a passenger or property screening program or system, including an automated screening system." 49 C.F.R. § 1520.5(b)(9)(ii). "Those permitted access to SSI" are prohibited by the implementing regulations "from disclosing 'or otherwise provid[ing] access to[] SSI' to anyone other than authorized recipients with a 'need to know.'" *Sai*, 315 F. Supp. 3d at 251 (quoting 49 C.F.R. § 1520.9(a)(2)). "[T]he federal courts of appeals have exclusive jurisdiction to review the orders of certain federal agencies, including [TSA]." *Mokdad v. Lynch*, 804 F.3d 807, 809 (6th Cir. 2015). "Judicial review of TSA's determination that particular material is nondisclosable [SSI]" thus "is available "exclusively in federal circuit courts." *Elec. Privacy Info. Ctr. v. DHS*, 928 F. Supp. 2d 139, 146 (D.D.C. 2013).

TSA has relied in this action on Exemption 3, 49 U.S.C. § 114(r), and the implementing regulations to withhold certain information from certain "Redress Case Forms." Decl. of Douglas E. Blair (Dec. 19, 2019) (Blair Decl.), Ex. E hereto, ¶¶ 8, 10; *see* Miller Decl., Ex. A. This information consists of "information that would reveal an individual's status vis-à-vis the No Fly List and Selectee List (i.e., whether the individual is on or off either list)." Blair Decl. ¶ 10. This information is SSI because it is information "'used by a passenger or property

screening program or system, including an automated screening system.'" *Id.* (quoting 49 C.F.R. § 1520.5(b)(9)(ii)). This information is therefore information that cannot be disclosed to anyone other than an "authorized recipient[] with 'a need to know.'" *See Sai*, 315 F. Supp. 3d at 251 (quoting 49 C.F.R. § 1520.9(a)(2)). Disclosure of this information would be "detrimental to the security of transportation," Blair Decl. ¶ 9, even assuming, *arguendo*, that its disclosure were permissible, because "information available to anyone [under FOIA] is information available to everyone." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989). Disclosure of the information thus "could enable terrorists to evade or circumvent transportation security screening procedures . . . [and] enable those planning an attack on an aircraft to identify operatives who have or have not previously been identified as a threat." Blair Decl. ¶ 11.

Numerous courts have upheld the reliance of TSA on Exemption 3, 49 U.S.C. § 114(r), and the implementing regulations to withhold information revealing whether an individual is on a watch list or to provide *Glomar* responses with respect to such information. *E.g.*, *Eleiwa v. TSA*, 2016 WL 7497584, at *6-7 (W.D. Tenn. July 19, 2016); *Davis*, 2013 WL 3288418, at *11; *Skurow v. DHS*, 892 F. Supp. 2d 319, 331-32 (D.D.C. 2012). The reliance of TSA on Exemption 3, 49 U.S.C. § 114(r), and the implementing regulations to withhold such information likewise should be upheld here.

## II.     THE WITHHOLDINGS OF DHS, CBP, AND ICE UNDER EXEMPTION 5 ARE PROPER.

"Exemption 5 protects from disclosure 'inter-agency or inter-agency memorandums or letters that would not be available by law to a party other than agency in litigation with the agency.'" *Dep't of the Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8 (2001) (quoting 5 U.S.C. § 552(b)(5)). Exemption 5 provides that protection by "'incorporat[ing],'" subject to certain limitations, "'the traditional privileges that the Government could assert in civil

litigation against a private litigant'" and "exclud[ing] . . . from FOIA's reach" material covered

by those privileges.  *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting *Baker &*

*Hosteler LLP v. Dep't of Commerce*, 473 F.3d 312, 321 (D.C. Cir. 2006)); *see Crisman v. Dep't*

*of Justice*, 2019 WL 1330587, at *2 (D.D.C. Mar. 25, 2019) (noting the amendment of

Exemption 5 to provide that "'the deliberative process privilege shall [no longer] apply to

records created 25 years or more before the date on which the records were requested'").

Three of the "'traditional privileges'" that Exemption 5 "'incorporates'" are the

deliberative process privilege, the attorney-client privilege, and the work product privilege.

*Loving*, 550 F.3d at 37 (quoting *Baker & Hostetler*, 473 F.3d at 321).  "The deliberative process

privilege rests on the obvious realization that officials will not communicate candidly among

themselves if each remark is a potential item of discovery and front page news."  *Klamath Water*

*Users*, 532 U.S. at 8-9.  "For the deliberative process privilege to apply, the [withheld] material

must be 'predecisional' and 'deliberative.'"  *Loving*, 550 F.3d at 38 (quoting *In re Sealed Case*,

121 F.3d 729, 737 (D.C. Cir. 1997)).  Material is "predecisional" if it was "'generated before the

adoption of an agency policy'" and "deliberative" if it "'reflect[s] the give-and-take of the

consultative process.'"  *Assassination Archives & Research Ctr. v. CIA*, 781 F. App'x 11, 13

(D.C. Cir. 2019) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C.

Cir. 1980)).  Drafts of records are covered by the deliberative process privilege "when they

reflect the deliberative back-and-forth of 'the ideas and theories which go into the making of the

law and not the law itself."  *Ctr. for Biol. Diversity v. EPA*, 369 F. Supp. 3d 1, 25 (D.D.C. 2019)

(quoting *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982)).

"The attorney-client privilege protects confidential communications made between

clients and their attorneys when the communications are for the purpose of securing legal advice

or services." *In re Lindsey*, 158 F.3d 1263, 1267 (D.C. Cir. 1998).  The privilege is "'founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure.'"  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (quoting *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888)). "[The] purpose [of the privilege] is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Id.*

"The work product privilege protects written materials lawyers prepare in anticipation of litigation."  *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998).  "[C]odifie[d]" in Fed. R. Civ. P. 26(b)(3), *Upjohn*, 449 U.S. at 398, the privilege "protects the adversary process" by "ensuring that lawyers can prepare for litigation without fear that opponents may obtain their private notes, memoranda, correspondence, and other written materials."  *Sealed Case*, 146 F.3d at 884.

CBP has relied on Exemption 5 and the deliberative process privilege to withhold three categories of material.  Howard Decl. ¶ 10 & Att. at 1, 23, 30.  The first category consists of information withheld from "routing forms used to track the internal review by agency personnel of proposed agency policies, memoranda, and correspondence."  *Id.*, Att. A at 1.  This information includes "information regarding which offices or personnel were or were not consulted, markings denoting clearance or objection to a draft proposal, and internal categorization of the draft proposal."  *Id.*  The information is covered by the deliberative process privilege because its disclosure would reveal "deliberative, pre-decisional information regarding the agency decision-making process."  *Id.*

10

The second category of material that CBP has withheld under Exemption 5 consists of information withheld from "[r]ecords obtained, compiled, or created by [CRCL] in relation to their review of CBP law enforcement activities, including activities relating to border searches of electronic devices" and also of "[n]on-finals drafts of agency policies, memoranda, communications, or other records."  Howard Decl., Att. at 23-24.  This material includes "descriptions of the status of an ongoing review of agency activities, questions considered in conducting a review of agency activities, descriptions of materials deemed relevant to evaluating agency activities, and communications among agency leadership and policy advisers containing recommendations, evaluations or comment regarding proposed agency actions."  *Id.*, Att. at 23. The material is covered by the deliberative process privilege because its disclosure would reveal "the pre-decisional status of an internal review or investigation and the methods utilized to conduct such review or investigation" and otherwise would reveal "deliberate, pre-decisional information regarding the agency decision-making process."  *Id.*, Att. at 23; *see id.*, Att. at 24.

The third category of material that CBP has withheld under Exemption 5 consists of a "[d]raft of a technical user guide for the creation and management of records documenting electronic device searches."  Howard Decl., Att. at 30.  This material is covered by the deliberative process privilege because its disclosure which would reveal "deliberative, pre-decisional information regarding the agency decision-making process."  *Id.*

ICE has relied on Exemption 5, the deliberative process privilege, the attorney-client privilege, and the work product privileges to withhold, in full, certain "documents titled 'Computer Border Search Discussion Topics.'"  Decl. of Toni Fuentes (Jan. 16, 2020) (Fuentes Decl.), Ex. F hereto, ¶ 26; *see id.* ¶¶ 28-30.  These documents "were prepared by DHS and its components' legal staff to facilitate discussion between DHS and [the] Department of Justice

11

(DOJ) in developing litigation strategies for ongoing and anticipated litigations pertaining to DHS' border search authority." *Id.* ¶ 26.  These documents are covered by the deliberative process privilege because they "contain[] discussions between ICE, USCG, DHS, and CBP conversing about DHS's border search authority and how to respond to DOJ's questions." *Id.* ¶ 27.  These documents are also covered by the attorney-client privilege because they contain "confidential communications between attorneys and their client(s) related to a legal matter for which the client sought professional legal advice . . .  here, responses to questions posed by DOJ to DHS and its components (including ICE, CBP, DHS, and USCG) in regard to DHS' border search authorities." *Id.* ¶ 28.  These documents are covered further by the work product privilege because they were "created by agency counsel in anticipation of and in preparation for ongoing and future litigation, specifically, challenges raised to DHS's border search authority" and "contain questions and responses prepared for the specific purpose of informing the development of the agencies' litigation strategy." *Id.* ¶ 30.

DHS has relied on Exemption 5, the deliberative process privilege, the attorney-client privilege, and the work product privilege to make withholdings from approximately 30 records or groups of records.  Holzer Decl., Ex. A at 7-24, 29-32.  One of the groups of records from which DHS has made withholdings consists of "internal email communications and draft spreadsheets . . . generated during discussions between CRCL and CBP regarding the possibility of developing an agreed upon methodology for sampling data relative to border searches of electronic devices to determine whether civil rights or civil liberties concerns might exist." *Id.*, Ex. A at 7.  These communications are covered by the deliberative process privilege because they were "antecedent to any final decision on how best to sample the data and a determination

that civil rights/civil liberties concerns might indeed exist" and "reflect the give-and-take

between CRCL and CBP that occurred during the deliberative process." *Id.*, Ex. A at 7-8.

A second group of records from which DHS has made withholdings under Exemption 5

consists of "email communications and drafts generated by CRCL personnel during the process

of preparing" a CRCL publication, *Civil Rights/Civil Liberties Impact Assessment: Border

Searches of Electronic Devices.* Holzer Decl., Ex. A at 9. These communications are covered

by the deliberative process privilege because they predate the release to the public of the final

version of the above assessment; were "prepared by CRCL staff and circulated within DHS";

"reflect the give-and-take of the editorial process and contain the thoughts, recommendations,

proposed courses of action, and opinions that CRCL employees believed the CRCL Officer

should take into consideration about legal and policy matters concerning border searches of

electronic devices"; and "reflect the exercise in judgment of CRCL personnel as to the relevance

and importance of those facts, issues, and advice that should be included or excised from the

final assessment." *Id.*

A third group of records from which DHS has made withholdings under Exemption 5

consists of

> internal email communications between attorneys with the DHS Office of the
> General Counsel (OGC) and the CBP Office of Chief Counsel (OCC) . . .
> generated during the deliberative and consultative process of drafting a
> memorandum containing recommendations and legal advice to the DHS Secretary
> on the topic of border searches of electronic devices.

Holzer Decl., Ex. A at 8. These communications are covered by the deliberative process

privilege because "the communications were antecedent to the drafting of a final memorandum

or final agency decision" and "contain the opinions, conclusions, and recommendations of

agency personnel subordinate to the Secretary and reflect the give-and-take that occurred

between the counselors as they discussed and weighed the merits of various positions." *Id.*

These communications are also covered by the attorney-client privilege because they "contain

information obtained by agency counsel from their clients while securing legal advice or

services." *Id.* These communications are covered further by the work product privilege because

they were "created not only with the intention of providing legal advice to the Secretary, but they

were created by agency counsel in anticipation of and in preparation for ongoing and future

litigation involving the search of electronic devices at the border." *Id.* at 8-9.

The other withholdings of DHS under Exemption 5 are proper for reasons similar to the

reasons set forth above. *See* Holzer Decl., Ex. A at 9-24, 29-32. All of those withholdings

should therefore be upheld.

## III.   THE WITHHOLDINGS OF DHS, CBP, ICE, AND OIG UNDER EXEMPTIONS 6 AND 7(C) ARE PROPER.

All of the withholdings of DHS, CBP, ICE, and OIG under Exemption 6 are also

withholdings under Exemption 7(C). Howard Decl. ¶ 24; Fuentes Decl. ¶ 34; Decl. of Drew

Lavine (Jan. 13, 2020) (Lavine Decl.), Ex. G hereto, ¶ 7; *see, e.g.*, Holzer Decl. Ex. A at 7.

Exemptions 6 and 7(C) "both . . . protect against unwarranted invasions of personal privacy,"

*FBI v. Abramson*, 456 U.S. 615, 618 (1982), but "Exemption 6 . . . provides that FOIA's

disclosure requirements do not apply to 'personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal privacy,'" *Dep't*

*of Def. v. Fed. Labor Rel. Auth.*, 510 U.S. 487, 494-95 (1994) (quoting 5 U.S.C. § 552(b)(6)),

while "Exemption 7(C) excuses from disclosure 'records or information compiled for law

enforcement purposes' if their production 'could reasonably be expected to constitute an

unwarranted invasion of personal privacy.'" *NARA v. Favish*, 541 U.S. 157, 160 (2004) (quoting

5 U.S.C. § 552(b)(7)(C)).

"[C]ourts 'focus . . . on Exemption 7(C)'" where, as here, "information is claimed to be exempt under both provisions," because Exemption 7(C) "'provides broader privacy protection than Exemption 6 and thus establishes a lower bar for withholding material.'"  *Citizens for Resp. & Ethics in Wash. (CREW) v. Dep't of Justice,* 854 F.3d 675, 681 (D.C. Cir. 2017) (quoting *CREW v. Dep't of Justice*, 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014)).  This memorandum focuses accordingly on the withholdings of DHS, CBP, ICE, and OIG under Exemption 7(C), but does so without prejudice to the withholdings of DHS, CBP, ICE, and OIG under Exemption 6.

Judicial review of withholdings under Exemption 7(C), or withholdings under any of the other subdivisions of Exemption 7, "requires a two-part inquiry."  *Abramson*, 456 U.S. at 622. "First, a requested document must be shown to have been an investigatory record 'compiled for law enforcement purposes.'"  *Id.*  "If so, the agency must demonstrate that release of the material would have one of the six results specified in the Act."  *Id.*  The withholdings of DHS, CBP, ICE, and OIG under Exemption 7(C) withstand both parts of this "two-part inquiry," *see id.*, because the withholdings are withholdings from records compiled for law enforcement purposes and because disclosure of the withholdings could reasonably be expected to constitute an unwarranted invasion of personal privacy.

A.  THE WITHHOLDINGS OF DHS, CBP, ICE, AND OIG UNDER EXEMPTION 7(C) ARE WITHHOLDINGS FROM INVESTIGATORY RECORDS COMPILED FOR LAW ENFORCEMENT PURPOSES.

An agency must establish "'a rational nexus between [an] investigation and one of [its] law enforcement duties,' and 'a connection between an individual or incident and a . . . violation of federal law'" for its records "[t]o qualify as law-enforcement records."  *Bartko v. Dep't of Justice*, 898 F.3d 51, 64 (D.C. Cir. 2018) (quoting *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003)) (formatting modified).  "[T]he withholding agency need not

have statutory law enforcement *functions*," however, because "[t]he term 'law enforcement' in Exemption 7 refers to the act of enforcing the law, both civil and criminal." *Pub. Emps. for Envtl. Resp. (PEER) v. U.S. Section*, 740 F.3d 195, 203 (D.C. Cir. 2014) (Kavanaugh, J.). A record therefore qualifies as a law-enforcement record for purposes of Exemption 7, even if the record was "collected for routinized oversight," *Humane Soc'y Int'l v. Fish & Wildlife Serv.*, 394 F. Supp. 3d 67, 75 (D.D.C. 2019), so long as the record was "created, gathered, or used by an agency for law enforcement purposes at some time before the agency invoke[d] the exemption." *PEER*, 740 F.3d at 203.

Plaintiff has stated that it "[does] not intend to argue that the records from which withholdings under Exemption 7 [have] been made 'were not compiled for law enforcement purposes' except in the case of 'CRCL documents.'" 15th JSR at 2. The CRCL records from which withholdings under Exemption 7(C) have been made in this action consist of records "created and used . . . by CRCL to investigate and resolve civil rights and civil liberties complaints filed by the public regarding [DHS] policies or activities, or actions taken by [DHS] personnel." Holzer Decl. ¶ 41. Those records are records "created, gathered, or used by [CRCL] for law enforcement purposes," *see PEER*, 740 F.3d at 203, because "investigating and resolving civil rights and civil liberties complaints filed by the public" is one of the tasks for which CRCL is responsible. Holzer Decl. ¶ 10(c). The records thus qualify as records from which withholdings under Exemption 7(C) may be made.[6]

---

[6] "[T]he protection of Exemption 6," unlike that of Exemption 7(C), "is not determined merely by the nature of the file in which the requested information is contained." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 601 (1982). Exemptions 6 and 7(C) otherwise function similarly. *See Dep't of Def.*, 510 U.S. at 495-97 (applying to withholdings under Exemption 6 a balancing process similar to that under Exemption 7(C)). All of the withholdings of DHS, CBP, ICE, and OIG under Exemption 7(C), including the withholdings from the CRCL records, are proper for the reasons set forth below. The same withholdings are proper under Exemption 6 for the same reasons.

**B.     DISCLOSURE OF THE WITHHOLDINGS OF DHS, CBP, ICE, AND OIG UNDER EXEMPTION 7(C) COULD REASONABLY BE EXPECTED TO CONSTITUTE AN UNWARRANTED INVASION OF PERSONAL PRIVACY.**

Determining whether the disclosure of material withheld under Exemption 7(C) could reasonably be expected to constitute an unwarranted invasion of personal privacy is a two-step process.  *See Favish*, 541 U.S. at 171.  The court must determine as a threshold matter whether anyone possesses a "personal privacy interest" in the withheld material.  *Id.* at 165.  The court then must "balance [any such] privacy interest against the public interest in disclosure."  *Id.* at 171.

All of the subjects of the withholdings of DHS, CBP, ICE, and OIG under Exemption 7(C) possess a personal privacy interest in nondisclosure of the withheld material.  That interest is not overcome by any public interest in disclosure.  The withholdings should therefore be upheld because their disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy.

**1.     All of the Subjects of the Withholdings of DHS, CBP, ICE, and OIG under Exemption 7(C) Possess a Personal Privacy Interest in Nondisclosure of the Withheld Material.**

Courts applying Exemption 7(C) have held that "'disclosure of the *identities* of private citizens mentioned in law enforcement files constitutes an unwarranted invasion of privacy.'" *CREW*, 746 F.3d at 1094 (quoting *Nation Magazine v. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995)).  Courts have also held that "government officials have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives."  *Baez v. Dep't of Justice*, 647 F.2d 1328, 1339 (D.C. Cir. 1980).

All of the subjects of the withholdings of DHS, CBP, ICE, and OIG under Exemption

7(C) possess a personal privacy interest in nondisclosure of the withheld material because all of

the subjects consist either of "'private citizens mentioned in law enforcement files,'" *see CREW*,

746 F.3d at 1094 (quoting *Nation Magazine*, 71 F.3d at 896), or "government officials." *See*

*Baez*, 647 F.2d at 1339.  Examples of the material withheld by DHS under Exemption 7(C) thus

include "the names, signatures, email and physical addresses, and facsimile and telephone

numbers of government employees and private citizens." Holzer Decl., Ex. A at 7.  The material

withheld by CBP under Exemption 7(C) consists in similar fashion of

> (1) personally identifiable information of government employees, including
> information that could identify CBP personnel involved in law enforcement
> functions; (2) information regarding the subjects of records; and (3) information
> regarding individuals mentioned in records (e.g., co-travelers or other individuals
> identified or mentioned by the subject of a record).

Howard Decl. ¶ 25.  The material withheld by ICE under Exemption 7(C) consists likewise of

"[personally identifiable information] of third parties, including aliens, family members of aliens,

witnesses, passenger names, potential witnesses, and attorneys, such as, signatures, and initials"

and "the names, phone numbers, e-mail addresses, addresses, initials, and signatures of Federal

law enforcement officers and other government employees and administrative personnel" but

does not include "the names of senior ICE leadership, and public facing employees, such as

Headquarters senior management officials."  Fuentes Decl. ¶¶ 34, 39.  The material withheld by

OIG under Exemption 7(C) consists in the same way of "the name and title of an investigative

subject, the names of private persons, the names of lower-level OIG investigators, the name of

investigative witnesses, and handwritten sworn statements of investigative witnesses.  Lavine

Decl. ¶ 7.

18

2.      **The Personal Privacy Interest in Nondisclosure Possessed by the Subjects of the Withholdings of DHS, CBP, ICE, and OIG under Exemption 7(C) Is Not Overcome by Any Public Interest in Disclosure.**

"'[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to.'" *CREW*, 746 F.3d at 1093 (quoting *Dep't of Def.*, 510 U.S. at 497). Disclosure of the withholdings of DHS, CBP, ICE, and OIG under Exemption 7(C) would do neither of these things. Disclosure, to the contrary, would do nothing more than reveal the identities of certain personnel who have conducted searches of individuals' electronic devices at the nation's borders; the identities of certain individuals whose electronic devices have been searched; and the identities of certain third parties associated with those individuals. *See, e.g.*, Holzer Decl., Ex. A at 7; *see also* Howard Decl. ¶ 25; Fuentes Decl. ¶ 34; Lavine Decl. ¶ 7. "'[T]he public interest in learning the names of . . . lower-echelon employees is small,'" however, *Sai*, 315 F. Supp. 3d at 262 (quoting *Elec. Privacy Info. Ctr. v. DHS*, 384 F. Supp. 2d 100, 117 (D.D.C. 2005)), and the courts have "adopted a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *Schrecker v. Dep't of Justice*, 349 F.3d 657, 661 (D.C Cir. 2003) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991)). No such evidence exists here.

Numerous courts have upheld withholdings under Exemption 7(C) similar to those that DHS, CBP, ICE, and OIG have made in this action. *E.g., Rojas-Vega*, 302 F. Supp. 3d at 310 (authorizing ICE to rely on Exemption 7(C) to withhold "the names of and identifying information about third parties appearing in the responsive EARM case summaries"); *Canning v.*

19

*Dep't of Justice*, 2017 WL 2438765, at \*9 (D.D.C. June 5, 2017) (authorizing CBP to rely on

Exemption 7(C) to withhold the "signature of a government employee"); *Etessami v. CBP*, 2017

WL 2869422, at \*3 (D.D.C. May 19, 2017) (authorizing CBP to rely on Exemption 7(C) to

withhold "names of government employees, the terminal identification numbers of TECS users

who have conducted searches on TECS, and identifying information of 'third party

individuals'"); *Parker v. ICE*, 238 F. Supp. 3d 89, 100 (D.D.C. 2017) (authorizing ICE to rely on

Exemption 7(C) to withhold "names, initials, signatures, and phone numbers of ICE employees

and third party individuals").  The withholdings of DHS, CBP, ICE, and OIG under Exemption

7(C) should be upheld here as well.

## IV.   THE WITHHOLDINGS OF DHS, CBP, AND ICE UNDER EXEMPTION 7(E) ARE PROPER.

Exemption 7(E) "cover[s] law enforcement records whose production 'would disclose

techniques and procedures for law enforcement investigations or prosecutions, or would disclose

guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably

be expected to risk circumvention of the law.'"  *Milner v. Dep't of the Navy*, 562 U.S. 562, 574

(2011) (quoting 5 U.S.C. § 552(b)(7)(E)).  "[The] requirement [of Exemption 7(E)] that

disclosure risk circumvention of the law 'sets a relatively low bar for the agency.'"  *PEER*, 740

F.3d at 205 (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)).  "To clear that

relatively low bar, an agency must demonstrate only that the release of [the withheld material]

might increase the risk 'that a law will be violated or that past violators will escape legal

consequences.'"  *Id.* (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).

Clearance of the "relatively low bar" is facilitated, moreover, by the fact that Exemption

7(E) has been held to "afford[] categorical protection . . . to material that would compromise law

enforcement by revealing information about investigatory techniques that are not widely known

to the general public." *Pinson v. Dep't of Justice*, 243 F. Supp. 3d 74, 80 (D.D.C. 2017).

Clearance of the "relatively low bar" is also facilitated by the fact that computer-related material

has been held by numerous courts to come within the purview of Exemption 7(E).  *E.g., Rojas-*

*Vega*, 302 F. Supp. 3d at 310 (upholding ICE's use of Exemption 7(E) to withhold "internal

URLs, case numbers, case categories, subject identification numbers, case identification

numbers, and internal identifying codes and departure statutes"); *Etessami*, 2017 WL 2869422,

at *3 (upholding CBP's use of Exemption 7(E) to withhold "computer screen transaction codes,

computer program transaction codes, computer function codes, and information that would

reveal the results of specific law enforcement database queries"); *Parker*, 238 F. Supp. 3d at 101

(upholding ICE's use of Exemption 7(E) to withhold "sensitive database and event codes,

identification numbers, law enforcement system URLs, internal website links, record

identification numbers, event numbers . . . status codes, internal agency codes, case numbers,

program codes, and system codes").

As with Exemption 7(C), judicial review of withholdings under Exemption 7(E) is "a

two-part inquiry."  *See Abramson*, 456 U.S. at 622.  The withholdings of DHS, CBP, and ICE

under Exemption 7(E) withstand that inquiry because the withholdings were made from

investigatory records compiled for law enforcement purposes and because disclosure of the

withholdings could reasonably be expected to risk circumvention of the law.

### A.     THE WITHHOLDINGS OF DHS, CBP, AND ICE UNDER EXEMPTION 7(E) WERE MADE FROM INVESTIGATORY RECORDS COMPILED FOR LAW ENFORCEMENT PURPOSES.

Plaintiff has stated, as noted above, that it "[does] not intend to argue that the records

from which withholdings under Exemption 7 [have] been made 'were not compiled for law

enforcement purposes' except in the case of 'CRCL documents.'"  15th JSR at 2.  As is the case

with the withholdings from CRCL records that have been made in this action under Exemption

7(C), the withholdings that have been made from such records under Exemption 7(E) have been

made from records "created and used . . . by CRCL to investigate and resolve civil rights and

civil liberties complaints filed by the public regarding [DHS] policies or activities, or actions

taken by [DHS] personnel."  Holzer Decl. ¶ 41.  Those records are investigatory records

compiled for law enforcement purposes for the reasons set forth above.

### B. DISCLOSURE OF THE WITHHOLDINGS OF DHS, CBP, AND ICE UNDER EXEMPTION 7(E) COULD REASONABLY BE EXPECTED TO RISK CIRCUMVENTION OF THE LAW.

The material that CBP has withheld under Exemption 7(E) falls into four categories.

Howard Decl. ¶ 33.  The first category consists of "information that would reveal the subjects of

specific law enforcement interest."  *Id.* ¶ 34.  This information appears in "TECS and other

records containing remarks and analysis specific to particular individuals," *id.*, and includes

"information regarding border inspections; the identification of law enforcement agencies and

officers involved, contact information, and respective roles; and actions to be taken by law

enforcement officers."  *Id.*  Disclosure of this information could reasonably be expected to risk

circumvention of the law because disclosure would place

> [certain] law enforcement techniques and strategies in the public domain, in the
> possession of the specific individuals whose records are at issue, and at the
> disposal of other similarly situated individuals; educating them as to the
> investigative techniques used and thereby assisting them to devise methods to
> evade detection and apprehension; and, ultimately, impairing the effectiveness of
> those law enforcement techniques.

*Id.*

The second category of material that CBP has withheld under Exemption 7(E) consists of

"information regarding specific law enforcement techniques and operational vulnerabilities."

Howard Decl. ¶ 35.  This information includes "information regarding why a particular law

enforcement action (including the border search of an electronic device) was undertaken in any specific case" and information "reveal[ing] certain interagency techniques through the integration or referencing of data belonging to third-party agencies or departments." *Id.* Disclosure of this information could reasonably be expected to risk circumvention of the law because disclosure would "threaten[] efforts to foster open communications across agencies and cohesive law enforcement and national security efforts" and "compromise the electronic records system, facilitate improper access to sensitive investigatory and other law enforcement records, impede effectiveness of law enforcement activities, and endanger agency investigative practices and techniques." *Id.*

The third category of material that CBP has withheld under Exemption 7(E) consists of information in TECS records that would reveal "in the aggregate . . . trends and/or specific law enforcement capabilities and techniques employed in particular operational locations, which can reveal the likelihood of CBP utilizing certain inspection techniques in specific operational locations." *See* Howard Decl. ¶ 36. This information includes remarks, "date stamps, locations where specific law enforcement actions took place, internal IP addresses, contact information and communication methods, instructions on handling inspections of travelers, and similar information that reveals the procedures and techniques used by law enforcement." *Id.* "[A] few factors used by CBP officers to conduct border inspections are in the public domain in court opinions or other contexts," *id.* ¶ 37, and "some . . . data may appear innocuous taken in isolation." *Id.* ¶ 36. Disclosure of this information could reasonably be expected, nonetheless, to risk circumvention of the law because "the TECS format itself reveals more about the techniques that CBP officers use to conduct border inspections and assess risk than the information that can

be gleaned from publically available information," *id.* ¶ 37, and because the information is

information that

> can place investigative activities in a precise context, pinpoint key players and
> events, identify critical tools and resources, and reveal the extent and shortfalls of
> law enforcement's knowledge of criminal or terrorist endeavors and/or
> immigration violations.  Moreover, such information creates a basis for
> comparison of the handling of different inspections, which could reveal the nature
> and extent of the government's law enforcement interest in particular situations.
> Because this information can be used to clarify or predict a CBP officer's
> behavior in specific circumstances, the risk of circumvention of enforcement
> efforts or harm to officers or informants is significant.

*Id.* ¶ 36.

The fourth category of material that CBP has withheld under Exemption 7(E) consists of

"computer codes and other information that can expose CBP computer systems to a risk of

unauthorized access or navigation."  Howard Decl. ¶ 38.  Disclosure of this material could

reasonably be expected to risk circumvention of the law because "[p]rotecting and maintaining

the integrity of CBP computer systems is imperative to CBP's ability to effectively and

efficiently meet its mission to prevent terrorists, their weapons, and other dangerous items from

entering the United States" and because disclosure could subject CBP's computer systems to the

"potential risk of threat or compromise."  *See id.*

The material that DHS has withheld under Exemption 7(E) falls into four categories.

Holzer Decl., Ex. A at 21-22, 36-37.  All of this material appears in records related to *Civil

Rights/Civil Liberties Impact Assessment: Border Searches of Electronic Devices*, the CRCL

publication referred to above, or in records documenting inspections and law enforcement

activities.  *See id.*, Ex. A at 20, 36.  The first category of material that DHS has withheld includes

>  unique record numbers/codes, descriptions of the nature of the law enforcement
> interest in an individual, descriptions of the particular inspection techniques
> utilized, identification of specialized law enforcement units and third-party
> agencies, descriptions of the circumstances in which CBP may coordinate

> inspections with specialized law enforcement units and third-party agencies, descriptions of pertinent information uncovered during the course of an inspection, criteria for utilizing particular inspection methods, information regarding law enforcement alerts or lookouts, information regarding available law enforcement capabilities or techniques, descriptions of the handling, maintenance and storage of law enforcement or national security information obtained from a border inspection, and descriptions of the law enforcement records consulted or created as part of certain inspections.

*Id.*, Ex. A at 21, 36. Disclosure of this material, "either standing alone or [when] combined with other available information," could reasonably be expected to risk circumvention of the law by "revealing non-public law enforcement techniques, capabilities or vulnerabilities, the circumstances in which such techniques, capabilities, or vulnerabilities may be encountered and/or the nature of the law enforcement interest in particular circumstances." *Id.*

The second category of material that DHS has withheld under Exemption 7(E) includes "port locations/codes, reason for search, and descriptions of the particular inspection techniques utilized." Holzer Decl., Ex. A at 21, 37. Disclosure of this material, "when aggregated," could reasonably be expected to risk circumvention of the law because disclosure could reveal

> circumstances or locations where certain inspection techniques or types of investigations are more common or where certain vulnerabilities exist, allowing potential adversaries to deduce the nature of CBP's law enforcement interest in certain inspections, employ countermeasures to conceal harmful or illicit material, and/or target locations where they may face a decreased risk of detection (a practice known as "port shopping").

*Id.* at 21, 36-37.

The third category of material that DHS has withheld under Exemption 7(E) includes "unique record numbers, computer systems codes/commands, network addresses and URLs." Holzer Decl., Ex. A at 22, 37. Disclosure of this material, "either standing alone or when combined with other information," could reasonably be expected to risk circumvention of the

law because disclosure could "enabl[e] access to and/or manipulation of law enforcement

databases and information."  *Id.*

The fourth category of material that DHS has withheld under Exemption 7(E) consists of

"subject-specific information" that includes

> reason for search, the type of search, whether the individual was notified of the
> search, the reason why the individual was or was not notified, information
> regarding the nature of the law enforcement interest in a particular inspection,
> status of the inspection or investigation, information supplied by other
> government agencies, information regarding law enforcement alerts and lookouts,
> and results of the search.

Holzer Decl., Ex. A at 22, 37.  Disclosure of this material could reasonably be expected to risk

circumvention of the law because disclosure could "form[] a basis for comparison for the

handling of different inspections, and/or . . . reveal[] the nature of the law enforcement interest in

particular individual(s)."  *Id.*

The material that ICE has withheld under Exemption 7(E) falls into three categories.

Fuentes Decl. ¶¶ 41-43, 45.  The first category consists of

> sections of internal HSI handbooks, including, the sections of "Search and Seizure
> Handbook" headings titled: "Administrative Searches," "Functional Equivalent of
> the Border," and "Extended Border"  . . . .  sections of the "Child Exploitation
> Handbook" headings titled: "Search Warrant," "Title III Court Order,"
> "Investigative Protocols and Precautions Regarding Wireless Networks,"
> "Guidelines for Searching and Seizing Digital Devices," and "Judicial
> Responsibility"  . . . .  [and] sections of the "National Security Investigation
> Handbook" headings titled: "FISA Application in Lone Wolf Situations."

*Id.* ¶¶ 41-42.  The material in this category "describe[s] type[s] of allowable administrative

searches and when the agents are permitted to conduct searches; [contains] descriptions of type

of circumstances for border nexus to be qualified for equivalent of a border; and [describes]

situations when border searches [may be] conducted away from the actual border" and

"contain[s] information relating to techniques, protocols and guidelines the Special Agents are

required to follow in searching for electronic communications." *Id.*; *see id.* ¶ 42 (similarly).

Disclosure of this material could reasonably be expected to risk circumvention of the law

because disclosure could enable lawbreakers "to take proactive steps to counter operational and

investigative actions taken by ICE during enforcement operations." *Id.* ¶ 42.

The second category of material that ICE has withheld under Exemption 7(E) consists of

"HSI's Investigative Case Management System (ICM) case numbers, ROIs, event codes,

identification numbers, law enforcement system URLs, TECS ID numbers, ICE case numbers,

ROI numbers, TECS ID numbers, software names, sensitive CBP form numbers, and other law

enforcement agencies' case numbers such as the FBI." Fuentes Decl. ¶ 43.  Disclosure of this

material could reasonably be expected to risk circumvention of the law because disclosure

> could reasonably be expected to allow a person to breach into sensitive law
> enforcement systems.  This information, used for the purpose of indexing, storing,
> locating, and retrieving law enforcement sensitive information is not commonly
> known and could also be used to decipher the meaning of codes, navigate within
> the law enforcement system, and compromise the integrity of the data either by
> allowing for the deletion or alteration of information.  This potential to
> circumvent detection and manipulate law enforcement sensitive information could
> place law enforcement officers and the public at risk.  In addition, release of this
> information could reveal techniques and/or procedures for law enforcement
> investigations or prosecutions and/or disclose guidelines for law enforcement
> investigations or prosecutions.  Disclosure of these techniques and guidelines
> could permit those seeking to violate or circumvent the law to take proactive steps
> to counter operational and investigative actions taken by ICE during enforcement
> operations.

*Id.* ¶ 44.

> The third category of material that ICE has withheld under Exemption 7(E) consists of

> law enforcement sensitive database and computer program names/techniques used
> to search electronic devices such as cameras, computers, cell phones, and any
> other electronic devices capable of storing data, techniques/software programs
> used to extract data from these electronic devices, names of companies under
> investigation, request[s] for assistance from foreign government in investigations,
> techniques used to provide that assistance/information, common techniques used
> by smugglers, and methods used by the agents in identifying such techniques.

Fuentes Decl. ¶ 45.  Disclosure of this material could reasonably be expected to risk

circumvention of the law because "[m]ethods used by agents in utilizing these computer software

programs to extract information from these devices and providing investigative assistance to

foreign government[s], requires a level of consideration that constitute[s] law enforcement

techniques, procedures, and guidelines" and because

> [d]isclosure of this information could permit people seeking to violate or
> circumvent the law to take proactive steps to counter operational and investigative
> actions taken by ICE during enforcement operations.  If released, individuals
> could circumvent the law by knowing how ICE assesses and operationally
> minimizes threats while searching electronic devices, thereby allowing them to
> counter ICE's operational and investigative actions during enforcement
> operations.

*Id.* ¶ 46.

## CONCLUSION

Defendants' motion for summary judgment should be granted and plaintiff's proposed

cross motion for summary judgment should be denied for the reasons set forth above.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

s/ *David M. Glass*
DAVID M. GLASS, DC Bar 544549
Senior Trial Counsel
Department of Justice, Civil Division
Federal Programs Branch
1100 L Street, N.W., Room 12020
Washington, D.C.  20530
Tel: (202) 514-4469/Fax: (202) 616-8460
E-mail: david.glass@usdoj.gov

Dated: January 31, 2020                 Attorneys for Defendants

28