*Knight First Amend. Inst. at Columbia Univ. v.*
*Dep't of Homeland Sec.*
No. 1:17-cv-00548-TSC

Defendants' Motion for Summary Judgment

Ex. B

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

KNIGHT FIRST AMENDMENT
INSTITUTE AT COLUMBIA
UNIVERSITY,

*Plaintiff*,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY

and

UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT

*Defendants*.

No. 1:17-CV-00548-TSC

**DECLARATION OF JAMES V.M.L.
HOLZER IN SUPPORT OF
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

I, James V.M.L. Holzer, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am the Deputy Chief Privacy and Freedom of Information Act ("FOIA") Officer for the United States Department of Homeland Security ("DHS" or "Department") Privacy Office ("PRIV").

2.      I have been employed by DHS PRIV in this capacity since May of 2016.  Previously I served as the Director of the Office of Government Information Services within the National Archives and Records Administration, and prior to that I served as the Senior Director of FOIA operations for DHS.

3.      As the Deputy Chief FOIA Officer, I am the DHS official responsible for implementing FOIA policy across DHS and responding to requests for records made under the FOIA, 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. §552a, and other applicable records access provisions.

4.      Through the exercise of my official duties, I have become familiar with Plaintiff's FOIA request and request for expedited processing dated March 15, 2017.  ECF No. 1-1.  I am also

familiar with this litigation and have read a copy of Plaintiff's Complaint for Injunctive Relief filed on March 27, 2017, ECF No. 1, and Plaintiff's Amended Complaint for Injunctive Relief filed on April 19, 2017.  ECF No. 10.

5.      I make the following statements based upon my personal knowledge, my coordination with relevant FOIA personnel responsible for processing the subject request, and information furnished to me in the course of my official duties.

**ORGANIZATION OF THE DEPARTMENT**

6.      DHS is responsible for counterterrorism, cybersecurity, aviation security, border security, port security, maritime security, the administration and enforcement of immigration laws, protection of national leaders, protection of critical infrastructure, detection of and protection against chemical, biological and nuclear threats to the homeland, and responding to disasters.

7.      United States Immigration and Customs Enforcement ("ICE"), an operational component of DHS, enforces federal laws governing border control, customs, trade, and immigration to promote homeland security and public safety.

8.      United States Customs and Border Protection ("CBP"), an operational component of DHS, is one of the world's largest law enforcement organizations and is charged with keeping terrorists and their weapons out of the United States while facilitating lawful international travel and trade.

9.      DHS is an agency within the Executive Branch of the federal government.

**ORGANIZATION OF THE OFFICE FOR CIVIL RIGHTS AND CIVIL LIBERTIES**

10.     Within the DHS Office of the Secretary, the Office for Civil Rights and Civil Liberties ("CRCL") is responsible for:

        a.      promoting respect for civil rights and civil liberties in policy development and implementation by advising Department leadership and personnel and state and local partners;

        b.      communicating with individuals and communities whose civil rights and civil liberties may be affected by Department activities, informing them about policies and avenues of

remedy, and promoting appropriate attention within the Department to their experiences and concerns;

c.     investigating and resolving civil rights and civil liberties complaints filed by the public regarding Department policies or activities, or actions taken by Department personnel; and,

d.     leading the Department's equal employment opportunity programs and promoting workforce diversity and merit system principles.

11.     CRCL is comprised of a Programs and Compliance Division and an Equal Employment Opportunity and Diversity Division.   Within the Programs and Compliance Division, the Compliance Branch investigates complaints from the public alleging violations of civil rights and civil liberties in DHS activities.

12.     When CRCL determines that a complaint from the public warrants investigation, CRCL either refers the complaint to the relevant DHS operational component for investigation or retains the complaint and conducts its own investigation.

13.     In the case of referred complaints, upon completion of a factual investigation, the operational component issues a report of investigation.   CRCL reviews the report of investigation and determines whether additional investigative efforts are warranted and/or whether CRCL will issue a recommendation memorandum to the operational component.

14.     In the case of retained complaints, CRCL requests information from the appropriate operational component and conducts its own factual investigation.   Retained cases may be subject to a full investigation or a "short-form" resolution.   The short-form complaint processing procedure facilitates the expeditious resolution of urgent allegations that are narrowly focused and require limited investigation.

**DESCRIPTION OF RECORDS**

15.     Between December 1, 2017, and May 10, 2019, DHS released 3,289 pages of records in response to Plaintiff's FOIA request.   As detailed in the *Vaughn* index, attached hereto as Exhibit A, DHS withheld information pursuant to 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

3

16.     Based on representations made by Plaintiff's counsel via email on October 25, 2019, the scope of this declaration is limited to the redactions made under the FOIA.

17.     DHS did not redact information pursuant to 5 U.S.C. § 552 (b)(3).

18.     The DHS produced records included the following types of records: email communications; written correspondence; multiple draft versions of an impact assessment; comment matrices; training materials; informal employee notations; employee progress reports; memoranda; briefing materials; complaints received from private citizens; correspondence between DHS and private citizens; and agency forms and applications.

**RECORDS WITHHELD UNDER 5 U.S.C. § 552 (b)(5)**

19.     5 U.S.C. § 552 (b)(5) protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested."

20.     All DHS records released in connection with this litigation are less than 25 years old.

21.     From the records described in paragraph 18, DHS withheld certain information under the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege.

22.     Broadly speaking, the deliberative process privilege was applied to records that were created during the agency process of assessing and evaluating current policies and procedures and exploring future policies and procedures associated with the search of electronic devices at the border.

23.     By way of example, DHS redacted employee discussions involving the drafting of an impact assessment, discussions regarding data sampling methodologies and data analysis interpretation, draft memoranda to the Secretary, study proposals, draft impact assessments, comment matrices, CRCL recommendations to the Secretary, draft training materials,

investigation strategies, policy evaluation discussions, and draft response letters to members of the public.

24.     DHS redacted those portions of the records containing the subjective observations, opinions, suggestions, and recommendations of CRCL and DHS employees on the topic of searches of electronic devices at the border.

25.     The employees who authored these materials did not have the authority to make final agency decisions regarding policies and procedures on behalf of DHS or an operational component and the records did not reflect a final agency decision.

26.     Thus, because the information was both pre-decisional and deliberative it was withheld per Exemption 5.

27.     The deliberative process privilege was asserted to avoid the potential harm that could result to the quality of agency decisions if the records became public.  DHS has an interest in encouraging open and frank discussions between its employees on matters of policy.  This free exchange of information, ideas, and candid opinions is critical to the Department's ability to fulfill its mission.

28.     Absent a free exchange of information, personnel will be reluctant or unwilling to participate in the process of assessing, evaluating, and making recommendations (to include voicing their concerns and disagreements) relating to current policies and procedures and exploring possible options for future actions.   If the free flow of information and discussions between DHS employees were curtailed out of concerns that their pre-decisional and deliberative thoughts and opinions would be subject to public scrutiny, the quality of DHS decision-making would be diminished to the detriment of DHS and the public.  Moreover, the disclosure of rationales that did not ultimately form a basis for a final agency decision could result in confusion to the public.

29.     DHS also asserted Exemption (b)(5) per the attorney work-product and the attorney-client privileges to records prepared by attorneys within the DHS Office of the General Counsel ("OGC") and the CBP Office of Chief Counsel ("OCC").

30.     For example, DHS asserted the attorney-client and attorney work-product privileges to the following:  internal email communications between OGC and OCC generated while drafting recommendations and legal advice for the consideration of the Secretary; memoranda from OGC to OCC regarding a complaint referral to CBP; a litigation hold memorandum authored by OGC attorneys and distributed to Department employees in connection with an ongoing litigation; and a legal memorandum from the General Counsel to the Secretary on the topic of searches of electronic devices at the border.

31.     The attorney work-product privilege protects documents and other memoranda prepared by an attorney and others in contemplation of litigation.  It seeks to protect the adversarial process by insulating the attorney's preparation from scrutiny and extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated.  The privilege was applied to the materials, notes, questions, litigation strategies and thoughts of agency counsel and they were created by counsel in anticipation of future litigation as well as ongoing DHS litigation involving the search of electronic devices at the border.

32.     The attorney-client privilege concerns confidential communications between an attorney and his or her client relating to a legal matter for which the client has sought professional advice. The privilege encompasses those facts divulged by the client to the attorney as well as the opinions given by the attorney based upon, and thus reflecting, those facts.  The information withheld in this case consists of communications between agency counsel and agency officials that includes the confidential information obtained from the client as well as the professional advice of counsel.

33.     Because sound legal advice and advocacy depend upon agency counsel being fully informed by the client, DHS is shielding these attorney-client communications to encourage full and frank discussions between the client and their legal advisor(s) and to avoid any chilling effect on interactions and communications between agency employees and their legal counsel that could result if the records were released.

**RECORDS WITHHELD UNDER 5 U.S.C. § 552 (b)(7)(C)**

34.    5 U.S.C. § 552 (b)(7) protects certain information "compiled for law enforcement purposes."  The records at issue were created and used by DHS, in fulfillment of its mission to protect Americans from terrorism and other homeland security threats, and to secure the nation's air, land, and sea borders, and by CRCL to investigate and resolve civil rights and civil liberties complaints filed by the public regarding Department policies or activities, or actions taken by Department personnel, prior to the Department invoking Exemption (b)(7).  The records at issue in this case pertained to formal and informal complaints from members of the public alleging civil rights and civil liberty violations by DHS as well as the communications that took place between CRCL, organizational components, and members of the public while resolving or investigating the complaints.

35.    5 U.S.C. § 552 (b)(7)(C) protects that information, within records compiled for law enforcement purposes, that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

36.    As set forth in Exhibit A, from those records compiled for law enforcement purposes, DHS redacted the following categories of information belonging to DHS personnel and private citizens: names; signatures; email addresses; physical addresses; facsimile, telephone and mobile numbers; law enforcement officer badge numbers; dates of birth; alien numbers; DHS Traveler Redress Reference Numbers; and, other identification numbers or unique identifiers that could identify an individual.

37.    Disclosing this information could reasonably be expected to constitute an unwarranted invasion of the personal privacy of the private citizens and government officials mentioned in the law enforcement records.  These individuals have a personal privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance in their private lives or while conducting official duties.

38.     Because the disclosure of this information would in no way assist the public in understanding how the agency is carrying out its statutory responsibilities, the privacy rights of the individuals outweighs any public interest.  For these reasons, DHS withheld the information per 5 U.S.C. 552 (b)(7)(C).

39.     The information described in paragraph 36 also falls under 5 U.S.C. § 552 (b)(6) which protects information about individuals found in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."

40.     To disclose this personally identifiable information would constitute a clearly unwarranted invasion of personal privacy.  These individuals have a personal privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance in their private lives or while conducting official duties.

39.     Disclosing this personally identifiable information would not assist the public in understanding how the agency is carrying out its mission and plaintiff has not established that its disclosure would serve a public benefit.

40.     Because the privacy interest in the personally identifiable information of the government employees and private citizens outweighs any public interest that may exist, its disclosure would constitute a clearly unwarranted invasion of personal privacy.  For these reasons, DHS asserted Exemption 6.

**RECORDS WITHHELD UNDER 5 U.S.C. § 552 (b)(7)(E)**

41.     5 U.S.C. § 552 (b)(7) protects certain information "compiled for law enforcement purposes."  Again, the records at issue were created and used by DHS, in fulfillment of its mission to protect Americans from terrorism and other homeland security threats, and to secure the nation's air, land, and sea borders, and by CRCL to investigate and resolve civil rights and civil liberties complaints filed by the public regarding Department policies or activities, or actions taken by Department personnel, prior to the Department invoking Exemption (b)(7).

42.     5 U.S.C. § 552 (b)(7)(E) exempts from disclosure law enforcement records or information that would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

43.     To effectuate its mission, DHS depends upon the use of sensitive investigative techniques and methods that are not known to the general public.  These law enforcement techniques and procedures are utilized by the law enforcement officers of DHS to carry out the functions described in paragraphs 6-8.  A disclosure of the techniques and procedures for law enforcement investigations or prosecutions or the disclosure of guidelines for law enforcement investigations or prosecutions would compromise the ability of DHS to perform its law enforcement mission.

44.     DHS asserted Exemption (b)(7)(E) to a CRCL authored impact assessment of border searches of electronic devices, certain information contained within records compiled during complaint investigations, and information derived from law enforcement databases.

45.     Within those records, per Exemption (b)(7)(E) DHS redacted the following: unique record numbers/codes; descriptions of the nature of the law enforcement interest in an individual; descriptions of the particular inspection techniques utilized; identification of specialized law enforcement units and third-party agencies; descriptions of the circumstances in which CBP may coordinate inspections with specialized law enforcement units and third-party agencies; descriptions of pertinent information uncovered during the course of an inspection; criteria for utilizing particular inspection methods; information regarding law enforcement alerts or lookouts; information regarding available law enforcement capabilities or techniques; descriptions of the handling, maintenance and storage of law enforcement or national security

information obtained from a border inspection; and descriptions of the law enforcement records consulted or created as part of certain inspections.

46.     This information, either standing alone or combined with other available information, would disclose techniques, procedures, or guidelines for law enforcement investigation.  This in turn would risk circumvention of the law by revealing non-public law enforcement techniques, capabilities or vulnerabilities, the circumstances in which such techniques, capabilities, or vulnerabilities may be encountered, and/or the nature of the law enforcement interest in a particular circumstance.

47.     With this information wrongdoers could devise methods of evading detection and apprehension thereby diluting the effectiveness of the law enforcement techniques and strategies.

48.     DHS also withheld TECS computer codes and URL addresses belonging to CBP. Releasing this information could expose CBP computer systems to a risk of unauthorized access or navigation.  Protecting and maintaining the integrity of DHS computer systems, to include CBP's TECS, is imperative to the DHS mission.  TECS is a critical law enforcement tool used by CBP to enhance border security and it is therefore imperative that TECS information be protected from any potential risk of threat or compromise.   DHS applied Exemption (b)(7)(E) to codes used within TECS and specific information regarding how to navigate and use TECS because this information could enable an individual knowledgeable in computer systems to improperly access the system, facilitate navigation or movement through the system, allow manipulation or deletion of data, and interfere with enforcement proceedings.  As to the computer codes at issue, they facilitate access to, and navigation through, TECS.  Individuals who know the meaning of the codes would have sufficient law enforcement information regarding how CBP conducts its law enforcement operations, which would permit individuals to

alter their patterns of conduct, adopt new methods of operation, relocate, change associations, and effectuate other countermeasures, thus corrupting the integrity of ongoing investigations. Public dissemination of these access codes would reveal the technical capabilities of the system and could permit unauthorized users to manipulate records to avoid recognition, detection and apprehension.  It would also arm unauthorized users with the ability to corrupt the integrity of the data contained therein through the alteration/manipulation of such data.  Finally, if the system were to be hacked, it would permit the intruder to potentially manipulate the way certain records are created and maintained, which could put at risk ongoing investigations and border security operations.

**SEGREGABILITY**

49.     In processing plaintiff's request, DHS made significant and organized efforts to segregate non-exempt portions of documents from exempt portions so to provide plaintiff with all responsive information not subject to FOIA exemptions.  PRIV reviewed each potentially responsive record page by page, and line by line.  Based upon that review, the documents were redacted, and the redacted versions were released to plaintiff.  Responsive documents that contained no FOIA exemptions were released in their entirety.  The review and redaction processes were thorough, involving hours of review and consultation among the DHS employees involved.  Because of the review process, any reasonably segregable portions of documents were released to plaintiff.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed this 31st day of January, 2020.


James V.M.L. Holzer
Deputy Chief Privacy and FOIA Officer
DHS Privacy Office

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.

CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| 44-94 | Records released in full. |
| 96-104 | |
| 107-114 | *The prefix for bates numbers 567 through 835 is DHS-001-548. |
| 134-143 | **An error occurred in the processing of pages 241-250.  Pages 251-260, released in full, are legible duplicate versions of pages 241-250. |
| 151 | ***An error occurred in the processing of pages 74-83 and 231-240.  DHS released these documents in full at |
| 194-203 | https://www.dhs.gov/sites/default/files/publications/privacy_pia_cbp_laptop.pdf |
| 228-230 | ****DHS released pages 228-230 in full online at https://www.dhs.gov/xlibrary/assets/crcl/crcl-assessment-fast.pdf |
| 231-240 | |
| 251-260 | |
| 485 | |
| 491 | |
| 519-520 | |
| 546-555 | |
| 592 | |
| 594 | |
| 633-634 | |
| 660-693 | |
| 729-730 | |
| 733 | |
| 759-799 | |
| 826-862 | |
| 894-896 | |
| 898 | |
| 901-902 | |
| 909-910 | |
| 914-917 | |
| 1839-1846 | |
| 1874 | |
| 1903 | |
| 1911-1924 | |
| 1929 | |
| 2052-2104 | |

# Exhibit A

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| 2109 | |
| 2115 | |
| 2124 | |
| 2134-2140 | |
| 2176 | |
| 2180-2181 | |
| 2184 | |
| 2195 | |
| 2221 | |
| 2231 | |
| 2249 | |
| 2157 | |
| 2161-2163 | |
| 2170 | |
| 2176 | |
| 2258-2259 | |
| 2264 | |
| 2266 | |
| 2270-2271 | |
| 2276 | |
| 2283-2285 | |
| 2291 | |
| 2295-2298 | |
| 2301-2302 | |
| 2307-2308 | |
| 2312 | |
| 2314 | |
| 2316-2320 | |
| 2323 | |
| 2326-2327 | |
| 2329 | |
| 2335 | |
| 2338 | |
| 2340 | |

2

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| 2346 | |
| 2350 | |
| 2353-2356 | |
| 2360 | |
| 2363-2367 | |
| 2372 | |
| 2375-2376 | |
| 2378 | |
| 2381-2384 | |
| 2386 | |
| 2389-2391 | |
| 2399 | |
| 2401-2402 | |
| 2410 | |
| 2413 | |
| 2416-2417 | |
| 2421 | |
| 2425 | |
| 2432 | |
| 2435-2437 | |
| 2440 | |
| 2443-2445 | |
| 2449-2450 | |
| 2455 | |
| 2458-2460 | |
| 2464 | |
| 2467-2468 | |
| 2474 | |
| 2483-2484 | |
| 2486-2487 | |
| 2491 | |
| 2500 | |
| 2503-2504 | |
| 2512 | |

3

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.

CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| 2515-2546 | |
| 2549-2557 | |
| 2562 | |
| 2565 | |
| 2576-2585 | |
| 2590-2595 | |
| 2599 | |
| 2601-2605 | |
| 2608-2609 | |
| 2614-2647 | |
| 2649 | |
| 2651 | |
| 2653 | |
| 2657 | |
| 2670 | |
| 2674-2675 | |
| 2684-2685 | |
| 2691 | |
| 2698 | |
| 2702-2703 | |
| 2713-2714 | |
| 2717-2718 | |
| 2724-2725 | |
| 2727 | |
| 2729-2731 | |
| 2733 | |
| 2736 | |
| 2746 | |
| 2748 | |
| 2751-2754 | |
| 2764 | |
| 2767-2768 | |
| 2778 | |
| 2780 | |

4

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| 2782 | |
| 2787 | |
| 2789-2790 | |
| 2793 | |
| 2797 | |
| 2802 | |
| 2809 | |
| 2822 | |
| 2824-2826 | |
| 2829 | |
| 2831-2833 | |
| 2834-2835 | |
| 2837 | |
| 2856 | |
| 2859 | |
| 2861-2863 | |
| 2865 | |
| 2867 | |
| 2906 | |
| 2912 | |
| 2914-2916 | |
| 2919-2930 | |
| 2932 | |
| 2935-2936 | |
| 2940 | |
| 2942 | |
| 2944 | |
| 2949 | |
| 2952 | |
| 2958 | |
| 2963 | |
| 2973 | |
| 2977 | |
| 2984-2986 | |

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| 2998 | |
| 3001 | |
| 3003-3005 | |
| 3013 | |
| 3023-3033 | |
| 3036 | |
| 3039 | |
| 3041-3042 | |
| 3060 | |
| 3076 | |
| 3090 | |
| 3098 | |
| 3106 | |
| 3116 | |
| 3118 | |
| 3120 | |
| 3164-3165 | |
| 3169-3170 | |
| 3177 | |
| 3181 | |
| 3183 | |
| 3189 | |
| 3191 | |
| 3194 | |
| 3198 | |
| 3203 | |
| 3206-3209 | |
| 3211 | |
| 3233-3235 | |
| 3250 | |
| 3262 | |
| 3268 | |
| 3276 | |
| 1-2 | **Email Communications and Written Correspondence** |

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| 16<br>33-34<br>95<br>105-106<br>115-133<br>144-150<br>152<br>157-164<br>261<br>447-450<br>462-484<br>544-545<br>593<br>731-732<br>758<br>822-825<br>1833-1835<br>1932-1940<br>2222-2224<br>2229<br>2232<br>2287<br>2569<br>2586-2589<br>2656<br>2658<br>2803-2806 | **5 U.S.C. 552(b)(6) & (b)(7)(C)**<br><br>From these records, which were created, gathered, or used for law enforcement purposes, DHS redacted the personally identifiable information of government employees and private citizens referenced in the records. More specifically, DHS redacted the names, signatures, email and physical addresses, and facsimile and telephone numbers of government employees and private citizens. Disclosure of this personally identifiable information could reasonably be expected to constitute an unwarranted invasion of personal privacy. These individuals have a privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties or in their private lives. The disclosure of this personally identifiable information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Even if a public interest did exist, the privacy rights of the individuals outweighs that public interest. For these reasons the information was withheld per 5 U.S.C. 552 (b)(7)(C).<br><br>The withholdings described above are also justified under 5 U.S.C. 552 (b)(6). The personally identifiable information pertaining to to low-level agency personnel and private citizens contained within personnel, medical, and similar files, would constitute a clearly unwarranted invasion of personal privacy. These individuals have a substantial privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties and in their private lives. The information would in no way assist the public in understanding how the agency is carrying out its statutory responsibilities and Plaintiff has not established the existence of any public interest. Because the privacy interest in the personally identifiable information outweighs any minimal public interest that could possibly exist the information may be withheld under 5 U.S.C. 552 (b)(6). |
| 160-163<br>462<br>484<br>463-483<br>486-490<br>731-732 | **Email Communications and Spreadsheets Between CRCL and CBP**<br><br>**5 U.S.C. 552 (b)(5)**<br><br>These records, consisting of internal email communications and draft spreadsheets, were generated during discussions between CRCL and CBP regarding the possibility of developing an agreed upon methodology for sampling data relative to border searches of electronic devices to determine whether civil rights or civil liberties concerns might exist. Because the communications were antecedent to any final decision on how best to sample the data and a determination that civil rights/civil liberties concerns might indeed exist, the records |

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.

CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| | are pre-decisional. These records are also deliberative in that they reflect the opinions, proposals, recommendations, and the give-and-take between CRCL and CBP that occurred during the consultative process.

To expose these intra-agency deliberations would have a chilling effect and ultimately impede the frank and candid exchange of ideas and information within the agency. The free-flow of information within DHS is critical to the agency's ability to effectively evaluate and address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public. Finally, a release of these records would pose a substantial risk of confusing the public by disclosing positions and recommendations that were not adopted by the agency. |
| 117-133 | **Email Communications Between the DHS Office of the General Counsel and the CBP Office of Chief Counsel**

**5 U.S.C. 552 (b)(5)**

These internal email communications between attorneys with the DHS Office of the General Counsel (OGC) and the CBP Office of Chief Counsel (OCC) were generated during the deliberative and consultative process of drafting a memorandum containing recommendations and legal advice to the DHS Secretary on the topic of border searches of electronic devices. The communications were antecedent to the drafting of a final memorandum or final agency decision and are therefore pre-decisional. The records contain the opinions, conclusions, and recommendations of agency personnel subordinate to the Secretary and reflect the give-and-take that occurred between the counselors as they discussed and weighed the merits of various positions. For these reasons the materials are deliberative. To expose these intra-agency deliberations would have a chilling effect and ultimately impede the frank and candid exchange of ideas and information within the agency as well as dissuade agency officials from seeking the views of agency counsel. For the above reasons, the communications were withheld under the deliberative process privilege.

These records are also being withheld under the attorney-client privilege. The attorney-client privilege protects communications between attorneys and their clients that rest on confidential information obtained from the client. In the governmental context, the client may be the agency and the attorney may be an agency lawyer. This privilege applies to the facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon those facts. The email communications contain information obtained by agency counsel from their clients while securing legal advice or services. Because sound legal advice and advocacy depend upon agency counsel being fully informed by the client, DHS is shielding these attorney-client communications to encourage full and frank discussions between the client and the legal advisor and avoid any chilling effect on interactions and communications between agency employees and their legal counsel that could result if the records were released.

These records are also being withheld under the attorney work-product privilege which protects from disclosure attorney-work product material, including notes, questions, litigation strategy and thoughts by an agency attorney or the agency's litigation counsel. In this instance the records were created not only with the intention of providing legal advice to the Secretary, but they were created by agency |

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| 157-164 | counsel in anticipation of and in preparation for ongoing and future litigation involving the search of electronic devices at the border. DHS asserted the attorney-work product to protect the adversarial trial process by insulating the attorneys' preparation from scrutiny. |
| | **Email Communications** |
| | **5 U.S.C. 552 (b)(5)** |
| | Within the email communications between CRCL and CBP personnel, DHS redacted discussions of proposed methods for conducting a study of border searches of electronic devices to determine whether civil rights or civil liberties concerns might exist.  Because the communications were antecedent to any final decision on conducting a study, the records are pre-decisional.  These records are also deliberative in that they reflect the opinions, proposals, recommendations, and the give-and-take between CRCL and CBP that occurred during the consultative process. |
| | To expose these intra-agency deliberations would have a chilling effect and ultimately impede the frank and candid exchange of ideas and information within the agency.  The free-flow of information within DHS is critical to the agency's ability to effectively evaluate and address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public.  Finally, a release of these records would pose a substantial risk of confusing the public by disclosing positions and recommendations that were not adopted by the agency. |
| 165-188 204-227 262-289 299-446 492-518 521-532 556-566 635-659 694-701 705-728 734-757 883-888 942-1819 1823-1832 1835 1847-1872 1875-1902 2146 | **Draft Documents Relating to a Civil Rights/Civil Liberties Impact Assessment for Border Searches of Electronic Devices** |
| | **5 U.S.C. 552 (b)(5)** |
| | These records include email communications and drafts generated by CRCL personnel during the process of preparing an impact assessment examining DHS policies guiding the border search of electronic devices, how searches occur, and related civil rights and civil liberties issues.  The agency released a final version titled *Civil Rights/Civil Liberties Impact Assessment Border Searches of Electronic Devices* online at  https://www.dhs.gov/sites/default/files/publications/crcl-border-search-impact-assessment_01-29-13_1.pdf.  For this reason, the records are pre-decisional. |
| | These records, prepared by CRCL staff and circulated within DHS, reflect the give-and-take of the editorial process and contain the thoughts, recommendations, proposed courses of action, and opinions that CRCL employees believed the CRCL Officer should take into consideration about legal and policy matters concerning border searches of electronic devices.  Additionally, the records reflect the exercises in judgment of CRCL personnel as to the relevance and importance of those facts, issues, and advice that should be included or excised from the final assessment.  For the above reasons the drafts are deliberative. |
| | The release of the drafts would expose the internal deliberations of CRCL, impede the frank and candid exchange of ideas and information within the agency, reveal the reasoning and recommendations of CRCL personnel, and ultimately have a chilling effect on intra-agency deliberations.  The free-flow of information is critical to the agency being able to effectively evaluate matters; without it the |

9

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.

CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| | agency will be hindered in its ability to deliberate on the best way to address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public. Additionally, a release of these records would allow the public to compare the multiple versions and internal discussion to the final product which would pose a substantial risk of confusing the public by disclosing positions and recommendations that were not adopted by the agency or incorporated into the final version. |
| 290-297 863-874 | **Comment Matrices** |
| | **5 U.S.C. 552 (b)(5)** |
| | The matrices were created by CRCL personnel during the process of drafting an impact assessment examining DHS policies guiding the border search of electronic devices, how searches occur, and related civil rights and civil liberties issues. The agency released a final version titled *Civil Rights/Civil Liberties Impact Assessment Border Searches of Electronic Devices* online at https://www.dhs.gov/sites/default/files/publications/crcl-border-search-impact-assessment_01-29-13_1.pdf. |
| | The matrices identify the name of the component/office commenting on the draft assessment, the language within the assessment under consideration, the proposed comments/edits to said language by ICE, CBP and CRCL personnel, and CRCL's impressions and responses to the proposed comments/edits. The matrices were prepared to assist CRCL staff in organizing, tracking, reconciling, and resolving the edits and comments received from each component/office. |
| | The matrices reflect the give-and-take of the editorial process and contain the thoughts, recommendations, and opinions of DHS employees regarding legal and policy matters concerning the impact assessment on border searches of electronic devices. Additionally, the records reflect the exercise in judgment of CRCL personnel as to the relevance and importance of facts, issues, and advice that should be included or excised from the impact assessment. For the above reasons the matrices are pre-decisional and deliberative. |
| | To release the matrices would expose the internal deliberations of DHS, impede the frank and candid exchange of ideas and information within the agency, reveal the reasoning and recommendations of DHS personnel, and ultimately have a chilling effect on intra-agency deliberations. The free-flow of information is critical to the agency being able to effectively evaluate matters; without it the agency will be hindered in its ability to deliberate on the best way to address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public. Additionally, to release the matrices would allow the public to compare draft language to the final impact assessment and thereby pose a substantial risk of confusing the public by disclosing positions that were not adopted by the agency or incorporated into the final impact assessment. |
| 889-892 | **Comment Matrix** |
| | **5 U.S.C. 552 (b)(5)** |
| | The matrix was a working document utilized by CRCL to organize ideas during the process of deciding whether to recommend to senior DHS leadership that edits/updates be made to current agency directives governing border searches of electronic devices. The matrix was created antecedent to any CRCL decision to recommend edits/updates and antecedent to any final agency decision by senior DHS |

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| | leadership whether to modify any agency directive.  For these reasons the matrix is pre-decisional.  The matrix reflects the give-and-take of the editorial process and contain the thoughts, recommendations, and opinions of CRCL employees about current directives and whether CRCL should initiate discussions with operational components or recommend edits to the directives to senior DHS leadership.  For the above reasons the matrix is deliberative.

Releasing the matrix would expose the internal deliberations of CRCL, impede the frank and candid exchange of ideas and information within the agency, reveal the reasoning and recommendations of CRCL personnel, and ultimately have a chilling effect on intra-agency deliberations.  The free-flow of information is critical to the agency being able to effectively evaluate matters; without it the agency will be hindered in its ability to deliberate on the best way to address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public. |
| 1836-1838 | **Comment Matrix**

**5 U.S.C. 552 (b)(5)**

The matrix was a working document utilized by CRCL to organize ideas during the process of evaluating and weighing the merits of various recommendations under consideration by operational components and the effectiveness of proposed corrective actions relative to border searches of electronic devices.  The matrix was created antecedent to any final agency decision to adopt the recommendations or corrective actions under consideration.  For these reasons the matrix is pre-decisional.  The matrix reflects the give-and-take of the evaluative process and contain the thoughts, recommendations, and opinions of CRCL employees.  For the above reasons the matrix is deliberative.

Releasing the matrix would expose the internal deliberations of CRCL, impede the frank and candid exchange of ideas and information within the agency, reveal the reasoning and recommendations of CRCL personnel, and ultimately have a chilling effect on intra-agency deliberations.  The free-flow of information is critical to the agency being able to effectively evaluate matters; without it the agency will be hindered in its ability to deliberate on the best way to address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public. |
| 3-15
17-32
35-43 | **Office of the General Counsel Draft Training Scenario Proposal**

**5 U.S.C. 552 (b)(5)**

This record is a draft proposal for a training scenario that was authored by the OGC and under consideration for use in training DHS personnel.  It was created antecedent to a final agency decision to utilize the training scenario and the scenario was not put into final form.  For this reason, the record is pre-decisional. |

11

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| | The record was prepared by and circulated amongst OGC staff for comments and edits as part of the drafting and revision process. The record reflects the give-and-take of the editorial process and contains the thoughts, recommendations, and opinions of OGC personnel and for these reasons, the record is deliberative.

Releasing the draft training scenarios would expose the internal deliberations of OGC, impede the frank and candid exchange of ideas and information within the agency, reveal the reasoning and recommendations of OGC personnel, and ultimately have a chilling effect on intra-agency deliberation which, in turn, would negatively impact the quality of OGC's training materials intended to benefit DHS employees. The free-flow of information is critical to the agency being able to effectively evaluate matters; without it the agency will be hindered in its ability to deliberate on the best way to address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public. |
| 567-591 | **CRCL Authored Draft PowerPoint Presentation**

**5 U.S.C. 552 (b)(5)**
This draft PowerPoint presentation was intended to train DHS personnel on CRCL's *Civil Rights/Civil Liberties Impact Assessment Border Searches of Electronic Devices*, a final version is available online at  https://www.dhs.gov/sites/default/files/publications/crcl-border-search-impact-assessment_01-29-13_1.pdf. The draft presentation was not put into final form. For this reason, the draft is pre-decisional.

The presentation reflects the give-and-take of the editorial process and contains the thoughts, recommendations, and opinions of DHS employees about legal and policy matters concerning the impact assessment of border searches of electronic devices and effective training materials. For these reasons the presentation is deliberative.

To release the draft presentation would expose the internal deliberations of CRCL, impede the frank and candid exchange of ideas and information within the agency, reveal the reasoning and recommendations of CRCL personnel, and ultimately have a chilling effect on intra-agency deliberations which, in turn, would negatively impact the quality of CRCL's training materials intended to benefit DHS employees. The free-flow of information is critical to the agency being able to effectively evaluate matters; without it the agency will be hindered in its ability to deliberate on the best way to address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public. |
| 597-632 | **CRCL Authored Draft PowerPoint Presentation**

**5 U.S.C. 552 (b)(5)**
This draft PowerPoint presentation was intended to train DHS personnel on countering violent extremism. The draft presentation was not put into final form. For this reason, the draft is pre-decisional. |

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
|  | The draft presentation was prepared by, and circulated amongst, CRCL staff for comments and edits as part of the drafting and revision process and reflects the give-and-take of the editorial process.  It contains the thoughts, recommendations, and opinions of CRCL employees about the content to be included in training materials on countering violent extremism.  For the above reasons the drafts are deliberative. |
|  | To release the draft presentation would expose the internal deliberations of CRCL, impede the frank and candid exchange of ideas and information within the agency, reveal the reasoning and recommendations of CRCL personnel, and ultimately have a chilling effect on intra-agency deliberations which, in turn, would negatively impact the quality of CRCL's training materials intended to benefit DHS employees.  The free-flow of information is critical to the agency being able to effectively evaluate matters; without it the agency will be hindered in its ability to deliberate on the best way to address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public. |
| 800-821 | **Draft Document Titled *Guidance Regarding the Use of Race for Law Enforcement Officers*** |
|  | **5 U.S.C. 552 (b)(5)** This draft record was created as a training tool for DHS personnel.  The draft predates the finalized training materials that were released at https://www.dhs.gov/xlibrary/assets/training/xus/crcl/racelawofficers/Guidance_Race_LEO/profiling_title_0.htm. For this reason, the draft is pre-decisional. |
|  | The draft presentation was prepared by, and circulated amongst, CRCL staff for comments and edits as part of the drafting and revision process and reflects the give-and-take of the editorial process.  It contains the thoughts, recommendations, and opinions of CRCL employees about the content to be included in training materials on countering violent extremism.  For the above reasons the drafts are deliberative. |
|  | To release the draft presentation would expose the internal deliberations of CRCL, impede the frank and candid exchange of ideas and information within the agency, reveal the reasoning and recommendations of CRCL personnel, and ultimately have a chilling effect on intra-agency deliberations which, in turn, would negatively impact the quality of CRCL's training materials intended to benefit DHS employees.  The free-flow of information is critical to the agency being able to effectively evaluate matters; without it the agency will be hindered in its ability to deliberate on the best way to address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public.  Furthermore, because the record differs from the final training materials, its release would allow the public to compare the draft and final version thereby posing a substantial risk of confusing the public by disclosing positions that were not adopted by the agency or incorporated into the final training materials. |
| 1820-1822 | **Informal Notations** |
|  | **5 U.S.C. 552 (b)(5)** |

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.

CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| | This record contains informal notations, authored by an unidentified CRCL employee, on the topic of analytic data support in connection with ongoing CRCL efforts surrounding border searches of electronic devices. The notations reflect the thoughts, recommendations, and opinions of an unknown CRCL employee about what future steps should or should not be taken relative to a data analysis and the potential strengths and weakness of various types of data. The record does not represent a final agency position and for these reasons is both pre-decisional and deliberative.

The release of this material would expose the internal deliberations of CRCL, impede the frank and candid exchange of ideas and information within the agency, reveal the reasoning and recommendations of CRCL personnel, and ultimately have a chilling effect on intra-agency deliberations. The free-flow of information is critical to the agency being able to effectively evaluate matters; without it the agency will be hindered in its ability to deliberate on the best way to address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public. Release of the notes would pose a substantial risk of confusing the public by disclosing the thoughts, recommendations, and opinions of a CRCL employee on the topic of analytic data support that were not adopted by the agency. |
| 451-461 | **Handwritten Notes**

**5 U.S.C. 552 (b)(5)**
These handwritten notes, authored by an unidentified CRCL employee, contain notations regarding the draft impact assessment of border searches of electronic devices. They are dated prior to the release of the final version of the *Civil Rights/Civil Liberties Impact Assessment Border Searches of Electronic Devices*, available online at  https://www.dhs.gov/sites/default/files/publications/crcl-border-search-impact-assessment_01-29-13_1.pdf.  For this reason, the notes are pre-decisional.

The record reflects the thoughts, recommendations, and opinions of an unknown CRCL employee relative to the drafting of the impact assessment of border searches of electronic devices. For this reason, the handwritten notes are deliberative.

The release of this material would expose the internal deliberations of CRCL, impede the frank and candid exchange of ideas and information within the agency, reveal the reasoning and recommendations of CRCL personnel, and ultimately have a chilling effect on intra-agency deliberations. The free-flow of information is critical to the agency being able to effectively evaluate matters; without it the agency will be hindered in its ability to deliberate on the best way to address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public. Release of the notes would pose a substantial risk of confusing the public by disclosing the thoughts, recommendations, and opinions of an unknown CRCL employee that were not incorporated into the final impact assessment. |
| 449-450 | **Bi-Weekly Report**

**5 U.S.C. 552 (b)(5)** |

14

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| | This bi-weekly report was created to keep senior CRCL leadership apprised of ongoing projects and matters within CRCL's purview.  DHS redacted those portions of the bi-weekly report containing the CRCL employee's opinions on making future recommendations to CBP on the topic of searches of electronic devices at the border.  For this reason, the report is pre-decisional.

The report, prepared by a CRCL staff member and circulated amongst senior CRCL leadership, contains the thoughts, recommendations, and opinions of a CRCL employee and for this reason, the report is deliberative.

To release the bi-weekly report would expose the internal deliberations of CRCL, impede the frank and candid exchange of ideas and information within the agency, reveal the reasoning and recommendations of CRCL personnel, and ultimately have a chilling effect on intra-agency deliberations.  The free-flow of information is critical to the agency being able to effectively evaluate matters; without it the agency will be hindered in its ability to deliberate on the best way to address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public. |
| 447-448 | **Email Communication**

**5 U.S.C. 552 (b)(5)**
The purpose of this email was to keep senior CRCL leadership informed on the progress of data monitoring efforts relative to the search of electronic devices at the border.  The email reflects discussions between CRCL employees opining on how to interpret the results of data analysis and proposing next steps to be taken at an upcoming meeting between CBP and CRCL personnel.  For these reasons the email is pre-decisional and deliberative.

Releasing this communication would expose the internal deliberations of CRCL, impede the frank and candid exchange of ideas and information within the agency, reveal the reasoning and recommendations of CRCL personnel, and ultimately have a chilling effect on intra-agency deliberations.  The free-flow of information is critical to the agency being able to effectively evaluate matters; without it the agency will be hindered in its ability to deliberate on the best way to address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public. |
| 298 | **Draft Document**

**5 U.S.C. 552 (b)(5)**
This draft document, authored by an unidentified CRCL employee, contains the employee's evaluation of and opinions about the effectiveness of DHS policies in safeguarding the rights of the public during searches of electronic devices at the border.  The document does not represent a final agency decision and is both pre-decisional and deliberative.

To release the document would expose the internal deliberations of a CRCL employee, impede the frank and candid exchange of ideas and information within the agency, reveal the evaluation and opinions of a CRCL employee, and ultimately have a chilling effect on intra- |

15

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
| --- | --- |
| | agency deliberations. The free-flow of information is critical to the agency being able to effectively evaluate matters; without it the agency will be hindered in its ability to deliberate on the best way to address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public. Release of the document would pose a substantial risk of confusing the public by disclosing the thoughts, recommendations, and opinions of a CRCL employee regarding the effectiveness of DHS policies that were not adopted by the agency. |
| 533-537 | **Memorandum from CRCL to Homeland Security Investigations (HSI)** |
| | **5 U.S.C. 552 (b)(5)** |
| | This memorandum from CRCL to HSI contains suggestions for how best to analyze data relative to searches of electronic devices at the border in order to determine whether civil rights or civil liberties concerns might exist. Because the communications were antecedent to any final decision on conducting a study, the records are pre-decisional. These records are also deliberative in that they reflect the opinions, proposals, recommendations, and the give-and-take between CRCL and HSI that occurred during the consultative process. |
| | To expose these intra-agency deliberations would have a chilling effect and ultimately impede the frank and candid exchange of ideas and information within the agency. The free-flow of information within DHS is critical to the agency's ability to effectively evaluate and address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public. Finally, a release of these records would pose a substantial risk of confusing the public by disclosing positions and recommendations that were not adopted by the agency. |
| 189-193 538-543 1906-1910 | **Memorandum from the CRCL Officer to the DHS Secretary** |
| | **5 U.S.C. 552 (b)(5)** |
| | This memorandum from the CRCL Officer to the DHS Secretary sought the Secretary's approval of multiple CRCL recommendations relative to CBP searches of electronic devices. The memorandum is not signed by the Secretary. For this reason, the memorandum is pre-decisional. |
| | The memorandum reflects the thoughts, recommendations, and opinions of the CRCL Officer. The Officer did not have the decision-making authority to compel the Secretary or CBP to adopt the recommendations and proposals contained therein and the memorandum does not represent a final DHS policy or opinion. For these reasons the memorandum is deliberative. |
| | To release the document would expose the internal deliberations of CRCL, impede the frank and candid exchange of ideas and information within the agency, reveal the evaluation and opinions of CRCL, and ultimately have a chilling effect on intra-agency deliberations. The free-flow of information is critical to the agency being able to effectively evaluate matters; without it the agency will be hindered in its ability to deliberate on the best way to address complaints, identify policy concerns, and propose and adopt solutions |

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| | that ultimately impact DHS and the public. Release of the document would pose a substantial risk of confusing the public by disclosing the thoughts, recommendations, and opinions of CRCL that were not adopted by the agency. |
| 544-545 | **Email Communications** |
| | **5 U.S.C. 552 (b)(5)** |
| | These email communications reflect discussions between CRCL employees regarding the role NSEERS data should play in an ongoing data analysis relative to searches of electronic devices at the border, how data should be interpreted, weighs the benefits and shortfalls of various hypothesis, and discusses the utility of continuing with data analysis efforts.  The communication does not represent a final agency decision and is both pre-decisional and deliberative. |
| | To release the discussion between CRCL employees would expose the internal deliberations of CRCL, impede the frank and candid exchange of ideas and information within the agency, reveal the evaluation and opinions of CRCL, and ultimately have a chilling effect on intra-agency deliberations.  The free-flow of information is critical to the agency being able to effectively evaluate matters; without it the agency will be hindered in its ability to deliberate on the best way to address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public.  Release of the document would pose a substantial risk of confusing the public by disclosing the suggestions and proposed options of CRCL regarding how to analyze data that were not adopted by the agency. |
| 144-150 | **Email Communications and Draft Response to the Center for Democracy and Technology** |
| | **5 U.S.C. 552 (b)(5)** |
| | Through the DHS Executive Secretariat process, CRCL had been tasked to draft a written response on behalf of the DHS Secretary to concerns received from the Center for Democracy and Technology.  The draft written response prepared by CRCL, as part of the Executive Secretariat process, was circulated within DHS for comments and edits as part of an ongoing revision process.  The email communications and draft written response pre-date a final agency response to the Center for Democracy and Technology and for these reasons the records are pre-decisional. |
| | The emails and draft response reflect the give-and-take of the editorial and Executive Secretariat process and contain the thoughts, recommendations, and opinions of CRCL employees about how best to respond to the inquiry from the Center for Democracy and Technology and what language should be included or excised from the final response.  For these reasons the materials are deliberative. |
| | The release of the materials would expose the internal deliberations of CRCL and the DHS Executive Secretariat process, impede the frank and candid exchange of ideas and information within the agency, reveal the reasoning and recommendations of DHS personnel, and ultimately have a chilling effect on intra-agency deliberations.  The free-flow of information is critical to the agency being able to effectively evaluate matters; without it the agency will be hindered in its ability to deliberate on the best way to address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public.  To release the draft records would |

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| | pose a substantial risk of confusing the public by disclosing positions that were not adopted by the agency or incorporated into the final response to the Center for Democracy and Technology. |
| 153-156 | **Draft Briefing Book Materials**<br><br>**5 U.S.C. 552 (b)(5)**<br>These briefing book materials, prepared by the Office of Partnership and Engagement, were sent to relevant headquarter offices through the Executive Secretariat process for review, comments, and edits in advance of a meeting between former Secretary Kelly and Microsoft. The materials were prepared to summarize issues and advise the Secretary. The draft briefing book materials were part of an ongoing revision process, contain redline edits and comments from headquarters offices, and reflect the personal opinions of the writers rather than the policy of the agency.<br><br>The release of the briefing materials would expose the internal deliberations of the DHS Executive Secretariat process, impede the frank and candid exchange of ideas and information within the agency, reveal the reasoning and recommendations of DHS personnel, and ultimately have a chilling effect on intra-agency deliberations. The free-flow of information is critical to the agency being able to effectively evaluate matters; without it the agency will be hindered in its ability to deliberate on the best way to address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public. |
| 702-704 | **Written Findings Authored by the CBP, Office of Internal Affairs (OIA), Management Inspections Division (MID)**<br><br>**5 U.S.C. 552 (b)(5)**<br>From this record, DHS redacted those portions containing recommendations from MID to the CBP Office of Field Operations (OFO) developed upon completion of a review of CBP policies and procedures regarding border searches of electronic devices. This internal record, generated at the request of OFO and in advance of any final agency decision, served the purpose of assisting OFO in the process of evaluating the implementation of CBP policies and procedures and assessing the adequacy of program controls and management oversight. The record reflects the thoughts, opinions, and recommendations of MID personnel who did not have the decision-making authority to compel OFO to adopt the recommendations contained therein. For these reasons the material is both pre-decisional and deliberative.<br><br>DHS asserted Exemption 5 to avoid the potential chilling effect on intra-agency deliberations that could result if the deliberative material became public. If the thoughts, opinions, and recommendations of members of the inspections division were made public, CBP offices would be reluctant or unwilling to cooperate with inspections or make requests of MID for assistance out of a concern that pre-decisional thoughts, opinions, and recommendations would be subject to public scrutiny. This in turn would impede the frank and candid exchange of ideas and information, to the detriment of both DHS and members of the public, that is critical to the agency's ability to effectively evaluate and deliberate on issues, identify policy concerns, and propose and adopt solutions. |

18

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| | KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al. CIVIL ACTION NO. 17-548 |
| 758 | **Email Communication** |
| | **5 U.S.C. 552 (b)(5)** |
| | The email was part of an ongoing deliberation between CBP and CRCL as to whether CBP would accept and adopt recommendations CRCL had made regarding the search of electronic devices at the border and proposing new techniques for the Commissioner's consideration regarding data analysis techniques.  The email communication reflects the thoughts, recommendations, and opinions of the Acting Officer.  The Acting Officer did not have the decision-making authority to compel CBP to adopt the recommendations and proposal contained therein and the communication does not represent a final DHS policy or opinion.  For the above reasons the email communication is pre-decisional and deliberative. |
| | DHS withheld the records to avoid the potential harm that could result if the material became public.  DHS has an interest in encouraging open and frank discussions between its offices and components; it cannot fulfill their missions absent the exchange of information, ideas, and candid opinions.  Releasing the email would expose the internal deliberations between CRCL and CBP, impede the frank and candid exchange of ideas and information within the agency, reveal the reasoning and recommendations of CRCL personnel, and ultimately have a chilling effect on intra-agency deliberations. |
| 822-825 | **Memorandum Authored by the Office of the General Counsel** |
| | **5 U.S.C. 552 (b)(5)** |
| | This document, dated August 10, 2011, and titled *Notice to Preserve Documents and E-mail* was prepared by an OGC attorney-advisor and distributed within DHS in connection with ongoing litigation. The document contains information gathered and developed by OGC legal staff in anticipation of the discovery process.  The document is being withheld per (b)(5) to protect the integrity of the deliberative or decision-making processes within the agency which exempts from mandatory disclosure the opinions, conclusions, and recommendations included within inter-agency or intra-agency documents.  The release of this information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. The deliberative-process privilege protects the internal deliberations of the government by exempting recommendations, analyses, and discussions undertaken to aid agency decision making, specifically here, deliberations in furtherance of legal and policy decisions.  The privilege also prevents the premature disclosure of proposed policies, serves to avoid public confusion generated by rationales or decisions not ultimately adopted by an agency, and maintains the integrity of agency decision-making processes by encouraging open and candid discussions. |
| | This document is also withheld under the attorney-client privilege because it contains communications between clients and their attorneys securing legal advice or services.  The document was created with information obtained through discussions between attorneys and their clients to assist in provisioning of information from DHS to the DOJ attorneys responsible for representing DHS in litigation.  The attorney-client privilege also protects communications from attorneys to their clients that rest on confidential information |

19

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| | obtained from the client. In the governmental context, the client may be the agency and the attorney may be an agency lawyer. This privilege applies to facts that are divulged to the attorney and encompasses the opinion given by the attorney based upon, and thus reflecting, those facts. Attorney-client communications are shielded from disclosure to encourage a full and frank discussion between the client and the legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel, including both DHS agency counsel and DOJ attorneys. Furthermore, the attorney work-product privilege applies to the document. This privilege protects from disclosure attorney-work product material, including notes, questions, litigation strategy and thoughts, by an agency attorney or the agency's litigation counsel. The withheld information was created by agency counsel in anticipation of and in preparation for ongoing and future litigation regarding searches of electronic devices at the border and is therefore exempt from disclosure so as to protect the adversarial trial process by insulating the attorneys' preparation from scrutiny. |
| 875-882 893 | **Draft Recommendation Memoranda from the CRCL Officer to the DHS Secretary** **5 U.S.C. 552 (b)(5)** The draft document was ultimately intended to assist the DHS Secretary in the ongoing process of assessing, evaluating, and formulating agency policies and practices regarding the search of electronic devices at the border. The records were prepared by CRCL staff on behalf of their Officer and circulated within CRCL for comments and edits as part of a continuing process of revisions. They reflect the give-and-take of the editorial process and contain the thoughts, recommendations, and opinions of CRCL employees about legal and policy matters concerning border searches of electronic devices. The records also reflect the exercise in judgment of CRCL personnel as to the relevance and importance of facts, issues, and advice that should be included or excised from the draft in support of the recommendations, proposals, and opinions contained therein. The CRCL employees who prepared the draft documents did not have decision making authority to compel CBP, ICE, or the DHS Secretary to adopt the recommendations contained therein. The drafts did not represent a final DHS policy or opinion on the search of electronic devices at the border. For the above reasons the drafts are pre-decisional and deliberative. DHS withheld the records to avoid the potential harm that could result if the material became public. DHS has an interest in encouraging open and frank discussions between its offices and components; it cannot fulfill their missions absent the exchange of information, ideas, and candid opinions. Releasing the drafts would expose the internal deliberations of CRCL, impede the frank and candid exchange of ideas and information within the agency, reveal the reasoning and recommendations of CRCL personnel, and ultimately have a chilling effect on intra-agency deliberations. |
| 918-941 | This document is an exact duplicate of 894-917 |

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.

CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| 897<br>899-900<br>903-908<br>911-913 | **Civil Rights/Civil Liberties Impact Assessment Border Searches of Electronic Devices dated December 29, 2011.** This document was released in part at https://www.dhs.gov/sites/default/files/publications/crcl-border-search-impact-assessment_06-03-13_1.pdf<br><br>**5 U.S.C. 552 (b)(5)**<br>DHS redacted legal analyses proffered by CRCL to the DHS Secretary relative to CBP's border search authority, authority to search electronic devices at the border, and First Amendment considerations.  As stated at page four, CRCL's recommendations and the arguments in favor of those recommendations were intended to advise the Secretary "and do not purport to state the current position of the Department."  For this reason, the redacted material is pre-decisional and deliberative.  The release of this information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra-agency communications. The deliberative-process privilege protects the internal deliberations of the government by exempting recommendations, analyses, and discussions undertaken to aid agency decision making, specifically here, an assessment of policies guiding the border search of electronic devices.  The privilege also prevents the premature disclosure of proposed policies, serves to avoid public confusion generated by rationales or decisions not ultimately adopted by an agency, and maintains the integrity of agency decision-making processes by encouraging open and candid discussions.<br><br>**5 U.S.C. 552 (b)(7)(E)**<br>From this law enforcement record, DHS redacted information that, either standing alone or combined with other available information, would disclose techniques, procedures, or guidelines for law enforcement investigations and risk circumvention of the law by revealing non-public law enforcement techniques, capabilities or vulnerabilities, the circumstances in which such techniques, capabilities, or vulnerabilities may be encountered, and/or the nature of the law enforcement interest in particular circumstances.  Redacted information includes: unique record numbers/codes, descriptions of the nature of the law enforcement interest in an individual, descriptions of the particular inspection techniques utilized, identification of specialized law enforcement units and third-party agencies, descriptions of the circumstances in which CBP may coordinate inspections with specialized law enforcement units and third-party agencies, descriptions of pertinent information uncovered during the course of an inspection, criteria for utilizing particular inspection methods, information regarding law enforcement alerts or lookouts, information regarding available law enforcement capabilities or techniques, descriptions of the handling, maintenance and storage of law enforcement or national security information obtained from a border inspection, and descriptions of the law enforcement records consulted or created as part of certain inspections.<br><br>DHS also redacted information that, when aggregated, could reveal inspection trends that would disclose techniques, procedures, or guidelines for law enforcement investigations and risk circumvention of the law.  For example, redacted information could reveal circumstances or locations where certain inspection techniques or types of investigations are more common or where certain vulnerabilities exist, allowing potential adversaries to deduce the nature of CBP's law enforcement interest in certain inspections, employ countermeasures to conceal harmful or illicit material, and/or target locations where they may face a decreased risk of detection (a |

21

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| | practice known as "port shopping"). Redacted information includes: port locations/codes, reason for search, and descriptions of the particular inspection techniques utilized. |
| | Third, DHS redacted information that, either standing alone or when combined with other information, would disclose techniques or procedures for law enforcement investigations and risk circumvention of the law by enabling access to and/or manipulation of law enforcement databases and information. For example, disclosure of this information could enable unauthorized users to view sensitive, non-public law enforcement information and to navigate computer systems and alter, add, or delete information. Redacted information includes: unique record numbers, computer system codes/commands, network addresses and URLs. |
| | Finally, DHS redacted subject-specific information that would disclose techniques, procedures, or guidelines for law enforcement investigations and risk circumvention of the law by revealing investigatory details, by forming a basis for comparison for the handling of different inspections, and/or by revealing the nature of the law enforcement interest in particular individual(s). Redacted information includes: reason for search, the type of search, whether the individual was notified of the search, the reason why the individual was or was not notified, information regarding the nature of the law enforcement interest in a particular inspection, status of the inspection or investigation, information supplied by other government agencies, information regarding law enforcement alerts and lookouts, and results of the search. |
| 1834 | **Email Communication Between CRCL Employees** |
| | **5 U.S.C. 552 (b)(5)** |
| | This email contains discussions between CRCL employees on how best to proceed in the ongoing efforts to revise public-facing language relative to DHS TRIP and part of the process of assessing, evaluating, and formulating agency policies and practices. The email reflects the give-and-take of the editorial and decision process and contains the thoughts, recommendations, and opinions of CRCL employees about legal and policy matters and proposed language to inform the public. The discussions also reflect the exercise in judgment of CRCL personnel as to the relevance and importance of facts, issues, and advice that should be taken into consideration when evaluating the recommendations, proposals, and opinions contained therein. The CRCL employees who prepared the draft documents did not have final decision-making authority on the public-facing language relative to DHS TRIP and the communications do not represent a final DHS position. For the above reasons the drafts are pre-decisional and deliberative. |
| | DHS withheld the records to avoid the potential harm that could result if the material became public. DHS has an interest in encouraging open and frank discussions between its offices and components; it cannot fulfill their missions absent the exchange of information, ideas, and candid opinions. Releasing the drafts would expose the internal deliberations of CRCL, impede the frank and candid exchange of ideas and information within the agency, reveal the reasoning and recommendations of CRCL personnel, and ultimately have a chilling effect on intra-agency deliberations. Moreover, the release of the communications could pose a substantial risk of confusing the public by disclosing positions and language that was not adopted by the agency or incorporated into the DHS TRIP materials. |

22

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.

CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| 1873 | **Legal Memorandum from the DHS General Counsel to the DHS Secretary**<br><br>**5 U.S.C. 552 (b)(5)**<br>This memorandum from the DHS General Counsel provides legal advice to the Secretary for his consideration. The memorandum was antecedent to the making of any final agency decision and is therefore pre-decisional. The memorandum contains the advisory opinions, conclusions, and recommendations of the General Counsel for the Secretary's consideration and reflects the give-and-take of the consultative process wherein the General Counsel discussed and weighed the merits of various positions. For these reasons the memorandum is deliberative. Disclosure of the memorandum would discourage the open and frank exchange of ideas between agency personnel resulting in a chilling effect on intra/inter-agency communications. In this instance, because the record contains legal advice, its release could dissuade agency officials from seeking the views of agency counsel. For the above reasons, the memorandum was withheld under the deliberative process privilege.<br><br>Because the memorandum reflects communications between the client and counsel securing legal advice or services, the document is being withheld under the attorney-client privilege. The memorandum was created with information obtained through discussions between agency counsel and agency clients to assist in provisioning information to the Secretary. The attorney-client privilege also protects communications from attorneys to their clients that rest on confidential information obtained from the client. In the governmental context, the client may be the agency and the attorney may be an agency lawyer. This privilege applies to facts that are divulged to the attorney and encompasses the opinion given by the attorney based upon, and thus reflecting, those facts. Attorney-client communications are shielded from disclosure to encourage a full and frank discussion between the client and the legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel.<br><br>Furthermore, the attorney work-product privilege applies to the document. This privilege protects from disclosure attorney-work product material, including notes, questions, litigation strategy and thoughts, by an agency attorney. The withheld information was created by agency counsel in anticipation of and in preparation for ongoing and future litigation regarding the search of electronic devices at the border and is therefore exempt from disclosure so as to protect the adversarial trial process by insulating the attorneys' preparation from scrutiny. |
| 1904-1905<br>1925 | **Email Communication Between the CRCL Officer and CBP Commissioner**<br><br>**5 U.S.C. 552 (b)(5)**<br>This email, part of an ongoing deliberative process between agency offices and components, is a communication between the CRCL Officer and the CBP Commissioner regarding recommendations CRCL had proposed regarding the search of electronic devices at the border and whether those recommendations would be accepted and adopt by CBP. The email communication reflects the thoughts, |

23

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| | recommendations, and opinions of the Officer. The Officer did not have the decision-making authority to compel CBP to adopt the recommendations and proposals contained therein and the communication does not represent a final DHS policy or opinion. For the above reasons the email communication is pre-decisional and deliberative. |
| | DHS withheld the email communication to avoid the potential harm that could result if the material became public. DHS has an interest in encouraging open and frank discussions between its offices and components; it cannot fulfill their missions absent the exchange of information, ideas, and candid opinions. Releasing the email would expose the internal deliberations between CRCL and CBP, impede the frank and candid exchange of ideas and information within the agency, reveal the reasoning and recommendations of CRCL personnel, and ultimately have a chilling effect on intra/inter-agency deliberations. |
| 595-596 | **Civil Rights and Civil Liberty Complaints Submitted by the Public to CRCL** |
| 2156 | |
| 2158-2160 | **5 U.S.C. 552(b)(6) & (b)(7)(C)** |
| 2164-2167 | From these records, which were created, gathered, or used for law enforcement purposes, DHS redacted the personally identifiable |
| 2196-2210 | information of government employees and private citizens referenced in the records. More specifically, DHS redacted the names, email |
| 2217-2220 | and physical addresses, complaint numbers, phone and facsimile numbers, alien numbers, and dates of birth of DHS employees and |
| 2224-2228 | private citizens. Disclosure of this personally identifiable information could reasonably be expected to constitute an unwarranted |
| 2233-2247 | invasion of personal privacy. These individuals have a privacy interest in controlling information that concerns them and in not being |
| 2260 | subjected to interference, harassment, embarrassment, or annoyance while conducting official duties or in their private lives. The |
| 2272 | disclosure of this personally identifiable information serves no public benefit and would not assist the public in understanding how the |
| 2282 | agency is carrying out its statutory responsibilities. Even if a public interest did exist, the privacy rights of the individuals outweighs that |
| 2286 | public interest. For these reasons the information was withheld per 5 U.S.C. 552 (b)(7)(C). |
| 2290 | |
| 2292-2294 | The withholdings described above are also justified under 5 U.S.C. 552 (b)(6). The personally identifiable information pertaining to low-|
| 2299-2300 | level agency personnel and private citizens contained within personnel, medical, and similar files, would constitute a clearly unwarranted |
| 2303-2305 | invasion of personal privacy. These individuals have a substantial privacy interest in controlling information that concerns them and in |
| 2313 | not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties and in their private lives. |
| 2315 | The information would in no way assist the public in understanding how the agency is carrying out its statutory responsibilities and |
| 2321 | Plaintiff has not established the existence of any public interest. Because the privacy interest in the personally identifiable information |
| 2339-2345 | outweighs any minimal public interest that could possibly exist the information may be withheld under 5 U.S.C. 552 (b)(6). |
| 2359-2362 | |
| 2377 | |
| 2379-2380 | |
| 2385 | |
| 2387-2388 | |

24

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| 2403-2409 | |
| 2411-2412 | |
| 2414-2415 | |
| 2430-2431 | |
| 2433-2434 | |
| 2438-2439 | |
| 2441-2442 | |
| 2453-2454 | |
| 2456-2457 | |
| 2463 | |
| 2469-2473 | |
| 2488-2489 | |
| 2505 | |
| 2508 | |
| 2547-25548? | |
| 2596-2598 | |
| 2600 | |
| 2659-2666 | |
| 2686-2690 | |
| 2692-2694 | |
| 2706-2710 | |
| 2719-2722 | |
| 2726 | |
| 2728 | |
| 2732 | |
| 2734-2735 | |
| 2738-2743 | |
| 2755-2756 | |
| 2761 | |
| 2769-2770 | |
| 2783-2784 | |
| 2788 | |
| 2791-2792 | |
| 2794-2796 | |

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| 2798-2801 | |
| 2810-2817 | |
| 2820-2821 | |
| 2823 | |
| 2827-2828 | |
| 2830 | |
| 2836-2855 | |
| 2857-2858 | |
| 2860 | |
| 2866 | |
| 2868-2869 | |
| 2872-2873 | |
| 2875-2880 | |
| 2882-2903 | |
| 2907-2911 | |
| 2913 | |
| 2931 | |
| 2933-2934 | |
| 2937-2939 | |
| 2945-2948 | |
| 2950-2951 | |
| 2953-2954 | |
| 2956-2957 | |
| 2959-2962 | |
| 2964-2972 | |
| 2974-2976 | |
| 2978 | |
| 2980-2982 | |
| 2988-2994 | |
| 2999-3000 | |
| 3002 | |
| 3006-3010 | |
| 3014-3022 | |
| 3037-3038 | |

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.

CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| 3043-3057 3059 3062-3063 3065-3074 3077-3088 3091-3096 3099-3109 3111-3114 3121-3159 3162-3163 3166-3168 3171-3176 3178-3180 3182 3184-3188 3190 3192 3195-3197 3199-3202 3204-3205 3212-3230 3236-3249 3251-3261 3263-3267 3269-3275 3278-3289 | |
| 1926-1927 1930-1931 1968-1971 2182-2183 2193-2194 2257 2265 2269 | **Communications between CRCL and Complainants Acknowledging Receipt of Complaints and Providing or Requesting Additional Information** <br><br> **5 U.S.C. 552(b)(6) & (b)(7)(C)** <br> From these records, which were created, gathered, or used for law enforcement purposes, DHS redacted the personally identifiable information of government employees and private citizens referenced in the records. More specifically, DHS redacted the names, email and physical addresses, complaint numbers, phone and facsimile numbers, alien numbers, and dates of birth of DHS employees and private citizens. Disclosure of this personally identifiable information could reasonably be expected to constitute an unwarranted |

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.

CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| 2274 2306 2309 2374 2394-2395 2400 2448 2466 2482 2485 2501-2502 2606-2607 2673 2682-2683 2701 2711-2712 2715-2716 2723 2744-2745 2747 2749-2750 2762-2763 2917-2918 | invasion of personal privacy. These individuals have a privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties or in their private lives. The disclosure of this personally identifiable information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Even if a public interest did exist, the privacy rights of the individuals outweighs that public interest. For these reasons the information was withheld per 5 U.S.C. 552 (b)(7)(C). The withholdings described above are also justified under 5 U.S.C. 552 (b)(6). The personally identifiable information pertaining to low-level agency personnel and private citizens contained within personnel, medical, and similar files, would constitute a clearly unwarranted invasion of personal privacy. These individuals have a substantial privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties and in their private lives. The information would in no way assist the public in understanding how the agency is carrying out its statutory responsibilities and Plaintiff has not established the existence of any public interest. Because the privacy interest in the personally identifiable information outweighs any minimal public interest that could possibly exist the information may be withheld under 5 U.S.C. 552 (b)(6). |
| 1932-1940 2757-2758 2765-2766 2781 2785-2786 2807-2808 2864 2904-2905 2941 2943 2996-2997 | **Notifications from CRCL to Complainants that Complaints Would Not be Investigated** **5 U.S.C. 552(b)(6) & (b)(7)(C)** From these records, which were created, gathered, or used for law enforcement purposes, DHS redacted the personally identifiable information of government employees and private citizens referenced in the records. More specifically, DHS redacted the names, email and physical addresses, complaint numbers, phone and facsimile numbers, alien numbers, and dates of birth of DHS employees and private citizens. Disclosure of this personally identifiable information could reasonably be expected to constitute an unwarranted invasion of personal privacy. These individuals have a privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties or in their private lives. The disclosure of this personally identifiable information serves no public benefit and would not assist the public in understanding how the |

28

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| 3011-3012<br>3034-3035<br>3040<br>3210<br>3231-3232 | agency is carrying out its statutory responsibilities. Even if a public interest did exist, the privacy rights of the individuals outweighs that public interest. For these reasons the information was withheld per 5 U.S.C. 552 (b)(7)(C).<br><br>The withholdings described above are also justified under 5 U.S.C. 552 (b)(6). The personally identifiable information pertaining to low-level agency personnel and private citizens contained within personnel, medical, and similar files, would constitute a clearly unwarranted invasion of personal privacy. These individuals have a substantial privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties and in their private lives. The information would in no way assist the public in understanding how the agency is carrying out its statutory responsibilities and Plaintiff has not established the existence of any public interest. Because the privacy interest in the personally identifiable information outweighs any minimal public interest that could possibly exist the information may be withheld under 5 U.S.C. 552 (b)(6). |
| 2263<br>2499<br>2479-2480<br>2803-2806 | **Notifications from CRCL to Complainants that Complaints Were Referred to Components for Investigation**<br><br>**5 U.S.C. 552(b)(6) & (b)(7)(C)**<br>From these records, which were created, gathered, or used for law enforcement purposes, DHS redacted the personally identifiable information of government employees and private citizens referenced in the records. More specifically, DHS redacted the names, email and physical addresses, complaint numbers, phone and facsimile numbers, alien numbers, and dates of birth of DHS employees and private citizens. Disclosure of this personally identifiable information could reasonably be expected to constitute an unwarranted invasion of personal privacy. These individuals have a privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties or in their private lives. The disclosure of this personally identifiable information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Even if a public interest did exist, the privacy rights of the individuals outweighs that public interest. For these reasons the information was withheld per 5 U.S.C. 552 (b)(7)(C).<br><br>The withholdings described above are also justified under 5 U.S.C. 552 (b)(6). The personally identifiable information pertaining to low-level agency personnel and private citizens contained within personnel, medical, and similar files, would constitute a clearly unwarranted invasion of personal privacy. These individuals have a substantial privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties and in their private lives. The information would in no way assist the public in understanding how the agency is carrying out its statutory responsibilities and Plaintiff has not established the existence of any public interest. Because the privacy interest in the personally identifiable information outweighs any minimal public interest that could possibly exist the information may be withheld under 5 U.S.C. 552 (b)(6).<br><br>**5 U.S.C. 552 (b)(5)**<br>From the email communication on pages 2804-2805 DHS redacted discussions between CRCL employees on how best to respond to a complaint received from the public. The email reflects the give-and-take of the editorial and decision process and contains the thoughts, |

29

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| | recommendations, and opinions of CRCL employees on proposed response language. For this reason, the communications are pre-decisional and deliberative. |
| | DHS withheld the records to avoid the potential harm that could result if the material became public. DHS has an interest in encouraging open and frank discussions between its offices and components; it cannot fulfill their missions absent the exchange of information, ideas, and candid opinions. Releasing the communications would expose the internal deliberations of CRCL, impede the frank and candid exchange of ideas and information within the agency, reveal the reasoning and recommendations of CRCL personnel, and ultimately have a chilling effect on intra-agency deliberations. Moreover, the release of the communications could pose a substantial risk of confusing the public by disclosing language that was not adopted by the agency or incorporated into written response to the complainant. |
| 2171-2173 2188-2189 2250-2253 2261-2262 2277-2279 2288-2289 2331-2334 2396-2398 2422-2424 2497-2498 2563-2564 2654-2655 2676-2679 | **CRCL Authored Forms Titled *Complaint Closure Without Recommendations*** <br><br> **5 U.S.C. 552(b)(6) & (b)(7)(C)** <br> From these records, which were created, gathered, or used for law enforcement purposes, DHS redacted the personally identifiable information of government employees and private citizens referenced in the records. More specifically, DHS redacted the names, email and physical addresses, complaint numbers, phone and facsimile numbers, alien numbers, and dates of birth of DHS employees and private citizens. Disclosure of this personally identifiable information could reasonably be expected to constitute an unwarranted invasion of personal privacy. These individuals have a privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties or in their private lives. The disclosure of this personally identifiable information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Even if a public interest did exist, the privacy rights of the individuals outweighs that public interest. For these reasons the information was withheld per 5 U.S.C. 552 (b)(7)(C). <br><br> The withholdings described above are also justified under 5 U.S.C. 552 (b)(6). The personally identifiable information pertaining to low-level agency personnel and private citizens contained within personnel, medical, and similar files, would constitute a clearly unwarranted invasion of personal privacy. These individuals have a substantial privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties and in their private lives. The information would in no way assist the public in understanding how the agency is carrying out its statutory responsibilities and Plaintiff has not established the existence of any public interest. Because the privacy interest in the personally identifiable information outweighs any minimal public interest that could possibly exist the information may be withheld under 5 U.S.C. 552 (b)(6). |
| 2168-2169 2187 2248 2310-2311 2420 | **CRCL Authored Close Letters to Complainants** <br><br> **5 U.S.C. 552(b)(6) & (b)(7)(C)** <br> From these records, which were created, gathered, or used for law enforcement purposes, DHS redacted the personally identifiable information of government employees and private citizens referenced in the records. More specifically, DHS redacted the names, email |

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.

CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| 2461-2462 2495-2496 2699-2700 | and physical addresses, complaint numbers, phone and facsimile numbers, alien numbers, and dates of birth of DHS employees and private citizens.  Disclosure of this personally identifiable information could reasonably be expected to constitute an unwarranted invasion of personal privacy.  These individuals have a privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties or in their private lives.  The disclosure of this personally identifiable information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.  Even if a public interest did exist, the privacy rights of the individuals outweighs that public interest.  For these reasons the information was withheld per 5 U.S.C. 552 (b)(7)(C). |
| | The withholdings described above are also justified under 5 U.S.C. 552 (b)(6).  The personally identifiable information pertaining to low-level agency personnel and private citizens contained within personnel, medical, and similar files, would constitute a clearly unwarranted invasion of personal privacy.  These individuals have a substantial privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties and in their private lives.  The information would in no way assist the public in understanding how the agency is carrying out its statutory responsibilities and Plaintiff has not established the existence of any public interest.  Because the privacy interest in the personally identifiable information outweighs any minimal public interest that could possibly exist the information may be withheld under 5 U.S.C. 552 (b)(6). |
| | **Email Communications Between the DHS Office of the General Counsel and the CBP Office of Chief Counsel** |
| 2267-2268 2475-2478 | **5 U.S.C. 552 (b)(5)**

This record is an internal memorandum from the DHS Office of the General Counsel to the CBP Office of Chief Counsel regarding the referral of a complaint to CBP for investigation.  The memorandum was sent during the deliberative and consultative process of deciding how the agency should proceed with investigatory efforts.  The memorandum was antecedent to a final agency decision on how to handle the referral.  For this reason, the record is pre-decisional.  The memorandum contains the advisory opinions, conclusions, and recommendations of OGC attorneys on behalf of their client CRCL, for the consideration by CBP attorneys and their client, the CBP Office of Internal Affairs, and reflects the give-and-take of the consultative process and the weighing of the merits of various positions.  For these reasons the materials are deliberative.  Disclosure of the memorandum would discourage the open and frank exchange of ideas between agency personnel resulting in a chilling effect on intra/inter-agency communications.  In this instance, because the record contains legal advice, its release could dissuade agency officials from seeking the views of agency counsel.  For the above reasons, the memorandum was withheld under the deliberative process privilege.

Because the memorandum reflects communications between the client and counsel securing legal advice or services, the document is being withheld under the attorney-client privilege.  The memorandum was created with information obtained through discussions between agency counsel and agency clients.  The attorney-client privilege also protects communications from attorneys to their clients that rest on confidential information obtained from the client.  In the governmental context, the client may be the agency and the attorney may be an agency lawyer.  This privilege applies to facts that are divulged to the attorney and encompasses the opinion given by the attorney based upon, and thus reflecting, those facts.  Attorney-client communications are shielded from disclosure to encourage a |

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| | full and frank discussion between the client and the legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel.

Furthermore, the attorney work-product privilege applies to the document. This privilege protects from disclosure attorney-work product material, including notes, questions, litigation strategy and thoughts, by an agency attorney. The withheld information was created by agency counsel in anticipation of and in preparation for ongoing and future litigation regarding the search of electronic devices at the border and is therefore exempt from disclosure so as to protect the adversarial trial process by insulating the attorneys' preparation from scrutiny. |
| 2211-2216 | **DHS TRIP Applications**

**5 U.S.C. 552(b)(6) & (b)(7)(C)**
From these records, which were created, gathered, or used for law enforcement purposes, DHS redacted the personally identifiable information of government employees and private citizens referenced in the records. More specifically, DHS redacted the names, physical addresses, phone numbers, email addresses, passport numbers, birth certificate numbers, driver's license numbers, redress control numbers, and signatures of DHS employees and private citizens. Disclosure of this personally identifiable information could reasonably be expected to constitute an unwarranted invasion of personal privacy. These individuals have a privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties or in their private lives. The disclosure of this personally identifiable information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Even if a public interest did exist, the privacy rights of the individuals outweighs that public interest. For these reasons the information was withheld per 5 U.S.C. 552 (b)(7)(C).

The withholdings described above are also justified under 5 U.S.C. 552 (b)(6). The personally identifiable information pertaining to low-level agency personnel and private citizens contained within personnel, medical, and similar files, would constitute a clearly unwarranted invasion of personal privacy. These individuals have a substantial privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties and in their private lives. The information would in no way assist the public in understanding how the agency is carrying out its statutory responsibilities and Plaintiff has not established the existence of any public interest. Because the privacy interest in the personally identifiable information outweighs any minimal public interest that could possibly exist the information may be withheld under 5 U.S.C. 552 (b)(6). |
| 2190-2192 2254-2256 2280-2281 | **CRCL Requests to Components for Information and Documents**

**5 U.S.C. 552(b)(6) & (b)(7)(C)** |

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| | From these records, which were created, gathered, or used for law enforcement purposes, DHS redacted the personally identifiable information of government employees and private citizens referenced in the records. More specifically, DHS redacted the names, signatures, email and physical addresses, phone and facsimile numbers, alien numbers, and dates of birth of DHS employees and private citizens. Disclosure of this personally identifiable information could reasonably be expected to constitute an unwarranted invasion of personal privacy. These individuals have a privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties or in their private lives. The disclosure of this personally identifiable information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Even if a public interest did exist, the privacy rights of the individuals outweighs that public interest. For these reasons the information was withheld per 5 U.S.C. 552 (b)(7)(C).

The withholdings described above are also justified under 5 U.S.C. 552 (b)(6). The personally identifiable information pertaining to low-level agency personnel and private citizens contained within personnel, medical, and similar files, would constitute a clearly unwarranted invasion of personal privacy. These individuals have a substantial privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties and in their private lives. The information would in no way assist the public in understanding how the agency is carrying out its statutory responsibilities and Plaintiff has not established the existence of any public interest. Because the privacy interest in the personally identifiable information outweighs any minimal public interest that could possibly exist the information may be withheld under 5 U.S.C. 552 (b)(6). |
| 2177-2179 | **DOJ Notices of Referral of Complaint for Appropriate Action Sent to CRCL**

**5 U.S.C. 552(b)(6) & (b)(7)(C)**

From these records, which were created, gathered, or used for law enforcement purposes, DHS redacted the personally identifiable information of government employees and private citizens referenced in the records. More specifically, DHS redacted the names, signatures, email and physical addresses, phone and facsimile numbers, alien numbers, and dates of birth of DHS employees and private citizens. Disclosure of this personally identifiable information could reasonably be expected to constitute an unwarranted invasion of personal privacy. These individuals have a privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties or in their private lives. The disclosure of this personally identifiable information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Even if a public interest did exist, the privacy rights of the individuals outweighs that public interest. For these reasons the information was withheld per 5 U.S.C. 552 (b)(7)(C).

The withholdings described above are also justified under 5 U.S.C. 552 (b)(6). The personally identifiable information pertaining to low-level agency personnel and private citizens contained within personnel, medical, and similar files, would constitute a clearly unwarranted invasion of personal privacy. These individuals have a substantial privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties and in their private lives. |

33

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| 1928<br>1941-1942<br>2174-2175<br>2185-2186<br>2230<br>2275<br>2324-2325<br>2330<br>2347-2349<br>2351-2352<br>2368-2371<br>2373<br>2392-2393<br>2418-2419<br>2465<br>2509-2511<br>2558-2561<br>2610-2613<br>2648<br>2650<br>2652<br>2667-2669<br>2695-2697<br>2759-2760<br>2772-2775 | **Email Communications between OIG and CRCL**<br><br>**5 U.S.C. 552(b)(6) & (b)(7)(C)**<br>From these records, which were created, gathered, or used for law enforcement purposes, DHS redacted the personally identifiable information of government employees and private citizens referenced in the records. More specifically, DHS redacted the names, signatures, email and physical addresses, phone and facsimile numbers, alien numbers, and dates of birth of DHS employees and private citizens. Disclosure of this personally identifiable information could reasonably be expected to constitute an unwarranted invasion of personal privacy. These individuals have a privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties or in their private lives. The disclosure of this personally identifiable information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Even if a public interest did exist, the privacy rights of the individuals outweighs that public interest. For these reasons the information was withheld per 5 U.S.C. 552 (b)(7)(C).<br><br>The withholdings described above are also justified under 5 U.S.C. 552 (b)(6). The personally identifiable information pertaining to low-level agency personnel and private citizens contained within personnel, medical, and similar files, would constitute a clearly unwarranted invasion of personal privacy. These individuals have a substantial privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties and in their private lives. The information would in no way assist the public in understanding how the agency is carrying out its statutory responsibilities and Plaintiff has not established the existence of any public interest. Because the privacy interest in the personally identifiable information outweighs any minimal public interest that could possibly exist the information may be withheld under 5 U.S.C. 552 (b)(6). |
| 1943-1967<br>2267-2268<br>2322<br>2328<br>2336-2337<br>2357-2358 | **Email Communications Between CRCL and CBP/ICE Requesting or Providing Information**<br><br>**5 U.S.C. 552(b)(6) & (b)(7)(C)**<br>From these records, which were created, gathered, or used for law enforcement purposes, DHS redacted the personally identifiable information of government employees and private citizens referenced in the records. More specifically, DHS redacted the names, signatures, email and physical addresses, phone and facsimile numbers, alien numbers, and dates of birth of DHS employees and private |

34

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.

CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| 2426-2427 2446-2447 2475-2478 2481 2492 2492-2494 2506-2507 2513-2514 2566-2568 2570-2575 2671-2672 2680-2681 2704-2705 2737 2771 2776-2777 2779 2870-2871 2874 2881 2955 2979 2983 2987 2995 3193 3058 3061 3064 3075 3089 3097 3105 3110 | citizens.  Disclosure of this personally identifiable information could reasonably be expected to constitute an unwarranted invasion of personal privacy.  These individuals have a privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties or in their private lives.  The disclosure of this personally identifiable information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.  Even if a public interest did exist, the privacy rights of the individuals outweighs that public interest.  For these reasons the information was withheld per 5 U.S.C. 552 (b)(7)(C).

The withholdings described above are also justified under 5 U.S.C. 552 (b)(6).  The personally identifiable information pertaining to low-level agency personnel and private citizens contained within personnel, medical, and similar files, would constitute a clearly unwarranted invasion of personal privacy.  These individuals have a substantial privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance while conducting official duties and in their private lives.  The information would in no way assist the public in understanding how the agency is carrying out its statutory responsibilities and Plaintiff has not established the existence of any public interest.  Because the privacy interest in the personally identifiable information outweighs any minimal public interest that could possibly exist the information may be withheld under 5 U.S.C. 552 (b)(6). |

35

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.
CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| 3115<br>3117<br>3119<br>3160<br>3161<br>3277 | |
| 2428-2429<br>2451-2452<br>2818-2819 | **CRCL Authored Emails Requesting Translation Services**<br><br>**5 U.S.C. 552(b)(6) & (b)(7)(C)**<br><br>DHS redacted the names, telephone numbers, and email addresses of DHS employees and private citizens. Disclosure of this information, which pertains to low-level agency personnel and members of the public, and which is contained within personnel, medical, and similar files, would constitute a clearly unwarranted invasion of personal privacy. These individuals have a substantial privacy interest in controlling information that concerns them and in not being subjected to interference, harassment, embarrassment, or annoyance in their private lives or while conducting official duties. The disclosure of this personally identifiable information serves no public benefit and would in no way assist the public in understanding how the agency is carrying out its statutory responsibilities. Moreover, plaintiff has not established that disclosure of the personally identifiable information would serve a public interest. Consequently, the privacy interest in the personally identifiable information outweighs any minimal public interest that could possibly exist in disclosure. For these reasons the information was withheld per 5 U.S.C. 552 (b)(6). |
| 159<br>2261<br>2277<br>2333<br>2397<br>2398<br>2564<br>2784<br>2817<br>2866 | **Records Documenting Inspections and Law Enforcement Activities**<br><br>**5 U.S.C. 552 (b)(7)(E)**<br><br>From these law enforcement records, DHS redacted information that, either standing alone or combined with other available information, would disclose techniques, procedures, or guidelines for law enforcement investigations and risk circumvention of the law by revealing non-public law enforcement techniques, capabilities or vulnerabilities, the circumstances in which such techniques, capabilities, or vulnerabilities may be encountered, and/or the nature of the law enforcement interest in particular circumstances. Redacted information includes: unique record numbers/codes, descriptions of the nature of the law enforcement interest in an individual, descriptions of the particular inspection techniques utilized, identification of specialized law enforcement units and third-party agencies, descriptions of the circumstances in which CBP may coordinate inspections with specialized law enforcement units and third-party agencies, descriptions of pertinent information uncovered during the course of an inspection, criteria for utilizing particular inspection methods, information regarding law enforcement alerts or lookouts, information regarding available law enforcement capabilities or techniques, descriptions of the handling, maintenance and storage of law enforcement or national security information obtained from a border inspection, and descriptions of the law enforcement records consulted or created as part of certain inspections. |

36

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY v. U.S DEPARTMENT OF HOMELAND SECURITY, et al.

CIVIL ACTION NO. 17-548

| BATES NUMBERS (DHS-001-585-)* | BRIEF DESCRIPTION OF RECORD, REDACTED INFORMATION, STATUTORY EXEMPTION, AND JUSTIFICATION |
|---|---|
| | DHS also redacted information that, when aggregated, could reveal inspection trends that would disclose techniques, procedures, or guidelines for law enforcement investigations and risk circumvention of the law. For example, redacted information could reveal circumstances or locations where certain inspection techniques or types of investigations are more common or where certain vulnerabilities exist, allowing potential adversaries to deduce the nature of CBP's law enforcement interest in certain inspections, employ countermeasures to conceal harmful or illicit material, and/or target locations where they may face a decreased risk of detection (a practice known as "port shopping"). Redacted information includes: port locations/codes, reason for search, and descriptions of the particular inspection techniques utilized. |
| | Third, DHS redacted information that, either standing alone or when combined with other information, would disclose techniques or procedures for law enforcement investigations and risk circumvention of the law by enabling access to and/or manipulation of law enforcement databases and information. For example, disclosure of this information could enable unauthorized users to view sensitive, non-public law enforcement information and to navigate computer systems and alter, add, or delete information. Redacted information includes: unique record numbers, computer system codes/commands, network addresses and URLs. |
| | Finally, DHS redacted subject-specific information that would disclose techniques, procedures, or guidelines for law enforcement investigations and risk circumvention of the law by revealing investigatory details, by forming a basis for comparison for the handling of different inspections, and/or by revealing the nature of the law enforcement interest in particular individual(s). Redacted information includes: reason for search, the type of search, whether the individual was notified of the search, the reason why the individual was or was not notified, information regarding the nature of the law enforcement interest in a particular inspection, status of the inspection or investigation, information supplied by other government agencies, information regarding law enforcement alerts and lookouts, and results of the search. |