*Knight First Amend. Inst. at Columbia Univ. v. Dep't of Homeland Sec.*
No. 1:17-cv-00548-TSC

Defendants' Motion for Summary Judgment

Ex. F

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY,** )<br>)<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**DEPARTMENT OF HOMELAND SECURITY,** *et al.,* )<br>)<br>)<br>**Defendants.** )<br> ) | No. 1:17-cv-00548-TSC |

**DECLARATION OF TONI FUENTES**

**I.    INTRODUCTION**

I, Toni Fuentes, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.    I am the Deputy Officer of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act ("FOIA") Office.  I have held this position since September 30, 2018 and am the ICE official immediately responsible for supervising ICE responses to requests for records under the Freedom of Information Act, 5 U.S.C. § 552 (the FOIA), the Privacy Act, 5 U.S.C. § 552a (the Privacy Act), and other applicable records access statutes and regulations.  Prior to this position, I have held numerous FOIA positions over the past 20 years to include: FOIA Director for the National Protection and Programs Directorate ("NPPD") at the U.S. Department of Homeland Security ("DHS"); Government Information Specialist for Department of Justice, U.S. Marshal's Service, Office of General Counsel; Government Information Specialist for the Department of Defense, Office of the Inspector General's FOIA Office; FOIA Officer, Paralegal Specialist for Department of the Navy, NAVAIR/NAWCAD's Office of Counsel; Management and Program Analyst for Department of

Homeland Security, Customs and Border Protection's FOIA Office; and FOIA Paralegal Specialist for
the National Aeronautics and Space Administration's Office of Chief Counsel.

2.     The ICE FOIA Office has been responsible for processing and responding to all Freedom
of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received by
ICE since January 17, 2010.

3.     My official duties and responsibilities include the general management, oversight, and
supervision of the ICE FOIA Office.  The ICE FOIA Office is responsible for the receipt, processing,
and response to all Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. §
552a, requests received at ICE.  I manage and supervise a staff of ICE FOIA Paralegal Specialists, who
report to me regarding the processing of FOIA and Privacy Act requests received by ICE.

4.     The statements contained in this declaration are based upon my personal knowledge, my
review of records kept by ICE in the ordinary course of business, and information provided to me by
other ICE employees in the course of my official duties. I am making this declaration in support of
ICE's Motion for Summary Judgment. This declaration explains the basis for withholding information
pursuant to Exemptions (b)(5), (b)(6), (b)(7)(C) and (b)(7)(E) of the FOIA.

## II.    PROCEDURAL HISTORY OF THE PLAINTIFF'S FOIA REQUEST AND THE INSTANT LITIGATION

5.     This lawsuit stems from a FOIA request submitted by Plaintiff to ICE on March 15,
2017, seeking all records pertaining to the search, detention, retention, or sharing of electronic devices
or information of individuals at the border since FY 2012.  *A true and correct copy of the FOIA request
is attached hereto as Exhibit A.*

6.     By an email dated March 28, 2017, the ICE FOIA Office acknowledged Plaintiff's FOIA
request and assigned it an ICE FOIA Requester Number 2017-ICFO-21227.  *A true and correct copy of
this correspondence is attached hereto as Exhibit B.*

7.     Before ICE could respond to Plaintiff's March 15, 2017 FOIA request, which was received by ICE on March 28, 2017, Plaintiff filed the current lawsuit on March 27, 2017.

8.     Plaintiff filed an Amended Complaint on April 19, 2017. The Government filed its answer on May 3, 2019.

### III.     INFORMATION REGARDING ICE'S STANDARD PROCEDURE FOR INITIATING SEARCHES IN RESPONSE TO FOIA REQUESTS

9.     When the ICE FOIA Office receives a FOIA request, the intake staff evaluates it to determine if it is a proper FOIA request per DHS FOIA regulation 6 C.F.R. § 5.3. If it is a proper request, it is assigned a case tracking number.

10.     If a FOIA request does not reasonably describe the records sought, the ICE FOIA Office will seek clarification from the requestor by post, e-mail, or telephone. If the requested information is under the purview of a DHS component other than ICE, the ICE FOIA Office will refer the request to the appropriate DHS component for processing and a direct response to the requestor. If the FOIA request seeks records under the purview of a government agency other than DHS, ICE FOIA informs the requester to contact the other government agency directly and ICE administratively closes the FOIA request.

11.     FOIA requests received before October 1, 2014 were entered into the ICE FOIA Request Tracking System. FOIA requests received on or after October 1, 2014 are entered into the FOIAXpress case tracking system.

12.     Based upon a requestor's description of the records being sought and ICE FOIA's knowledge of the missions of the various program offices, the ICE FOIA Office identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches.

13.     ICE records are maintained by leadership offices and/or within ICE directorates, namely,

Enforcement and Removal Operations (ERO), Homeland Security Investigations (HSI), and/or

Management and Administration (M&A). Program offices within the leadership office and the ICE

directorates are staffed with a designated point of contact (POC) who is the primary person responsible

for communications between that program office and the ICE FOIA Office. Each POC is a person with

detailed knowledge of the operations of their particular program office.

14.     When the ICE FOIA Office receives a FOIA request, its first step is to identify, based on

its experience and knowledge of ICE's program offices, which program offices within ICE, if any, are

likely to possess records responsive to that request and to initiate searches within those program offices.

Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides

the office POCs with a copy of the FOIA request and instructs them to conduct a search for responsive

records. The POCs then review the FOIA request, along with any case-specific instructions that may

have been provided by the ICE FOIA Office and based on their experience and knowledge of the

program offices' practices and activities, forward the request and instructions to the individual

employee(s) or component office(s) within the program office that are likely to have responsive

records.

15.     Per the ICE FOIA Office's instructions, the individual(s) and component office(s) are

directed to conduct searches of their file systems, including paper files and electronic files, which, in

their judgment, based on their knowledge of the manner in which they routinely keep records, would

likely be the files to contain responsive records.

16.     Once those searches are completed, the individuals and component offices provide any

potentially responsive records to their program office's POC, who in turn provides the records to the

ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness and

appropriate withholdings.

17.     ICE employees and program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records.  ICE employees may store electronic records on their individual computer hard drives, their program office's shared drive (if the office uses one), DVDs, CDs, or USB storage devices.  The determination of whether or not these electronic locations need to be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which the employee/office maintains the relevant files.

18.     Additionally, ICE employees use the Microsoft Outlook email system.  Each ICE employee stores his or her files in the way that works best for that particular employee.  ICE employees use various methods to store their Microsoft Outlook email files: some archive their files monthly, without separating by subject; others archive their email by topic or by program; still others may create PST files of their emails and store them on their hard drive or shared drive.  Individual employees archive their own emails according to their individual work-related needs.  Individual archives of emails are searched by the individual employees based on their knowledge of where they are likely to find responsive records.

19.     Plaintiff has stated that the issues with respect to ICE that it intends to contest on summary judgment are the validity of ICE's withholdings under FOIA Exemptions 552 § (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(A).  ICE has not made any withholdings under FOIA Exemption 552 § (b)(7)(A), however.

## III.         ORGANIZATION OF THE VAUGHN INDEX

20.     Pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), a Vaughn index also accompanies this declaration, providing detailed descriptions of the redactions applied to the records

produced to Plaintiff and correlating the redactions to the exemption being applied.  The Vaughn index is attached hereto as *Exhibit C*.

21.    The Vaughn index is in a table format.  The first column contains the bates number prefix for the records produced.  The second column contains the bates stamp suffix (page numbers) of the responsive records.  The third column describes the degree of withholdings taken on the documents. In this case, all withholdings are partial.  The fourth column describes the redactions codes, which are citations to the sections of the FOIA applicable to the withholdings.  The fifth column describes the underlying records and provides justifications for the asserted exemptions.

22.    The Vaughn index encompasses the records identified by Plaintiff, which were produced by ICE.  The records in the Vaughn index are from the Office of Homeland Security Investigations, (HSI) and are grouped according to the category of the records.

23.    The ICE HSI is responsible for investigating a wide range of domestic and international activities arising from the illegal movement of people and goods into, within and out of the United States.  HSI uses its legal authority to investigate criminal activities such as immigration crime, human rights violations and human smuggling; smuggling of narcotics, weapons and other types of contraband; and financial crimes, cybercrime and export enforcement issues.  In addition to ICE criminal investigations, HSI oversees the agency's international affairs operations and intelligence functions

**IV.          DESCRIPTION OF RECORDS RELEASED TO PLAINTIFF BY ICE**

24.    A completed description of these documents, and the bases for the withholdings of information in them, is detailed in ICE's Vaughn index.  Generally, these records include: Reports of Investigations (ROIs), Excel Spreadsheets, ICE Policies and various HSI Investigative Internal Handbooks.

**FOIA Exemption 5 U.S.C 552 § (b)(5)**

25.     FOIA Exemption (b)(5), 5 U.S.C. § 552(b)(5), protects from disclosure inter- or intra-

agency records that are normally privileged in the civil discovery context.  Pursuant to Exemption

(b)(5), the three most frequently invoked privileges are the deliberative process privilege, the attorney

work-product privilege, and the attorney-client privilege.  ICE has applied the deliberative process

privilege to records that are less than twenty-five (25) years old.

26.     ICE along with United States Coast Guard (USCG), Department of Homeland Security

(DHS) Office of General Counsel (OGC), and Custom Border Patrol (CBP) applied Exemption (b)(5)

to protect from disclosure documents titled "Computer Border Search Discussion Topics" subject to

the deliberative process privilege.[1]  These documents were withheld in full, because they were

prepared by DHS and its components' legal staff to facilitate discussion between DHS and

Department of Justice (DOJ) in developing litigation strategies for ongoing and anticipated litigations

pertaining to  DHS' border search authority.  These documents contained information gathered and

developed by DHS legal staff to respond to questions posed by DOJ regarding DHS's and its

components' exercise of border search authority.

27.     The content of these documents is non-final and pre-decisional in nature because it

contains discussions between ICE, USCG, DHS, and CBP conversing about DHS's border search

authority and how to respond to DOJ's questions.  This type of information is protected by the

deliberative process privilege because the integrity of the deliberative or decision-making process

within the agency such as discussion and recommendations would be compromised by their

disclosure.  Release of these materials would discourage the expression of candid opinions and inhibit

---

[1] The bates numbers associated with these documents are 2017-ICLI-00011 62-64, 67-82.

the free and frank exchange of information and ideas between agency personnel, adversely chilling

intra- and inter-agency communications, and, thereby, adversely impact the quality of internal policy

decisions and the development of ICE agency positions. These materials do not reflect final agency

actions or policy; instead they are a reflection of the issues the authors have determined to be, in their

judgement, worthy of discussion or consideration by colleagues or superiors and their release could

serve to undermine that discussion and consideration and confuse the public. The deliberative

process privilege protects the internal deliberations of the government by exempting

recommendations, analyses, and discussions undertaken to aid agency decision making, specifically

here, discussions in furtherance of making legal and policy decisions and developing litigation

strategy relating to border searches of electronic devices. The privilege also prevents the premature

disclosure of proposed policies, serves to avoid public confusion generated by rationales or decisions

not ultimately adopted by an agency, and maintains the integrity of agency decision-making

processes by encouraging open and candid discussions.

28.      ICE with collaboration with USCG, CBP, DHS also applied Exemption (b)(5) to protect

from disclosure the content of these documents per the attorney-client privilege because they contain

confidential communications between attorneys and their client(s) related to a legal matter for which

the client sought professional legal advice. Communications from clients to their attorneys made for

the purpose of securing legal advice or services, here, responses to questions posed by DOJ to DHS

and its components (including ICE, CBP, DHS, and USCG) in regard to DHS' border search

authorities. These documents were created as a result of, and with information obtained through,

discussions between attorneys and their clients, including agency legal counsel and law enforcement

and/or operational personnel responsible for development, implementing, and enforcing policy

regarding border searches of electronic devices. The privilege also protects communications from

attorneys to their clients if the communications "rest on" confidential information obtained from the client. In the governmental context, the client may be the agency and the attorney may be an agency lawyer. This privilege applies to facts that are divulged to the attorney and encompasses the opinion given by the attorney based upon, and thus reflecting, those facts. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel, including both internal agency counsel and DOJ attorneys.

29.     ICE with collaboration with USCG, CBP, DHS also applied Exemption (b)(5) to protect from disclosure documentation subject to the attorney work-product privilege. This privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Its purpose is to protect the adversarial trial process by insulating the attorney's preparation from scrutiny.

30.     Furthermore, the attorney work-product privilege also applies to the content of these documents. This privilege protects from disclosure attorney-work product material, including notes, questions, litigation strategy and thoughts, by an agency attorney or the agency's litigation counsel. The withheld information was created by agency counsel in anticipation of and in preparation for ongoing and future litigation, specifically, challenges raised to DHS's border search authority, and is exempt from disclosure in order to protect the adversarial trial process by insulating the attorneys' preparation from scrutiny. The documents contain questions and responses prepared for the specific purpose of informing the development of the agencies' litigation strategy.

**FOIA Exemption 5 U.S.C § 552(b)(7) Threshold**

31.     5 U.S.C. § 552(b)(7) establishes a threshold requirement that, to withhold information on the basis of any of its subparts, the records or information must be compiled for law enforcement purposes.  The information for which the ICE FOIA Office asserted Exemption (b)(7) satisfies this threshold requirement.  Pursuant to the Immigration and Nationality Act, codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions.  See 8 U.S.C. § 1103.  ICE is the largest investigative arm of DHS and is responsible for identifying and eliminating vulnerabilities within the nation's borders.  ICE is tasked with preventing any activities that threaten national security and public safety by investigating the people, money, and materials that support illegal enterprises.  The records and information at issue in this matter pertain to ICE's obligation to enforce the immigration laws of the United States by investigating non-U.S. individuals who may be present in the United States illegally, including records of interviews, arrests, bookings, detentions, removals, other related investigations, and investigations of allegations of misconduct.

**FOIA Exemptions 5 U.S.C § (b)(6) & (b)(7)(C)**

32.     FOIA Exemption (b)(6), 5 U.S.C. § 552(b)(6), provides that the FOIA does not apply to matters that are "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

33.     FOIA Exemption (b)(7)(C), 5 U.S.C. § 552(b)(7)(C), protects from disclosure records or information "compiled for law enforcement purposes" if a release of the records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

34.     Specifically, ICE applied Exemption (b)(7)(C), in conjunction with Exemption (b)(6), to protect from disclosure the names, phone numbers, e-mail addresses, addresses, initials, and signatures of Federal law enforcement officers and other government employees and administrative personnel.  In addition, the Exemptions were applied to PII of third-parties, including aliens, family members of aliens, witnesses, passenger names, potential witnesses, and attorneys, such as, signatures, and initials.

35.     By virtue of the positions held by the Federal employees, to include Special Agents, Supervisory Agents, and Case Agents referenced in the responsive records, they are permitted access to official law enforcement investigation information.  ICE gave consideration to the privacy interests of these Federal employees in not becoming targets of harassment – be it in the form of requests for authorized access to law enforcement information or requests for information about ongoing or closed investigations – and their interest in remaining free of interference in the performance of their duties by persons who are currently of interest to law enforcement or oppose the ICE mission.  The disclosure of the aforementioned information serves no public benefit and would not assist the public in understanding how ICE is carrying out its statutory responsibilities.

36.     In addition, federal law enforcement agents have interests in remaining free from harassment and annoyance in conducting their official duties, in remaining free from harassment and annoyance in their private lives, and in not being targeted by individuals in the future who may begrudge their law enforcement activities.  The disclosure of this information serves no public benefit and would not assist the public in understanding how ICE is carrying out its statutory responsibilities.

37.     With respect to names of third-party individuals, ICE withheld from disclosure, names, addresses, telephone numbers of individuals subject to search, family member names, addresses, Facebook Usernames, Instagram Username, WhatsApp Usernames, Snapchat Usernames, passenger

names, aliens names, case titles, case ID numbers, and serial numbers assigned to phones and or any other electronic devices that were in possession of passengers traveling through the border. The disclosure of their information could constitute an unwarranted invasion of personal privacy and subject them to embarrassment, harassment, and undue public attention. Such information, if disclosed to the public or to a third-party requester without the permission of the individual, could expose the individual to identity theft and may reasonably lead to unwanted contact from persons who might seek to harm them.

38.     In addition, aliens and other third parties have a recognized privacy interest in not being publicly associated with law enforcement investigations through the release of records compiled for law enforcement purposes. The identities of persons named in law enforcement files (whether or not the named individual is the target of investigation or law enforcement action) are properly withheld under Exemptions (b)(6) and (b)(7)(C) in recognition of the stigmatizing connotation that arises as a result of being mentioned in law enforcement files.

39.     Having determined that the individuals identified in the responsive records have a cognizable privacy interest in not having their information released, the ICE FOIA Office balanced the interest in safeguarding the individuals' privacy from unnecessary public scrutiny against the public's interest in shedding light on the operations and activities of ICE in the performance of its statutory duties. In employing the balancing test described above throughout the records provided to Plaintiff, ICE did not apply withholdings to the names of senior ICE leadership, and public facing employees, such as Headquarters senior management officials. In each instance where Exemptions (b)(6) and (b)(7)(C) were applied, the redaction was limited to the particular PII, which, if released, would be detrimental to the aforementioned privacy interests but would not shed light on the

operations or activities of ICE.  The limited extent of these redactions is readily apparent from the face and context of the records.

**FOIA Exemption 5 U.S.C § (b)(7)(E)**

40.     FOIA Exemption (b)(7)(E), 5 U.S.C. § 552(b)(7)(E), protects from disclosure records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

41.     ICE applied FOIA Exemption (b)(7)(E) to sections of internal HSI handbooks, including, the sections of "Search and Seizure Handbook" headings titled: "Administrative Searches," "Functional Equivalent of the Border," and "Extended Border."  The redacted sections of this handbook describe type of allowable administrative searches and when the agents are permitted to conduct searches; descriptions of type of circumstances for border nexus to be qualified for equivalent of a border; and situations when border searches maybe conducted away from the actual boarder.  Furthermore, sections of the "Child Exploitation Handbook" headings titled: "Search Warrant," "Title III Court Order," "Investigative Protocols and Precautions Regarding Wireless Networks," "Guidelines for Searching and Seizing Digital Devices," and "Judicial Responsibility" were redacted.  These sections contained information relating to techniques, protocols, and guidelines the Special Agents are required to follow in searching for electronic communications. Although these techniques are known to the public, the methods and scenarios in which these techniques are used to gather electronic information, are unknown to the public.

42.     Lastly, FOIA Exemption (b)(7)(E) was also applied to sections of the "National Security Investigation Handbook" headings titled: "FISA Application in Lone Wolf Situations." The

information contained in this section is protected because it contains techniques, protocols, and guidelines the Special Agents are required to follow pertaining to searching for electronic communications. Although these techniques are known to the public, the methods and situations in which these techniques are used to gather electronic information, are unknown to the public. Disclosure of these sections which contain law enforcement techniques and/or procedures for law enforcement investigations or prosecutions or disclose guidelines for law enforcement investigations or prosecutions used by Special Agents, specifically, information need to include in FISA applications in certain situations, to search for electronic communications, could reasonably be expected to risk circumvention of the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.

43.     ICE further applied Exemption (b)(7)(E) to HSI's Investigative Case Management System (ICM) case numbers, ROIs, event codes, identification numbers, law enforcement system URLs, TECS ID numbers, ICE case numbers, ROI numbers, TECS ID numbers, software names, sensitive CBP form numbers, and other law enforcement agencies' case numbers such as the FBI.

44.     The release of this information could reasonably be expected to allow a person to breach into sensitive law enforcement systems. This information, used for the purpose of indexing, storing, locating, and retrieving law enforcement sensitive information is not commonly known and could also be used to decipher the meaning of codes, navigate within the law enforcement system, and compromise the integrity of the data either by allowing for the deletion or alteration of information. This potential to circumvent detection and manipulate law enforcement sensitive information could place law enforcement officers and the public at risk.  In addition, release of this information could reveal techniques and/or procedures for law enforcement investigations or prosecutions and/or disclose guidelines for law enforcement investigations or prosecutions.  Disclosure of these

techniques and guidelines could permit those seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.

45.     In addition, ICE applied Exemption (b)(7)(E) to law enforcement sensitive database and computer program names/techniques used to search electronic devices such as cameras, computers, cell phones, and any other electronic devices capable of storing data, techniques/software programs used to extract data from these electronic devices, names of companies under investigation, request for assistance from foreign government in investigations, techniques used to provide that assistance/information, common techniques used by smugglers, and methods used by the agents in identifying such techniques

46.     Methods used by agents in utilizing these computer software programs to extract information from these devices and providing investigative assistance to foreign government, requires a level of consideration that constitute law enforcement techniques, procedures, and guidelines, the release of which could reasonably be expected to risk circumvention of the law.  Disclosure of this information could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.  If released, individuals could circumvent the law by knowing how ICE assesses and operationally minimizes threats while searching electronic devices, thereby allowing them to counter ICE's operational and investigative actions during enforcement operations.

### XIV.        SEGREGABILITY

47.     5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

48.     My staff, under my supervision, has reviewed each record line-by-line to identify information exempt from disclosure or for which a discretionary waiver of an exemption could be applied.

49.     With respect to the records that were released in part, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released.

### XV.     JURAT CLAUSE

50.     I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.  Signed this _16th_ day of January 2020.


Toni Fuentes, Deputy FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009

# EXHIBIT A

# KNIGHT
# FIRST AMENDMENT
# INSTITUTE

at Columbia University

**KATHERINE FALLOW**
Senior Staff Attorney

March 15, 2017

Dr. James V.M.L. Holzer
Deputy Chief FOIA Officer
The Privacy Office
U.S. Department of Homeland Security
245 Murray Lane, SW
STOP-0655
Washington, DC 20528-0655
Email: foia@hq.dhs.gov

FOIA Officer
Customs and Border Protection
1300 Pennsylvania Avenue, NW
Room 3.3D
Washington, DC 20229

U.S. Immigration and Customs
  Enforcement
Freedom of Information Act Office
500 12th Street, SW
STOP-5009
Washington, DC 20536-5009
Email: ICE-FOIA@dhs.gov

      **Re:**    **Freedom of Information Act Request**
                **Expedited Processing Requested**

To whom it may concern,

    The Knight First Amendment Institute at Columbia University ("Knight Institute") submits this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records concerning suspicionless searches of individuals' electronic devices at the nation's borders.[1]

---

[1] The Knight First Amendment Institute is a New York not-for-profit corporation based at Columbia University that works to preserve and expand the freedoms of speech and the press through strategic litigation, research, and public education.

## I. Background

Directives issued in 2009 authorize officers of U.S. Customs and Border Protection ("CBP") and Immigration and Customs Enforcement ("ICE") to search and detain travelers' electronic devices—including cell phones, tablets, and laptop computers—without individualized suspicion. CBP Directive No. 3340-049, *Border Search of Electronic Devices Containing Information* (Aug. 20, 2009), https://perma.cc/8JKP-P73Z; ICE Directive No. 7-6.1, *Border Searches of Electronic Devices* (Aug. 18, 2009), https://perma.cc/9455-Z2AX CBP Directive No. 3340-049, *Border Search of Electronic Devices Containing Information* (Aug. 20, 2009), https://perma.cc/8JKP-P73Z.

The CBP Directive, for example, broadly authorizes CBP officers to search electronic devices "with or without individualized suspicion." CBP Directive § 5.1. It further permits CBP officers to seize electronic devices without individualized suspicion for the time necessary to search them, *id.* § 5.3, and to share and indefinitely retain information on devices if, after reviewing the information on a device, CBP officers determine that there is probable cause to believe that it "contains evidence of or is the fruit of a crime that CBP is authorized to enforce," *id.* § 5.4.1.1. The Directive also allows sharing and indefinite retention—even in the absence of probable cause—of "terrorism-related information," *id.* § 5.4.1.4, and of "information relating to immigration, customs, and other enforcement matters if such retention is consistent with the privacy and data protection standards of the system of records in which such information is retained," *id.* § 5.4.1.2.

Though it broadly authorizes invasive searches of sensitive data, the CBP Directive contains few privacy protections. Even for especially sensitive data, the Directive appears to require little more than consultation before searching. For legally privileged material, for example, the Directive provides "special handling procedures" that require CBP officials to "seek advice . . . before conducting a search of the material." *Id.* § 5.2.1. For medical and journalistic records, the Directive requires consultation and that the records "be handled in accordance with any applicable federal law and CBP policy," *id.* § 5.2.2, without specifying what that applicable law or policy might be.

CBP and ICE officials have searched the electronic devices of thousands of individuals, including U.S. citizens, without individualized suspicion. Those searches increased dramatically over the past year: officers reportedly conducted 25,000 searches in 2016 as compared to

5,000 searches in 2015.[2] In February 2017 alone officers conducted 5,000 searches of electronic devices.[3]

Over the past year, CBP has searched and, in some instances, seized information stored on the electronic devices of journalists, despite their objections to the forced disclosure of confidential source information. According to press reports:

1. CBP officers detained and interrogated French–American photojournalist Kim Badawi while searching the contents of his cell phone, including his private photos and his WhatsApp messages with a Syrian refugee source.[4]

2. Isma'il Kushkush, a former acting bureau chief of the *New York Times* in East Africa, likewise reported that officers had interrogated him about his reporting on refugees while searching his electronic devices.[5]

3. Canadian photojournalist Ed Ou was denied entry into the United States after refusing to provide CBP officers the passwords to his electronic devices. During Ou's six-hour detention, officers read his journal despite their acknowledgment that Ou was a journalist. Additionally, Ou suspected that they may have removed the SIM cards from his devices before returning them to him.[6]

4. Wall Street Journal reporter Maria Abi-Habib was detained at the Los Angeles International Airport after refusing to turn her cell phones over to CBP officers. She was released only after the officers consulted their supervisors.[7]

---

[2] Cynthia McFadden, et al., *American Citizens: U.S. Border Agents Can Search Your Cell Phone*, NBC News (Mar. 13, 2017), http://www.nbcnews.com/news/us-news/american-citizens-u-s-border-agents-can-search-your-cellphone-n732746 [hereinafter "NBC News, *American Citizens*"].

[3] *Id.*

[4] Alexandra Ellerbeck, *Security Risk for Sources as U.S. Border Agents Stop and Search Journalists*, Committee to Protect Journalists (Dec. 9, 2016), https://www.cpj.org/blog/2016/12/security-risk-for-sources-as-us-border-agents-stop.php.

[5] *Id.*

[6] *Id.*

[7] Mazin Sidahmed, *Department of Homeland Security detains journalist returning from Beirut*, The Guardian (Jul. 21, 2016), https://www.theguardian.com/media/2016/jul/21/homeland-security-journalist-maria-abi-habib-detained; Noah Feldman, *Your Privacy Doesn't Matter at the Border*, Bloomberg View (Aug. 28, 2016),

Additionally, since President Trump's Executive Order 13,769 took effect, CBP appears to be targeting Muslims, including U.S. citizens who are Muslim, for electronic device searches at the border.[8] These suspicionless searches and seizures of Americans' electronic devices raise serious constitutional questions. To help the public better understand the government's policies and the way they are being implemented, the Knight Institute files this FOIA request.

## II. Records requested

The Knight Institute requests the following documents:

1. Any document containing statistical information concerning the search, detention, retention, or sharing of electronic devices or information of individuals at the border (or functional equivalent of the border) since FY2012, including, but not limited to, documents reflecting:

   a. the number of travelers whose electronic devices or information were searched, detained, retained, or shared;

---

https://www.bloomberg.com/view/articles/2016-08-28/your-privacy-doesn-t-matter-at-the-border.

[8] Press Release, *CAIR-FL Files 10 Complaints with CBP After the Agency Targeted and Questioned American-Muslims About Religious and Political Views*, CAIR Florida (Jan. 18, 2017), https://www.cairflorida.org/newsroom/press-releases/720-cair-fl-files-10-complaints-with-cbp-after-the-agency-targeted-and-questioned-american-muslims-about-religious-and-political-views.html; NBC News, *American Citizens* (describing incidents where Akram Shibly, a Muslim American of Syrian descent, was twice stopped by CBP while traveling between the U.S. and Canada and asked to turn over cell phone and password); Daniel Victor, *What Are Your Rights if Border Agents Want to Search Your Phone?*, N.Y. Times (Feb. 14, 2017), https://www.nytimes.com/2017/02/14/business/border-enforcement-airport-phones.html?_r=0; Kaveh Waddel, *A NASA Engineer Was Required to Unlock His Phone at the Border*, The Atlantic (Feb. 13, 2017), https://www.theatlantic.com/technology/archive/2017/02/a-nasa-engineer-is-required-to-unlock-his-phone-at-the-border/516489/; *see* Kaveh Waddell, *A Stand Against Invasive Phone Searches at the U.S. Border*, The Atlantic (Feb. 21, 2017), https://www.theatlantic.com/technology/archive/2017/02/ron-wyden-border-searches/517353/; Joshua Kopstein, *Travelers Affected By Trump Ban Forced to Unlock Phones, Computers*, Vocativ (Jan. 30, 2017), http://www.vocativ.com/397897/travelers-affected-by-trump-ban-forced-to-unlock-phones-computers/; *see also* Sophia Cope, *Fear Materialized: Border Agents Demand Social Media Data from Americans*, Electronic Frontier Foundation (Jan. 25, 2017), https://www.eff.org/deeplinks/2017/01/fear-materialized-border-agents-demand-social-media-data-americans.

      b.   the number or portion of those travelers who are U.S. citizens;

      c.   the number or portion of those travelers who are lawful permanent residents or green card holders;

      d.   the number or portion of those travelers by country of origin;

      e.   the number or portion of those travelers by gender, race, ethnicity, nationality, and/or country of birth;

      f.   the number or portion of those travelers by port of entry; and

      g.   the number or portion of those travelers by watchlist, lookout, and/or other selectee status.

2.   Documents relating to each instance since FY2012 in which CBP or ICE searched, detained, retained, or shared an electronic device or the information accessible on it, including, but not limited to:

      a.   a list of the TECS data field categories used to record and track each electronic device search conducted by CBP or ICE; and

      b.   all information contained in the TECS system used to record and track electronic device searches, detentions, retentions, and/or sharings.[9]

---

[9] In 2011, the Department of Homeland Security's Office for Civil Rights and Civil Liberties ("CRCL") issued an Impact Assessment concerning the border searches of electronic devices. DHS, Office for Civil Rights and Civil Liberties, *Impact Assessment: Border Searches of Electronic Devices* (Dec. 29, 2011), https://perma.cc/P4FZ-BY6G ("2011 Impact Assessment"). The 2011 Impact Assessment noted that CBP records the fact of each device search and other information about it in the TECS system, but that the monitoring had been found to be "inadequate." *Id.* at 8. The 2011 Impact Assessment noted that CBP's Office of Internal Affairs had proposed that CBP improve its tracking of device searches through "a new TECS module" or by "enhanc[ing] existing modules." *Id.* CBP agreed with this recommendation, *id.*, and according to the Executive Summary issued by CRCL in 2013, CBP "implemented this change beginning in FY2012." DHS, Office for Civil Rights/Civil Liberties, *Impact Assessment: Border Searches of Electronic Devices* (Jan. 29, 2013), https://perma.cc/TRW2-CRCR. This portion of our request seeks all data in the TECS system (or any module, software, or database designed to take its place) since

3. Revisions of or documents supplementing or superseding:

   a. CBP Directive No. 3340-049, *Border Search of Electronic Devices Containing Information* (Aug. 20, 2009); or

   b. ICE Directive No. 7-6.1, *Border Searches of Electronic Devices* (Aug. 18, 2009).

4. The following documents relating to any reviews of CBP's or ICE's policies or practices concerning electronic device searches:

   a. any audits, impact assessments, or other reviews of CBP's or ICE's policies or practices concerning electronic device searches, including any such reports by the Office for Civil Rights and Civil Liberties, DHS's OIG, and CBP's Office of Internal Affairs, Management Inspection Division;

   b. any policies, practices, procedures, and/or training materials adopted as a result of any audits, impact assessments, or other reviews of how CBP and ICE conduct electronic device searches; and

   c. any documents reflecting annual or semi-annual examinations by CBP or ICE of electronic device searches by port of entry, as adopted in response to the 2011 Impact Assessment.

5. Documents, including tear sheets and TRIP records, containing or relating to complaints filed by individuals or organizations about CBP's and/or ICE's search, review, retention or sharing of the information on travelers' electronic devices.

6. Documents reflecting policies, practices, or procedures concerning how CBP officers handle "privileged or other sensitive material," including "work-related information carried by journalists," as referenced in § 5.2 of the CBP Directive.

7. Documents reflecting policies, practices, and procedures concerning CBP's anti-discrimination policy as applied to discretionary device searches.

FY2012. We request that the data be provided in electronic format. *See* 5 U.S.C. § 552(a)(3)(B).

Where a document contains information that falls into one or more of the categories described above, we seek the entirety of that document. If processing the entirety of a given document would be unusually burdensome, we ask that you give us an opportunity to narrow our request. Please disclose all segregable portions of otherwise exempt records. *See* 5 U.S.C. § 552(b).

We also ask that you provide responsive electronic records in their native file format or a generally accessible electronic format (e.g., for tabular data, XLS or CSV). *See* 5 U.S.C. § 552(a)(3)(B). Alternatively, please provide the records electronically in a text-searchable, static-image format (e.g., PDF), in the best image quality in the agency's possession, and in separate, Bates-stamped files.

Finally, we ask that you process our request on a rolling basis, giving priority to categories 1 and 2.

### III. Application for Expedited Processing

The Knight Institute requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for the documents sought because the information they contain is "urgent[ly]" needed by an organization primarily engaged in disseminating information "to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

> *A. The Knight Institute is primarily engaged in*
> *disseminating information in order to inform the public*
> *about actual or alleged government activity.*

The Knight Institute is "primarily engaged in disseminating information" within the meaning of FOIA. 5 U.S.C. § 552(a)(6)(E)(v)(II).

The Knight First Amendment Institute is a newly established organization at Columbia University dedicated to defending and strengthening the freedoms of speech and the press in the digital age. Research and public education are essential to the Institute's mission.[10] Obtaining information about government activity, analyzing that information, and publishing and disseminating it to the press and public are among the core activities the Institute was established to perform. *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material

---

[10] Mike McPhate, *Columbia University to Open a First Amendment Institute*, N.Y. Times (May 17, 2016), https://perma.cc/YC9M-LUAD; James Rosen, *New Institute Aspires to Protect First Amendment in Digital Era*, McClatchy DC (May 20, 2016), https://perma.cc/ZS2K-FPED.

into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").

### B. The records sought are urgently needed to inform the public about actual or alleged government activity.

The documents sought are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). The records sought have generated intense public interest. Since the beginning of this year alone, reports of suspicionless searches of electronic devices at U.S. borders and international airports have abounded.[11] Certain of those reports detail instances in which CBP officers exerted pressure or outright force to obtain electronic devices and passcodes.[12] The public has thus far been denied the benefit of complete records revealing the number of searches conducted, the individuals subjected to such searches, and the circumstances surrounding such searches. Those records are urgently needed to understand the scope and lawfulness of the searches conducted pursuant to the CBP and ICE Directives.

For these reasons, the Knight Institute is entitled to expedited processing.

## IV. Application for Waiver or Limitation of Fees

The Knight Institute requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and that disclosure is "likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

For the reasons explained above, disclosure of the records would be in the public interest. Moreover, disclosure would not further the Knight Institute's commercial interest. The Institute will make any information disclosed available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA to ensure "that it be liberally construed in favor of waivers for noncommercial requesters." *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003).

---

[11] NBC News, *American Citizens*; *see, e.g.*, Victor, *supra* note 8; Waddel, *A NASA Engineer Was Required to Unlock His Phone at the Border*, *supra* note 8; Waddell, *A Stand Against Invasive Phone Searches at the U.S. Border*, *supra* note 8; Kopstein, *supra* note 8; *see also* Cope, *supra* note 8.

[12] *See* NBC News, *American Citizens*; Victor, *supra* note 8; Waddel, *A NASA Engineer Was Required to Unlock His Phone at the Border*, *supra* note 8.

The Knight Institute also requests a waiver of search and review fees on the grounds that it qualifies as an "educational . . . institution" whose purposes include "scholarly . . . research" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Institute has a substantial educational mission. Situated within a prominent academic research university, the Institute will perform scholarly research on the application of the First Amendment in the digital era. The Institute is in the midst of inaugurating a research program that will bring together academics and practitioners of different disciplines to study contemporary First Amendment issues and offer informed, non-partisan commentary and solutions. It will publish that commentary in many forms—in scholarly publications, in long-form reports, and in short-form essays.

The Knight Institute also requests a waiver of search and review fees on the grounds that it is a "representative[] of the news media" within the meaning of FOIA and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

The Institute meets the statutory definition of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *accord Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282 (D. Conn. 2012); *ACLU of Wash. V. DOJ*, No. C09-0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011); *ACLU*, 321 F. Supp. 2d at 30 n.5. Courts have found other non-profit organizations, whose mission of research and public education is similar to that of the Knight Institute, to be "representatives of the news media." *See, e.g., Cause of Action v. IRS*, No. 13-0920, 2015 WL 5120863 (D.C. Cir. Aug. 28, 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53 – 54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).

For these reasons, the Knight Institute is entitled to a fee waiver.

\*     \*     \*

Thank you for your attention to our request. We would be happy to discuss its terms with you over the phone or via email to clarify any aspect of it or, where reasonable, to narrow our request.

Sincerely,

/s/ Katherine Fallow

Katherine Fallow
Knight First Amendment Institute at
  Columbia University
314 Low Library
535 West 116th Street
New York, NY 10027
katie.fallow@knightcolumbia.org
(212) 854-9600

**EXHIBIT B**

March 28, 2017

Katherine Fallow
Knight First Amendment Institute at Columbia University
314 Low Library
535 West 116th Street
New York, NY 10027

**RE:    ICE FOIA Case Number 2017-ICFO-21227**

Dear Fallow:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated March 15, 2017, and to your request for expedited treatment and a waiver of all assessable FOIA fees. Your request was received in this office on March 15, 2017. Specifically, you requested records pertaining to documents containing statistical information concerning the search, detention, retention, or sharing of electronic devices or information of individuals at the border since FY 2012 (see request for specific details); documents relating to each instance since FY 2012 in which CBP or ICE searched, detained, retained, or shared an electronic device or information accessible on it (see request for specific details); revisions of or documents supplementing or superseding ICE Directive No. 7-6.1. Border Searches of Electronic Devices (Aug. 18, 2009) (see request for specific details); specific records pertaining to any reviews of CBP's or ICE's policies or practices concerning electronic device searches (see request for specific details); Documents containing or relating to complaints filed by individuals or organizations about CBP's and/or ICE's search, review, retention or sharing of the information on travelers' electronic devices; documents reflecting polices, practices, or procedures concerning how CBP officers handle "privileged or other sensitive material", including "work-related information carried by journalists" as referenced in 5.2 of the CBP Directive; documents reflecting policies, practices, and procedures concerning CBP's anti-discrimination policy as applied to discretionary device searches.

Your request for expedited treatment is hereby granted.

As it pertains to your request for a fee waiver, ICE evaluates fee waiver requests under the legal standard set forth above and the fee waiver policy guidance issued by the Department of Justice on April 2, 1987, as incorporated into the Department of Homeland Security's Freedom of Information Act regulations [1]. These regulations set forth six factors to examine in determining whether the applicable legal standard for fee waiver has been met.  I have considered the following factors in my evaluation of your request for a fee waiver:

> (1) Whether the subject of the requested records concerns "the operations or activities of the government";

> (2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities;

> (3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons;

> (4) Whether the contribution to public understanding of government operations or activities will be "significant";

> (5) Whether the requester has a commercial interest that would be furthered by the requested disclosure; and

> (6) Whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor.

Upon review of your request and a careful consideration of the factors listed above, I have determined to grant your request for a fee waiver.

ICE has queried the appropriate program offices within ICE for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

Your request has been assigned reference number **2017-ICFO-21227**. Please refer to this identifier in any future correspondence. To check the status of an ICE FOIA/PA request, please visit http://www.dhs.gov/foia-status. Please note that to check the status of a request, you must enter the 2016-ICFO-XXXXX or 2017-ICFO-XXXXX tracking number. If you need any further assistance or would like to discuss any aspect of your request, please contact ICE FOIA Office. You may send an e-mail to ice-foia@ice.dhs.gov, call toll free (866) 633-1182, or you may contact our FOIA Public Liaison in the same manner.

Regards,

ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
Telephone: 1-866-633-1182
Visit our FOIA website at **www.ice.gov/foia**

**EXHIBIT C**

*Knight First Amendment Inst., at Columbia University, v. United States Department of Homeland Security, et al.*

Civil No.: 2:17-cv-00548-TSC (D.D.C.)

United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| N/A | N/A | Partial | (b)(6)<br>(7)(C)<br>(b)(7)(E) | **FER Border Seizure Case No and Comments [CASE NUMBERS AND INFO ABOUT CASES - VERY LES] - Highlighted.xls,**<br><br>**FER Border Seizure Case No and Comments 2015 [CASE NUMBERS AND INFO ABOUT CASES - VERY LES] - Highlighted.xls**<br><br>**FY2013_BorderSeizure_2014-06-03 [CASE NUMBERS AND INFO ABOUT CASES - VERY LES] - Highlighted.xls**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Names of DHS and ICE personnel, ICE/HSI (Homeland Security Investigations) and other law enforcement agencies' case numbers.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the names of ICE and DHS personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; could place them in danger because targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and disclosure could minimize the ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in |

1

*Knight First Amendment Inst., at Columbia University, v. United States Department of Homeland Security, et al.*

Civil No.: 2:17-cv-00548-TSC (D.D.C.)

United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.

The disclosure of the case numbers associated with third-party individuals could reasonably be expected to constitute an unwarranted invasion of individuals' personal privacy interests in: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.

**Redacted Information per (b)(7)(E):**
HIS's Investigative Case Management System (ICM) case numbers, Report of Investigation Case Numbers (ROIs), and other law enforcement agencies' case numbers such as the FBI.

**Reason for Redaction(s):**
Exemption (b)(7)(E) was applied to ROI numbers, Case numbers and the FBI case numbers, the release of which could reveal techniques and/or procedures for law enforcement investigations or |

Knight First Amendment Inst., at Columbia University. v. United States Department of Homeland Security, et al.
Civil No.: 2:17-cv-00548-TSC (D.D.C.)
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | prosecutions or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law.  Disclosure of this information could assist third parties in deciphering the meanings of the codes and/or could enable an individual to navigate, alter, and/or manipulate law enforcement databases were they to gain access to the system.  Disclosure of these techniques and practices in navigating the databases could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.   Further, how law enforcement officers access databases are law enforcement technique and procedure that is not commonly known.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities |
| 2017-ICLI-00011 | 2-15 | Partial | (b)(6)(7)(C) (b)(7)(E) | **ICE Policy titled "Border Searches of Documents and Electronic Media" Directive 7-6.0, effective July 16, 2008; Homeland Security Investigation (HSI) Computer Forensic Handbook,**<br><br>**Redacted Information per (b)(6), (b)(7)(C):** Signatures and/or initials of DHS/ICE personnel, to include: Assistant Secretary, Executive Assistant Director of HSI.<br><br>**Reasons for Redaction(s):** |

*Knight First Amendment Inst., at Columbia University. v. United States Department of Homeland Security, et al.*

Civil No.: 2:17-cv-00548-TSC (D.D.C.)

United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | The disclosure of the signatures and/or initials of ICE and DHS personnel which could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; could place them in danger because targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and disclosure could minimize the ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Furthermore, disclosure of these signatures could allow unauthorize use of their signature by copying and forging these individuals' signature on law enforcement sensitive documents. **Redacted Information per (b)(7)(E):** The redacted information is a paragraph under the heading titled "Consent." Exemption (b)(7)(E) was applied to this section of the handbook describing methods and techniques special agents may employ in searching, both with or without a warrant, when consent is given. This section provides law enforcement techniques and/or procedures for law enforcement investigations or prosecutions, |

*Knight First Amendment Inst., at Columbia University. v. United States Department of Homeland Security, et al.*

Civil No.: 2:17-cv-00548-TSC (D.D.C.)

United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | here, border search authority to search electronic devices, or disclose guidelines for law enforcement investigations or prosecutions used by special agents, which could reasonably be expected to risk circumvention of the law.  Disclosure of these techniques and practices could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.  Further, how law enforcement officers approach and address certain situations, including techniques and procedures, are not commonly known.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |
| 2017-ICLI-00011 | 16-26 | Partial | (b)(6) (7)(C) (b)(7)(E) | **HSI "Search and Seizure Handbook, HSI HB 12-04/ September 14, 2012"** <br><br> **Redacted Information per (b)(6), (b)(7)(C):** <br> Signatures and/or initials of DHS/ICE personnel, to include: Assistant Secretary, Executive Assistant Director of HSI. <br><br> **Reasons for Redaction(s):** <br> The disclosure of the signature and/or initials of ICE and DHS personnel which could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; could place them in danger because targets of  law enforcement investigations may |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | begrudge personnel for an indefinite time period and seek revenge; and disclosure could minimize the ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Furthermore, disclosure of these signatures could allow unauthorize use of their signature by copying and forging these individuals' signature on law enforcement sensitive documents.<br><br>**Redacted Information per (b)(7)(E):**<br>The redacted information are sections of the Search and Seizure Handbook headings titled "Administrative Searches," "Functional Equivalent of the Border," and "Extended Border"<br><br>Exemption (b)(7)(E) was applied to these sections of the handbook describing: type of allowable administrative searches and when the agents are permitted to conduct such searches; description of type of circumstances for border nexus to be qualified for equivalent of a border; and situations when border searches maybe conducted away from the actual border. These law enforcement techniques and guidelines are not known to the public. These sections provide law enforcement techniques and/or procedures for law enforcement investigations or prosecutions or disclose guidelines for law enforcement investigations or prosecutions used by Special |

*Knight First Amendment Inst., at Columbia University. v. United States Department of Homeland Security, et al.*
Civil No.: 2:17-cv-00548-TSC (D.D.C.)
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Agents, which could reasonably be expected to risk circumvention of the law. Disclosure of these techniques and practices could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. |
| 2017-ICLI-00011 | 27-30 | Partial | (b)(6) (7)(C) (7)(E) | **HSI Child Sexual Exploitation Investigations Handbook, HIS HB 12-05/ November 19, 2012** <br><br> **Redacted Information per (b)(6), (b)(7)(C):** <br> Signatures and/or initials of DHS/ICE personnel, to include: Assistant Secretary, Executive Assistant Director of HSI. <br><br> **Reasons for Redaction(s):** <br> The disclosure of the signature and/or initials of ICE and DHS personnel which could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; could place them in danger because targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and disclosure could minimize the ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public |

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | interest that could possibly exist in the disclosure of this information. Furthermore, disclosure of these signatures could allow unauthorize use of their signature by copying and forging these individuals' signature on law enforcement sensitive documents. **Redacted Information per (b)(7)(E):** The redacted information are sections of the Child Exploitation Handbook headings titled "Search Warrant," "Title III Court Order," "Investigative Protocols and Precautions Regarding Wireless Networks," "Guidelines for Searching and Seizing Digital Devices," and "Judicial Responsibility." **Reasons for Redaction(s):** Exemption (b)(7)(E) was applied to these sections of the handbook describing the techniques, protocols, and guidelines the Special Agents are required to follow pertaining to searching for electronic communications. Although these techniques are known to the public, the methods and situations in which these techniques are used to gather electronic information, are unknown to the public. Disclosure of these sections which contain law enforcement techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions used by Special Agents, could reasonably be expected to risk circumvention of the law. |

*Knight First Amendment Inst., at Columbia University. v. United States Department of Homeland Security, et al.*
Civil No.: 2:17-cv-00548-TSC (D.D.C.)
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| 2017-ICLI-00011 | 31-36 | Partial | (b)(6), (7)(C) (7)(E) | **HSI National Security Investigations Handbook, HSI HB 13-03/ April 26, 2013**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Signatures and/or initials of DHS/ICE personnel, to include: Assistant Secretary, Executive Assistant Director of HSI.<br><br>**Reasons for Redaction(s):**<br>The disclosure of the signature and/or initials of ICE and DHS personnel which could reasonably be expected to constitute an unwarranted invasion of personal privacy by: conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; could place them in danger because targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and disclosure could minimize the ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Furthermore, disclosure of these signatures could allow unauthorize use of their signature by copying and forging these individuals' signature on law enforcement sensitive documents.<br><br>**Redacted Information per (b)(7)(E):** |

*Knight First Amendment Inst., at Columbia University, v. United States Department of Homeland Security, et al.*

Civil No.: 2:17-cv-00548-TSC (D.D.C.)

United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | The redacted information are sections of the National Security Investigation Handbook headings titled "FISA Application in Lone Wolf Situations." **Reasons for Redaction(s):** Exemption (b)(7)(E) was applied to these sections of the handbook describing the techniques, protocols use, and guidelines the Special Agents are required to follow with regards to searching electronic communications. Although these techniques are known to the public, the methods in which these law enforcement techniques are used to gather electronic information are unknown to the public. Disclosure of these sections which contain law enforcement techniques and/or procedures for law enforcement investigations or prosecutions or disclose guidelines for law enforcement investigations or prosecutions used by Special Agents, could reasonably be expected to risk circumvention of the law. <mark>ICE previously asserted FOIA Exemption (b)(7)(E) on bates number 2017-ICLI-0011 36. ICE has re-processed this page without the redaction.</mark> |
| 2017-ICLI-00011 | 62-64 67-82 | In Full. | (b)(5), (7)(E) | **Computer Border Search Discussion Topics** Th content of these internal documents pertains to ICE, CBP, and USCG's responses to DOJ's questions relating DHS's border search authority. These documents were prepared at DHS's request in advance of further senior level discussions with DOJ relating to |

*Knight First Amendment Inst., at Columbia University. v. United States Department of Homeland Security, et al.*
Civil No.: 2:17-cv-00548-TSC (D.D.C.)
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | DHS border search of electronic devices. USCG, ICE and CBP have collaborated on the following justifications for withholding these documents in their entirety. **Information Withheld in Full pursuant to (b)(5) Deliberative Process Privilege, Attorney-Client Privilege, and Attorney-Work Product.** These documents were withheld in full pursuant to FOIA exemption (b)(5) because these internal DHS documents were prepared by DHS legal staff to facilitate discussions between counsel for DHS and its components and counsel for the Department of Justice (DOJ) and to develop litigation strategy for ongoing and anticipated litigation regarding DHS's border search authority. These documents titled "Computer Border Search Discussion Topics," contained information gathered and developed by DHS legal staff to respond to questions posed by DOJ regarding DHS's and its components' exercise of border search authority. The information contained in these documents are deliberative material and is withheld per (b)(5), which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency documents. The release of this information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency |

11

*Knight First Amendment Inst., at Columbia University. v. United States Department of Homeland Security, et al.*

Civil No.: 2:17-cv-00548-TSC (D.D.C.)

United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | communications. The deliberative process privilege protects the internal deliberations of the government by exempting recommendations, analyses, and discussions undertaken to aid agency decision making, specifically here, discussions in furtherance of making legal and policy decisions and developing litigation strategy relating to border searches of electronic devices. The privilege also prevents the premature disclosure of proposed policies, serves to avoid public confusion generated by rationales or decisions not ultimately adopted by an agency, and maintains the integrity of agency decision-making processes by encouraging open and candid discussions. <br><br> In addition, the attorney-client privilege is also applicable to the content of these documents. Communications from clients to their attorneys made for the purpose of securing legal advice or services, here responses to questions posed by DOJ to DHS and its components (including ICE, CBP, and USCG) in regard to DHS's border search authorities. These documents were created as a result of, and with information obtained through, discussions between attorneys and their clients, including agency policymakers and law enforcement and/or operational personnel responsible for development and implementing policy regarding border searches of electronic devices. Furthermore, these documents were created to assist in the provision of information from DHS and its components to DOJ attorneys, who are responsible for representing DHS and its components in litigation. The privilege also protects communications from attorneys to their clients if the |

12

*Knight First Amendment Inst., at Columbia University. v. United States Department of Homeland Security, et al.*

Civil No.: 2:17-cv-00548-TSC (D.D.C.)

United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | communications "rest on" confidential information obtained from the client. In the governmental context, the client may be the agency and the attorney may be an agency lawyer. This privilege applies to facts that are divulged to the attorney and encompasses the opinion given by the attorney based upon, and thus reflecting, those facts. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel, including both internal agency counsel and DOJ attorneys.<br><br>Furthermore, the attorney work-product privilege also applies to the content of these documents. This privilege protects from disclosure attorney-work product material, including notes, questions, litigation strategy and thoughts, by an agency attorney or the agency's litigation counsel. The withheld information was created by agency counsel in anticipation of and in preparation for ongoing and future litigation, specifically, challenges raised to DHS's border search authority, and is exempt from disclosure in order to protect the adversarial trial process by insulating the attorneys' preparation from scrutiny. The documents contain |

*Knight First Amendment Inst., at Columbia University. v. United States Department of Homeland Security, et al.*

Civil No.: 2:17-cv-00548-TSC (D.D.C.)

United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | questions and responses prepared for the specific purpose of informing the development of the agencies' litigation strategy. **Redacted Information per (b)(7)(E)** Only being asserted by CBP In addition, portions of these documents consist of information that would be redacted under FOIA exemption (b)(7)(E) even if the document was not withheld in full under (b)(5). Exemption (b)(7)(E) protects from disclosure information compiled for law enforcement purposes that would disclose techniques and procedures for law enforcement investigations or prosecution, and guidelines for law enforcement investigations or prosecutions the disclosure of which would risk circumvention of the law. Specifically, the document contains information regarding techniques, procedures, and guidelines used by CBP when conducting border searches of electronic devices, and the disclosure of these techniques, procedures, and guidelines would risk circumvention of the law. |
| 2017-ICLI-00011 | 93-108 | Partial | (b)(6), (7)(C) (7)(E) | **Various Case IDs Enforcement Statistics** **Redacted Information per (b)(6), (b)(7)(C):** Case ID Numbers and Case Names, **Reasons for Redaction(s):** The disclosure of the names, signatures, initials, email addresses, telephone numbers, dates of birth, and other personally identifying |

14

*Knight First Amendment Inst., at Columbia University. v. United States Department of Homeland Security, et al.*

Civil No.: 2:17-cv-00548-TSC (D.D.C.)

United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | information to include complaint numbers and Alien numbers, belonging to third-party individuals could reasonably be expected to constitute an unwarranted invasion of individuals' personal privacy interests in: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redacted Information per (b)(7)(E)**<br>Case ID Numbers and URLs.<br><br>**Reasons for Redaction(s):**<br>The release of case, event and referral numbers, and URLs, which are unique addresses for files accessible on the Internet, could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law.  Disclosure could assist third parties in deciphering the meanings of the codes and |

15

*Knight First Amendment Inst., at Columbia University. v. United States Department of Homeland Security, et al.*
Civil No.: 2:17-cv-00548-TSC (D.D.C.)
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | could allow an individual to navigate, alter or manipulate law enforcement databases if they were to gain access to the system. Disclosure of these techniques and practices in navigating the databases could permit people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. How law enforcement officers access and use databases is a law enforcement technique and procedure that is not commonly known.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |
| 2017-ICLI-00011 | 121-123<br><br>143-146<br><br>191-194<br><br>231-239<br><br>495-500<br><br>501-506<br><br>834-836 | Partial | (b)(5)<br>(b)(6),<br>(7)(C)<br>(7)(E) | **Reports of Investigations (ROIs) for Various cases:**<br><br>**Redacted Information per (b)(6), (b)(7)(C):**<br>Names, email addresses, phone numbers of ICE employees to include: Special Agent assigned to a case, Supervisory Special Agents, other federal agencies' personnel, such as CBP agents, and local law enforcements agents.<br><br>Names, addresses, telephone numbers of individuals subject to the search, family members' names, addresses and telephone numbers, other third party identifiable information such as names and addresses to include name of company owners, Facebook user names, Instagram username, WhatsApp username, Snapchat username, |

Knight First Amendment Inst., at Columbia University. v. United States Department of Homeland Security, et al.

Civil No.: 2:17-cv-00548-TSC (D.D.C.)

United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Current Case Title, Report Title, passenger names, alien names, home addresses, telephone numbers, |
| | | | | Serial numbers assigned to phones and/or any other electronic devices. |
| | | | | **Reasons for Redaction(s):** |
| | | | | The disclosure of the names of ICE personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by; conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |
| | | | | The disclosure of the names, signatures, initials, email addresses, alien numbers, dates of birth, numeric day of dates minor UIs were housed, addresses, telephone numbers, and/or personally identifying information to include case numbers of third-party individuals, could reasonably be expected to constitute an |

*Knight First Amendment Inst., at Columbia University. v. United States Department of Homeland Security, et al.*
Civil No.: 2:17-cv-00548-TSC (D.D.C.)
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | unwarranted invasion of individuals' personal privacy interests in: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.  Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. **Redacted Information per (b)(7)(E):** ICE case numbers, ROI numbers and URLs, TECS ID numbers, software names, computer program names/techniques used to search electronic devices such as cameras and cell phones, names of companies under investigation, request for assistance from foreign government in investigations and techniques used to provide that assistance/information, common techniques used by smugglers and methods used by the agents in identifying such techniques. **Reasons for Redaction(s):** The release of case numbers, ROI numbers, URLs, TECS ID numbers, which are unique addresses for files accessible on the |

18

*Knight First Amendment Inst., at Columbia University, v. United States Department of Homeland Security, et al.*

Civil No.: 2:17-cv-00548-TSC (D.D.C.)

United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | Internet, could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Techniques and procedures such as names of computer programs and their capabilities used to extract data from electronic devices, could assist third parties in deciphering the meanings of the codes and could allow an individual to navigate, alter or manipulate law enforcement databases if they were to gain access to the system. Disclosure of these techniques and practices in navigating the databases could permit people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.<br><br>How law enforcement officers access and use databases are a law enforcement technique and procedure that is not commonly known. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. *FOIA Exemptions (b)(6), (7)(C) were applied to bates numbers 2017-ICLI-00011-231, specifically, the ROI Number, and it should have been FOIA Exemptions (b)(7)(E).*<br><br>*FOIA Exemption (b)(5) was applied to bates numbers 2017-ICLI-00011-233, 237. ICE has determined that this exemption should not have been applied.* |

19

Knight First Amendment Inst., at Columbia University, v. United States Department of Homeland Security, et al.

Civil No.: 2:17-cv-00548-TSC (D.D.C.)

United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| 2017-ICLI-00011. | 1010-1015 | Partial | (b)(6) (7)(C) (b)(7) (E) | **Reports of Investigation for Various cases:** |
| | 1054-1055 | | | **Redacted Information per (b)(6), (b)(7)(C):** Names, email addresses, phone numbers of ICE employees to include: Special Agent assigned to a case, Supervisory Special |
| | 1060-1062 | | | Agents, other federal agencies' personals such as CBP agents, and |
| | 1063-1065 | | | local law enforcements agents. |
| | 1092-1095 | | | |
| | 1096-1098 | | | Names, addresses, telephone numbers of individuals subject to the |
| | 1099-1101 | | | search, family members' names, addresses and telephone numbers, |
| | 1106-1114 | | | other third party identifiable information such as names and |
| | 1137-1140 | | | addresses to include name of company owners, Facebook user |
| | 1155-1157 | | | names, Instagram username, WhatsApp username, Snapchat |
| | 1355-1360 | | | username. |
| | 1361-1368 | | | |
| | 1369-1373 | | | |
| | 1391-1394 | | | Current Case Title, Report Title, passengers' names, alien names, |
| | 1675-1676 | | | alien's date of births, home addresses, telephone numbers, phone |
| | 1693-1696 | | | numbers assigned to devices. |
| | 1697-1699 | | | |
| | 1801-1802 | | | Serial numbers assigned to phones, or any other electronic devices. |
| | 1850-1851 | | | |
| | 1866-1867 | | | **Reasons for Redaction(s):** |
| | 1870-1872 | | | The disclosure of the names of ICE personnel could reasonably be |
| | 1873-1874 | | | expected to constitute an unwarranted invasion of personal privacy |
| | 1875-1876 | | | by: conceivably subjecting personnel to harassment and annoyance |
| | 1900-1902 | | | in conducting their official duties and in their private lives; placing |
| | 1903-1907 | | | them in danger, as targets of law enforcement investigations may |

*Knight First Amendment Inst., at Columbia University. v. United States Department of Homeland Security, et al.*
Civil No.: 2:17-cv-00548-TSC (D.D.C.)
United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | 1908-1910 1911-1913 1914-1916 2027-2029 2030-2032 | | | begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>The disclosure of the names, signatures, initials, email addresses, alien numbers dates of birth, addresses, telephone numbers, case numbers, serial numbers assigned to any electronic device, usernames assigned to individuals for their social media accounts, and/or personally identifying information to include case numbers of third-party individuals, could reasonably be expected to constitute an unwarranted invasion of individuals' personal privacy interests in: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. |

21

*Knight First Amendment Inst., at Columbia University. v. United States Department of Homeland Security, et al.*

Civil No.: 2:17-cv-00548-TSC (D.D.C.)

United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | **Redacted Information per (b)(7)(E):**<br>ICE case numbers, ROI numbers and URLs, TECS ID numbers, software names, sensitive CBP form numbers, computer program names/techniques used to search electronic devices such as cameras, computers, cell phones, and any other electronic devices capable of storing data, techniques/software programs used to extract data from these electronic devices, companies currently under investigation, detailed request for assistance from foreign government in investigations and techniques used to provide such information, common techniques used by smugglers and methods used by the agents in identifying such techniques.<br><br>**Reasons for Redaction(s):**<br>The release of case numbers, ROI numbers, URLs, TECS ID numbers, which are unique addresses for files accessible on the Internet, could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Techniques and procedures, such as names of computer programs and its capabilities used to extract data from electronic devices, could assist third parties in deciphering the meanings of the codes and could allow an individual to navigate, alter or manipulate law enforcement databases if they were to gain access to the system. Disclosure of these techniques and practices in navigating the databases could permit people seeking to violate or circumvent the |

*Knight First Amendment Inst., at Columbia University. v. United States Department of Homeland Security, et al.*
Civil No.: 2:17-cv-00548-TSC (D.D.C.)

United States Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates-Stamp Prefix | Bates-Stamp Suffix (Page Number) | Degree of Withholding | Exemptions | Description of Records and Explanation of Exemptions |
|---|---|---|---|---|
| | | | | law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. How law enforcement officers access and use databases are a law enforcement technique and procedure that is not commonly known. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. |

23