## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY,<br><br>            Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF HOMELAND SECURITY, *et al*.,<br><br>            Defendants. | **Oral Argument Requested**<br><br>Civil Action No. 1:17-cv-00548-TSC |

### PLAINTIFF'S CORRECTED MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Matthew S. Hellman (484132)
JENNER & BLOCK LLP
1099 New York Avenue, NW Suite 900
Washington, DC 20001
T: (202) 639-6000
F: (202) 639-6066
mhellman@jenner.com

Ethan Wong (admission pending)
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
T:(212) 891-1600
F: (212) 090-0894
ewong@jenner.com

Caroline M. DeCell (1015491)
Stephanie C. Krent*
KNIGHT FIRST AMENDMENT
INSTITUTE AT COLUMBIA UNIVERSITY
475 Riverside Drive, Suite 302
New York, NY 10115
T: (646) 745-8500
carrie.decell@knightcolumbia.org
stephanie.krent@knightcolumbia.org

*Application for admission *pro hac vice*
pending.

*Counsel for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL BACKGROUND...............................................................................................2

    I.     Government Searches of Electronic Devices at the Border............................................2

    II.    The Knight Institute's Request ....................................................................................4

    III.   The Agencies' Responses .............................................................................................5

LEGAL STANDARD............................................................................................................8

ARGUMENT ......................................................................................................................10

    I.     DHS, CBP, AND ICE IMPROPERLY WITHHELD INFORMATION
         UNDER EXEMPTION 5...........................................................................................11

         A.    Deliberative Process Privilege ....................................................... 12

         B.    Attorney-Client Privilege and Work Product Privilege ................. 16

    II.    CBP IMPROPERLY WITHHELD INFORMATION UNDER
         EXEMPTIONS 6 AND 7(C). ...................................................................................20

         A.    CBP Categorically Withheld Non-Identifying Information. ......................... 21

         B.    The Public Interest in Disclosure Outweighs the Minimal Privacy
             Interests at Stake. ....................................................................................... 23

    III.   CBP and ICE Improperly Withheld Information Under Exemption 7(E). .................25

         A.    CBP Categorically Redacted Non-Exempt Information from EMRs
             and Spreadsheets. ....................................................................................... 26

             1.    CBP Failed To Demonstrate That the Withheld Information
                  Would Reveal Techniques, Procedures, or Guidelines....................... 27

             2.    CBP Failed To Demonstrate a Reasonably Expected Risk of
                  Circumvention of the Law. ................................................................. 29

          B.    CBP and ICE Improperly Withheld Information From Policies,
             Handbooks, Memoranda and Presentations That Do Not Describe
             Techniques, Procedures, or Guidelines.......................................................... 32

    IV.   DHS, CBP, and ICE Failed to Release All Segregable, Non-Exempt
         Information. ...............................................................................................................34

V.   DHS and ICE Failed to Offer Any Justifications for Their Withholding of
     Certain Information...................................................................................................40

CONCLUSION........................................................................................................................41

# TABLE OF AUTHORITIES[*]

CASES

*100Reporters LLC v. United States Department of Justice*, 316 F. Supp. 3d 124
(D.D.C. 2018) .................................................................................................24

*ACLU of Southern California v. United States Citizenship & Immigration Services*,
133 F. Supp. 3d 234 (D.D.C. 2015)................................................................29, 30

*ACLU v. United States Department of Defense*, 628 F.3d 612 (D.C. Cir. 2011) ..........................9

*\*ACLU v. United States Department of Justice*, 655 F.3d 1 (D.C. Cir. 2011) ............20, 22, 23, 24

*\*Alasaad v. Nielsen*, No. 17-cv-11730, 2019 WL 5899371 (D. Mass. Nov. 12, 2019) ..3, 4, 24, 28

*\*American Immigration Council v. United States Department of Homeland
Security*, 950 F. Supp. 2d 221 (D.D.C. 2013).....................................13, 18, 19, 27, 29, 35, 38

*American Oversight v. United States General Services Administration*, 311 F. Supp.
3d 327 (D.D.C. 2018) ....................................................................................17, 18

*Bagwell v. United States Department of Justice*, No. 15-CV-00531 (CRC), 2015
WL 9272836 (D.D.C. Dec. 18, 2015)......................................................................10

*Banks v. Department of Justice*, 813 F. Supp. 2d 132 (D.D.C. 2011) ..........................................29

*Campaign for Responsible Transplantation v. United States FDA*, 219 F. Supp. 2d
106 (D.D.C. 2002) ...........................................................................................9

*Carter v. United States Department of Commerce*, 830 F.2d 388 (D.C. Cir. 1987).....................10

*Citizens for Responsibility & Ethics in Washington v. United States Department of
Justice*, 922 F.3d 480 (D.C. Cir. 2019).....................................................................8

*Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854 (D.C. Cir. 1980)..........9, 12, 16

*Davidson v. United States Department of State*, 206 F. Supp. 3d 178 (D.D.C. 2016),
*aff'd*, 728 F. App'x 7 (D.C. Cir. 2018) ..................................................................40

*DiBacco v. United States Department of the Army*, 926 F.3d 827 (D.C. Cir. 2019) ....................34

*Director of the Office of Thrift Supervision v. Ernst & Young,* 795 F. Supp. 7
(D.D.C. 1992) ................................................................................................17

---

[*] Authorities upon which we chiefly rely are marked with an asterisk.

*Electronic Privacy Information Center v. Customs & Border Protection*, 160 F. Supp. 3d 354 (D.D.C. 2016) ...............................................................................26, 27, 28

*Families for Freedom v. United States Customs & Border Protection*, 837 F. Supp. 2d 287 (S.D.N.Y. 2011) ........................................................................................30

*Federal Labor Relations Authority v. United States Department of Treasury*, 884 F.2d 1446 (D.C. Cir. 1989) ...............................................................................23

*Georgacarakos v. FBI*, 908 F. Supp. 2d 176 (D.D.C. 2012) ........................................10

*Hall v. United States Department of Justice*, 552 F. Supp. 2d 23 (D.D.C. 2008) ..........9

*Holcomb v. Powell*, 433 F.3d 889 (D.D.C. Jan. 10, 2006) ...........................................10

*Hornbeck Offshore Transportation, LLC v. United States Coast Guard*, 2006 WL 696053 No. CV 04-1724 (CKK) (March 20, 2006) ...................................................17

*Judicial Watch, Inc. v. United States Department of Defense*, 715 F.3d 937 (D.C. Cir. 2013) .................................................................................................................35

*\*Judicial Watch, Inc. v. United States Department of Justice*, No. CV 17-0832 (CKK), 2019 WL 4644029 (D.D.C. Sept. 24, 2019) ...........................................13, 14, 17, 19

*Judicial Watch, Inc. v. United States Department of Housing & Urban Development*, 20 F. Supp. 3d 247 (D.D.C. 2014) ....................................................16

*Judicial Watch, Inc. v. United States Secret Service*, 579 F. Supp. 2d 182 (D.C. Cir. 2008) .................................................................................................................29

*King v. United States Department of Justice*, 830 F.2d 210 (D.C. Cir. 1987) ................9

*Larson v. Department of State*, 565 F.3d 857 (D.C. Cir. 2009) .....................................9

*Long v. Immigration & Customs Enforcement*, 149 F. Supp. 3d 39 (D.D.C. 2015) .....30

*Mead Data Central, Inc. v. United States Department of Air Force*, 566 F.2d 242 (D.C. Cir. 1977) ....................................................................................................8, 35

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) ...........................................8

*National Ass'n of Retired Federal Employees v. Horner*, 879 F.2d 873 (D.C. Cir. 1989) ...........................................................................................................20, 22

*Oglesby v. United States Department of the Army*, 79 F.3d 1172 (D.C. Cir. 1996) .....35

*People for the Ethical Treatment of Animals v. United States Department of Health & Human Services*, 901 F.3d 343 (D.C. Cir. 2018) ..................................................9

*Petroleum Information Corp. v. United States Department of Interior*, 976 F.2d 1429 (D.C. Cir. 1992) .......................................................................................11

*PHE, Inc. v. Department of Justice*, 983 F.2d 248 (D.C. Cir. 1993) ...............................29, 32, 33

*Powell v. United States Bureau of Prisons*, 927 F.2d 1239 (D.C. Cir. 1991) ..............................34

*Public Citizen, Inc. v. Office of Management & Budget*, 598 F.3d 865 (D.C. Cir. 2010) .......................................................................................11

*Public Employees for Environmental Responsibility v. United States Environmental Agency*, 926 F. Supp. 2d 48 (D.C. Cir. 2013) ...........................................................36

*Reporters Committee for Freedom of Press v. FBI*, 877 F.3d 399 (D.C. Cir. 2017) ......................8

*Schoenman v. FBI*, 604 F. Supp. 2d 174 (D.D.C. 2009) ...............................................................39

*Shapiro v. United States Department of Justice*, 153 F. Supp. 3d 253 (D.D.C. 2016) ...........................................................................................26, 33

*Shapiro v. United States Department of Justice*, 969 F. Supp. 2d 18 (D.D.C. 2013) ...................36

*Stein v. United States Department of Justice*, 197 F. Supp. 3d 115 (D.D.C. 2016) ......................9

*Sussman v. United States Marshals Service*, 494 F.3d 1106 (D.C. Cir. 2007) ...............................8

*Trans–Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022 (D.C. Cir. 1999) ...................................................................................34

*Vaughn v. Rosen*, 484 F.2d 820 (D.D.C. Aug, 20, 1973) ..............................................................9

*Whittaker v. United States Department of Justice*, No. 18-CV-01434 (APM), 2019 WL 2569915 (D.D.C. June 21, 2019) ...............................................................25

## STATUTES

5 U.S.C. § 552(a)(4)(B) ...........................................................................................................8, 10

5 U.S.C. § 552(b)(5) ........................................................................................................................2

5 U.S.C. § 552(b)(6) ........................................................................................................................2

5 U.S.C. § 552(b)(7) ......................................................................................................................20

5 U.S.C. § 552(b)(7)(C) ...................................................................................................................2

5 U.S.C. § 552(b)(7)(E) ...............................................................................................................2, 25

5 U.S.C. § 552(b)(9) ........................................................................................................................8

**LEGISLATIVE MATERIALS**

*Examining Warrantless Smartphone Searches at the Border: Hearing Before the Subcomm. On Federal Spending Oversight and Emergency Mgmt. of the S. Comm. On Homeland Sec. and Governmental Affairs*, 115th Cong. (2018) https://perma.cc/5UE9-K4AW ................................................................................................24

**FEDERAL RULES**

Fed. R. Civ. P. 56(a) ...............................................................................................10

**OTHER AUTHORITIES**

Alexandra Ellerbeck, *Security Risk for Sources as U.S. Border Agents Stop and Search Journalists*, Committee to Protect Journalists (Dec. 9, 2016), https://perma.cc/Q3HA-YAZ3 ................................................................................4

Tom Jones et al., *Source: Leaked Documents Show the U.S. Government Tracking Journalists and Immigration Advocates Through a Secret Database*, NBC7 (Mar. 6, 2019), https://perma.cc/2W5D-X6FS ...................................................4, 24

Cynthia McFadden, et al., *American Citizens: U.S. Border Agents Can Search Your Cell Phone*, NBC News (Mar. 13, 2017), https://perma.cc/69P7-RPXR .................................3

Press Release, U.S. Customs and Border Patrol, *CBP Releases Updated Border Search of Electronic Device Directive and FY17 Statistics* (Jan. 5, 2018), https://perma.cc/NV2F-BGTG..............................................................................3

Press Release, CAIR Floriday, *CAIR-FL Files 10 Complaints with CBP After the Agency Targeted and Questioned American-Muslims About Religious and Political Views*, (Jan. 18, 2017) https://perma.cc/5R5M-A8UD ..............................................4

Mazin Sidahmed, *Department of Homeland Security Detains Journalist Returning from Beirut*, Guardian (July 21, 2016), https://perma.cc/3JVS-693T.......................................4

United States Customs and Border Patrol, CBP Directive No. 3340-049A (Jan. 4, 2018), https://perma.cc/3QKY-MPGR ...................................................................2, 3, 28, 31

.

Plaintiff the Knight First Amendment Institute at Columbia University (the "Knight Institute" or "Institute") respectfully submits this memorandum of law in support of its cross-motion for summary judgment against Defendants the Department of Homeland Security ("DHS"), Customs and Border Protection ("CBP"), and Immigration and Customs Enforcement ("ICE") (collectively, the "Agencies").[1] It also submits this memorandum in opposition to the Agencies' motion for summary judgment.

## PRELIMINARY STATEMENT

This Freedom of Information Act ("FOIA") lawsuit seeks records related to the government's suspicionless searches of individuals' electronic devices at the nation's borders. Many thousands of individuals, including U.S. citizens, have been subjected to these searches, which CBP and ICE have conducted at dramatically increasing rates in recent years. These searches are incredibly intrusive, exposing volumes of private and expressive information stored on travelers' cell phones, laptops, and other personal electronic devices. Reports indicate that they may also be discriminatory. CBP appears to have targeted Muslims, including Muslim Americans, for electronic device searches at the border. Additionally, CBP has searched, and in some instances seized, information stored on the electronic devices of journalists, despite their objections to the forced disclosure of confidential source information. These suspicionless searches of U.S. citizens' and other travelers' electronic devices thus raise serious constitutional questions.

To inform the public about the government's exercise of its claimed authority to conduct suspicionless searches of travelers' electronic devices at the border, the Knight Institute filed a FOIA request (the "Request") with the Agencies in March 2017, seeking several categories of

---

[1] The Knight Institute has decided not to challenge withholdings by the Transportation Security Administration and the DHS Office of the Inspector General ("OIG") in this case.

records concerning the policies, practices, and procedures for these searches. In response to the Request and as a result of this litigation, the Agencies have collectively released thousands of pages of records providing some insight into those searches. Many responsive records, however, have been heavily redacted or withheld in full.

As relevant to the present cross-motion for summary judgment, the Agencies have failed to justify their withholding of responsive information under FOIA Exemptions 5, 6, 7(C), and 7(E). 5 U.S.C. §§ 552(b)(5), (b)(6), (b)(7)(C), (b)(7)(E). The explanations the Agencies offer in support of their motion for summary judgment do not carry their burden of demonstrating that the exemptions they claim actually apply to the information they have withheld. Given the extensive nature of some redactions, the Agencies' explanations do not justify their withholding of what appears to be segregable, non-exempt information. And for certain redacted or withheld records, the Agencies failed to offer any explanations at all. Therefore, as set forth in further detail below, the Court should grant summary judgment in favor of the Knight Institute.

## FACTUAL BACKGROUND

### I.      Government Searches of Electronic Devices at the Border

In August 2009, CBP and ICE each issued a directive purporting to authorize suspicionless searches of travelers' electronic devices—including cell phones, tablets, and laptop computers—at the border. *See* Answer at Ex. A ("CBP Border Search Directive"), ECF No. 18-2; Ex. B ("ICE Border Search Directive"), ECF No. 18-3.[2] Specifically, the CBP Border Search Directive stated that CBP officers "may" search electronic devices "with or without individualized suspicion." CBP

---

[2] CBP issued a revised Border Search Directive after the commencement of this lawsuit, in January 2018. CBP, Border Search of Electronic Devices, CBP Directive No. 3340-049A (Jan. 4, 2018), https://perma.cc/3QKY-MPGR.

Border Search Directive § 5.1. It further permitted CBP officers to seize electronic devices without individualized suspicion for the time necessary to search the devices. *Id.* § 5.3. Similarly, the ICE Border Search Directive stated that ICE Special Agents "may search, detain, seize, retain, and share electronic devices, or information contained therein, with or without individualized suspicion." ICE Border Search Directive § 6.1. CBP officers document searches of electronic devices in electronic media reports ("EMRs"), which are stored in CBP's TECS database. *See* 1st Joint Stat. Report at 3–4, ECF No. 21. Electronic device searches conducted by ICE agencies are documented in reports of investigation ("ROIs"). *See* 2nd Joint Stat. Report at 5, ECF No. 23.

Pursuant to these directives, CBP and ICE have conducted well over 100,000 searches of electronic devices since fiscal year 2012. While ICE does not track the number of basic device searches it conducts each year, CBP conducted approximately 108,000 searches from fiscal year 2012 through fiscal year 2018. *See Alasaad v. Nielsen*, No. 17-cv-11730-DJC, 2019 WL 5899371, at *12 (D. Mass. Nov. 12, 2019). And the number of searches increased dramatically from 2015 to 2017. CBP reportedly conducted 8,503 device searches in fiscal year 2015. *See* Am. Compl. Ex. A ("Request"), ECF No. 10-1 (citing Cynthia McFadden, et al., *American Citizens: U.S. Border Agents Can Search Your Cell Phone*, NBC News (Mar. 13, 2017), https://perma.cc/69P7-RPXR). According to CBP statistics, that number jumped to 19,051 searches in fiscal year 2016 and 30,200 searches in fiscal year 2017. Press Release, U.S. Customs and Border Patrol, *CBP Releases Updated Border Search of Electronic Device Directive and FY17 Statistics* (Jan. 5, 2018), https://perma.cc/NV2F-BGTG.

During this time, news reports raised serious concerns that border officers are abusing their authority to search travelers' electronic devices. *See* Request at 3–4. Border officers reportedly subjected Isma'il Kushkush, a former acting bureau chief of the *New York Times* in East Africa,

to an electronic device search January 2016 while interrogating him regarding his reporting on refugees. *See* Alexandra Ellerbeck, *Security Risk for Sources as U.S. Border Agents Stop and Search Journalists*, Committee to Protect Journalists (Dec. 9, 2016), https://perma.cc/Q3HA-YAZ3. Border officers reportedly detained Maria Abi-Habib, a reporter for the *Wall Street Journal*, after she landed in Los Angeles in July 2016; after interrogating her about her reporting, they attempted to confiscate her cell phones, which contained confidential source information. *See* Mazin Sidahmed, *Department of Homeland Security Detains Journalist Returning from Beirut*, Guardian (July 21, 2016), https://perma.cc/3JVS-693T. In 2017, the Florida Branch of the Council for American-Islamic Relations filed ten complaints with CBP on behalf of Muslim-American travelers who were targeted for electronic device searches at the border. Press Release, CAIR Florida, *CAIR-FL Files 10 Complaints with CBP After the Agency Targeted and Questioned American-Muslims About Religious and Political Views* (Jan. 18, 2017), https://perma.cc/5R5M-A8UD. More recently, CBP has reportedly targeted activists, advocates, and journalists covering migration issues at the U.S.-Mexico border, subjecting them to extended questioning while detaining their electronic devices. *See* Tom Jones et al., *Source: Leaked Documents Show the U.S. Government Tracking Journalists and Immigration Advocates Through a Secret Database*, NBC7 (Mar. 6, 2019), https://perma.cc/2W5D-X6FS. And the District Court for the District of Massachusetts has concluded that CBP's and ICE's suspicionless searches of travelers' electronic devices are unconstitutional. *See Alasaad*, 2019 WL 5899371, at *20.

## II.     The Knight Institute's Request

Seeking to inform the public about the government's suspicionless searches of electronic devices at the nation's borders, the Knight Institute submitted identical FOIA requests to DHS,

ICE, and CBP in March 2017. *See* Am. Compl. ¶¶ 17–18, ECF No. 10. The Request sought seven

sets of records:

1) records from the Agencies' TECS database containing information about the number and reasons for each search, detention, retention, or sharing of individuals' electronic devices or the information accessible on them since fiscal year 2012;

2) documents relating to each instance since fiscal year 2012 in which CBP or ICE searched, detained, retained, or shared an electronic device or the information accessible on it;

3) revisions of or documents supplementing or superseding the CBP and ICE Directives concerning border searches of electronic devices;

4) certain documents relating to any reviews of CBP's or ICE's policies or practices concerning electronic device searches;

5) documents concerning or relating to complaints filed by individuals or organizations about CBP's or ICE's search, review, retention, or sharing of the information on travelers' electronic devices;

6) documents reflecting policies, practices, or procedures concerning how CBP officers handle "privileged or other sensitive materials," including "work-related information carried by journalists" as described in the CBP Directive concerning border searches of electronic devices; and

7) documents reflecting policies, practices, and procedures concerning CBP's anti-discrimination policy as applied to discretionary electronic device searches.

Am. Compl. ¶ 21; *see* Request at 4–6. The Knight Institute sought expedited processing of the

Request and a waiver or limitation of fees. *Id.* at 7–9. Seeking to enforce the Request, the Knight

Institute filed a Complaint in March 2017, followed by an Amended Complaint in April 2017.

Compl., ECF No. 1; Am. Compl.

## III.    The Agencies' Responses

Following the initiation of the lawsuit, the parties entered into negotiations regarding the

terms and timing of the Agencies' searches for records responsive to the Request. *See, e.g.*, 3d

Joint Stat. Report 2–4, ECF No. 24; 4th Joint Stat. Report 1, 4, ECF No. 25. Over the course of the

following year, the parties reached a number of agreements regarding the Agencies' searches. The

Agencies subsequently released thousands of pages of responsive records, but many of those records were extensively redacted or withheld in full.

CBP: The parties agreed that, in response to Item 2 of the Request, CBP would process a random two-percent sample of EMRs created in the eighteen-month period between July 16, 2016 and January 16, 2018. 5th Joint Stat. Report at 4, ECF No. 26. The parties further agreed that CBP would also produce a spreadsheet displaying field entry data from all EMRs created between fiscal year 2012 and December 31, 2017, except for those data fields CBP considered exempt under FOIA, which CBP would identify for the Knight Institute. 1st Joint Stat. Report at 2; 7th Joint Stat. Report at 6–7, ECF No. 30. Between May 2017 and September 2019, CBP released these and other records responsive to the Request, totaling more than 4,000 pages, while withholding responsive information under FOIA Exemptions 3, 5, 6, 7(C), and 7(E). 1st Joint Stat. Report at 2; 4th Joint Stat. Report at 2–3; 6th Joint Stat. Report at 2, 4, ECF No. 29; 7th Joint Stat. Report at 2, 8; 8th Joint Stat. Report at 5, ECF No. 31; 9th Joint Stat. Report at 2–3, ECF No. 32; 10th Joint Stat. Report at 1, ECF No. 34; 11th Joint Stat. Report at 1, ECF No. 39; *see also,* Defs.' Mot. for Summ. J. ("Defs.' MSJ") Ex. C, at ¶ 6, ECF No. 46-1 ("CBP Decl."). Between March 15, 2019 and September 23, 2019, CBP released 482 pages of records referred by DHS and TSA, while withholding many of those pages in part and withholding an additional 492 pages in full under Exemptions 3, 5, 6, 7(C), and 7(E). 11th Joint Stat. Report at 4; 14th Joint Stat. Report at 1, ECF No. 43; 15th Joint Stat. Report at 1, ECF No. 44.

ICE: ICE represented that it did not specifically track electronic device searches, but that it would search its Investigative Case Management database for ROIs responsive to Item 2 of the Request using agreed-upon search terms. 1st Joint Stat. Report at 4; 5th Joint Stat. Report at 1. Between June 2017 and April 2018, ICE released these and other records responsive to the

Request, totaling more than 1,500 pages, while withholding responsive information under Exemptions 5, 6, 7(C), and 7(E). 6th Joint Stat. Report at 1, 3. Between February 9, 2019 and October 4, 2019, ICE released an additional 276 pages of records referred by DHS and CBP, while withholding information under Exemptions 5, 6, 7(A),[3] 7(C), and 7(E). 10th Joint Stat. Report at 2; 13th Joint Stat. Report at 2, ECF No. 41; 15th Joint Stat. Report at 1. On September 20, 2018, ICE provided the Knight Institute with a draft, sample *Vaughn* index explaining its withholding of responsive information from 74 records identified by the Knight Institute. 8th Joint Stat. Report at 1; 9th Joint Stat. Report at 3. Finding many of those explanations inadequate, the Knight Institute did not decide to voluntarily dismiss ICE from the case at that point, and it later informed ICE that it anticipated challenging ICE's withholdings under 5, 6, 7(A), 7(C), and 7(E). See 15th Joint Stat. Report at 1–2.

DHS: Following negotiations regarding search terms tailored to the individual items of the Request, the parties agreed that DHS would ask specified components to search for records responsive to Items 1, 4, 6, and 7 of the Request, 8th Joint Stat. Report at 3, and that DHS would ask its Office for Civil Rights and Civil Liberties ("CRCL") to search its complaint-tracking system for records responsive to Item 5 of the Request using agreed-upon search terms. 7th Joint Stat. Report at 7; 8th Joint Stat. Report at 2. Between December 1, 2017 and May 10, 2019, DHS released 2,649 pages of responsive records, while withholding information from 1,696 of those pages under Exemptions 5 and 6, and withholding an additional 1,759 pages under Exemptions 3, 5, and 7(E). 6th Joint Stat. Report at 2, 4; 7th Joint Stat. Report at 1–2; 9th Joint Stat. Report at 3;

---

[3] ICE states that it has not made any withholdings under Exemption 7(A), Defs.' MSJ Ex. F, at ¶ 19, ECF No. 46-7, but ICE's counsel acknowledged that the documents it released on October 4, 2019, contained "redactions pursuant to FOIA Exemptions 5, 6, 7(A), 7(C), and/or 7(E)." 15th Joint Stat. Report at 1.

10th Joint Stat. Report at 1–2; 12th Joint Stat. Report at 3, ECF No. 40; Decl. of Matthew Hellman in Supp. of Pl.'s Cross-Mot. for Summ. J. ("Hellman Decl."), Ex. U (December 1, 2017 cover letter accompanying DHS's production of documents).

*      *      *

The Agencies filed a motion for summary judgment on January 31, 2020. The Knight Institute's cross-motion for summary judgment follows.

## LEGAL STANDARD

Congress passed FOIA to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Consistent with this congressional intent, FOIA "requires federal agencies to disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 401 (D.C. Cir. 2017) (quoting *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 365–66 (D.C. Cir. 2008)). FOIA further requires agencies to disclose "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b)(9); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). In the D.C. Circuit, "[i]t has long been a rule . . . that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

Agencies bear the burden of demonstrating that any withheld information falls within the claimed FOIA exemptions. 5 U.S.C. § 552(a)(4)(B); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 922 F.3d 480, 487 (D.C. Cir. 2019). To meet this burden, agencies must submit affidavits or declarations that "describe the justifications for nondisclosure with reasonably

8

specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *People for the Ethical Treatment of Animals v. U.S. Dep't of Health & Human Servs.*, 901 F.3d 343, 349 (D.C. Cir. 2018) (citation omitted). The justification for invoking a FOIA exemption must be "logical" or "plausible." *See Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009); *see also ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 624 (D.C. Cir. 2011) (noting that to meet its burden, the CIA's justification for invoking a FOIA exemption must "be both 'plausible' and 'logical.'"). And an agency's "affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Stein v. U.S. Dep't of Justice*, 197 F. Supp. 3d 115, 121 (D.D.C. 2016) (*quoting Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) (alteration in original)).

Agencies typically detail the justifications for their withholdings in a *Vaughn* index. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). "The measure of a *Vaughn* index is its descriptive accuracy." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 225 (D.C. Cir. 1987). To achieve the required descriptive accuracy, "[a] withholding agency [generally] must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information." *Id.* at 223–24. It is the agency's burden to "disclose as much information as possible without thwarting the exemption's purpose." *Hall v. Dep't of Justice*, 552 F. Supp. 2d 23, 27 (D.D.C. 2008) (quoting *King*, 830 F.2d at 224). Ultimately, the *Vaughn* index must allow a requester to "argue effectively for disclosure" and the court to "rule effectively." *Campaign for Responsible Transplantation v. U.S. Food & Drug Admin.*, 219 F. Supp. 2d 106, 116 (D.D.C. 2002) (citing *King*, 830 F.2d at 225); *see also Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980). Therefore, a *Vaughn* index is inadequate

if it features "general and vague" descriptions of withheld information, "purely conclusory" application of exemptions to the documents, and analyses that merely "parrot the statutory standards that correspond to each exemption." *Bagwell v. U.S. Dep't of Justice*, No. 15-CV-00531 (CRC), 2015 WL 9272836, at *4 (D.D.C. Dec. 18, 2015).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (quotation marks omitted). At summary judgment, the Court assesses *de novo* whether the agency has properly withheld information under the claimed FOIA exemptions. 5 U.S.C. § 552(a)(4)(B). To ensure that the documents at issue fall within the asserted exemptions, it is within the Court's discretion to require *in camera* inspection of those documents. *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392–93 (D.C. Cir. 1987); *see also* 5 U.S.C. § 552(a)(4)(B). Ultimately, summary judgment may be granted if the movant shows that "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).

## ARGUMENT

Relying on Exemptions 5, 6, 7(C), and 7(E), the Agencies have improperly withheld information directly responsive to the Request. CBP has withheld certain categories of information that the Knight Institute specifically requested from records including EMRs, spreadsheets summarizing electronic device searches, traveler complaints, policies, presentations, and handbooks. ICE has withheld similar information from ROIs and relevant handbooks. DHS has withheld significant amounts of information from records documenting inspections, as well as relevant reports, email communications, and memoranda. The Agencies' declarations and supporting *Vaughn* indices have failed to justify their withholdings under the claimed Exemptions.

Furthermore, the Agencies have failed to demonstrate that they have released all segregable, non-exempt information. Finally, with respect to certain withholdings, the Agencies failed to offer any justifications whatsoever.

## I.   DHS, CBP, AND ICE IMPROPERLY WITHHELD INFORMATION UNDER EXEMPTION 5.

DHS, CBP, and ICE have not justified their reliance on Exemption 5 to withhold extensive sections of responsive spreadsheets, email communications, memoranda, briefing materials, a formal impact assessment, and other records. In many instances, the Agencies have withheld these records in their entirety. "Exemption 5 allows agencies to withhold documents that would be protected from disclosure in litigation under one of the recognized evidentiary or discovery privileges." *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 874 (D.C. Cir. 2010). The incorporated privileges include deliberative process privilege, attorney-client privilege, and work product privilege. As always, it is the agencies' burden "to show that requested material falls within a FOIA exemption." *Petrol. Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)).

The Agencies' declarations and accompanying *Vaughn* index entries[4] have failed to demonstrate the applicability of the deliberative process, attorney-client, and work product privileges to six categories of documents. Specifically, DHS failed to justify its reliance on Exemption 5 in withholding sections of a CRCL Impact Assessment of Border Searches of

---

[4] *See* Defs.' MSJ Ex. B ("Holzer Decl."), Ex. A ("DHS *Vaughn* Index"), ECF No. 46-3; *Id.* Ex. C ("Howard Decl."), Attachment ("CBP *Vaughn* Index"), ECF No. 46-4; *Id.* Ex. F ("Fuentes Decl."), Ex. C ("ICE *Vaughn* Index"), ECF No. 46-7.

Electronic Devices;[5] a draft document by an unidentified CRCL employee;[6] a memorandum from

the DHS General Counsel to the DHS Secretary;[7] and certain email communications between the

DHS Office of the General Counsel and the CBP Office of the Chief Counsel.[8] Likewise, CBP

failed to justify its withholding of documents detailing past border searches of electronic devices,[9]

and ICE failed to justify its withholding of a document titled "Computer Border Search Discussion

Topics."[10]

### A.    Deliberative Process Privilege

The Agencies invoked the deliberative process privilege but failed to justify its application

to the information they withheld under Exemption 5. The deliberative process privilege applies to

documents that are "predecisional"—"generated before the adoption of an agency policy"—and

"deliberative"—"reflect[ing] the give-and-take of the consultative process." *Coastal States Gas*

*Corp.*, 617 F.2d at 866. "A document that does nothing more than explain an existing policy cannot

be considered deliberative" and, accordingly, cannot qualify for the deliberative process privilege.

*Pub. Citizen*, 598 F.3d at 876.

An agency fails to justify its invocation of the deliberative process privilege if it "does not

fully explain the deliberative processes, or final policies or decisions, connected with [the] entries"

or does not "provide even broad descriptions of the subject-matter or content of almost all the

---

[5] DHS-001-00585-00903–08, DHS-001-00585-00911–13 (DHS *Vaughn* Index 21). This document was withheld in full by DHS; documents withheld in full are not included as exhibits, but can be sent to the Court on request.

[6] DHS-001-00585-000298 (DHS *Vaughn* Index 15–16) (withheld in full).

[7] DHS-001-00585-01873 (DHS *Vaughn* Index 23) (withheld in full).

[8] Hellman Decl. Ex. I, DHS-001-00585-000117–33 (DHS *Vaughn* Index 8–9).

[9] *See* Hellman Decl. Ex. H, CBP's Mar. 15, 2019 release letter (271 pages withheld in full) (CBP *Vaughn* Index 27–28).

[10] 2017-ICLI-0011 62–64, 2017-ICLI-0011 67–82 (ICE *Vaughn* Index 10–14) (withheld in full).

withheld entries." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, No. CV 17-0832 (CKK), 2019 WL 4644029, at *8 (D.D.C. Sept. 24, 2019). In *Coastal States Gas Corp.*, for example, the court held that an index providing a brief description and identifying the author, addressee, and date of a memorandum was "patently inadequate to permit a court to decide whether [Exemption 5] was properly claimed." 617 F.2d at 861. In *American Immigration Council v. U.S. Department of Homeland Security*, the court found that the agency had "consistently failed" to justify its withholdings under the deliberative process privilege. Its *Vaughn* index "invok[ed] the deliberative-process privilege for a laundry list of records . . . without offering any description of [the] process, the identities of either the drafters or recipients of the documents, or their respective positions." *Am. Immigration Counsel v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 240 (D.D.C. 2013).

As in the above cases, the justifications offered by the Agencies here fall short. DHS attempted to justify its complete withholding of multiple documents by parroting the applicable legal standard. For example, it presented the following reasoning to justify withholding of a draft document[11] by an unidentified CRCL employee:

> This draft document, authored by an unidentified CRCL employee, contains the employee's evaluation of and opinions about the effectiveness of DHS policies in safeguarding the rights of the public during searches of electronic devices at the border. The document does not represent a final agency decision and is both pre-decisional and deliberative. To release the document would expose the internal deliberations of a CRCL employee, impede the frank and candid exchange of ideas and information within the agency, reveal the evaluation and opinions of a CRCL employee, and ultimately have a chilling effect on intra-agency deliberations. The free-flow of information is critical to the agency being able to effectively evaluate matters; without it the agency will be hindered in its ability to deliberate on the best way to address complaints, identify policy concerns, and propose and adopt solutions that ultimately impact DHS and the public. Release of the document would pose a substantial risk of confusing the public by disclosing the thoughts,

---

[11] DHS-001-00585-000298 (withheld in full).

> recommendations, and opinions of a CRCL employee regarding the effectiveness of DHS policies that were not adopted by the agency.[12]

Nowhere in the above explanation does DHS identify the "final policies or decisions[] connected with [the] entries." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 2019 WL 4644029, at *8. Rather, it provides a vague description of the document's contents followed immediately by a lengthy repetition of the policy reasons underlying the deliberative process privilege. Similarly, DHS withheld in full a memorandum from DHS General Counsel to the DHS Secretary[13] but refused to provide any information about the content of the memorandum or any decision to which it related:

> This memorandum from the DHS General Counsel provides legal advice to the Secretary for his consideration. The memorandum was antecedent to the making of any final agency decision and is therefore pre-decisional. The memorandum contains the advisory opinions, conclusions, and recommendations of the General Counsel for the Secretary's consideration and reflects the give-and-take of the consultative process wherein the General Counsel discussed and weighed the merits of various positions. For these reasons the memorandum is deliberative. Disclosure of the memorandum would discourage the open and frank exchange of ideas between agency personnel resulting in a chilling effect on intra/inter-agency communications. In this instance, because the record contains legal advice, its release could dissuade agency officials from seeking the views of agency counsel. For the above reasons, the memorandum was withheld under the deliberative process privilege.[14]

These generic rationales for the privilege, without more, insufficiently explain why the privilege should apply in these particular instances.

DHS's justification for withholding portions of a CRCL Impact Assessment of Border Searches of Electronic Devices[15] are similarly inadequate and illogical. DHS withheld several pages of information under the headings "Fourth Amendment, Border Search Authority," "First Amendment," and "Equal Protection and Religious/Ethnicity Discrimination."[16] Invoking the

---

[12] DHS *Vaughn* Index 15–16.
[13] DHS-001-00585-01847–73 (withheld in full).
[14] DHS *Vaughn* Index 23.
[15] Hellman Decl. Ex. M, DHS-001-00585-00894.
[16] *Id.*, DHS-001-00585-00903–08, DHS-001-00585-00911–13 (DHS *Vaughn* Index 21).

deliberative process privilege, DHS stated that it had "redacted legal analyses proffered by CRCL to the DHS Secretary relative to CBP's border search authority, authority to search electronic devices at the border, and First Amendment considerations," and that "CRCL's recommendations and the arguments in favor of those recommendations were intended to advise the Secretary 'and do not purport to state the current position of the Department.'" DHS *Vaughn* Index at 21. Here, too, DHS has failed to identify any decision to which the withheld information relates, and thus has failed to demonstrate that the information is pre-decisional. Moreover, DHS's characterization of the withheld legal analyses as privileged is illogical, given that DHS released the conclusions of those analyses (*e.g.,* "The laptop border searches in the ICE and CBP policies do not violate travelers' First Amendment rights as defined by the courts"[17]) and more information under the header "Equal Protection and Religious/Ethnicity Discrimination" than under the Fourth Amendment or First Amendment headers. Much of the rest of the document contains unredacted analyses and recommendations regarding CBP's and ICE's searches of electronic devices at the border (*e.g.,* information under the header "Privileged Materials"[18]). This stark inconsistency in applying the deliberative process privilege undermines DHS's claim to the privilege.

CBP and ICE offer even paltrier explanations for their Exemption 5 withholdings. ICE withheld a document titled "computer border search discussion topics"[19] that it describes as "responses to DOJ's questions relating [to] DHS's border search authority" and "prepared . . . in advance of further senior level discussions."[20] It does not identify the policy or decision in support of which the document was prepared. Finally, CBP withheld in full "spreadsheets detailing border

---

[17] *Id.*, DHS-001-00585-00912.
[18] *Id.*, DHS-001-00585-00915.
[19] 2017-ICLI-0011 62–64; 2017-ICLI-0011 67–82 (withheld in full).
[20] ICE *Vaughn* Index 10–14.

searches of electronic devices,"[21] described them as "[r]ecords listing and analyzing past border searches of electronic devices and detailing the reasons for search and/or biographic information regarding the subject of the search," and justified their withholding under Exemption 5 as follows: "Information compiled and analyses conducted to support recommendations to agency leadership."[22] This characterization offers no explanation as to why this apparently factual information should be withheld due to deliberative process privilege; it does not even assert that the information is pre-decisional.[23]

Without pointing to the decisions or deliberate processes to which these documents relate, the Agencies' *Vaughn* index entries do not provide the Court with the information necessary to "determine the existence of each essential element of an incorporated privilege." *Judicial Watch, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 20 F. Supp. 3d 247, 257 (D.D.C. 2014). Consequently, the Agencies have failed to meet their burden to justify the withholding of information from these documents under Exemption 5.

### B.    Attorney-Client Privilege and Work Product Privilege

The Agencies assert that certain categories of information fall within the attorney-client privilege or work product privilege and were therefore properly withheld under Exemption 5, but they provide insufficient information to support their claims. "Attorney-client privilege is narrowly construed and is limited to those situations in which its purposes will be served," and it "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Coastal States Gas Corp.*, 617 F.2d at 862–63 (quoting *Fisher v. United*

---

[21] CBP *Vaughn* Index 27–28; Hellman Decl. Ex. H, March 15, 2019 release letter.
[22] CBP *Vaughn* Index at 27–30.
[23] CBP does not identify which Exemption 5 privilege it wished to invoke, but the explanation does not mention the involvement of attorneys, so it clearly falls outside the attorney-client and work product privileges.

*States*, 425 U.S. 391, 403 (1976)). To justify a withholding based on attorney-client privilege, an agency must provide in its *Vaughn* index the same type of information that would be required in a privilege log: namely, it must "state the subject matter, number of pages, author, date created, and identities of all persons to whom the original or any copies of the documents were shown or provided." *Hornbeck Offshore Transp., LLC v. U.S. Coast Guard*, No. Civ. A. 04-1724 (CKK), 2006 WL 696053, at *14 (D.D.C. Mar. 20, 2006) (quotation marks omitted); *see also Dir. of the Office of Thrift Supervision v. Ernst & Young*, 795 F. Supp. 7, 11 (D.D.C. 1992). The agency must also "'demonstrat[e] . . . confidentiality at both the time of the communication and maintained since,'" *Am. Oversight v. U.S. Gen. Servs. Admin.*, 311 F. Supp. 3d 327, 342 (D.D.C. 2018) (quoting *Coastal States Gas Corp.*, 617 F.2d at 863), and must "establish that the 'advice given [was] predominantly legal . . . in nature.'" *Id.* (quoting *Boca Investings P'Ship v. United States*, 31 F. Supp. 2d 9, 11 (D.D.C. 1998)).

The requirements are similar for agency claims of work product privilege, which "shields from discovery 'documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative.'" *Judicial Watch, Inc.*, 2019 WL 4644029, at *6 (quoting Fed. R. Civ. P. 26(b)(3)). To invoke work product privilege, the Agencies "must therefore do four things: '(1) provide a description of the nature of and contents of the withheld document, (2) identify the document's author or origin, (3) note the circumstances that surround the document's creation, and (4) provide some indication of the type of litigation for which the document's use is at least foreseeable.'" *Id.* (quoting *Ellis v. U.S. Dep't of Justice*, 110 F. Supp. 3d 99, 108 (D.D.C. 2015)). In all cases, "terse" assertions are inadequate. *Am. Immigration Council*, 950 F. Supp. 2d at 243.

Here, the Agencies invoke the attorney-client privilege without providing the details necessary for the Knight Institute or the Court to evaluate the validity of their claims. An explanation purporting to justify invocation of the attorney-client privilege is "insufficient" if it fails to show that "the communication was and remains confidential" and that "the communication had a primary purpose of obtaining or providing legal advice." *Am. Oversight*, 311 F. Supp. 2d at 342. DHS's and ICE's explanations failed to demonstrate their withheld information was, in fact, kept confidential. For example, DHS attempted to justify its withholding of e-mail communications between the DHS Office of the General Counsel and the CBP Office of the Chief Counsel with the following conclusory statement: "The email communications contain information obtained by agency counsel from their clients while securing legal advice or services."[24] Similarly, ICE withheld documents containing "DOJ's questions relating to DHS's border search authority" and described them as "[c]ommunications from clients to their attorneys made for the purpose of securing legal advice or services, here responses to questions posed by DOJ to DHS and its components (including ICE, CBP, and USCG) in regard to DHS's border search authorities."[25] These statements do not establish that the allegedly privileged information was confidential at the time of communication and has remained confidential since. Rather, they resemble the statement at issue in *American Immigration Council*, where the agency asserted that, "[i]n each instance, the client was seeking legal advice from the attorney," and that "these materials were intended to be confidential and to be shared only with clients." 950 F. Supp. 2d at 243. Because this explanation failed to "demonstrate confidentiality in fact," the court found it

---

[24] Hellman Decl. Ex. I, DHS-001-00585-000117–33 (DHS *Vaughn* Index 8)..

[25] ICE *Vaughn* Index 12; 2017-ICLI-0011 62–64, 2017-ICLI-0011 67–82 (withheld in full).

inadequate. *Id.* DHS's and ICE's explanations as to their claims of attorney-client privilege are likewise inadequate.

The Agencies' attempts to justify these withholdings under work product privilege have failed for similar reasons. DHS also invoked the work product privilege in withholding the e-mail communications between the DHS Office of the General Counsel and the CBP Office of the Chief Counsel,[26] stating: "In this instance the records were created not only with the intention of providing legal advice to the Secretary, but they were created by agency counsel in anticipation of and in preparation for ongoing and future litigation involving the search of electronic devices at the border."[27] ICE withheld the documents containing "DOJ's questions relating to DHS's border search authority" as alleged work product, too, with the explanation that "[t]he withheld information was created by agency counsel in anticipation of and in preparation for ongoing and future litigation, specifically, challenges raised to DHS's border search authority . . . . The documents contain questions and responses prepared for the specific purpose of informing the development of the agencies' litigation strategy."[28] These explanations are far from sufficient. They do not identify the author and origin of any of the withheld information, and their descriptions of the contents of the documents, and of the litigation in anticipation of which they were prepared, are so general as to be boilerplate. *See Am. Immigration Council*, 950 F. Supp. 2d at 242 (concluding that statement, "[t]hese materials were drafted by attorneys in contemplation of litigation and are therefore attorney work product," was insufficient to support claim of work product privilege); *see also Judicial Watch, Inc.*, 2019 WL 4644029, at *6.

*     *     *

---

[26] Hellman Decl. Ex. L, DHS-001-00585-0117–133.
[27] DHS *Vaughn* Index 8–9.
[28] ICE *Vaughn* Index 13; 2017-ICLI-0011 62–64, 2017-ICLI-0011 67–82 (withheld in full).

The Agencies thus have failed to carry their burden in justifying their withholdings under Exemption 5, and the Court should therefore grant summary judgment in favor of the Knight Institute.

## II.   CBP IMPROPERLY WITHHELD INFORMATION UNDER EXEMPTIONS 6 AND 7(C).

CBP improperly invoked Exemptions 6 and 7(C) to withhold non-identifying information about travelers who were subjected to electronic device searches from EMRs and spreadsheets summarizing data relating to those searches.

Exemption 7(C) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7).[29] To support an invocation of Exemption 7(C), an agency must first demonstrate that there is a "*substantial probability* that disclosure will cause an interference with personal privacy." *Nat'l Ass'n of Retired Fed. Emps v. Horner*, 879 F.2d 873, 878 (D.C. Cir. 1989) (emphasis added). Even where the agency meets that requirement, Exemption 7(C) requires a balancing: "In deciding whether the release of particular information constitutes an 'unwarranted' invasion of privacy under Exemption 7(C), [the Court] 'must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect.'" *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989)).

---

[29] CBP invoked Exemptions 6 and 7(C); because courts have held that Exemption 7(C) is more protective than Exemption 6, we limit our analysis to Exemption 7(C). *See ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 7 (D.C. Cir. 2011).

CBP's justifications for its withholdings under Exemptions 6 and 7(C) are inadequate for two reasons. First, CBP has categorically redacted certain information—like travelers' countries of birth, ethnicities, and citizenship statuses—without demonstrating that the disclosure of that information would intrude upon any traveler's personal privacy. Second, because the privacy interests at stake are minimal at best, CBP cannot demonstrate that those interests outweigh the public interest in disclosure.

## A.    CBP Categorically Withheld Non-Identifying Information.

CBP has categorically redacted from EMRs[30] and related spreadsheets certain information, the disclosure of which cannot constitute an unwarranted invasion of any individual's personal privacy. Specifically, CBP has withheld information about the ethnicities, countries of birth, and citizenship statuses of the otherwise anonymized travelers whose devices were searched at the border.[31] *E.g.*, Hellman Decl. Ex. A, CBP004721 (CBP *Vaughn* Index 3–6).[32] CBP redacted the same information from the spreadsheet it produced to the Knight Institute providing the field data entries for all of device searches conducted between October 5, 2012 and December 31, 2017. Hellman Decl. Ex. B, CBP003182 (CBP *Vaughn* Index 3–6).[33] In some instances, CBP has also

---

[30] Most of the records of electronic device searches CBP released in this case were EMRs. While some of the released search reports are not EMRs, those documents contain the same problematic withholdings addressed here, and this argument applies with equal force to those documents. *See, e.g.*, CBP's March 22, 2019 release (pp. 18–21, 24–25, 32, 34, 36, 42, 44, 46, 48, 50, 52, 54, 56, 58, 60, 64, 66, 68, 81–86); CBP's Aug. 2, 2019 release (pp. 10, 13–16, 20–23, 27–29, 31–34, 42–46, 50–52, 56, 59–66) (CBP *Vaughn* Index 3–6).

[31] The Knight Institute challenges CBP's withholdings from the following EMRs: CBP000040–53, CBP001417–1594, CBP001704–06, CBP001708–09, CBP001711–14, CBP001737–38, CBP001755–1965, CBP002032–2310, CBP002311–2588, CBP002589–2877, CBP002878–4605, CBP004606–4889, CBP005112–15, CBP005150–52, CBP005156–64, CBP005173, CBP005200, CBP005229–30, CBP's Nov. 1, 2018 release (pp. 1–177), and CBP's Aug. 2, 2019 release (pp. 81–84) (CBP *Vaughn* Index 3–6).

[32] CBP withheld this information categorically throughout EMRs, *see supra* n. 31.

[33] CBP withheld this information categorically in additional spreadsheets, *see* CBP000057–211, CBP000235–92,   CBP000348–429,   CBP000660–1416,   CBP005119–44,   CBP005165–70,

redacted the travelers' occupations and the purpose and duration of their trips. *See* Hellman Decl.

Ex. C, CBP001469 (CBP *Vaughn* Index 3–6).[34]

These withholdings do not meet the requirements of Exemption 7(C) at the first step,
because these categories of information are not identifying and therefore their disclosure cannot
result in an unwarranted invasion of privacy. For example, CBP withheld from one EMR the
traveler's country of birth, citizenship, and information that would reveal the places the traveler
had recently visited.[35] The odds that such information can be tied to any person, even in context,
are vanishingly small, given that CBP has also withheld travelers' names, the names and
descriptions of their family members, their dates of birth, their addresses, and their social media
handles, none of which the Knight Institute challenges here.[36] *See ACLU v. Dep't of Justice*, 655
F.3d 1, 10 (D.C. Cir. 2011) ("In this case . . . disclosure will reveal only the 'bits,' not the
'whole.'"). Therefore, CBP has not shown that there is any probability, let alone a "substantial"
one, that the disclosure of travelers' countries of birth, citizenship statuses, and ethnicities "will
cause an interference with personal privacy." *Nat'l Ass'n of Retired Fed. Emps v. Horner*, 879
F.2d at 878 (emphasis added).

---

CBP005209–16, and CBP005231–57, CBP's Mar. 15, 2019 release (271 pages withheld in full),
CBP's Mar. 22, 2019 release (pp. 5, 13–17) (CBP *Vaughn* Index 8–11, 23–27, 27–30).

[34] *See also* CBP001469, CBP001471, CBP001826, CBP002257, CBP002446, CBP002767,
CBP002769, CBP002776, CBP002788, CBP003022, CBP003132, CBP003168, CBP003171,
CBP004843 (CBP *Vaughn* Index 3–6).

[35] Hellman Decl. Ex. D, CBP002295–96 (CBP *Vaughn* Index 3–6).

[36] The Knight Institute is not challenging the redaction of information that is *actually* personally
identifying, such as names, addresses, and social media handles of travelers who have been
searched.

**B.      The Public Interest in Disclosure Outweighs the Minimal Privacy Interests at Stake.**

Even if CBP had demonstrated that disclosure of the withheld information might interfere with personal privacy, disclosure would still be required because the public's interest in this information far outweighs "the nature and scope of [any] privacy invasions that would flow from disclosure." *Fed. Labor Relations Auth. v. U.S. Dep't of Treasury*, 884 F.2d 1446, 1452 (D.C. Cir. 1989). In *ACLU v. United States Department of Justice*, the ACLU sought docket information for criminal prosecutions involving the use of warrantless cell phone tracking. 655 F.3d 1 (D.C. Cir. 2011). The D.C. Circuit ordered the Department of Justice to release docket information for cases in which individuals had been found or had pleaded guilty. *Id.* at 16. The court explained that the use of warrantless cell phone tracking was "a topic of considerable public interest . . . [and] has received widespread media attention," and concluded that disclosure "would inform this ongoing public policy discussion by shedding light on the scope and effectiveness of cell phone tracking as a law enforcement tool." *Id.* at 13. The majority emphasized: "Whether the government's tracking policy is legal or illegal, proper or improper, is irrelevant to this case. . . . 'Matters of substantive law enforcement policy . . . are properly the subject of public concern,' whether or not the policy in question is lawful." *Id.* at 14.

The court's reasoning in *ACLU* underscores the strong public interest in disclosure here. First, the government's suspicionless searches of electronic devices at the border is a topic "of considerable public interest." *Id.* at 13. The Knight Institute filed its Request due to concerns that CBP policies "authorize[d] invasive searches of sensitive data" with "few policy protections." *See* Request at 2. It was particularly concerned about widespread reports that border officers were targeting journalists and Muslims, including Muslim Americans, in exercising their broad discretion to conduct these invasive searches. *See* Pl.'s Statement Pursuant to LCvR 7(h)(1) ¶ 5.

These concerns have grown only more pronounced over time, as the government has reportedly exercised its claimed border search authority to detain and search more journalists, as well as activists and attorneys. *See, e.g.*, Tom Jones et al., *Source: Leaked Documents Show the U.S. Government Tracking Journalists and Immigration Advocates Through a Secret Database*, NBC7 (March 6, 2019), https://perma.cc/2W5D-X6FS. The disclosure, then, of information about travelers' ethnicities, citizenship statuses, occupations, and countries of origin is critical to inform the public of the scope of CBP's reliance on electronic device searches as a "law enforcement tool." *ACLU v. Dep't of Justice*, 655 F.3d 13. Second, the constitutionality of this law enforcement tool has come under not only public scrutiny but also judicial and congressional scrutiny—just like the constitutionality of warrantless cell phone tracking in *ACLU. See, e.g.*, *Alasaad*, 2019 WL 5899371, at *20 (concluding that suspicionless electronic device searches are unconstitutional); *Examining Warrantless Smartphone Searches at the Border: Hearing Before the Subcomm. on Federal Spending Oversight and Emergency Mgmt. of the S. Comm. On Homeland Sec. and Governmental Affairs,* 115th Cong. (2018), https://perma.cc/5UE9-K4AW.

Finally, as in *ACLU*, disclosure of the withheld information carries—at most—minimal privacy implications. In *ACLU*, some information about the criminal proceedings was already available to the public. *ACLU*, 655 F.3d at 8. Here, the information the Knight Institute seeks is not personally identifying. Even if it were somehow possible to identify a traveler based only on their ethnicity, country of origin, and citizenship status, the public interest would still outweigh the privacy interests at play, because CBP has not—and cannot—"delineate the specific harm faced by [travelers] from the disclosure" of the demographic information challenged here. *100Reporters LLC v. U.S. Dep't of Justices*, 316 F. Supp. 3d 124, 162 (D.D.C. 2018).

24

In sum, much of the information CBP withheld categorically under Exemptions 6 and 7(C) does not implicate personal privacy at all because it does not identify any person. Even if CBP had withheld information that might lead to the identification of a person, the public interest in disclosure of this information is overwhelming. The Court should therefore grant summary judgment in favor of the Knight Institute.

## III.   CBP and ICE Improperly Withheld Information Under Exemption 7(E).

CBP and ICE failed to justify their reliance on Exemption 7(E) in withholding responsive information from policies and handbooks, internal memoranda, internal presentations, search reports, traveler complaints, spreadsheets, and internal communications.[37]

Exemption 7(E) allows agencies to withhold responsive law enforcement records only "to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "The phrase 'techniques and procedures' . . . refers to how law enforcement officials *go about* investigating a crime." *Whittaker v. U.S. Dep't of Justice*, No. 18-CV-01434 (APM), 2019 WL 2569915, at *2 (D.D.C. June 21, 2019) (quoting *Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland*

---

[37] Specifically, the Knight Institute challenges CBP's withholding of the following documents in full or in significant part: EMRs, *supra* n.31 (identifying EMRs), spreadsheets, *supra* n.33 (identifying spreadsheets), traveler complaints, *supra* n.34 (identifying traveler complaints); a pilot program PowerPoint presentation, CBP00212–34 (CBP *Vaughn* Index 11–13); and internal communications and correspondence with CRCL, CBP005115, CBP005117, Mar. 15, 2019 release (pp. 2–3, 33–37, 42–51, 55–61), Mar. 22, 2019 release (pp. 1–17, 26–28, 70–79), Aug. 2, 209 release (pp. 1–84) (CBP *Vaughn* Index 1–3, 23–27). The Knight Institute challenges ICE's withholding of the following policies and handbooks in full or in significant part: 2017-ICLI-00011 2–15, 2017-ICLI-00011 16–26, 2017-ICLI-00011 27–30, 2017-ICLI-00011 31–36 (ICE *Vaughn* Index 3–10).

*Sec.*, 626 F.3d 678, 682 (2d Cir. 2010)). "The term 'guidelines' . . . generally refers in the context of Exemption 7(E) to resource allocation." *Shapiro v. U.S. Dep't of Justice*, 153 F. Supp. 3d 253, 273 (D.D.C. 2016) (quoting *Allard*, 626 F.3d at 682). Regardless of whether an agency invoking Exemption 7(E) claims that the withheld information would disclose a guideline, technique, or procedure, it must demonstrate that this disclosure "could reasonably be expected to risk circumvention of the law." *Elec. Privacy Info. Ctr. v. CBP ("EPIC")*, 160 F. Supp. 3d 354, 358–59 & n.3 (D.D.C. 2016).

CBP and ICE have failed to meet this burden. First, CBP improperly and categorically withheld information from EMRs and spreadsheets about the reason travelers were searched and whether they were notified about the search. Second, ICE and CBP improperly redacted legal analysis and background from internal memoranda, handbooks, and policies.

### A.     CBP Categorically Redacted Non-Exempt Information from EMRs and Spreadsheets.

CBP failed to justify its categorical redactions under Exemption 7(E) in its declaration and *Vaughn* index entries. Specifically, relying on Exemption 7(E), CBP withheld information from EMRs and spreadsheets that would illuminate the reasons travelers were selected for searches, whether a traveler was notified of a search, whether the traveler received a tear sheet, and if not, why the traveler did not receive a tear sheet. CBP's justifications for its redactions are flawed in two ways. First, CBP categorically redacted information that does not reveal techniques, procedures, or guidelines. Second, CBP's conclusory explanations do not demonstrate that the disclosure of the withheld information would result in a reasonably expected circumvention of law.

1.   **CBP Failed To Demonstrate That the Withheld Information Would Reveal Techniques, Procedures, or Guidelines.**

From the thousands of EMRs that CBP released, it withheld information recording the reason for each traveler's search, whether that traveler was notified of the search, whether they were provided with a tear sheet, and if not, the reason why the tear sheet was not provided. *E.g.*, Hellman Decl. Ex. A, CBP004721 (*Vaughn* Index 3–6).[38] CBP redacted the same information from the spreadsheet it produced to the Knight Institute providing the field data entries for all of the border searches of electronic devices conducted between October 5, 2012 and December 31, 2017. Hellman Decl. Ex. B, CBP003182.[39] In other spreadsheets, CBP has redacted tallies of device searches and tables showing searches of travelers based on certain demographic information.[40]

CBP has entirely failed to describe how the revelation of this information would disclose techniques, procedures, or guidelines. CBP's justifications for its withholdings point to no specific techniques or procedures, instead referring obliquely to "trends that would disclose techniques, procedures, or guidelines." CBP *Vaughn* Index 5, 8–9, 14, 18, 22, 25, 28. But courts in this Circuit have made clear that abstract descriptions like CBP's are insufficient. *See EPIC*, 160 F. Supp. 3d at 359 (rejecting CBP's invocation of Exemption 7(E) because its *Vaughn* index entries did "not provide the Court with sufficient detail regarding the law enforcement techniques or procedures the defendant seeks to protect"). In *EPIC,* the court concluded that CBP had failed to justify its withholding of certain information as techniques or procedures because it had described the

---

[38] CBP made these redactions categorically throughout the EMRs, *see supra* n.31.

[39] From other spreadsheets, CBP also redacted the reason for a traveler's search, whether the traveler was notified of the search, and/or whether the traveler was provided with a tear sheet. *See* CBP000057–146, CBP000155–65, CBP000178–88, CBP000660–1416, CBP005119–44, CBP005165–70, CBP005209–16, CBP005231–57, CBP's Mar. 15, 2019 release (271 pages withheld in full).

[40] *See* CBP000147–54, CBP000235–92, CBP00660–1416, CBP's Mar. 15, 2019 release (271 pages withheld in full), CBP's Mar. 22, 2019 release (pp. 5, 13–17).

information merely as "pertain[ing] to the 'use,' 'navigation,' and 'capabilities' of the AFI system," and the [CBP's] "processing of internal travelers." *Id*. Similarly, in *American Immigration Council*, DHS included a list of redacted information but did not describe *how* that information disclosed a technique or procedure. *Am. Immigration Council*, 950 F. Supp. 2d at 247 (listing as withheld, among other things, "TECS Access Codes, Program Codes, . . . [h]ow law enforcement officer access databases, access case material, access agency radio channels, store evidence, reference related cases . . ."). The court rejected DHS's argument, explaining that "offering a laundry list of what may be included 'throughout' the various documents" did not "adequately describe the nature of the underlying technique and procedure." *Id.*

Despite this clear precedent, CBP has again provided a laundry list of categories of withheld information without explaining what law enforcement techniques or procedures are actually at risk of disclosure. And for the withheld information challenged here, it is not at all evident that any non-public techniques or procedures would be disclosed. CBP has withheld information about the reasons for a traveler's search, but the agency also maintains that it has the authority to conduct electronic device searches at the border without any individualized suspicion. CBP, Border Search of Electronic Devices, CBP Directive No. 3340-049A (Jan. 4, 2018), https://perma.cc/3QKY-MPGR ("2018 CBP Directive") ("In the course of a basic search [of an electronic device], with or without suspicion, an Officer may examine an electronic device and may review and analyze information encountered at the border."); *see Alasaad*, 2019 WL 5899371, at *7. Thus, the revelation of the reason for a search—which may be no reason at all—would not reveal any non-public law enforcement techniques or procedures. Similarly, the historical fact that CBP searched through the devices of a certain number of phones during a given year, or even that

it searched through the devices of a certain number of men from a certain country,[41] does not reveal anything about the way in which CBP conducts electronic device searches. *See Judicial Watch, Inc. v. U.S. Secret Serv.*, 579 F. Supp. 2d 182, 188 (D.D.C. 2008) ("[I]t is difficult to imagine how disclosing a visitor's name, the dates of his visits, and the persons visited would reveal how the Secret Service decided to investigate that visitor or the way in which the investigation was conducted."). Because CBP has failed to describe the techniques, procedures, or guidelines the withheld information would reveal, CBP has failed to justify its invocation of Exemption 7(E).

### 2. CBP Failed To Demonstrate a Reasonably Expected Risk of Circumvention of the Law.

CBP has provided, at best, only conclusory justifications for withholding information under Exemption 7(E). Agencies must "provide a relatively detailed justification for each record that permits the reviewing court . . . to understand how disclosure would create a reasonably expected risk of circumvention of the law," *Am. Immigration Council*, 950 F. Supp. 2d at 246 (quotations omitted), and courts routinely reject the invocation of Exemption 7(E) when the agency provides conclusory or otherwise insufficient justifications for the withholdings, *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 252 (D.C. Cir. 1993) (describing agency's affidavit as "too vague and conclusory to support summary judgment" and requiring "more precise descriptions of the nature of the redacted material and providing reasons why releasing each withheld section would create a risk of circumvention of the law").

First, rote and conclusory reasoning "is not enough to justify withholding records under the FOIA." *ACLU of S. Cal. v. U.S. Citizenship & Immigration Servs.*, 133 F. Supp. 3d 234, 243

---

[41] *See* Hellman Decl. Ex. E, CBP000147–54; Hellman Decl. Ex. EE, CBP's Mar. 22, 2019 release (pp. 5, 13–17); *see also* CBP000235–92; CBP00660–1416; CBP's Mar. 15, 2019 release (271 pages withheld in full).

(D.D.C. 2015) (Chutkan, J.); *Banks v. Dep't of Justice*, 813 F. Supp. 2d 132, 145 (D.D.C. 2011) (same). In *ACLU of Southern California v. U.S. Citizenship & Immigration Services*, the agency engaged in "lengthy discussion of the nature of the records, but merely state[d] without explanation that . . . [i]f released, this information would disclose techniques and procedures for law enforcement investigations and could reasonably be expected to risk circumvention of the law by future applicants." *ACLU of S. Cal.*, 133 F. Supp. 3d at 243. This Court rejected the agency's attempted justification, explaining that there was "no explanation of how the information, if released, could risk circumvention of the law." *Id.* CBP's attempted justifications here suffer from the same deficiency. CBP states that information about whether a tear sheet was provided *after* a search in specific cases would allow the public to "form[] a basis for comparison for the handling of different inspections." CBP *Vaughn* Index 6. But even if CBP is correct, it has not begun to explain how that comparison could enable a lawbreaker to thwart any CBP investigations. This Court should therefore reject its "vague and conclusory explanations [of] why those records should be withheld pursuant to Exemption 7(E)." *ACLU of S. Cal.*, 133 F. Supp. 3d at 243.

Second, courts have also rejected the invocation of Exemption 7(E) where, as here, an agency's argument about the risk of circumvention is simply illogical. *Long v. ICE*, 279 F. Supp. 3d 226, 234 (D.D.C. 2017) ("[T]he Government cannot simply cite Exemption 7(E) and expect the court to rubber stamp its withholdings. At a minimum, the Government must show that its stated expectation of risk is reasonable."); *see also Families for Freedom v. U.S. Customs & Border Prot.*, 837 F. Supp. 2d 287, 297 (S.D.N.Y. 2011) (determining that release of "job titles of the attendees at the meeting," among others, would not result in the reasonably expected circumvention of law).

Take, for example, CBP's withholding of aggregate information about the sex and the country of origin of individuals searched over a given period of time. Hellman Decl. Ex. E, CBP000147 (CBP *Vaughn* Index 8–11). CBP's justification is that disclosure of that information would "risk circumvention of the law by revealing non-public law enforcement techniques, capabilities or vulnerabilities, the circumstances in which such techniques, capabilities or vulnerabilities may be encountered, and/or the nature of the law enforcement interest in particular circumstances." CBP *Vaughn* Index 2. CBP's explanation does not articulate any logical connection between statistics about searches by gender and country of origin and the "circumstances in which . . . techniques, capabilities, or vulnerabilities may be encountered." Even if it were logical to assume that years-old statistics about electronic device searches would somehow reveal "circumstances in which . . . techniques . . . may be encountered," CBP has not explained how the revelation of this information would logically create a reasonably expected risk of circumvention of the law. CBP's decision to reveal the genders of travelers in individual EMRs and the summary spreadsheet of electronic device searches, *see* Hellman Decl. Exs. D and E, CBP004721, CBP003182, makes clear that even CBP does not believe that revelation of a traveler's gender creates a reasonably expected risk of circumvention of the law.

CBP's attempts to explain how the other categorical 7(E) redactions create a risk of circumvention of the law are similarly illogical. For example, CBP has withheld information about its reasons for searching travelers, but the agency also maintains that it may conduct electronic device searches without any individualized suspicion. 2018 CBP Directive; *see Alasaad*, 2019 WL 5899371, at *7. If searches may be conducted randomly or arbitrarily, travelers cannot evade the risk of being searched by studying the reasons for other travelers' searches—which may often be, under the CBP's own directive, "no reason at all"—and trying to avoid that behavior. Knowing

that in 2015 a traveler was the subject of a device search for no reason, or even knowing that in 2015, half of all searches were conducted for no reason, does not allow any traveler to anticipate and evade electronic device searches in the future.

Thus, CBP's categorical redactions under Exemption 7(E) have failed on two levels. CBP has not articulated any particular law enforcement techniques, procedures, or guidelines that would be revealed if the withheld information were released, and CBP has not demonstrated that the disclosure of that information would create a reasonably expected risk of circumvention of the law.

## B.   CBP and ICE Improperly Withheld Information From Policies, Handbooks, Memoranda and Presentations That Do Not Describe Techniques, Procedures, or Guidelines.

CBP and ICE have also unlawfully withheld from policies, handbooks, memoranda, and presentations information that cannot be classified as techniques, procedures, or guidelines. First, ICE withheld information that evidently consists of legal analysis, which is "precisely the type of information appropriate for release under the FOIA." *PHE, Inc.*, 983 F.2d at 251–52. Second, CBP redacted information about internal policy discussions and studies, which are not techniques, procedures, or guidelines.

Invoking Exemption 7(E), ICE redacted sections of its internal handbooks and guidebooks under, for example, the headings "Search Warrant" and "Title III Court Order," Hellman Decl. Ex. F, 2017-ICLI-00011 27–30 (ICE *Vaughn* Index 7–8), and "FISA Application in Lone Wolf Situations," Hellman Decl. Ex. G, 2017-ICLI-00011 31–36 (ICE *Vaughn* Index 9–10).[42] These

---

[42] This argument also applies to ICE's withholdings of a Homeland Security Investigation Computer Forensic Handbook section on "Consent", 2017-ICLI-00011 2–15 (ICE *Vaughn* Index 3–5), a section of the Child Exploitation Handbook on "Judicial Responsibility," 2017-ICLI-00011 27–30 (ICE *Vaughn* Index 7–8), and Search and Seizure Handbook sections on "Administrative Searches," "Functional Equivalent of the Border," and "Extended Border", 2017-ICLI-00011 16–26 (ICE *Vaughn* Index 5–7).

sections manifestly involve legal analysis and discussion rather than the type of confidential,

technical procedures Exemption 7(E) was designed to protect. *See PHE, Inc.*, 983 F.2d at 251

("[The government] does not explain why the agency could not release . . . the discussion of search

and seizure law and the digest of useful caselaw. Material like this is precisely the type of

information appropriate for release[.]"). In *Shapiro v. U.S. Department of Justice*, the FBI argued

that search slips—which detailed the FBI's searches after receiving FOIA requests—revealed

techniques or procedures because their disclosure could reveal the FBI's invocation of 5 U.S.C.

§ 552(c) in individual cases. But the court rejected the FBI's argument, explaining that the FBI's

"exercise of its statutory authority" was "not the kind of 'technique' or 'procedure' to which

Exemption 7(E) refers." *Shapiro*, 153 F. Supp. 3d at 273. As in *Shapiro*, ICE cannot invoke

Exemption 7(E) to withhold its own description of its legal authority, because analysis of caselaw

and regulations is "not the kind of 'technique' or 'procedure' to which Exemption 7(E) refers." *Id.*

Second, CBP has withheld information from records containing communications about the

CRCL's Impact Assessment on Border Searches of Electronic Devices.[43] For example, in one

document, CBP withheld the "findings" column within a table summarizing CRCL's findings and

CBP's recommendations to address those findings. *See* Hellman Decl. Ex. FF, CBP's Mar. 15,

2019 release (p. 37) (CBP *Vaughn* Index 23–27). But CBP has not attempted to explain how

CRCL's findings would reveal non-public techniques, procedures, and guidelines. Nor can it,

because the majority of the Impact Assessment has already been released. CBP's attempt to shield

---

[43] CBP Internal Affairs Report: Border Search of Electronic Devices and Documents, CBP's Mar. 15, 2019 release (p. 37), Electronic Device Inspection: A Follow-Up Study to CRCL, CBP's Mar. 22, 2019 release (pp. 1–17), CBP Comment on CRCL Impact Assessment for Border Searches of Electronic Devices, CBP's Mar. 22, 2019 release (pp. 70–79) (CBP *Vaughn* Index 23–27).

this information under Exemption 7(E) is therefore misplaced, and the Court should reject these withholdings.

*        *        *

Thus, CBP and ICE have improperly withheld information under Exemption 7(E). CBP improperly withheld information in categorical fashion from search reports and spreadsheets without sufficiently explaining what techniques, procedures, or guidelines would be revealed through disclosure and without connecting its withholdings to a reasonably expected risk of circumvention of the law. ICE and CBP also improperly withheld information from internal memoranda, handbooks, and policies that would not reveal the kinds of law enforcement techniques or procedures Exemption 7(E) protects.

## IV.    DHS, CBP, and ICE Failed to Release All Segregable, Non-Exempt Information.

FOIA requires that any "reasonably segregable portion of the record" be disclosed to a requester. 5 U.S.C. § 552. "The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead Data Cent.*, 566 F.2d at 260. As always, it is the agency's burden to "describe[] the justifications for withholding the information with specific detail." *DiBacco v. Dep't of the Army*, 926 F.3d 827, 834 (D.C. Cir. 2019). "If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the nonexempt portions are inextricably intertwined with exempt portions." *Trans–Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999). The court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991). An agency also has the burden of detailing what proportion of the information

34

in a document is non-exempt and how that material is dispersed throughout the document. *See Mead Data Cent.*, 566 F.2d at 261. Any non-exempt information that is reasonably segregable from the requested records must be disclosed. *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996).

The Agencies have not met their obligation of releasing all reasonably segregable information. Although DHS, CBP, and ICE state that they reviewed the documents "line by line," and released all "reasonably segregable" information, Holzer Decl. ¶ 9, Howard Decl. ¶ 40, Fuentes Decl. ¶ 48, those assertions are insufficient. "Th[e] presumption of compliance . . . does not obviate the government's obligation to carry its evidentiary burden and fully explain its decisions on segregability . . . [The government] must also provide descriptions of excerpts deemed to be non-segregable, with explanations as to these decisions*." Am. Immigration Council*, 950 F. Supp. 2d at 248. None of the Agencies addressed the segregability of specific documents or categories of documents in any of their filings, despite the fact that, in many instances, the Agencies withheld the documents in full. The Agencies have left the Court with no way to determine whether their withholdings were "logical" or "plausible." *See Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013).

A review of the documents DHS, CBP, and ICE produced in this case make evident that the Agencies failed to release all segregable information. First, DHS has failed to produce segregable information from documents that contain withholdings under Exemptions 5 and 7(E).[44]

---

[44] The Knight Institute challenges DHS's withholding of the following documents in full or in significant part: email communications and spreadsheets between CRCL and CBP, DHS-001-00585-000463–83, DHS-001-00585-000486–90 (DHS *Vaughn* Index 7); email communications between the DHS Office of the General Counsel and the CBP Office of the Chief Counsel, DHS-001-585-000117–33 (DHS *Vaughn* Index 8–9); a draft document by an unidentified CRCL employee, DHS-001-00585-000298 (DHS *Vaughn* Index 15–16); Memorandum from CRCL to Homeland Security Investigations (HSI), DHS-001-00585-000533–37 (DHS *Vaughn* Index 16);

DHS withheld an email exchange discussing talking points for an upcoming "S1" meeting. Hellman Decl. Ex. I, DHS-001-585-000123 (DHS *Vaughn* Index 8–9). The talking points are entirely withheld under Exemption 5, yet it is clear that they contain segregable factual information and legal analysis. For example, the emails reveal that the talking points cover "what [DHS] currently do[es] with respect to technology at the border," *id.* at DHS-001-585-000127, and "the 9th Cir[cuit]'s reasonable suspicion standard for invasive [electronic device] searches," *id.* at DHS-001-585-000123. These are precisely the kinds of "segregable factual background" descriptions, *Pub. Emps. for Environmental Responsibility v. U.S.E.P.A.*, 926 F. Supp. 2d 48, 57 (D.D.C. 2013), and "neutral summaries of the legal holdings of cases," *Shapiro v. U.S. Dep't of Justice*, 969 F. Supp. 2d 18, 36 (D.D.C. 2013) that must be released under FOIA.

---

Memorandum from the CRCL Officer to the DHS Secretary, DHS-001-585-000189–93, DHS-001-00585-000538–43, DHS-001-00585-01906–10 (DHS *Vaughn* Index 16–17); draft briefing book materials, DHS-001-585-000153–56 (DHS *Vaughn* Index 18); draft memoranda from the CRCL Officer to the DHS Secretary, DHS-001-00585-00875–82, DHS-001-00585-00893 (DHS *Vaughn* Index 20); Civil Rights/Civil Liberties Impact Assessment Border Searches of Electronic Devices dated December 29, 2011, DHS-001-00585-00903–08, DHS-001-00585-00911–13 (DHS *Vaughn* Index 21); Legal Memorandum from the DHS General Counsel to the DHS Secretary, DHS-001-00585-01873 (DHS *Vaughn* Index 23); email communication between the CRCL Officer and CBP Commissioner, DHS-001-00585-01904–05, DHS-001-00585-01925 (DHS *Vaughn* Index 23–24). For the same reasons described above in relation to DHS, the Knight Institute challenges CBP's withholding in full or significant part of CRCL documents related to the review of CBP law enforcement activities, CBP's Mar. 15, 2019 release (p. 51), Mar. 22, 2019 release (pp. 29–32) (CBP *Vaughn* Index 23–27); and documents detailing border searches of electronic devices, *see* CBP's Mar. 15, 2019 release letter (271 pages withheld in full) (CBP *Vaughn* Index 27–28). Finally, the Knight Institute challenges ICE's withholding in full of the document titled "Computer Border Search Discussion Topics," 2017-ICLI-0011 62–64, 2017-ICLI-0011 67–82 (ICE *Vaughn* Index 10–14).

Second, CBP has failed to segregate nonexempt information from EMRs,[45] traveler complaints,[46] and internal communications and memoranda.[47]CBP withheld from one EMR the entire remarks section—nearly four pages long—is withheld under Exemptions 6, 7(C), and 7(E). Hellman Decl. Ex. N, CBP's Mar. 22, 2019 release (pp. 18–21) (CBP *Vaughn* Index 3–6). Yet CBP only offered the conclusory statements it made in support of its withholdings from all of its EMRs. Given the length of the document, it is clear that more is captured in the remarks section than what is listed as categories of withheld information CBP's *Vaughn* Index—including "travel document numbers," "unique record numbers/codes," or even "descriptions of the particular inspection techniques utilized." *See* CBP *Vaughn* Index 4–5. CBP's withholdings from traveler complaint responses and internal communications fare no better. *See, e.g.*, Hellman Decl. Ex. J, CBP005274 (CBP *Vaughn* Index 17–20) (withholding two full pages under Exemptions 6, 7(C) and 7(E) from a response to a traveler complaint). CBP has also redacted nearly all substance from certain internal memoranda and communications. Though one document is nearly entirely withheld, CBP's *Vaughn* Index does not explain in any detail what information was withheld from this memorandum in particular, nor does it explain how the document contained no segregable factual or policy information. Hellman Decl. Ex. O, CBP's Mar. 15, 2019 release (pp. 43–44) (CBP *Vaughn* Index 1–3). Having attempted to justify its withholdings on a categorical basis, CBP

---

[45] *See supra* n.31 (identifying EMRs). DHS also produced some records of investigations as part of its production of CRCL documents. For the same reasons discussed above with respect to CBP, DHS has failed to reasonably what appears to be factual background information from certain paragraphs withheld under Exemption 7(E). *See* DHS-001-585-002396–99, DHS-001-585-002563–65 (DHS *Vaughn* Index 36–37).

[46] Specifically, the Knight Institute challenges CBP's withholdings from certain traveler complaints, CBP000532–99, CBP001595–611, CBP005258–532, CBP005533-5609, and CBP's Nov. 1, 2018 release (pp. 178–220) (CBP *Vaughn* Index 17–20).

[47] CBP's Mar. 15, 2019 release (pp. 33–35, 42–54, 57–61) (CBP *Vaughn* Index 1–3).

failed to "fully explain its decisions on segregability." *Am. Immigration Council*, 950 F. Supp. 2d at 248.

Third, ICE has failed to explain its withholdings from certain ROIs.[48] For example, ICE has redacted entire paragraphs under the heading "Details of Investigation." But neither ICE's description nor the context of the documents themselves provides an adequate understanding of the withheld information and whether it is in fact exempt.[49] *See, e.g.*, Hellman Decl. Ex. K, 2017-ICLI-00011 2027–28 (ICE *Vaughn* Index 20–23) (withholding the entire two-and-a-half-page narrative under Exemptions 7, 7(C), and 7(E)); *see also* Hellman Decl. Ex. L, 2017-ICLI-00011 1697–98 (ICE *Vaughn* Index 20–23) (withholding multiple pages of narrative text under the heading "Details of Interview").

---

[48] The Knight Institute challenges ICE's withholdings from the following ROIs: 2017-ICLI-00011 121–23, 2017-ICLI-00011 143–46, 2017-ICLI-00011 191–94, 2017-ICLI-00011 231–39, 2017-ICLI-00011 495–500, 2017-ICLI-00011 501–06, 2017-ICLI-00011 834–36, 2017-ICLI-00011 1010–15, 2017-ICLI-00011 1054–55, 2017-ICLI-00011 1060–62, 2017-ICLI-00011 1063–65, 2017-ICLI-00011 1092–95, 2017-ICLI-00011 1096–98, 2017-ICLI-00011 1099–1101, 2017-ICLI-00011 1106–14, 2017-ICLI-00011 1137–40, 2017-ICLI-00011 1155–57, 2017-ICLI-00011 1355–60, 2017-ICLI-00011 1361–68, 2017-ICLI-00011 1369–73, 2017-ICLI-00011 1391–94, 2017-ICLI-00011 1675–76, 2017-ICLI-00011 1693–96, 2017-ICLI-00011 1697–99, 2017-ICLI-00011 1801–02, 2017-ICLI-00011 1850–51, 2017-ICLI-00011 1866–67, 2017-ICLI-00011 1870–72, 2017-ICLI-00011 1873–74, 2017-ICLI-00011 1875–76, 2017-ICLI-00011 1900–02, 2017-ICLI-00011 1903–07, 2017-ICLI-00011 1908–10, 2017-ICLI-00011 1911–13, 2017-ICLI-00011 1914–16, 2017-ICLI-00011 2027–29, 2017-ICLI-00011 2030–32 (ICE *Vaughn* Index 16–23).

[49] ICE describes the content of its redactions in these reports as "ICE case numbers, ROI numbers and URLs, TECS ID numbers, software names, sensitive CBP form numbers, computer program names/techniques used to search electronic devices such as cameras, computers, cell phones, and any other electronic devices capable of storing data, techniques/software programs used to extract data from these electronic devices, companies currently under investigation, detailed request for assistance from foreign government in investigations and techniques used to provide such information, common techniques used by smugglers and methods used by the agents in identifying such techniques." *See* ICE *Vaughn* Index 22. But despite the long list, which adequately describes certain redactions, none seem to point to the redactions in the "Details of Investigation" section of the Report. *See* ICE-1099.

The Agencies' failure here resembles the FBI's failure in *Schoenman v. FBI*, 604 F. Supp. 2d 174, 198 (D.D.C. 2009). In *Schoenman,* the FBI's *Vaughn* index explained that the redacted portions contained "information naming intelligence components of a specific foreign government and/or information provided by those components." But when turning to those pages, the court could not determine the substance of the information withheld. Here, even though the Agencies have listed possible categories of information that might be withheld, in many instances it is impossible to tell which of those categories of information has actually been withheld from any particular document, and it is impossible to understand the scope of the agency's justification for any particular withholding. The Agencies have therefore not "provided sufficient context to evaluate the withheld material," and have consequently failed to show that they have produced all segregable non-exempt information. *Schoenman*, 604 F. Supp. 2d at 198 (denying in part the FBI's motion for summary judgment and granting the plaintiff's motion for a more complete *Vaughn* index).

## V.     DHS and ICE Failed to Offer Any Justifications for Their Withholding of Certain Information.

Finally, the Knight Institute notes that DHS's[50] and ICE's[51] declarations and *Vaughn* indices are incomplete; the Agencies have failed to provide any justification for their withholding of certain records. "The purpose of a Vaughn Index is to permit adequate adversary testing of the agency's claimed right to an exemption, and so the index must contain an adequate description of the records and a plain statement of the exemptions relied upon to withhold each record." *Davidson v. U.S. Dep't of State*, 206 F. Supp. 3d 178, 193 (D.D.C. 2016) (internal quotation marks and citation omitted), *aff'd*, 728 F. App'x 7 (D.C. Cir. 2018). Because certain documents containing withheld information simply do not appear, the Agencies' *Vaughn* indices are "deficient in a critical way" and the Court "accordingly must deny the [Agencies'] motion for summary judgment so far as it relates to withholdings not described in its *Vaughn* index." *Id.*

---

[50] DHS failed to address the following pages of documents, which contain withheld information, in its declaration or *Vaughn* index: DHS-001-00513-000001–262, DHS-001-00513-000-268–70, DHS-001-00513-000281–98, DHS-001-00513-000303–07, DHS-001-00513-000351–715, DHS-001-00513-000739–752, DHS-001-00513-000978–1103, DHS-001-00548-00592, DHS-001-00585-001972–2051, DHS-001-00585-002105–06, DHS-001-00585-002111–14, DHS-001-00585-002116–23, DHS-001-00585-002125–33, DHS-001-00585-002141–45, DHS-001-00585-002147–51, DHS-001-00585-002155, DHS-001-00585-002273, DHS-001-00585-002283, DHS-001-00585-002490. (DHS listed page DHS-001-00548-00592 as a page released in full, but that page contains Exemption 6 redactions.). OIG also failed to address the spreadsheet it produced on September 21, 2017. Nevertheless, given the limited redactions to that document, the Knight Institute is not challenging OIG's failure to address it.

[51] ICE failed to address the following pages of documents, which contain withheld information, in its declaration or *Vaughn* index: 2017-ICLI-00011 1, 2017-ICLI-00011 37–51, 2017-ICLI-00011 53–61, 2017-ICLI-00011 65, 2017-ICLI-00011 83–92, 2017-ICLI-00011 109–20, 2017-ICLI-00011 124–42, 2017-ICLI-00011 147–494, 2017-ICLI-00011 507–833, 2017-ICLI-00011 837–1009, 2017-ICLI-00011 1016–53, 2017-ICLI-00011 1056–59, 2017-ICLI-00011 1066–92, 2017-ICLI-00011 1102–03, 2017-ICLI-00011 1115–37, 2017-ICLI-00011 1141–54, 2017-ICLI-00011 1158–354, 2017-ICLI-00011 1374–390, 2017-ICLI-00011 1395–674, 2017-ICLI-00011 1677–92, 2017-ICLI-00011 1700–800, 2017-ICLI-00011 1803–49, 2017-ICLI-00011 1852–65, 2017-ICLI-00011 1868–69, 2017-ICLI-00011 1877–99, 2017-ICLI-00011 1917–2026, 2017-ICLI-00011 2033–58, 2017-ICLI-00011 2069–143, 2017-ICLI-00011 2145–308.

## CONCLUSION

For the reasons stated above, the Agencies have failed to justify their withholding of information responsive to the Knight Institute's Request. Accordingly, this Court should grant summary judgment in favor of the Institute and order the Agencies to release the withheld information at issue. Alternatively, the Knight Institute respectfully asks the Court to order the Agencies to submit supplemental declarations that enable the Knight Institute and the Court to determine the propriety of their withholdings, or to conduct an *in camera* review of the documents at issue, and to identify any segregable information for prompt production to the Institute.

March 2, 2020                                        Respectfully submitted,

_/s/_____          _/s/_____
Matthew S. Hellman (484132)              Caroline M. DeCell (1015491)
JENNER & BLOCK LLP                        Stephanie C. Krent*
1099 New York Avenue, NW                KNIGHT FIRST AMENDMENT
Suite 900 Washington, DC 20001            INSTITUTE AT COLUMBIA
T: (202) 639-6000                              UNIVERSITY
F: (202) 639-6066                            475 Riverside Drive, Suite 302
mhellman@jenner.com                        New York, NY 10115
                                                T: (646) 745-8500
Ethan Wong (admission pending)          carrie.decell@knightcolumbia.org
JENNER & BLOCK LLP                        stephanie.krent@knightcolumbia.org
919 Third Avenue
New York, NY 10022                         *Application for admission *pro hac
T:(212) 891-1600                              vice* pending.
F: (212) 090-0894
ewong@jenner.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send an electronic notice to all authorized CM/ECF filers.


By:     */s/ Matthew S. Hellman*
Matthew S. Hellman