**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KNIGHT FIRST AMENDMENT
INSTITUTE AT COLUMBIA
UNIVERSITY,

        Plaintiff,

  v.

DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

        Defendants.

Civil Action No. 1:17-cv-00548-TSC

**PLAINTIFF'S CORRECTED STATEMENT PURSUANT TO LCvR 7(h)(1)**

**I.   Suspicionless Searches of Electronic Devices at the Border**

1. In 2009, CBP and ICE both issued directives purporting to authorize suspicionless searches of travelers' electronic devices—including cell phones, tablets, and laptop computers—at the border. *See* Answer at Ex. A ("CBP Border Search Directive"), ECF No. 18-2; Answer Ex. B ("ICE Border Search Directive"), ECF No. 18-3.

2. Specifically, the CBP Border Search Directive stated that CBP officers "may" search electronic devices "with or without individualized suspicion." CBP Border Search Directive § 5.1. It further permitted CBP officers to seize electronic devices without individualized suspicion for the time necessary to search the devices. *Id.* at § 5.3.

3. Similarly, the ICE Border Search Directive stated that ICE Special Agents "may search, detain, seize, retain, and share electronic devices, or information contained therein, with or without individualized suspicion." ICE Border Search Directive § 6.1.

4.      The number of border searches of electronic devices increased dramatically from 2015 to 2017. Border officers reportedly conducted 5,000 device searches in 2015. *See* Am. Compl. Ex. A ("Request"), ECF No. 10-1 (citing Cynthia McFadden, et al., *American Citizens: U.S. Border Agents Can Search Your Cell Phone*, NBC News (Mar. 13, 2017), https://perma.cc/69P7-RPXR). According to publicly available CBP statistics, that number jumped to 19,051 searches in Fiscal Year 2016 and 30,200 searches in Fiscal Year 2017. CBP Public Affairs, *CBP Releases Updated Border Search of Electronic Devise Directive and F417 Statistics*, US Customs and Border Protection, (January 5, 2018), https://perma.cc/NV2F-BGTG.

5.      News reports during this time raised concerns that border officers were targeting journalists and Muslims for searches of their electronic devices. *See* Request 3–4. For example, border officers reportedly subjected Isma'il Kushkush, a former acting bureau chief of the *New York Times* in East Africa, to an electronic device search January 2016 while interrogating him regarding his reporting on refugees. *Id.* (citing Alexandra Ellerbeck, *Security Risk for Sources as U.S. Border Agents Stop and Search Journalists*, Committee to Protect Journalists (Dec. 9, 2016), https://perma.cc/Q3HA-YAZ3). Border officers reportedly detained Maria Abi-Habib, a reporter for the *Wall Street Journal*, and attempted to confiscate her cell phones, which contained confidential source information, in July 2016. *Id.* (citing Mazin Sidahmed, *Department of Homeland Security Detains Journalist Returning from Beirut*, The Guardian (Jul. 21, 2016), https://perma.cc/3JVS-693T). And in 2017, the Florida Branch of the Council for American-Islamic Relations filed ten complaints with CBP on behalf of Muslim-American travelers who were targeted for electronic devices at the border. *Id.* (citing Press Release, *CAIR-FL Files 10 Complaints with CBP After the Agency Targeted and Questioned American-Muslims About Religious and Political Views*, CAIR Florida (Jan. 18, 2017), https://perma.cc/5R5M-A8UD).

**II.     The Knight Institute's FOIA Request**

6.     Seeking to inform the public about the government's suspicionless searches of electronic devices at the nation's borders, on March 15, 2017, the Knight Institute submitted identical requests pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), and Customs and Border Patrol ("CBP") (the "Request"). Out of an abundance of caution, the Knight Institute resubmitted the Request to CBP on March 22, 2017. *See* Am. Compl. ¶¶ 17–18, ECF No. 10.

7.     The Request sought seven sets of records: 1) records from Defendants' TECS database[1] containing information about the number and reasons for each search, detention, retention, or sharing of individuals' electronic devices or the information accessible on them since fiscal year 2012; 2) documents relating to each instance since fiscal year 2012 in which CBP or ICE searched, detained, retained, or shared an electronic device or the information accessible on it; 3) revisions of or documents supplementing or superseding the CBP and ICE Directives concerning border searches of electronic devices; 4) certain documents relating to any reviews of CBP's or ICE's policies or practices concerning electronic device searches; 5) documents concerning or relating to complaints filed by individuals or organizations about CBP's or ICE's search, review, retention, or sharing of the information on travelers' electronic devices; 6) documents reflecting policies, practices, or procedures concerning how CBP officers handle "privileged or other sensitive materials," including "work-related information carried by journalists" as described in the CBP Directive concerning border searches of electronic devices; and 7) documents reflecting policies, practices, and procedures concerning CBP's anti-

---

[1] The TECS database stores the electronic media reports ("EMRs") created to document electronic device searches at the border. 1st Joint Stat. Report at 3, ECF No. 21.

discrimination policy as applied to discretionary electronic device searches. Am. Compl. ¶ 21; *see* Request 4–6.

8. The Knight Institute sought expedited processing of the Request and a waiver or limitation of fees. Request 7–9.

### III. The Agencies' Initial Responses and the Commencement of This Lawsuit

9. CBP acknowledged receipt of the Request on March 24, 2017, but did not respond to the Knight Institute's request for expedited processing. Compl. ¶ 21, ECF No. 1; Answer Ex. H, ECF No. 18.

10. The Knight Institute filed an initial Complaint on March 27, 2017, alleging that the agencies violated FOIA by failing to respond to its request for expedited processing and by failing to process the Request "as soon as practicable." Compl. ¶¶ 25–26.

11. ICE and DHS responded to the Request on March 28, 2017 and March 31, 2017, respectively. Answer Ex. D, ECF No. 18-5; Answer Ex. E, ECF No. 18-6. ICE granted the Institute's request for expedited processing, Answer Ex. D, while DHS denied the request, Answer Ex. E.

12. DHS also referred the Request to the Transportation Security Administration ("TSA") and DHS's Office of the Inspector General ("OIG"). *Id.* On April 4, 2017, TSA acknowledged receipt of the Request and denied expedited processing. *Id.* at Ex. J, ECF No. 18-11. OIG acknowledged receipt of the Request on June 13, 2017. 2d Joint Stat. Report at 4 n.2, ECF No. 23.

13. The Knight Institute filed an Amended Complaint on April 19, 2017. Am. Compl., ECF No. 10.

14. Following the initiation of the lawsuit, the parties entered into negotiations regarding the terms and timing of the agencies' searches for records responsive to Request. *See, e.g.*, 3rd Joint Stat. Report at 2–4, ECF No. 24; 4th Joint Stat. Report at 1, 4, ECF No. 25.

## IV.   CBP's Response

15. After conducting a search, CBP identified no records containing a list of the TECS data field categories, which the Knight Institute had requested under Item 2(a) of the Request. 1st Joint Stat. Report at 4, ECF No. 21.

16. CBP processed and produced to the Knight Institute a six-record sample of the electronic media reports ("EMRs") stored in TECS to facilitate negotiations regarding CBP's response to Item 2(b) of the Request. *Id.* at 34. On January 16, 2018, the Knight Institute and CBP agreed that CBP would process a random two-percent sample of EMRs created in the eighteen-month period between July 16, 2016 and January 16, 2018. 5th Joint Stat. Report at 4, ECF No. 26. The parties subsequently agreed that CBP would produce a spreadsheet displaying field entry data from all EMRs created between fiscal year 2012 and December 31, 2017, except for those data fields CBP considered exempt under FOIA. The parties further agreed that CBP would advise the Knight Institute as to which data fields it was withholding and which FOIA exemptions it considered applicable to those fields. 7th Joint Stat. Report at 6–7, ECF No. 30.

17. On June 6, 2017, CBP responded to Item 3 of the Request by stating that the CBP Border Search Directive had not been revised, replaced, or superseded. 1st Joint Stat. Report at 4. Six months later, however, CBP revised the Border Search Directive. CBP, *Border Search of Electronic Devices*, CBP Directive No. 3340-049A (Jan. 4, 2018), https://perma.cc/3QKY-MPGR.

18. On September 27, 2017, the parties agreed that CBP would search its complaint management system for records dating from January 1, 2012, relating to the CBP Office of Field Operations, frequent searches or delays, CBP's procedures and policies, and CBP's search

5

authority using the following search terms: "electronic device," "phone," "cellphone," "laptop," "iPad," "mobile device," "computer," "cellular device," "tablet," "mobile phone," and "PDA." Decl. of Matthew Hellman in Supp. of Pl.'s Cross-Mot. for Summ. J. ("Hellman Decl.") Ex. R; *see* 3rd Joint Stat. Report at 4.

19. Between May 26, 2017 and April 28, 2018, CBP released 969 pages of records responsive to Items 1, 2(b), 4, 5 and 7 of the Request. CBP withheld information from many of those pages, invoking Exemptions 6, 7(C), and 7(E). 1st Joint Stat. Report at 2; 4th Joint Stat. Report at 2–3; 6th Joint Stat. Report at 2, 4, ECF No. 29; Hellman Decl. Ex. Q; Hellman Decl. Ex. S.

20. Between May 31, 2018 and November 1, 2018, CBP produced 1,611 pages of EMRs to fulfill the two-percent sample agreed to by the parties on January 16, 2018. CBP withheld information from those pages, invoking FOIA Exemptions 6, 7(C), and 7(E). 7th Joint Stat. Report at 2, 8; 8th Joint Stat. Report at 5, ECF No. 31; 9th Joint Stat. Report at 2–3, ECF No. 32; 10th Joint Stat. Report at 1, ECF No. 34. CBP also produced the spreadsheet, consisting of 1,424 pages of the data fields that CBP did not consider exempt from all EMRs created from the beginning of fiscal year 2012 through December 31, 2017. 9th Joint Stat. Report at 2–3.

21. Between November 1, 2018 and December 21, 2018, CBP produced 543 pages responsive to Items 4 and 5 of the Request. 10th Joint Stat. Report at 1–2; 11th Joint Stat. Report at 1, ECF No. 39. CBP withheld information from many of those pages, invoking Exemptions 5, 6, 7(C), and 7(E). *Id.* CBP also withheld an additional two pages, invoking Exemption 3. 11th Joint Stat. Report at 1.

22. Between March 15, 2019 and September 23, 2019, CBP produced an additional 482 pages of documents that had been referred to it by DHS and TSA. 11th Joint Stat. Report at 4;

14th Joint Stat. Report at 1, ECF No. 43; 15th Joint Stat. Report 1, ECF No. 44. CBP withheld information from many of those pages, invoking Exemptions 3, 5, 6, 7(C), and 7(E). *Id.* CBP also withheld an additional 492 pages, invoking Exemptions 3, 5, 6, 7(C), and 7(E). *Id.*

**V.     ICE's Response**

23.     As of June 2017, ICE represented that it did not have a mechanism to track border searches of electronic devices; nonetheless, it began developing search terms that would allow it to search its Investigative Case Management database for records responsive to Item 2(b) of the Request. 1st Joint Stat. Report at 4. In August 2017, ICE provided the Knight Institute with four sample reports of investigation ("ROIs") to facilitate negotiations regarding search terms. 2nd Joint Stat. Report at 5, ECF No. 23. On December 7, 2017, the Knight Institute agreed on the searches ICE would conduct to comply with Item 2(b) of the Request. 5th Joint Stat. Report at 1. ICE agreed to process all ROIs that were part of closed cases and had been generated in the last eighteen months that contained the term "border search" and one or more of the following: "computer," "cell phone," "cellular device," "laptop," "electronic device," "tablet," "iPad," "mobile phone," "mobile device," "hand-held phone," "hand-held device," and "PDA." *See* Defs.' Motion for Summary Judgment ("Defs.' MSJ") Ex. I, ECF No. 46-10. ICE also agreed to process all ROIs meeting those search criteria that were part of open cases as of December 7, 2017, but closed before the date of ICE's final production. *Id.*

24.     ICE responded to Item 3 of the Request by stating that the ICE Border Search Directive had not been superseded. 1st Joint Stat. Report at 5.

25.     On June 16, 2017, ICE produced 108 pages and seven excel spreadsheets responsive to Items 1 and 4 of the Request. Hellman Decl. Ex. T. ICE withheld information from many of those pages, invoking Exemptions 5, 6, 7(C), and 7(E). 2nd Joint Stat. Report at 4–5; Hellman Decl. Ex. T.

26. Between February 22, 2018 and April 23, 2018, ICE produced 1,386 pages responsive to Item 2(b) of the Request. 6th Joint Stat. Report at 1, 3. ICE withheld information from many of those pages, invoking Exemptions 5, 6, 7(C), and 7(E). 6th Joint Stat. Report at 1.

27. Between February 9, 2019 and October 4, 2019, ICE produced 276 pages of documents that had been referred to it by DHS and CBP. 10th Joint Stat. Report at 2; 13th Joint Stat. Report at 2, ECF No. 41; 15th Joint Stat. Report at 1. ICE withheld information form many of those pages, invoking Exemptions 5, 6, 7(A), 7(C), and 7(E). *Id.*

28. On May 11, 2018, ICE offered to provide the Knight Institute with a sample *Vaughn* index. 6th Joint Stat. Report at 6. On July 13, 2018, the Knight Institute identified 74 documents for ICE to include in its sample *Vaughn* index. 8th Joint Stat. Report at 1. ICE produced the sample *Vaughn* index on September 20, 2018. 9th Joint Stat. Report at 3.

29. On October 25, 2019, the Knight Institute informed counsel for ICE that it expected to challenge ICE's withholdings under Exemptions 5, 6, 7(A), 7(C), and 7(E). 15th Joint Stat. Report at 1-2.

30. The *Vaughn* index submitted by ICE to the Court in this case is incomplete. It does not include entries explaining its withholdings for the following documents: 2017-ICLI-00011 1, 2017-ICLI-00011 37–51, 2017-ICLI-00011 53–61, 2017-ICLI-00011 65, 2017-ICLI-00011 83–92, 2017-ICLI-00011 109–20, 2017-ICLI-00011 124–42, 2017-ICLI-00011 147–494, 2017-ICLI-00011 507–833, 2017-ICLI-00011 837–1009, 2017-ICLI-00011 1016–53, 2017-ICLI-00011 1056–59, 2017-ICLI-00011 1066–92, 2017-ICLI-00011 1102–03, 2017-ICLI-00011 1115–37, 2017-ICLI-00011 1141–54, 2017-ICLI-00011 1158–354, 2017-ICLI-00011 1374–390, 2017-ICLI-00011 1395–674, 2017-ICLI-00011 1677–92, 2017-ICLI-00011 1700–800, 2017-ICLI-00011 1803–49, 2017-ICLI-00011 1852–65, 2017-ICLI-00011 1868–69, 2017-ICLI-00011 1877–

99, 2017-ICLI-00011 1917–2026, 2017-ICLI-00011 2033–58, 2017-ICLI-00011 2069–143, 2017-ICLI-00011 2145–308. *See, e.g.*, Hellman Decl. Ex. T; Hellman Decl. Ex. BB.

**VI.   DHS's Response**

31.    On August 14, 2017, DHS represented that it had completed searches for records responsive to Items 1, 3, 4, and 5 of the Request. 2nd Joint Stat. Report at 3. DHS later explained that it had not conducted searches specific to any item of the Request, and instead searched the records of its Office of General Counsel ("OGC"), Office of Policy, and Office of Civil Rights and Civil Liberties ("CRCL") using two sets of search terms:

> a. ("searching" or "reviewing" or "collection" or "seizure" or "sharing" or "retention") and ("electronic devices" or "communication devices" or "laptop" or "Cellphone" or "i-phone" or "tablet" or "i-pad" or "sd-card" or "jump drive" or "external drive") and ("border" or "point of entry"); and
>
> b. "CBP Directive 3340-049" or "ICE Directive 7-6.1" or "Border Search of Electronic Devices Containing Information" or "Border Searches of Electronic Devices."

3d Joint Stat. Report at 5, ECF No. 24.

32.    Over the next several months, the parties negotiated search terms more tailored to the individual items of the Request.

33.    On July 31, 2018, the parties agreed that DHS would ask the following components to search for records responsive to Items 1, 4, 6, and 7 of the Request: the Threat Prevention and Security Policy component of the Office of Strategy, Policy, and Plans (OSPP), the Operations and Enforcement Law Division of OGC, the Office of Privacy, and the Security and Information Policy Section and the Antidiscrimination Group of CRCL. 8th Joint Stat. Report at 3.

34.    The parties also agreed that for Item 5, DHS would ask CRCL to conduct a search of complaint summaries in Entellitrak, CRCL's case-tracking system, using the search terms ("electronics" or "phone" or "laptop" or "computer" or "device*" or "mobile" or "cell*" or

9

"smartphone" or "iphone" or "i-phone" or "tablet" or "i-pad" or "ipad" or "jump drive" or "thumb drive" or "hard drive" or "external drive" or "sd-card" or "USB" or "camera" or "social media" or "Facebook" or "Twitter" or "Whatsapp" or "email" or "e-mail"). 7th Joint Stat. Report at 7; 8th Joint Stat. Report at 2.

35. DHS did not identify which of the records it produced were responsive to which items of Request. Overall, between December 1, 2017 and May 10, 2019, DHS produced 2,649 pages of documents. 6th Joint Stat. Report at 2, 4; 7th Joint Stat. Report at 1–2; 9th Joint Stat. Report at 3; 10th Joint Stat. Report at 1–2; 12th Joint Stat. Report at 3, ECF No. 40; Hellman Decl. Ex. U. DHS withheld information from 1,696 of those pages, invoking Exemptions 5 and 6. *Id.* DHS also withheld an additional 1,759 pages, invoking FOIA Exemptions 3, 5, and 7(E). *Id.*[2]

36. The *Vaughn* index submitted by DHS in this case is incomplete. It does not include entries explaining its withholdings for the following documents: DHS-001-00513-000001–262, DHS-001-00513-000-268–70, DHS-001-00513-000281–98, DHS-001-00513-000303–07, DHS-001-00513-000351–715, DHS-001-00513-000739–752, DHS-001-00513-000978–1103, DHS-001-00548-00592, DHS-001-00585-001972–2051, DHS-001-00585-002105–06, DHS-001-00585-002111–14, DHS-001-00585-002116–23, DHS-001-00585-002125–33, DHS-001-00585-002141–45, DHS-001-00585-002147–51, DHS-001-00585-002155, DHS-001-00585-002273, DHS-001-00585-002283, DHS-001-00585-002490. *See, e.g.*, Hellman Decl. Ex. CC; Hellman Decl. Ex. V; Hellman Decl. Ex. DD.

---

[2] Although DHS's cover letter accompanying its May 30, 2018 production did not identify Exemption 3 as a basis for withholding, DHS withheld DHS-001-513-000351–632 in full pursuant to Exemption 3. Hellman Decl. Ex. V; Hellman Decl. Ex. Z.

**VII.  OIG's Response**

37. On June 27, 2017 OIG informed the Knight Institute that it had searched for records responsive to Item 4(a) of the Request and that the records it identified were exempt from production pursuant to Exemption 5. Hellman Decl. Ex. W.

38. On September 5, 2017, the Knight Institute and OIG agreed on the search OIG would conduct to comply with each of the items of the Request. 3rd Joint Stat. Report at 2–3; Hellman Decl. Ex. W. The parties agreed on search terms and agreed that for Items 1, 2, 3, 4(b), and 4(c), OIG would search for records within its Office of Audits and Office of Inspections. 3rd Joint Stat. Report at 2–3. For Item 5, OIG agreed to use the same search terms to search a database maintained by the Office of Investigations. *Id.* OIG also sent the language of the Request to the leadership of all three offices and asked if any unit possessed records responsive to Items 6 and 7 of the Request.

39. On September 21, 2017, OIG produced a one-page spreadsheet in response to Item 5 of the Request. OIG withheld information from that spreadsheet, invoking Exemptions 6 and 7(C). 3rd Joint Stat. Report at 3; Hellman Decl. Ex. W.

40. On May 28, 2019, OIG produced 39 pages that had been referred to it by DHS. OIG withheld information from 26 of those pages, invoking FOIA Exemptions 6, 7(C), and 7(E). 13th Joint Stat. Report at 1.[3]

41. OIG's declaration justifying its withholdings in this case only discusses documents from its May 28, 2019 production. *See* Defs.' MSJ Ex. G (Decl. of Drew Lavine) ¶¶ 5–6, ECF No.

---

[3] Although OIG's cover letter accompanying its May 28, 2019 production did not identify Exemption 7(E) as a basis for withholding, OIG later explained that the document was also withheld pursuant to Exemption 7(E). *See* Defs.' MSJ Ex. G (Decl. of Drew Lavine) ¶ 6.

46-8. OIG's declaration is therefore incomplete, because it has not attempted to justify its withholding of responsive information from the spreadsheet it produced on September 21, 2017.

## VIII. Other Agencies' Responses

42. On June 6, 2017, TSA stated that it had received an estimated 400 complaints responsive to Item 5 of the Request. 1st Joint Stat. Report at 6. On July 14, 2017, TSA produced 938 pages responsive to Item 5 of the Request. Hellman Decl. Ex. X. TSA withheld information from those pages, invoking Exemptions 6 and 7(C). *Id.*

43. On September 19, 2019, TSA produced twelve pages that had been referred to it by DHS. CBP withheld information from those pages, invoking Exemptions 3 and 6. 14th Joint Stat. Report at 3.

44. On May 21, 2019, the Department of Health and Human Services ("HHS") produced seven pages that had been referred to it by DHS. HHS withheld information from those pages, invoking FOIA Exemption 6. 12th Joint Stat. Report at 4.

45. On July 19, 2017, the State Department produced five documents that had been referred to it by TSA. Hellman Decl. Ex. Y. The State Department withheld information from those documents, invoking Exemption 6.

46. On October 25, 2019, the Knight Institute informed the government that it was considering challenging TSA's withholdings only with respect to Exemption 3. 15th Joint Stat. Report at 2. The Knight Institute also informed the government that it did not anticipate raising any challenges to the withholdings made by HHS and the State Department. *Id.*