**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY,<br><br>                Plaintiff,<br><br>     v.<br><br>DEPARTMENT OF HOMELAND SECURITY, *et al*.,<br><br>                Defendants. | Civil Action No. 1:17-cv-00548-TSC |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT PURSUANT TO LOCAL
CIVIL RULE 7(h)(1)**

Pursuant to Local Civil Rule 7(h), Plaintiff the Knight First Amendment Institute (the "Knight Institute") hereby submits this response to Defendants' Statement of Material Facts in conjunction with its cross-motion for summary judgment under Federal Rule of Civil Procedure 56(a):

1.     Plaintiff Knight First Amendment Institute at Columbia University has identified certain withholdings of certain agencies as "the issues . . . [it] intends to contest on summary judgment" in this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  15th Jt. Stat. Rep. (JSR) (Nov. 21, 2019), ECF No. 44, at 1.

Plaintiff's Response:  **Not disputed.**

2.     Excluding certain withholdings that are not in fact at issue, the withholdings that plaintiff has identified as "the issues . . . [it] intends to contest on summary judgment" are the withholdings of the Transport Security Administration (TSA) under FOIA Exemption 3; the

withholdings of defendants Department of Homeland Security (DHS), U.S. Customs and Border Protection (CBP), and U.S. Immigration and Customs Enforcement (ICE) under FOIA Exemption 5; the withholdings of DHS, CBP, ICE, and the DHS Office of Inspector General (OIG) under FOIA Exemptions 6 and 7(C), and the withholdings of DHS, CBP, and ICE under FOIA Exemption 7(E).  *Id.* at 1-2.

> Plaintiff's Response:  **Disputed in part.** The Knight Institute also advised the government that it intended to challenge DHS's withholdings under Exemption 3 and ICE's withholdings under Exemption 7(A).  *See* 15th Joint Stat. Report at 2–3, ECF No. 44.

3.     DHS has not made any withholdings under Exemption 3.  Decl. of James V.M.L. Holzer (Jan. 31, 2020) (Holzer Decl.) ¶ 17.

> Plaintiff's Response:  **Disputed**. DHS produced at least one document that it withheld under Exemption 3. *See* Decl. of Matthew Hellman in Supp. of Pl.'s Cross-Mot. for Summ. J. ("Hellman Decl."); DHS-001-513-000351 (Ex. Z).

4.     ICE has not made any withholdings under Exemption 7(A).  Decl. of Toni Fuentes (Jan. 16, 2020) (Fuentes Decl.) ¶ 19.

> Plaintiff's Response:  **Disputed.** ICE produced at least one document that withhld information under Exemption 7(A).  *See* Hellman Decl.; 2017-ICLI-00011 2089–95 (Ex. AA).

5.     The withholdings of OIG under Exemption 7(E) "were requested by the DHS Privacy Office in its referral to [OIG]."  Decl. of Drew Lavine (Jan. 13, 2020) (Lavine Decl.) ¶ 9.

> Plaintiff's Response:  **Not disputed.**

6.      Plaintiff, a New York not-for-profit corporation, submitted identical versions of the same FOIA request to DHS and ICE on March 15, 2017, and to CBP on March 22, 2017.  Am. Compl. (Apr. 19, 2017), ECF No. 10, ¶ 15, 17-18.

Plaintiff's Response:  **Not disputed.**

7.      Plaintiff's request sought seven categories of records allegedly concerning "suspicionless searches of individuals' electronic devices at the nation's borders."  *Id.* ¶ 2.

Plaintiff's Response:  **Not disputed.**

8.      Defendants filed an answer to the amended complaint on May 3, 2017, and began making efforts at or about that that time to comply with the request.  *See* 1st JSR (June 6, 2017), ECF No. 21, at 2-3, 5-8.

Plaintiff's Response:  **Not disputed.**

9.      The request as written would have required all three defendants to process huge numbers of records.  *See* 2d JSR (Aug. 14, 2017), ECF No. 23, at 2-3, 5-6.

Plaintiff's Response:  **Disputed.**  The government never provided the Knight Institute with number of records responsive to its FOIA request. In the second joint status report, the government only provided estimates of potentially responsive records.  *See* 2nd Joint Stat. Report at 3, 5–6, ECF No. 23. Its assertion that the request "would have required all three defendants to process huge numbers of records" is therefore not supported by the evidence in the record.

10.     Defendants therefore initiated discussions with plaintiff on or about May 3, 2017, to try to come up with methodologies for "provid[ing] plaintiff with responsive records without subjecting DHS, ICE, and CBP to undue burden."  *See* 1st JSR at 1, 3-4; 2d JSR at 3.

Plaintiff's Response:  **Not disputed.**

11.     The parties reached a series of agreements during the next year that specified the searches that defendants would be required to conduct or the actions in lieu of searches that defendants would be required to take in order to be deemed in compliance with the individual items of plaintiff's request.  *E.g.*, 3d JSR (Oct. 16, 2017), ECF No. 24 at 4; 7th JSR (June 29, 2018), ECF No. 30, at 6-7.

Plaintiff's Response:  **Not disputed.**

12.     Defendants conducted the prescribed searches and took the prescribed actions; processed for release the responsive records that the searches produced; and released to plaintiff all portions of the responsive records not covered by one or more FOIA exemptions.  *E.g.*, 6th JSR (May 21, 2018), ECF No. 29, at 1-4; 9th JSR (Oct. 9, 2018), ECF No. 32, at 2-4.

Plaintiff's Response:  **Disputed in part.** The government's assertion that the agencies produced all responsive, non-exempt records is a legal conclusion rather than a statement of fact and should therefore be disregarded by the Court.[1] The Knight Institute disputes the government's legal claim that the records at issue in this case are exempt from disclosure under FOIA.

13.     Defendants' production of records ended on October 4, 2019.  See 15th JSR at 1.

Plaintiff's Response:  **Not disputed.**

14.     The production ultimately included certain records from which TSA and OIG had made withholdings.  13th JSR (July 22, 2019), ECF No. 41, at 1; 14th JSR (Sept. 20, 2019), ECF No. 43, at 5.

Plaintiff's Response:  **Not disputed.**

---

[1] *See People for the Ethical Treatment of Animals, Inc. v. Bureau of Indian Affairs*, 800 F. Supp. 2d 173, 182 (D.D.C. 2011) (concluding that a court need not consider a statement of "fact" that actually "constitutes a conclusion of law").

15.     Certain material, previously withheld by TSA, has now been released, see Decl. of

Terri Miller (Dec. 9, 2019) (Miller Decl.) ¶ 14, and DHS has now determined that all of the material

previously withheld by DHS under Exemption 6 ought to be withheld under Exemption 7(C) as

well.  *See, e.g.*, Holzer Decl., Ex. A at 7.

> Plaintiff's Response:  **Disputed in part.** The Knight Institute disputes that it or its
>
> counsel receivd an amended response to the Request from TSA on December 18,
>
> 2019.

16.     The Office for Civil Rights and Civil Liberties (CRCL) is the "component of [DHS]

responsible for 'review[ing] and assess[ing] information concerning abuses of civil rights, civil

liberties, and profiling on the basis of race, ethnicity, or religion by employees and officials of'

[DHS]." *Adelante Ala. Worker Ctr. v. DHS*, 376 F. Supp. 3d 345, 351 (S.D.N.Y. 2019) (quoting

6 U.S.C. 345(a)(1)).

> Plaintiff's Response:  **Not disputed.**

17.     The U.S. Coast Guard (USCG) is a component of DHS. 6 U.S.C. § 113(c).

> Plaintiff's Response:  **Not disputed.**

18.     TECS is "an overarching law enforcement information collection, analysis, and

sharing environment that securely links telecommunications devices and personal computers to a

central system and database."  Decl. of Patrick A. Howard (Jan. 30, 2020) (Howard Decl.) ¶ 28.

> Plaintiff's Response:  **Not disputed.**

19.     TECS is "principally owned and managed by CBP" and is "CBP's principal law

enforcement and anti-terrorism data base system." *Id.*

> Plaintiff's Response:  **Not disputed.**

20.     Homeland Security Investigations (HSI) is an "investigative arm of [DHS]."  *ICE, Homeland Security Investigations*, https://www.ice.gov/hsi (accessed Jan. 5, 2020) at 1.

> Plaintiff's Response:  **Not disputed.**

21.     "HSI has broad legal authority to enforce a diverse array of federal statutes" and "uses this authority to investigate all types of cross-border criminal activity."  *Id.*

> Plaintiff's Response:  **Not disputed.**

22.     ICE investigatory reports are known as Reports of Investigation (ROIs).  *See, e.g.*, 2d JSR at 5.

> Plaintiff's Response:  **Not disputed.**

23.     TSA has relied in this action on Exemption 3, 49 U.S.C. § 114(r), and the implementing regulations for § 114(r) to withhold certain information from certain "Redress Case Forms."  Decl. of Douglas E. Blair (Dec. 19, 2019) (Blair Decl.) ¶¶ 8, 10; *see* Miller Decl., Ex. A.

> Plaintiff's Response:  **Not disputed.**

24.     This information consists of "information that would reveal an individual's status vis-à-vis the No Fly List and Selectee List (i.e., whether the individual is on or off either list)." Blair Decl. ¶ 10.

> Plaintiff's Response:  **Not disputed.**

25.     This information is Sensitive Security Information because it is information "'used by a passenger or property screening program or system, including an automated screening system.'"  *Id.*  (quoting 49 C.F.R. § 1520.5(b)(9)(ii)).

> Plaintiff's Response:  **Not disputed.**

26.     Disclosure of this information "could enable terrorists to evade or circumvent transportation security screening procedures . . . [and] enable those planning an attack on an aircraft to identify operatives who have or have not previously been identified as a threat." *Id.* ¶ 11.

> Plaintiff's Response: **Disputed in part.** The government's speculative and conclusory characterization of the risk created by the disclosure of an anonymous individual's status on the No Fly and Selectee lists is not a statement of fact but a conclusion of law, which the Court should disregard.

27.     CBP has relied on Exemption 5 and the deliberative process privilege to withhold three categories of material.  Howard Decl. ¶ 10 & Att. at 1, 23, 30.

> Plaintiff's Response:   **Not disputed.**

28.     The first category consists of information withheld from "routing forms used to track the internal review by agency personnel of proposed agency policies, memoranda, and correspondence." *Id.*, Att. A at 1.

> Plaintiff's Response:   **Not disputed.**

29.     This information includes "information regarding which offices or personnel were or were not consulted, markings denoting clearance or objection to a draft proposal, and internal categorization of the draft proposal." *Id.*

> Plaintiff's Response:   **Not disputed.**

30.     Disclosure of this information would reveal "deliberative, pre-decisional information regarding the agency decision-making process." *Id.*

> Plaintiff's Response: **Disputed.**   The government's argument that disclosure would reveal "deliberative, pre-decisional information" is speculative and

conclusory.  Further, this statement constitutes a conclusion of law rather than a statement of fact, and should be disregarded.

31.     The second category of material that CBP has withheld under Exemption 5 consists of information withheld from "[r]ecords obtained, compiled, or created by [CRCL] in relation to their review of CBP law enforcement activities, including activities relating to border searches of electronic devices" and also of "[n]on-finals drafts of agency policies, memoranda, communications, or other records." *Id.*, Att. at 23-24.

Plaintiff's Response:  **Not disputed.**

32.     This material includes "descriptions of the status of an ongoing review of agency activities, questions considered in conducting a review of agency activities, descriptions of materials deemed relevant to evaluating agency activities, and communications among agency leadership and policy advisers containing recommendations, evaluations or comment regarding proposed agency actions." *Id.*, Att. at 23.

Plaintiff's Response:  **Not disputed.**

33.     Disclosure of this material would reveal "the pre-decisional status of an internal review or investigation and the methods utilized to conduct such review or investigation" and otherwise would reveal "deliberate, pre-decisional information regarding the agency decisionmaking process." *Id.*, Att. at 23; *see id.*, Att. at 24.

Plaintiff's Response:  **Disputed.**   The government's argument that disclosure would reveal "deliberat[ive], pre-decisional information" is speculative and conclusory.  Further, this statement constitutes a conclusion of law rather than a statement of fact, and should be disregarded.

34.     The third category of material that CBP has withheld under Exemption 5 consists of a "[d]raft of a technical user guide for the creation and management of records documenting electronic device searches." *Id.*, Att. at 30.

Plaintiff's Response:  **Not disputed.**

35.     Disclosure of this material would reveal "deliberative, pre-decisional information regarding the agency decision-making process." *Id.*

Plaintiff's Response:  **Disputed.** The government's argument that disclosure would reveal "deliberative, pre-decisional information" is speculative and conclusory. Further, this statement constitutes a conclusion of law rather than a statement of fact, and should be disregarded.

36.     ICE has relied on Exemption 5, the deliberative process privilege, the attorney-client privilege, and the work product privileges to withhold, in full, certain "documents titled 'Computer Border Search Discussion Topics.'"  Fuentes Decl. ¶ 26; *see id.* ¶¶ 28-30.

Plaintiff's Response:  **Not disputed.**

37.     These documents "were prepared by DHS and its components' legal staff to facilitate discussion between DHS and [the] Department of Justice (DOJ) in developing litigation strategies for ongoing and anticipated litigations pertaining to DHS' border search authority." *Id.* ¶ 26.  These documents "contain[] discussions between ICE, USCG, DHS, and CBP conversing about DHS's border search authority and how to respond to DOJ's questions." *Id.* ¶ 27.

Plaintiff's Response:  **Not disputed.**

38.     These documents contain "confidential communications between attorneys and their client(s) related to a legal matter for which the client sought professional legal advice . . .

here, responses to questions posed by DOJ to DHS and its components (including ICE, CBP, DHS, and USCG) in regard to DHS' border search authorities." *Id.* ¶ 28.

> Plaintiff's Response: **Disputed.** First, the government's statement that the documents at issue were confidential and related to the provision of professional legal advice is an "argument regarding the inferences to be drawn from the facts," rather than a fact itself, which the Court should disregard.[2] Second, the government's assertion is not supported by the record. For the Court to uphold the withholding of documents under a claimed attorney-client privilege, the government must "state the subject matter, number of pages, author, date created, and identities of all persons to whom the original or any copies of the documents were shown or provided."[3] The government's reliance, instead, on a conclusory statement made by an ICE FOIA officer does not meet this requirement.

39.     These documents were "created by agency counsel in anticipation of and in preparation for ongoing and future litigation, specifically, challenges raised to DHS's border search authority" and "contain questions and responses prepared for the specific purpose of informing the development of the agencies' litigation strategy." *Id.* ¶ 30.

> Plaintiff's Response: **Disputed.** The government's statement that the documents at issue were created in anticipation of and in preparation for ongoing and future litigation are arguments regarding the inferences to be drawn from the facts, rather

---

[2] *Toomer v. Carter*, No. 11 Civ. 2216 (EGS/GMH), 2016 WL 9344023, at *4 (D.D.C. Mar. 24, 2016), *report and recommendation adopted sub nom. Toomer v. Mattis*, 266 F. Supp. 3d 184 (D.D.C. 2017).

[3] *Dir. of the Office of Thrift Supervision v. Ernst & Young*, 795 F. Supp. 7, 11–12 (D.D.C. 1992); *see also Hornbeck Offshore Transp., LLC v. U.S. Coast Guard*, No. Civ. A. 04-1724 (CKK), 2006 WL 696053, at *14 (D.D.C. Mar. 20, 2006).

than statements of material fact. To support the conclusory invocation of the attorney work-product privilege, the government must describe the nature and contents of the withheld document, identify the document's author, explain the circumstances surrounding the document's creation, and indicate the particular circumstances that make the document's use in litigation foreseeable.[4]  It has failed to make that showing.

40.     DHS has relied on Exemption 5, the deliberative process privilege, the attorney-client privilege, and the work product privilege to make withholdings from approximately 30 records or groups of records.  Holzer Decl., Ex. A at 7-24, 29-32.

        Plaintiff's Response:  **Not disputed.**

41.     One of the groups of records from which DHS has made withholdings consists of "internal email communications and draft spreadsheets . . . generated during discussions between CRCL and CBP regarding the possibility of developing an agreed upon methodology for sampling data relative to border searches of electronic devices to determine whether civil rights or civil liberties concerns might exist."  *Id.* Ex. A at 7.

        Plaintiff's Response:  **Not disputed.**

42.     These communications were "antecedent to any final decision on how best to sample the data and a determination that civil rights/civil liberties concerns might indeed exist"

---

[4] *See Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 241–42 (D.D.C. 2013).

and "reflect the give-and-take between CRCL and CBP that occurred during the deliberative process." *Id.*, Ex. A at 7-8.

> Plaintiff's Response:  **Disputed.** The Knight Institute disputes the government's conclusory characterization of the communications at issue as reflecting the "deliberative process." This statement constitutes a conclusion of law rather than a statement of fact, and should be disregarded.

43.    A second group of records from which DHS has made withholdings under Exemption 5 consists of "email communications and drafts generated by CRCL personnel during the process of preparing" a CRCL publication, Civil Rights/Civil Liberties Impact Assessment: Border Searches of Electronic Devices. *Id.*, Ex. A at 9.

> Plaintiff's Response:  **Not disputed.**

44.    These communications predate the release to the public of the final version of the above assessment; were "prepared by CRCL staff and circulated within DHS"; "reflect the give-and-take of the editorial process and contain the thoughts, recommendations, proposed courses of action, and opinions that CRCL employees believed the CRCL Officer should take into consideration about legal and policy matters concerning border searches of electronic devices"; and "reflect the exercise in judgment of CRCL personnel as to the relevance and importance of those facts, issues, and advice that should be included or excised from the final assessment." *Id.*

> Plaintiff's Response: **Disputed in part.** The government's assertions that the communications withheld "reflect the give-and-take of the editorial process" and "reflect the exercise in judgment of CRCL personnel" are arguments regarding the inferences to be drawn from the facts, rather than statements of material fact, which the Court should disregard.

45.     A third group of records from which DHS has made withholdings under Exemption 5 consists of

> internal email communications between attorneys with the DHS Office of the General Counsel (OGC) and the CBP Office of Chief Counsel (OCC) . . . generated during the deliberative and consultative process of drafting a memorandum containing recommendations and legal advice to the DHS Secretary on the topic of border searches of electronic devices.

*Id.*, Ex. A at 8.

> Plaintiff's Response:  **Not disputed.**

46.     These communications "were antecedent to the drafting of a final memorandum or final agency decision" and "contain the opinions, conclusions, and recommendations of agency personnel subordinate to the Secretary and reflect the give-and-take that occurred between the counselors as they discussed and weighed the merits of various positions." *Id.*

> Plaintiff's Response: **Disputed in part.** The government's assertion that the communications "reflect the give-and-take that occurred between the counselors as they discussed and weighed the merits of various positions" is an argument regarding the inferences to be drawn from the facts, rather than statements of material fact, which the Court should disregard.

47.     These communications also "contain information obtained by agency counsel from their clients while securing legal advice or services." *Id.*

> Plaintiff's Response: **Disputed.** The government's statement that the communications at issue related to the provision of professional legal advice is an argument regarding the inferences to be drawn from the facts, rather than statements of material fact, which the Court should disregard. Further, the government has failed to support its assertion that the information was related to the provision of

13

legal advice by "stat[ing] the subject matter, number of pages, author, date created, and identities of all persons to whom the original or any copies of the documents were shown or provided."[5]

48.     These communications were "created not only with the intention of providing legal advice to the Secretary, but they were created by agency counsel in anticipation of and in preparation for ongoing and future litigation involving the search of electronic devices at the border." *Id.* at 8-9.

Plaintiff's Response:  **Disputed.**  The government has failed to support its assertion that the communications were created in anticipation of litigation by describing the nature and content of the communications, explaining the circumstances surrounding the document's creation, or indicating the circumstances that make the document's use in litigation foreseeable.[6]

49.     Similar reasons are provided by DHS for its other withholdings under Exemption 5. *See id.*, Ex. A at 9-24, 29-32.

Plaintiff's Response:  **Not disputed.**

50.     Plaintiff has stated that it "[does] not intend to argue that the records from which withholdings under Exemption 7 [have] been made 'were not compiled for law enforcement purposes' except in the case of 'CRCL documents.'"  15th JSR at 2.

Plaintiff's Response:  **Not disputed.**

51.     The CRCL records from which withholdings under Exemption 7(C) have been made consist of records "created and used . . . by CRCL to investigate and resolve civil rights and

---

[5] *Dir. of the Office of Thrift Supervision,* 795 F. Supp. at 11–12.

[6] *See Am. Immigration Council*, 950 F. Supp. 2d at 241–42.

civil liberties complaints filed by the public regarding [DHS] policies or activities, or actions taken by [DHS] personnel."  Holzer Decl. ¶ 41.

> <u>Plaintiff's Response</u>:  **Disputed in part.**  CRCL records containing redactions under Exemption 7(C) consist of both records relating to investigations of particular complaints and records relating to policy development.  *See, e.g.*, Hellman Decl.; DHS-001-00585-00894–917 (Ex. M).

52.     "[I]nvestigating and resolving civil rights and civil liberties complaints filed by the public" is one of the tasks for which CRCL is responsible.  *Id.* ¶ 10(c).

> <u>Plaintiff's Response</u>:  **Not disputed.**

53.     The material withheld by DHS under Exemption 7(C) includes "the names, signatures, email and physical addresses, and facsimile and telephone numbers of government employees and private citizens."  Holzer Decl., Ex. A at 7.

> <u>Plaintiff's Response</u>:  **Not disputed.**

54.     The material withheld by CBP under Exemption 7(C) consists of

> (1) personally identifiable information of government employees, including information that could identify CBP personnel involved in law enforcement functions; (2) information regarding the subjects of records; and (3) information regarding individuals mentioned in records (e.g., co-travelers or other individuals identified or mentioned by the subject of a record).

Howard Decl. ¶ 25.

> <u>Plaintiff's Response</u>:  **Disputed in part.**  For numerous documents, CBP's redactions under Exemption 7(C) withhold more information than that identifying information of government employees, subjects of searches, and third parties mentioned in records.  *See, e.g.*, Hellman Decl.; CBP004721–25 (Ex. A); CBP002295–99 (Ex. D).

55.     The material withheld by ICE under Exemption 7(C) consists of "[personally identifiable information] of third parties, including aliens, family members of aliens, witnesses, passenger names, potential witnesses, and attorneys, such as, signatures, and initials" and "the names, phone numbers, e-mail addresses, addresses, initials, and signatures of Federal law enforcement officers and other government employees and administrative personnel" but does not include "the names of senior ICE leadership, and public facing employees, such as Headquarters senior management officials."  Fuentes Decl. ¶¶ 34, 39.

> Plaintiff's Response:  **Disputed in part.** For numerous documents, ICE's redactions under Exemption 7(C) withhold more information than that identifying third parties and government employees.  *See, e.g.*, Hellman Decl.; 2017-ICLI-00011 2027–29 (Ex. K).

56.     The material withheld by OIG under Exemption 7(C) consists of "the name and title of an investigative subject, the names of private persons, the names of lower-level OIG investigators, the name of investigative witnesses, and handwritten sworn statements of investigative witnesses.  Lavine Decl. ¶ 7.

> Plaintiff's Response:  **Not disputed.**

57.     The withholdings from CRCL records that have been made in this action under Exemption 7(E) have been made from records "created and used . . . by CRCL to investigate and resolve civil rights and civil liberties complaints filed by the public regarding [DHS] policies or activities, or actions taken by [DHS] personnel."  Holzer Decl. ¶ 41.

> Plaintiff's Response:  **Disputed in part.** CRCL records containing redactions under Exemption 7(E) consist of both records relating to investigations of particular

complaints and records relating to policy development.  *See, e.g.*, Hellman Decl.; DHS-001-00585-000894–917 (Ex. M).

58.     The material that CBP has withheld under Exemption 7(E) falls into four categories. Howard Decl. ¶ 33.

> Plaintiff's Response:  **Disputed in part.**  CBP also redacted information that does not fall into one of the four sets of documents described in paragraph 59–72.  *See, e.g.*, Hellman Decl.; CBP004721–25 (Ex. A).

59.     The first category consists of "information that would reveal the subjects of specific law enforcement interest."  *Id.* ¶ 34.

> Plaintiff's Response: **Disputed.**    This paragraph constitutes an argument regarding the inferences to be drawn from the facts, rather a fact itself, and the Court should therefore disregard it.

60.     This information appears in "TECS and other records containing remarks and analysis specific to particular individuals," *id.*, and includes "information regarding border inspections; the identification of law enforcement agencies and officers involved, contact information, and respective roles; and actions to be taken by law enforcement officers."  *Id.*

> Plaintiff's Response:  **Not disputed.**

61.     Disclosure of this information would place

> [certain] law enforcement techniques and strategies in the public domain, in the possession of the specific individuals whose records are at issue, and at the disposal of other similarly situated individuals; educating them as to the investigative techniques used and thereby assisting them to devise methods to evade detection

and apprehension; and, ultimately, impairing the effectiveness of those law enforcement techniques.

*Id.*

> Plaintiff's Response: **Disputed.** The Knight Institute disputes the government's conclusory characterization of the information at issue as revealing "law enforcement techniques" and their speculative claim that disclosure of the information at issue would "assist[]" individuals "to devise methods to evade detection and apprehension" and "ultimately, impair[] the effectiveness of those law enforcement techniques." This paragraph constitutes an argument regarding the inferences to be drawn from the facts, rather a fact itself, and the Court should therefore disregard it.[7]

62.      The second category of material that CBP has withheld under Exemption 7(E) consists of "information regarding specific law enforcement techniques and operational vulnerabilities." *Id.* ¶ 35.

> Plaintiff's Response: **Disputed.** The conclusory assertion that the material withheld constitute "techniques and operational vulnerabilities" constitutes an argument regarding the inferences to be drawn from the facts, rather a fact itself, and the Court should therefore disregard it.

63.      This information includes "information regarding why a particular law enforcement action (including the border search of an electronic device) was undertaken in any specific case"

---

[7] *Toomer v. Carter*, 2016 WL 9344023, at *4.

and information "reveal[ing] certain interagency techniques through the integration or referencing of data belonging to third-party agencies or departments." *Id.*

> Plaintiff's Response: **Not disputed.**

64.    Disclosure of this information would "threaten[] efforts to foster open communications across agencies and cohesive law enforcement and national security efforts" and "compromise the electronic records system, facilitate improper access to sensitive investigatory and other law enforcement records, impede effectiveness of law enforcement activities, and endanger agency investigative practices and techniques." *Id.*

> Plaintiff's Response: **Disputed.** This paragraph constitutes an argument regarding the inferences to be drawn from the facts, rather a fact itself, and the Court should therefore disregard it. Moreover, information about why a particular law enforcement action was taken, for example, the reason for a traveler's search or whether a tear sheet was provided, does not impede law enforcement activities or endanger agency investigative practices. The government maintains that it may conduct an electronic device search for no reason.[8] There is no risk that law enforcement efforts will be impeded because travelers discover that some travelers have been stopped for no reason at all.

65.    The third category of material that CBP has withheld under Exemption 7(E) consists of information in TECS records that would reveal "in the aggregate . . . trends and/or specific law enforcement capabilities and techniques employed in particular operational locations,

---

[8] *See Alasaad v. Nielsen*, No. 17-cv-11730-DJC, 2019 WL 5899371, at *7 (D. Mass. Nov. 12, 2019).

which can reveal the likelihood of CBP utilizing certain inspection techniques in specific operational locations." *See id.* ¶ 36.

> Plaintiff's Response:  **Disputed in part.** The assertion that the disclosure of this information would "reveal the likelihood of CBP utilizing certain inspection techniques in specific operational locations" constitutes an argument regarding the inferences to be drawn from the facts, rather a fact itself, and the Court should therefore disregard it.

66.     This information includes remarks, "date stamps, locations where specific law enforcement actions took place, internal IP addresses, contact information and communication methods, instructions on handling inspections of travelers, and similar information that reveals the procedures and techniques used by law enforcement." *Id.*

> Plaintiff's Response:  **Disputed in part.** The assertion that the disclosure of this information would "reveal[] procedures and techniques used by law enforcement" is an argument regarding the inferences to be drawn from the facts, rather than a fact itself, and the Court should therefore disregard it.

67.     "[A] few factors used by CBP officers to conduct border inspections are in the public domain in court opinions or other contexts," *id.* ¶ 37, and "some . . . data may appear innocuous taken in isolation." *Id.* ¶ 36.

> Plaintiff's Response:  **Not disputed.**

68.     "[T]he TECS format itself reveals more about the techniques that CBP officers use to conduct border inspections and assess risk than the information that can be gleaned from publically available information" *Id.* ¶ 37.

> Plaintiff's Response:  **Not disputed.**

69.     The information in this category is information that

> can place investigative activities in a precise context, pinpoint key players and events, identify critical tools and resources, and reveal the extent and shortfalls of law enforcement's knowledge of criminal or terrorist endeavors and/or immigration violations.  Moreover, such information creates a basis for comparison of the handling of different inspections, which could reveal the nature and extent of the government's law enforcement interest in particular situations.  Because this information can be used to clarify or predict a CBP officer's behavior in specific circumstances, the risk of circumvention of enforcement efforts or harm to officers or informants is significant.

*Id.* ¶ 36.

> Plaintiff's Response:  **Disputed.** The government's assertions in this paragraph are speculative and constitute arguments about conclusions of law, and the Court should therefore disregard it.

70.     The fourth category of material that CBP has withheld under Exemption 7(E) consists of "computer codes and other information that can expose CBP computer systems to a risk of unauthorized access or navigation."  *Id.* ¶ 38.

> Plaintiff's Response:  **Disputed in part.** The assertion that the disclosure of this information "expose[s]" CBP "to a risk of unauthorized access or navigation" constitutes an argument regarding the inferences to be drawn from the facts, rather a fact itself, and the Court should therefore disregard it.

71.     "Protecting and maintaining the integrity of CBP computer systems is imperative to CBP's ability to effectively and efficiently meet its mission to prevent terrorists, their weapons, and other dangerous items from entering the United States."  *Id.*

> Plaintiff's Response:  **Not disputed.**

72.     Disclosure of the material in this category could subject CBP's computer systems to the "potential risk of threat or compromise." *See id.*

> Plaintiff's Response:  **Disputed.** This paragraph constitutes an argument regarding the inferences to be drawn from the facts, rather a fact itself, and should be disregarded.

73.     The material that DHS has withheld under Exemption 7(E) falls into four categories.  Holzer Decl., Ex. A at 21-22, 36-37.

> Plaintiff's Response:  **Not disputed.**

74.     All of this material appears in records related to Civil Rights/Civil Liberties Impact Assessment: Border Searches of Electronic Devices or in records documenting inspections and law enforcement activities.  See *Id.*, Ex. A at 20, 36.

> Plaintiff's Response:  **Not disputed.**

75.     The first category of material that DHS has withheld includes

> unique record numbers/codes, descriptions of the nature of the law enforcement interest in an individual, descriptions of the particular inspection techniques utilized, identification of specialized law enforcement units and third-party agencies, descriptions of the circumstances in which CBP may coordinate inspections with specialized law enforcement units and third-party agencies, descriptions of pertinent information uncovered during the course of an inspection, criteria for utilizing particular inspection methods, information regarding law enforcement alerts or lookouts, information regarding available law enforcement capabilities or techniques, descriptions of the handling, maintenance and storage of law enforcement or national security information obtained from a border inspection, and descriptions of the law enforcement records consulted or created as part of certain inspections.

*Id.*, Ex. A at 21, 36.

> Plaintiff's Response:  **Not disputed.**

76.     Disclosure of this material, "either standing alone or [when] combined with other available information," could "reveal[] non-public law enforcement techniques, capabilities or

vulnerabilities, the circumstances in which such techniques, capabilities, or vulnerabilities may be encountered and/or the nature of the law enforcement interest in particular circumstances." *Id.*

> Plaintiff's Response:  **Disputed.** This paragraph constitutes an argument regarding the inferences to be drawn from the facts, rather a fact itself, and should be disregarded. Further, "the nature of the law enforcement interest in an individual" is broad and could encompass the reason for a search, including no reason.[9] Thus, this disclosure of this information could not reveal a non-public law enforcement technique, procedure, or guideline.

77.     The second category of material that DHS has withheld under Exemption 7(E) includes "port locations/codes, reason for search, and descriptions of the particular inspection techniques utilized." *Id.*, Ex. A at 21, 37.

> Plaintiff's Response:  **Not disputed.**

78.     Disclosure of this material, "when aggregated," could reveal

> circumstances or locations where certain inspection techniques or types of investigations are more common or where certain vulnerabilities exist, allowing potential adversaries to deduce the nature of CBP's law enforcement interest in certain inspections, employ countermeasures to conceal harmful or illicit material, and/or target locations where they may face a decreased risk of detection (a practice known as "port shopping").

*Id.* at 21, 36-37.

> Plaintiff's Response:  **Disputed.** The assertion that the disclosure of this information would "allow[] potential adversaries" to "employ countermeasures" or "target locations" is an argument regarding the inferences to be drawn from the facts, rather a fact itself, and should be disregarded.

---

[9] *See Alasaad*, 2019 WL 5899371, at *7.

79.     The third category of material that DHS has withheld under Exemption 7(E) includes "unique record numbers, computer systems codes/commands, network addresses and URLs." *Id.*, Ex. A at 22, 37.

> Plaintiff's Response:  **Not disputed.**

80.     Disclosure of this material, "either standing alone or when combined with other information," could "enabl[e] access to and/or manipulation of law enforcement databases and information." *Id.*

> Plaintiff's Response:  **Disputed.** This paragraph constitutes an argument regarding the inferences to be drawn from the facts, rather a fact itself, and should be disregarded.

81.     The fourth category of material that DHS has withheld under Exemption 7(E) consists of "subject-specific information" that includes

> reason for search, the type of search, whether the individual was notified of the search, the reason why the individual was or was not notified, information regarding the nature of the law enforcement interest in a particular inspection, status of the inspection or investigation, information supplied by other government agencies, information regarding law enforcement alerts and lookouts, and results of the search.

*Id.*, Ex. A at 22, 37.

> Plaintiff's Response:  **Not disputed.**

82.     Disclosure of this material could "form[] a basis for comparison for the handling of different inspections, and/or . . . reveal[] the nature of the law enforcement interest in particular individual(s)." *Id.*

> Plaintiff's Response:  **Disputed.** First, **t**his paragraph constitutes an argument regarding the inferences to be drawn from the facts, rather a fact itself, and should be disregarded. Second, given the limited number of searches reflected in the

material at issue, individuals could not draw conclusions about trends in the handling of different inspections. Because names and identifying information are redacted, individuals are also unable to learn about the nature of law enforcement interest in particular individuals.

83.     The material that ICE has withheld under Exemption 7(E) falls into three categories.  Fuentes Decl. ¶¶ 41-43, 45.

Plaintiff's Response:  **Disputed in part.** The Knight Institute disputes that ICE only redacted information that falls into the three categories listed below. Several documents are so heavily redacted that it is evident that ICE withheld much more information than that which falls into the categories below.  *See, e.g.*, Hellman Decl.; 2017-ICLI-00011 2027–29 (Ex. K); 2017-ICLI-00011 1697–99 (Ex. L).

84.     The first category consists of sections of internal HSI handbooks, including, the sections of "Search and Seizure Handbook" headings titled: "Administrative Searches," "Functional Equivalent of the Border," and "Extended Border" . . . . sections of the "Child Exploitation Handbook" headings titled: "Search Warrant," "Title III Court Order," "Investigative Protocols and Precautions Regarding Wireless Networks," "Guidelines for Searching and Seizing Digital Devices," and "Judicial Responsibility" . . . . [and] sections of the "National Security Investigation Handbook" headings titled: "FISA Application in Lone Wolf Situations."  *Id.* ¶¶ 41-42.

Plaintiff's Response:  **Not disputed.**

85.     The material in this category "describe[s] type[s] of allowable administrative searches and when the agents are permitted to conduct searches; [contains] descriptions of type of circumstances for border nexus to be qualified for equivalent of a border; and [describes] situations

when border searches [may be] conducted away from the actual border" and "contain[s] information relating to techniques, protocols and guidelines the Special Agents are required to follow in searching for electronic communications." *Id.*; see *id.* ¶ 42 (similarly).

> Plaintiff's Response:  **Not disputed.**

86.     Disclosure of this material could enable lawbreakers "to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations." *Id.* ¶ 42.

> Plaintiff's Response:  **Disputed.** The government's assertion that the disclosure of this information would allow "lawbreakers" to "counter operational and investigative actions" is a conclusion of law rather than a statement of fact, and should be disregarded.  Further, the withheld paragraphs describe ICE's legal authority, not techniques or guidelines that would enable individuals to evade ICE's enforcement of the law.

87.     The second category of material that ICE has withheld under Exemption 7(E) consists of "HSI's Investigative Case Management System (ICM) case numbers, ROIs, event codes, identification numbers, law enforcement system URLs, TECS ID numbers, ICE case numbers, ROI numbers, TECS ID numbers, software names, sensitive CBP form numbers, and other law enforcement agencies' case numbers such as the FBI." *Id.* ¶ 43.

> Plaintiff's Response:  **Not disputed.**

88.     Disclosure of this material

> could reasonably be expected to allow a person to breach into sensitive law enforcement systems.  This information, used for the purpose of indexing, storing, locating, and retrieving law enforcement sensitive information is not commonly known and could also be used to decipher the meaning of codes, navigate within the law enforcement system, and compromise the integrity of the data either by allowing for the deletion or alteration of information.  This potential to circumvent

detection and manipulate law enforcement sensitive information could place law enforcement officers and the public at risk.  In addition, release of this information could reveal techniques and/or procedures for law enforcement investigations or prosecutions and/or disclose guidelines for law enforcement investigations or prosecutions.  Disclosure of these techniques and guidelines could permit those seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.

*Id.* ¶ 44.

> Plaintiff's Response:  **Disputed.** The government's assertion that the disclosure of
>
> this information enables "those seeking to violate or circumvent the law to take
>
> proactive steps to counter operational and investigative actions" is speculative and
>
> constitutes a conclusion of law rather than a statement of fact, and should be
>
> disregarded.

89.     The third category of material that ICE has withheld under Exemption 7(E) consists

of

> law enforcement sensitive database and computer program names/techniques used to search electronic devices such as cameras, computers, cell phones, and any other electronic devices capable of storing data, techniques/software programs used to extract data from these electronic devices, names of companies under investigation, request[s] for assistance from foreign government in investigations, techniques used to provide that assistance/information, common techniques used by smugglers, and methods used by the agents in identifying such techniques.

*Id.* ¶ 45.

> Plaintiff's Response:  **Not disputed.**

90.     "Methods used by agents in utilizing these computer software programs to extract

information from these devices and providing investigative assistance to foreign government[s],

requires a level of consideration that constitute[s] law enforcement techniques, procedures, and guidelines."  *Id.* ¶ 46.

> Plaintiff's Response:  **Disputed.** The statement that these methods "constitute law enforcement techniques, procedures, and guidelines" is a conclusion of law rather than a statement of fact, and should be disregarded.

91.   Disclosure of the information in this category

> could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.  If released, individuals could circumvent the law by knowing how ICE assesses and operationally minimizes threats while searching electronic devices, thereby allowing them to counter ICE's operational and investigative actions during enforcement operations.

*Id.*

> Plaintiff's Response:  **Disputed.** The government's assertion that the disclosure of this information enables "people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions" is speculative and constitutes a conclusion of law rather than a statement of fact, and should be disregarded.