# EXHIBIT J

Incident - (b) (7)(E), (b) (6), (b) (7)(C) - Dear CBP: On May 13, 2015, I was referred for secondary screening at the (b) (7)(E),...

| | |
|---|---|
| **Reference #** (b) (7)(E), (b) (6), (b) (7)(C) | |
| **Status** Closed | |
| **Assigned To** (b) (6), (b) (7)(C) | |
| **Product** Search Authority  Objects to Being Questioned or Selected | |
| **Category** Land Border, Airport, or Seaport (b) (7)(E) | |
| **SLA** Not specified | |
| **Queue** Complaints | |
| **Date Created** 05/27/2015 03:14 AM | |
| **Date Initial Solution Response** 06/03/2015 09:25 AM | |
| **Last Updated** 08/31/2015 06:08 PM | |
| **Date Closed** 06/03/2015 09:25 AM | |
| **Customer SmartSense** 0 (on -3 to +3 scale) | |
| **Staff SmartSense** +1 (on -3 to +3 scale) | |
| **Response Needed** Yes | |
| **Language** English | |
| **Incident Date** 05/13/2015 12:00 PM (b) (7)(E) | |
| **Privacy Issue** Yes | |
| **Referred out of CIC** No | |
| **Form Type** Complaint Travel 1st | |
| **NEXUS Number** (b) (6), (b) (7)(C) | |
| **Created by Generic Supervisor** No | |
| **Auto Close** No | |
| **Video Footage Attached** No | |

### Dear CBP: On May 13, 2015, I was referred for secondary screening at the (b) (7)(E)

**Discussion Thread**

**FOUO Law Enforcement Sensitive** (b) (6), (b) (7)(C)     06/03/2015 09:41 AM

Email sent to POE is attached.

**Response** (b) (6), (b) (7)(C)     06/03/2015 09:25 AM

Thank you (b) (6), (b) (7)(C) for your email regarding the difficulties you experienced when processing through U.S. Customs and Border Protection (CBP) (b) (7)(E) port of entry.

Please allow me to express regret for any conduct that may have been rude or unprofessional during your CBP processing. CBP takes allegations of employee misconduct very seriously and has instituted policies pertaining to abuses of authority. Complaints of unprofessional conduct are recorded, investigated, and appropriate action is taken against CBP Officers who are found to have violated policy.

Your complaint has been forwarded to the (b) (7)(E) Port Director for review and appropriate action. However, further communication may not be forthcoming as the Privacy Act prohibits any disclosure of discipline taken towards CBP personnel.

As you should be aware, members of any of the Trusted Traveler Programs are subject at any time to inspection; although, they generally enjoy expedited customs processing. You should expect an occasional inspection to be conducted in an effort to ensure that you are being complaint with the NEXUS program.

A CBP Officer's border search authority is derived from Federal statutes and regulations, including 19 C.F.R. 162.6, which states that, "All persons, baggage and merchandise arriving in the Customs territory of the United States from places outside thereof are liable to inspection by a CBP Officer." Unless exempt by diplomatic status, all persons entering the United States, including U.S. citizens, are subject to examination and search by CBP Officers.

Speaking with travelers and examining merchandise coming into or leaving the United States are some of the ways we look for illegal or prohibited items, and to determine whether or not someone is trying to enter the U.S. for unlawful or under fraudulent purposes. Unless exempt by diplomatic status, all travelers entering the United States, including U.S. citizens, participate in routine Customs processing. At times, people make the mistake of thinking their civil rights are being violated by being asked questions about their trip, personal background and history, etc. That is not the case. Supreme Court decisions have upheld the doctrine that CBP's search authority is unique and does not violate the Fourth Amendment protection against unreasonable searches and seizures.

It is not the intent of CBP to subject travelers to unwarranted scrutiny. CBP Officers may, unfortunately, inconvenience law-abiding citizens in order to detect those involved in illicit activities. We are especially aware of how inconvenient and stressful the inspection process may be to those selected for inspection. In such cases we rely heavily on the patience, understanding, and cooperation of the traveler.

CBP Officers use diverse factors to refer individuals for targeted examinations and there are instances when our best judgments prove to be unfounded. Although CBP does use information from various systems and specific techniques for selecting passengers for targeted examinations, a component of our risk management practices is the use of a completely random referral for a percentage of travelers.

There are many reasons for deciding to examine someone. As mentioned above, CBP has a program of random checks that helps us calibrate our information regarding smuggling trends. In addition, CBP Officers will occasionally observe something that fits a smuggling characteristic. They will then want to conduct a search to see if anything else in the passenger's goods or answers would provide information that would indicate whether or not there is additional need for concern. Many people think that officers only target people who look disreputable or suspicious, and are therefore offended when they themselves are singled out. Please be aware that some of CBP's biggest seizures have come from inspections of "respectable looking" people, such as grandmothers, corporate executives, college professors, etc. Everyone is subject to CBP inspection when they arrive in the U.S.

Allow me to suggest that if, for any reason in the future, you are ever again dissatisfied during your CBP processing, please ask to speak with the CBP Passenger Service Manager (PSM) on-site or the Chief Officer on duty. A supervisor is always available to address the concerns of travelers during their CBP processing.

We regret any inconvenience or unpleasantness that you have experienced while being processed through CBP at the (b) (7)(E) port of entry. We hope that your future encounters with CBP will be of a more pleasant nature.

Thank you again for contacting the CBP INFO Center (CIC) Complaints Branch online.

Regards,

(b) (6), (b) (7)(C)

Senior Public Information Officer - Complaints Branch

~~FOUO Law Enforcement Sensitive~~ (b) (6), (b) (7)(C)     06/03/2015 09:25 AM

CBP005274

Incident - (b) (7)(E), (b) (6), (b) (7)(C) - Dear CBP: On May 13, 2015, I was referred for secondary screening at the (b) (7)(E) ...



(b) (6), (b) (7)(C), (b) (7)(E)

CBP005275

Incident - (b) (7)(E), (b) (6), (b) (7)(C) - Dear CBP: On May 13, 2015, I was referred for secondary screening at the (b) (7)(E)



(b) (6), (b) (7)(C), (b) (7)(E)

CBP005276

(b) (7)(E), (b) (6), (b) (7)(C)   10/10/2017 9:01:08 AM]

Incident - (b)(7)(E), (b)(6), (b)(7)(C) - Dear CBP: On May 13, 2015, I was referred for secondary screening at the (b)(7)(E) ..

**(b) (6), (b) (7)(C), (b) (7)(E)**

| Customer (b) (6), (b) (7)(C) | 05/27/2015 03:14 AM |

Dear CBP:

On May 13, 2015, I was referred for secondary screening at the (b) (7)(E)　　　　land crossing from Canada. I was traveling on the scheduled 11:30am BoltBus to arrive in Seattle at 3:30pm.

I was booked on the scheduled (b) (6), (b) (7)(C)

At the border, a CBP officer upon inspection of my NEXUS and Passport, showed particular interest in my flight and destination. I was referred to secondary inspection after he quickly asked me to open my backpack at his counter.

I was detained at the border for over two hours, and missed several other busses going through while waiting for (b)(7)(E) CBP officers to investigate. I was friendly, forthcoming and fully cooperative. CBP officers went through my mobile phone and laptop, which I gave my logins to without question. I even provided them with the chargers when they asked, because the devices were low on battery.

No explanation was given as to my detention. Drug-detecting dogs were brought to patrol around me three times. Two FBI agents also were called in to interview me near the end, and asked the same basic questions as the CBP officers.

I would like a proper explanation for the incident, and the reasoning for my lengthy two hour detention. As a holder of NEXUS/Global Entry, and as stated by US CBP, I am entitled to expedited customs clearance and limited immigration questioning. My fingerprints and retina scans remain on file with the US authorities. I have no criminal background or any history of agricultural or customs violations in the US. I transit the US frequently due to (b) (6), (b) (7)(C), and have never overstayed any visit.

The entire ordeal led me to catching the next scheduled (b) (6), (b) (7)(C), missing my flight, being stranded in the city, being charged airline fees, and incurring significant financial costs and having to arrange transportation back home from (b)(6)(7)(C).

Similarly, I will also be filing for redress through the DHS and filing for a FOIA request regarding the details of this incident.

Regards,

(b) (6), (b)

**Primary Contact**

First Name: (b) (6), (b) (7)(C)
Last Name:
Organization:
Login: (b) (6), (b) (7)(C)
Title:
Contact Type:
Email: (b) (6), (b) (7)(C)
Email - Alternate #1:
Email - Alternate #2:
Office Phone: (b) (6), (b) (7)(C)
Mobile Phone:
Fax:
Assistant Phone:
Home Phone: (b) (6), (b) (7)(C)
Street
City
State/Province
Postal Code
Country

**Additional Information**

CBP005277

Incident - (b) (7)(E), (b) (6), (b) (7)(C) - Dear CBP: On May 13, 2015, I was referred for secondary screening at the (b) (7)(E)

| **File Attachments** | | |
|---|---|---|
| **Name** | **Size** | **Content Type** |
| (b) (7)(E) | | |

CBP005278

(b) (7)(E), (b) (6), (b) (7)(C)                                                                 10/10/2017 9:01:08 AM]