*Knight First Amend. Inst. at Columbia Univ. v. Dep't of Homeland Sec.*
No. 1:17-cv-00548-TSC

Defendants' Combined Reply in Support of Their Motion for Summary Judgment and Opposition to Plaintiff's Cross Motion for Summary Judgment

Ex. C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | No. 1:17-cv-00548-TSC |

**SUPPLEMENTAL DECLARATION OF TONI FUENTES OF IN SUPPORT OF DEFENDANT ICE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT**

I. **INTRODUCTION**

I, Toni Fuentes, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Deputy Officer of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act ("FOIA") Office. I have held this position since September 30, 2018 and am the ICE official immediately responsible for supervising ICE responses to requests for records under the Freedom of Information Act, 5 U.S.C. § 552 (the FOIA), the Privacy Act, 5 U.S.C. § 552a (the Privacy Act), and other applicable records access statutes and regulations. Prior to this position, I have held numerous FOIA positions over the past 20 years to include: FOIA Director for the National Protection and Programs Directorate ("NPPD") at the U.S. Department of Homeland Security ("DHS"); Government Information Specialist for Department of Justice, U.S. Marshals Service, Office of General Counsel; Government Information Specialist for the Department of Defense, Office of the Inspector General's FOIA Office; FOIA Officer, Paralegal Specialist for Department of the Navy,

Page 1 of 12

Supplemental Declaration of Toni Fuentes
*Knight First Amendment Institute at Columbia University v. DHS, et al.*, No. 17-00548

NAVAIR/NAWCAD's Office of Counsel; Management and Program Analyst for Department of Homeland Security, Customs and Border Protection's FOIA Office; and FOIA Paralegal Specialist for the National Aeronautics and Space Administration's Office of Chief Counsel.

2.  My official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office. The ICE FOIA Office is responsible for the receipt, processing, and response to all Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. I manage and supervise a staff of ICE FOIA Paralegal Specialists, who report to me regarding the processing of FOIA and Privacy Act requests received by ICE.

3.  The statements contained in this supplemental declaration are based upon my personal knowledge, my review of records kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

4.  The purpose of this supplemental declaration is to provide ICE's response to Plaintiff's claims raised in his Cross Motion and Opposition to Defendants' Motion for Summary Judgement. First, Plaintiff claims that ICE has improperly withheld information pursuant to FOIA Exemption (b)(5) and (b)(7)(E). Second, Plaintiff alleges that for the first time that ICE failed to release all segregable, non-exempt information because of the agency's failure to explain its withholdings on several bates-numbered documents, newly identified by the Plaintiff.

## II. ICE'S FURTHER JUSTIFICATION FOR ASSERTION OF FOIA EXEMPTION (b)(5)

5.  Plaintiff, in his Memorandum in Support of Cross-Motion for Summary Judgment and Opposition to Defendants' Summary Judgment (ECF 50-1) alleges ICE improperly withheld material under FOIA Exemption (b)(5). The withheld material consists of an undated six-page memorandum entitled "Computer Border Search Discussion Topics" and an undated six-page draft of the

Page 2 of 12

Supplemental Declaration of Toni Fuentes
*Knight First Amendment Institute at Columbia University v. DHS, et al.*, No. 17-00548

memorandum. As previously stated in ICE's declaration (Fuentes Declaration (Dkt. No.46-7) ¶26-30) ICE in conjunction with CBP and DHS, asserted FOIA Exemption (b)(5) on these documents which were withheld in full. The memorandum was prepared by DHS attorneys, CBP and ICE agency counsel to facilitate discussion between DHS and Department of Justice (DOJ) in developing litigation strategies in anticipation of future litigation pertaining to DHS's border search authority. The memorandum was prepared in aftermath of the conclusion of proceedings in *United States v. Kim*, 103 F. Supp. 3d 32 (D.D.C. 2015), as the agencies considered the way forward in anticipation of future cases involving DHS border search authority.

6. Following the decision in the *Kim* case, DOJ and DHS and its components met to discuss the best litigation approach in anticipation of future lawsuits and the memorandum was prepared in anticipation of those meetings. In advance of meeting with DHS and its agency counsels, DOJ solicited information from DHS to decide on mutually-agreeable litigation strategies. The memorandum was prepared for and provided to a senior DHS decision maker in anticipation of the scheduled meeting with DOJ to discuss litigation tactics for potential future litigations challenging DHS border search authorities. This memorandum was also provided to DOJ before the anticipated meeting with DHS

7. As described in ICE's previous declaration, Exemption 5 was applied to the memorandum and its draft because the memorandum is deliberative. It contains legal opinions, recommendations, and preliminary views of ICE and other DHS agency counsels, which formed part of the consultative process regarding the recommended most effective litigation strategies and legal authorities supporting them that led the responses provided to DOJ's questions. This material does not reflect final agency actions or policy and does not reflect a final agency position regarding the litigation strategy to adopt in future cases as this position was still evolving at the time of these discussions. Instead, it reflects the issues that agency counsels have determined to be, in their judgment, worthy of

Page 3 of 12

Supplemental Declaration of Toni Fuentes
*Knight First Amendment Institute at Columbia University v. DHS, et al.*, No. 17-00548

discussion with or consideration by DOJ attorneys prior to DHS adopting final decision regarding the legal strategy to pursue in the future. The release of this information could serve to undermine the agencies' deliberations. The information contained in the memorandum, specifically, attorneys' views on questions posed by another agency as part of an effort to develop government-wide policy and legal position, is protected by the deliberative process privilege because the integrity of the deliberative or decision-making process within the agency would be compromised by its disclosure. As previously stated, release of this material would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency attorneys, adversely chilling intra- and inter-agency communications, and, thereby, adversely impact the quality of internal policy decision-making and the development of agency positions; in this case, decision on legal position with regards to future cases involving challenges to DHS border search authorities.

8. Plaintiff further alleges that ICE did not meet its burden in showing that the withheld documents contained "confidential "information as it relates to assertion of attorney-client privilege. As ICE stated in the above paragraphs, the memorandum was prepared in anticipation of further discussions between DOJ attorneys who represented DHS in lawsuits, and DHS agency counsels pertaining to litigation strategies involving DHS border search authorities. The memorandum was only intended to be seen by counsel for DOJ and DHS, and ICE has no reason to believe it was disseminated beyond the DOJ and DHS attorneys involved in these discussions and with a need to know. Therefore, DHS intends to maintain the confidentiality of the information. Hence, the memorandum and its contents are confidential.

9. The disclosure of the memorandum and its draft would foreseeably cause the type of harm that Exemption (b)(5) is intended to prevent. First, release of these pre-decisional, deliberative materials would chill the free and frank exchange of information and ideas between counsel for

Page 4 of 12

Supplemental Declaration of Toni Fuentes
*Knight First Amendment Institute at Columbia University v. DHS, et al.*, No. 17-00548

agencies who are deliberating regarding methods or steps in agreeing to a intergovernmental policy or legal position, or who are making recommendations to DOJ concerning how to proceed in future litigations. This chilling effect would impact the agencies' decision-making processes and ability to have internal discussions and consultations regarding sensitive issues regarding the agencies' legal position. The integrity of the deliberative process within these agencies would be compromised by disclosure.

10. Second, the release of these pre-decisional, deliberative materials could lead to public confusion, because they may not represent the final form of the agencies' determinations for how to proceed in future litigations involving DHS border search authorities and may include proposals or recommendations that were not in fact implemented by the agencies.

11. ICE further applied FOIA Exemption (b)(5) to protect from disclosure documentation subject to the attorney work-product privilege. This privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Its purpose is to protect the adversarial trial process by insulating the attorney's preparation from scrutiny.

12. The withheld information was created by agency counsel in anticipation of and in preparation for future litigations in federal courts, specifically, legal challenges to DHS border search authorities. Requiring the disclosure of this information protected by the work-product privilege would harm the agency's effectiveness by undermining its ability to develop legal theories and strategies in confidence.

### III. ICE'S FURTHER JUSTIFICATION FOR ASSERTION OF FOIA EXEMPTION (b)(7)(E)

13. Plaintiff in its Memorandum alleges that ICE has improperly withheld in full or in significant parts portions of HSI internal handbooks because the withheld portions contain legal

Page 5 of 12

Supplemental Declaration of Toni Fuentes
*Knight First Amendment Institute at Columbia University v. DHS, et al.*, No. 17-00548

analysis and discussions rather than type of confidential technical procedures Exemption(7)(E) was designed to protect. *See* Pls.' Br. 33.[1] To the contrary, as ICE explains below, the withheld sections do not contain legal analysis and discussions as these internal handbooks were prepared to assist HSI agents in developing techniques to investigate criminal activities and to provide guidelines that the agents could refer to.

14.     ICE applied FOIA Exemption (b)(7)(E) to a section of an internal HSI handbook titled "Computer Forensics Handbook," specifically to a section relating to "Consent." This section of the internal handbook provides guidelines and techniques to the special agents for when a search is warranted with or without consent. This section also provides guidance and instructions pertaining to various scenarios involving agents conducting searches at the border. Disclosure of this information would allow bad actors to evade and circumvent the law by interfering with techniques agents use to conduct a search.

15.     ICE further applied Exemption (b)(7)(E) to sections of internal HSI handbook titled "Search and Seizure Handbook," and more specifically to the headings titled: "Administrative Searches," "Functional Equivalent of the Border," and "Extended Border." The redacted sections of this handbook provide guidance to the agents regarding: (1) the types of allowable administrative searches to be conducted and when the agents are permitted to conduct searches without warrants; (2) the types of circumstances allowing for border nexus to be qualified as an equivalent of a border and (3) limitations on "Functional Equivalent of Border searches"; and situations when border searches maybe conducted away from the actual border, such as extended border. The withheld information in

---

[1] Plaintiff asserts that ICE has withheld portions of these policies in full which is an inaccurate statement. ICE withheld in part the information contained in these policies and training handbooks

Page 6 of 12

Supplemental Declaration of Toni Fuentes
*Knight First Amendment Institute at Columbia University v. DHS, et al.*, No. 17-00548

this internal handbook provide law enforcement techniques and guidelines to special agents at the border to determine when a search of an electronic devices are warranted. Disclosure of the content of these sections would allow the human traffickers or drug smugglers know the circumstances under which they may be subjected to a search at or near the border, allowing them to change their tactics because they know the techniques in which the agents conduct searches at the border.

16.     Another internal HSI handbook produced to the Plaintiff was the "Child Exploitation Handbook." ICE withheld portions of this handbook under the headings titled: "Search Warrant," "Title III Court Order," "Investigative Protocols and Precautions Regarding Wireless Networks," "Guidelines for Searching and Seizing Digital Devices," and "Judicial Responsibility." These sections contained information relating to (1) when a search warrant is required; (2) when to request a warrant for a Title III Court Order, (3) investigative protocols relating to wireless networks while executing a search warrant, and (4) techniques, protocols, and guidelines the Special Agents are required to follow in searching for electronic communications in relation to their investigation of targets involving child sexual exploitation. Release the content of these sections would reveal guidelines and techniques the agents use in battling child sexual exploitation. Discloser of this type of information would allow the child pedophiles to alter their strategies in targeting young children online by evading how agents conduct their investigations, causing an interference or delays in methods in which agents conduct their investigations relating to child sexual exploitation matters.

17.     Lastly, FOIA Exemption (b)(7)(E) was also applied to sections of the "National Security Investigation Handbook," more specifically to the heading titled: "FISA Application in Lone Wolf Situations." The information contained in this section is protected because it contains techniques, protocols, and guidelines the Special Agents are required to follow when searching for relevant electronic communications of the targets of those investigations. In addition, a section relating to

Page 7 of 12

Supplemental Declaration of Toni Fuentes
*Knight First Amendment Institute at Columbia University v. DHS, et al.*, No. 17-00548

"Joint Terrorism Task Force Participation" was withheld pursuant to Exemption (b)(7)(E) because it contains information relating how HSI cooperates with the Federal Bureau of Investigation (FBI) when conducting operational oversight and investigations into terrorist groups and their activities. Although these techniques are generally known to the public, the public is unaware of the types of situations in which these techniques are used as well as exactly how the HSI uses these techniques to gather electronic information. Disclosure of the information contained in these sections would allow members of a terrorist group to evade law enforcement investigations because they have learned how JTFF agents gather information on them and what role ICE plays in gathering information regarding their activities; or when a potential active shooter knew how law enforcement agents can become privy to his/her communications and by knowing these techniques and guidelines, takes extra steps to avoid such law enforcement activities.

18. Although, the techniques and guidelines above might be known to the public, the method in which agents used these techniques and guidelines to conduct their investigations are unknown to the public and disclosure of this type of information could permit those seeking to violate or circumvent the law, to take proactive steps in counter operational and investigative actions taken by ICE during enforcement operations.

## IV. ICE'S RESPONSE TO PLAINTIFF'S NEWLY IDENTIFIED RECORDS

19. Plaintiff also claims that ICE failed to segregate non-exempt information from the withheld portions of the records and that ICE did not provide a justification for the bates-numbered documents Plaintiff has now identified for the first time. In August 2018, the parties agreed through counsel that Plaintiff would identify bates numbers for those documents containing redactions which Plaintiff anticipated to challenge. ICE agreed it would provide a *Vaughn Index* for the redactions found on those pages. Accordingly, Plaintiff provided ICE with an excel spreadsheet containing

Page 8 of 12

Supplemental Declaration of Toni Fuentes
*Knight First Amendment Institute at Columbia University v. DHS, et al.*, No. 17-00548

bates numbers of those documents as to which Plaintiff intended to challenge redactions and ICE supplied the Plaintiff with a *Vaughn Index* justifying its withholdings for those bates numbers. Plaintiff has now apparently reneged on the August 2018 agreement and identified additional records in his Opposition to Defendants' Motion for Summary Judgment as to which Plaintiff is challenging the redactions. ICE had no notice that Plaintiff intended to expand the withholding challenges beyond the bates numbers identified during the discussions held in August 2018 and has thus not been able to prepare an updated *Vaughn Index* to submit along with this declaration. It has been two years since the parties agreed on a sampling of documents for ICE to prepare a *Vaughn Index* for, and Plaintiff has had many opportunities to provide ICE with additional concerns or issues relating to these newly identified documents.

20.     ICE notes that even though Plaintiff has identified additional bates numbered documents, these documents are the same type of documents previously identified by Plaintiff for which ICE provided a *Vaughn index*. These documents fall under the category of Reports of Investigations (ROIs), which follow the same pattern in terms of format and structure as ROIs addressed by ICE's index and which likewise follow the same pattern in terms of the types of information withheld and the exemptions relied upon to withhold it. As majority of the records released by ICE were ROIs[2], ICE continued to apply FOIA Exemption (b)(7)(E) to the following categories of information: HSI's Investigative Case Management System (ICM) case numbers, ROI event codes, identification numbers, law enforcement system URLs, TECS ID numbers, ICE case numbers, ROI numbers,

---

[2] ICE had produced other categories of records such as internal handbooks, excel spreadsheets and other policies. ICE previously provided a *Vaughn index* justifying its redactions on these categories of records.

Page 9 of 12

Supplemental Declaration of Toni Fuentes
*Knight First Amendment Institute at Columbia University v. DHS, et al.*, No. 17-00548

TECS ID numbers, software names, sensitive CBP form numbers, and other law enforcement agencies' case numbers such as the FBI.[3]

21. The release of this information could reasonably be expected to allow a person to breach into sensitive law enforcement systems. This information, used for the purpose of indexing, storing, locating, and retrieving law enforcement sensitive information is not commonly known and could also be used to decipher the meaning of codes, navigate within the law enforcement system, and compromise the integrity of the data either by allowing for the deletion or alteration of information. This potential to circumvent detection and manipulate law enforcement sensitive information could place law enforcement officers and the public at risk. In addition, release of this information could reveal techniques and/or procedures for law enforcement investigations or prosecutions and/or disclose guidelines for law enforcement investigations or prosecutions. Disclosure of these techniques and guidelines could permit those seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.

22. In addition, ICE applied Exemption (b)(7)(E) to the following category of information contained in these ROIs: law enforcement sensitive database and computer program names/techniques used to search electronic devices such as cameras, computers, cell phones, and any other electronic devices capable of storing data as well as techniques/software programs used to extract data from these electronic devices, names of companies under investigation, request for assistance from foreign government in investigations, techniques used to provide that assistance/information, and methods used by the agents in identifying common techniques used by smugglers. Methods used by agents in

---

[3] ICE also continued to assert FOIA Exemption (b)(6) and (b)(7)(C). It appears from Plaintiff's Memorandum that Plaintiff is only challenging CBP's assertion of FOIA Exemption (b)(6) and (b)(7)(C).

utilizing these computer software programs to extract information from these devices and providing investigative assistance to foreign government, requires a level of consideration that constitute law enforcement techniques, procedures, and guidelines, the release of which could reasonably be expected to risk circumvention of the law. Disclosure of this information could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. If released, individuals could circumvent the law by knowing how ICE assesses and operationally minimizes threats while searching for electronic devices, thereby allowing them to counter ICE's operational and investigative actions during enforcement operations.

## V.     SEGREGABILITY

23.     5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

24.     My staff, under my supervision, has reviewed each record line-by-line to identify information exempt from disclosure or for which a discretionary waiver of an exemption could be applied.

25.     With respect to the records that were released in part, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released. ICE did not withhold any non-exempt information on the grounds that it was non-segregable.

Page 11 of 12

Supplemental Declaration of Toni Fuentes
*Knight First Amendment Institute at Columbia University v. DHS, et al.*, No. 17-00548

**JURAT CLAUSE**

26.  I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief. Signed this 26th day of May 2020

Toni Fuentes, Deputy FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009

Page 12 of 12

Supplemental Declaration of Toni Fuentes
*Knight First Amendment Institute at Columbia University v. DHS, et al.*, No. 17-00548