# EXHIBIT A

20 F.4th 49
United States Court of Appeals,
District of Columbia Circuit.

JUDICIAL WATCH, INC., Appellant

v.

UNITED STATES DEPARTMENT
OF JUSTICE, Appellee

No. 20-5304
|
Argued September 22, 2021
|
Decided December 10, 2021

**Synopsis**

**Background:** Requester filed suit, under Freedom of Information Act (FOIA), against Department of Justice (DOJ), seeking attachments to four emails sent to and from DOJ email account of former Acting Attorney General (AAG) on same day that she issued statement declaring that she would not present arguments in defense of then-President's Executive Order, suspending entry into United States of foreign nationals from seven majority-Muslim countries. The United States District Court for the District of Columbia, Colleen Kollar-Kotelly, J., 487 F.Supp.3d 38, granted DOJ summary judgment. Requester appealed.

The Court of Appeals, Tatel, Circuit Judge, held that DOJ failed to demonstrate that attachments were protected by deliberative process privilege.

Reversed and remanded with instructions.

**\*52** Appeal from the United States District Court for the District of Columbia (No. 1:17-cv-00832).

**Attorneys and Law Firms**

Paul J. Orfanedes argued the cause for appellant. With him on the briefs was Meredith Di Liberto.

Thomas Pulham, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were

Brian M. Boynton, Acting Assistant Attorney General, and Sharon Swingle, Attorney.

Before: Henderson, Tatel, and Wilkins, Circuit Judges.

**Opinion**

Tatel, Circuit Judge:

One week after taking the oath of office, President Donald Trump signed Executive Order Number 13,769 suspending entry into the United States of foreign nationals from seven majority-Muslim countries. Critics immediately challenged the Executive Order, and on January 30, Acting Attorney General Sally Yates issued a four-paragraph statement declaring that, "for as long as I am the Acting Attorney General, the Department of Justice will not present arguments in defense of the Executive Order, unless and until I become convinced that it is appropriate to do so." President Trump fired Yates later that day. Some two months later, Judicial Watch filed suit under the Freedom of Information Act, seeking attachments to four emails sent to and from Yates's DOJ email account on the same day that she issued her statement. DOJ declined to release the attachments, invoking the deliberative process privilege set forth in FOIA Exemption 5. The district court granted summary judgment for the government. For the reasons set forth below, we reverse.

**I.**

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). FOIA "mandates the disclosure of documents held by a federal agency unless the documents fall within one of nine enumerated exemptions." *United States Fish & Wildlife Service v. Sierra Club, Inc.*, ––– U.S. ––––, 141 S. Ct. 777, 785, 209 L.Ed.2d 78 (2021). The fifth exemption —the one at issue in this case—protects "inter-agency or intra-agency **\*53** memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Concerned that the government was overusing the privilege, Congress passed the FOIA Improvement Act of 2016, which prohibits an agency from withholding information unless it "reasonably foresees that disclosure would harm an interest protected by

an exemption" or if "disclosure is prohibited by law." *Id.* § 552(a)(8)(A); *see also* H.R. Rep. No. 114-391, at 10 (2016) ("The deliberative process privilege is the most used privilege and the source of the most concern regarding overuse.").

Judicial Watch's FOIA request, filed just two days after President Trump fired Yates, seeks "[a]ny and all e-mails sent from or received from the Department of Justice e-mail account utilized by former Acting Attorney General Sally Yates between January 21, 2017 and January 31, 2017." First Brinkmann Decl., Ex. A, *Judicial Watch, Inc. v. DOJ*, No. 17-cv-832 (D.D.C. Aug. 23, 2018), ECF No. 19-1. When DOJ failed to timely respond, Judicial Watch sued in the district court to compel the agency to produce the requested materials. *See* 5 U.S.C. § 552(a)(6)(A)(i) (generally providing agencies twenty weekdays to determine whether to comply with a FOIA request and to notify the requester).

DOJ produced some documents but redacted or withheld others pursuant to Exemption 5. Among the documents withheld were four attachments to four January 30, 2017 emails sent hours apart from one another. The first of the attachments, titled "draft.docx," was attached to an email sent from Deputy Attorney General Matthew Axelrod to Yates at 8:41 a.m. Pl.'s Resp. to Def.'s Second Statement of Material Facts, Ex. A, *Judicial Watch*, No. 17-cv-832, ECF No. 30–1. The second, titled "Draft2.docx," was attached to an email from Axelrod to Yates sent at 1:44 p.m. *Id.* The third and fourth, also titled "Draft2.docx," were attached to emails bearing the subject "Draft2" that Yates sent from her government to her personal email account at 2:58 p.m. and 5:27 p.m. *Id.* The emails contain no other substantive information.

DOJ moved for summary judgment, supporting its motion with a Vaughn Index and a declaration by Office of Information Policy Senior Counsel Vanessa Brinkmann purporting to describe the redacted and withheld documents and the reasons for their nondisclosures. The district court denied DOJ's motion, explaining that it "ha[d] not met its burden with respect to the requirements of the FOIA Improvement Act," and, because that issue was dispositive, the court "d[id] not reach the question of whether any withholdings were ultimately proper under FOIA Exemption 5." *Judicial Watch v. DOJ*, No. 17-cv-832, 2019 WL 4644029, at *3 (D.D.C. Sept. 24, 2019). But "in light of the interests underlying the deliberative process privilege ... invoked by DOJ, the Court ... den[ied] the Motion without prejudice"

and "allow[ed] DOJ the opportunity to address the clear deficiencies outlined in" the court's opinion. *Id.* at *5, *9.

DOJ then filed a second motion for summary judgment, again arguing that the attachments were properly withheld under FOIA Exemption 5's deliberative process privilege. In support, it filed a third Brinkmann declaration (the second is irrelevant). That declaration states in pertinent part that, "[t]hese documents reflect successive version[s] of working drafts, and as such, show the internal development of the Department's final decisions," and that "[t]he disclosure of the drafts of this final statement would reveal the drafters' evolving thought-processes regarding the Executive **\*54** Order, as well as ideas and alternatives considered but ultimately rejected in the final agency decision." *See* Third Brinkmann Decl. ¶ 76, *Judicial Watch*, No. 17-cv-832, ECF No. 29-2.

This time the district court reached the Exemption 5 issue and "ha[d] little trouble" concluding that the attachments were properly withheld. *Judicial Watch v. DOJ*, 487 F. Supp. 3d 38, 45 (D.D.C. 2020). Referring to the two criteria that documents must satisfy to fit within the deliberative process privilege, the district court explained that "[w]orking drafts of a DOJ policy statement to be issued by the Acting Attorney General ... appear manifestly 'deliberative' and 'predecisional' ... particularly ... given that these documents 'reveal the drafters' evolving thought-processes regarding the Executive Order,' and were transmitted directly between Ms. Yates and one of her principal aides." *Id.* (quoting Third Brinkmann Decl. ¶ 76).

Judicial Watch appeals. Our review is de novo. *Shapiro v. DOJ*, 893 F.3d 796, 799 (D.C. Cir. 2018) ("We review de novo a district court's grant of summary judgment.").

## II.

"A form of executive privilege," the deliberative process privilege is designed "[t]o protect agencies from being forced to operate in a fishbowl." *Sierra Club*, 141 S. Ct. at 785 (internal quotation marks omitted). The privilege is "rooted in 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.' To encourage candor, which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of disclosure." *Id.* (internal citation omitted)

(quoting *Department of Interior v. Klamath Water Users Protective Association*, 532 U.S. 1, 8–9, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001)). In particular, the privilege "serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

To fall within Exemption 5, a document must be "predecisional and deliberative." *Machado Amadis v. Department of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). A document is predecisional if it was "generated before the adoption of an agency policy." *Coastal States*, 617 F.2d at 866. In order to determine whether a document was generated before the adoption of an agency policy, we "must consider whether the agency treats the document as its final view on the matter. When it does so, the deliberative process by which governmental decisions and policies are formulated will have concluded, and the document will have real operative effect." *Sierra Club*, 141 S. Ct. at 786 (internal citation and quotation marks omitted); *see id.* at 787 ("While we have identified a decision's 'real operative effect' as an indication of its finality, that reference is to the legal, not practical, consequences that flow from an agency's action."). In this case, the attachments qualify as predecisional because, according to the Brinkmann declarations, they "precede the finalization and transmission," First Brinkmann Decl. ¶ 21, of "the final decision[, which] was ... Yates' **55** letter on January 30, 2017," Third Brinkmann Decl. ¶ 76.

Determining whether a document is deliberative is less straightforward than determining whether it is predecisional in part because of the sheer variety of ways in which a document can be deliberative. As we have explained, the deliberative process privilege is "dependent upon the individual document and the role it plays in the administrative process." *Coastal States*, 617 F.2d at 867. In *Senate of Puerto Rico v. DOJ* our court explained that the agency invoking the deliberative process privilege must show (1) " 'what deliberative process is involved,' " and (2) " 'the role played by the documents in issue in the course of that process.' " 823 F.2d 574, 585–86 (D.C. Cir. 1987) (quoting *Coastal*

*States*, 617 F.2d at 868). To "assist the court in determining whether th[e] privilege is available," the agency should also explain (3) the "nature of the decisionmaking authority vested in the officer or person issuing the disputed document," and (4) the "relative positions in the agency's chain of command occupied by the document's author and recipient." *Id.* at 586 (internal quotation marks omitted).

With these principles in mind, we turn to the case before us. As permitted by FOIA, the district court chose to rely on the government's declarations rather than examining the attachments *in camera*, and thus so do we. *See Shapiro*, 893 F.3d at 799 ("Typically, the agency demonstrates the applicability of a FOIA exemption by providing affidavits regarding the claimed exemptions.").

In support of its claim that the attachments are deliberative, DOJ relies on these two sentences from the third Brinkmann declaration: "These documents reflect successive version[s] of working drafts, and as such, show the internal development of the Department's final decisions. ... The disclosure of the drafts of [Yates's] statement would reveal the drafters' evolving thought-processes regarding the Executive Order, as well as ideas and alternatives considered but ultimately rejected in the final agency decision." Third Brinkmann Decl. ¶ 76. DOJ argues that the attachments are drafts and that our court has "repeatedly held that 'draft[s] of what will become a final document' are privileged and exempt from compelled disclosure." Appellee's Br. 15 (alteration in original) (quoting *Coastal States*, 617 F.2d at 866, and citing *National Security Archive v. CIA*, 752 F.3d 460, 462–63 (D.C. Cir. 2014)).

The cases DOJ cites, however, do not support that proposition. In *Coastal States*, draft documents were not even at issue, and we affirmed the district court's order requiring disclosure of the documents that were at issue. 617 F.2d at 861–62, 870–71. True, we mentioned in passing that the exemption covers "draft documents," *id.* at 866, but in a later case, we made clear that "*Coastal States* forecloses the ... argument that any document identified as a 'draft' is per se exempt," *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257 (D.C. Cir. 1982). "Even if a document is a 'draft of what will become a final document,' " we explained, "the court must also ascertain 'whether the document is deliberative in nature.' " *Id.* at 257–58 (quoting *Coastal States*, 617 F.2d at 866). In the other decision cited by DOJ, *National Security Archive*, we held that a draft of an agency history was covered by Exemption 5, but we limited that holding to "the narrow confines of th[at] case." 752 F.3d at 465; *see id.* at 463 ("[W]e have held

that a *draft* of an agency's official history is pre-decisional and deliberative, and thus protected under the deliberative process privilege."). Were there any doubt that drafts are not automatically exempt under the **\*56** deliberative process privilege, we dispelled it last term in *Reporters Committee for Freedom of the Press v. FBI*, where the government "failed to identify any deliberative component" to draft PowerPoint slides. 3 F.4th 350, 367 (D.C. Cir. 2021).

The third Brinkmann declaration tells us that disclosing the attachments would "reveal the drafters' evolving thought-processes" as well as "ideas and alternatives considered but ultimately rejected." Third Brinkmann Decl. ¶ 76. But it never explains who. Indeed, it contains none of the information *Senate of Puerto Rico* holds a court needs to determine whether a document is deliberative. It tells us nothing about what " 'deliberative process is involved,' " that is, what procedure DOJ followed to finalize Acting Attorney General Yates's statement. *Senate of Puerto Rico*, 823 F.2d at 585 (quoting *Coastal States*, 617 F.2d at 868). The declaration tells us nothing about the " 'role' " the attachments played " 'in the course of that process.' " *Id.* at 585–86 (quoting same). And it tells us nothing about the "nature of the decisionmaking authority vested in the officer or person issuing the disputed document," or the "relative positions in the agency's chain of command occupied by the document's author and recipient." *Id.* at 586 (internal quotation marks omitted). It never even identifies who prepared the attachments or to whom the attachments were addressed. We know the attachments were emailed to and by Yates only because *Judicial Watch* entered that information into the record. Pl.'s Resp. to Def.'s Second Statement of Material Facts, Ex. A, *Judicial Watch*, No. 17-cv-832, ECF No. 30–1.

In contrast to this case, in those cases where we found that the withheld material was deliberative, we knew the "who," i.e., the roles of the document drafters and recipients and their places in the chain of command; the "what," i.e., the nature of the withheld content; the "where," i.e., the stage within the broader deliberative process in which the withheld material operates; and the "how," i.e., the way in which the withheld material facilitated agency deliberation. The inadequacy of the third Brinkmann declaration jumps off the page when contrasted with a recent case in which we found the government's showing sufficient. In *Machado*, the FOIA requester sought copies of "Blitz Forms," which agency line attorneys fill out to identify and analyze issues in FOIA appeals and to make recommendations to the senior

attorneys who "adjudicate" the appeal. 971 F.3d at 370. The agency redacted information contained in the Blitz Forms, claimed it as exempt under the deliberative process privilege, and, in accordance with *Senate of Puerto Rico*, provided declarations explaining in detail why the redacted information fell under Exemption 5. Unlike here, the agency described the deliberative process that was involved: staff attorneys, the key declaration explained, "prepare Blitz Forms to succinctly summarize the initial search and response to the administrative appeal at issue, identify important issues to be taken into account during the course of the adjudication process, and provide key background information in a concise format for ease of understanding and presentation to reviewing senior [agency] attorneys." Def.'s Statement of Material Facts Not in Genuine Dispute, Ex. 4 at 11, *Machado Amadis v. Department of State*, No. 16-cv-2230 (D.D.C. July 31, 2018), ECF No. 20-10. Unlike here, the agency explained the role played by the withheld material in the course of that process: "Attorney notations," the declaration explained, "reflect the authors' opinions and analysis and reveal the internal deliberations of the [agency] Appeals Staff as they evaluate the merits of each appeal, and whether to affirm or remand a component's initial decision on the FOIA request **\*57** at issue." *Id.* And unlike here, the agency described the nature of the decision-making authority vested in the drafters of the withheld material as well as their positions in the chain of command relative to the recipients of that material: the redactions, the declaration explained, "protect line attorneys' evaluations, recommendations, discussions, and analysis which are prepared for senior-level review and decisionmaking." *Id.* Unlike here, there was little mystery as to the "who," "what," "where," and "how" of the deliberative process and the role played by the withheld material.

Throughout its brief, DOJ cites *Sierra Club,* 141 S. Ct. 777. There, the Court considered whether the deliberative process privilege protected "drafts of draft biological opinions" prepared in relation to a rule that was proposed but never adopted. *Id.* at 788. Finding that the agencies involved did not "treat[ ] them as final," the Court determined that the drafts were protected by Exemption 5. *Id.* But *Sierra Club* was about determining whether the drafts were predecisional, not whether they were deliberative, the issue in this case.

## III.

Because DOJ has failed to satisfy its burden to demonstrate that the attachments are deliberative, we reverse the district

court's grant of summary judgment. Because the district court chose to rely on the government's declarations, and because we expect the attachments are relatively brief, we remand with instructions to review the attachments *in camera* and determine, consistent with the principles set forth herein, whether they qualify as deliberative. Should the district court conclude that the attachments are deliberative, it must then determine, consistent with the principles set forth in *Reporters*

*Committee*, whether DOJ also satisfied its burden under the FOIA Improvement Act. 3 F.4th at 369–72.

*So ordered.*

**All Citations**

20 F.4th 49

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.